1  Joshua B. Swigart (SBN 225557)
2  Josh@SwigartLawGroup.com
   **SWIGART LAW GROUP, APC**
3  2221 Camino del Rio S, Ste 308
   San Diego, CA  92108
4  P: 866-219-3343
5  F: 866-219-8344

6  *Attorneys for Plaintiffs and The Putative Class*

7              **UNITED STATES DISTRICT COURT**
              **SOUTHERN DISTRICT OF CALIFORNIA**
8

| | |
|---|---|
| SHERI BATE, and her child N.M., and AZUCENA MEJIA, and her child A.S., individually and on behalf of others similarly situated,<br><br>                    Plaintiffs,<br><br>vs.<br><br><br><br>SECURLY, INC.,<br><br>                    Defendant. | CASE NO:   **'23 CV 1304 AGS DEB**<br><br>CLASS ACTION<br><br>COMPLAINT FOR DAMAGES:<br><br>1. UNLAWFUL WIRETAPPING AND INTERCEPTION OF ELECTRONIC COMMUNICATIONS, CAL. PEN. CODE § 631<br><br>2. UNLAWFUL RECORDING OF CONFIDENTIAL TELEPHONE CALLS, CAL. PEN. CODE § 632<br><br>3. UNLAWFUL RECORDING OF CELLULAR TELEPHONE CALLS, CAL. PEN. CODE § 632.7<br><br>4. UNLAWFUL USE OF ELECTRONIC TRACKING DEVICE UNDER CAL. PEN. CODE § 637.7<br><br>5. VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT 18 U.S.C. § 2710 ET SEQ.<br><br>**JURY TRIAL DEMANDED** |

                                    1

**INTRODUCTION**

1. Sheri Bate, and her child N.M., and Azucena Mejia, and her child A.S. ("Plaintiffs"), individually and on behalf of all other similarly situated California residents ("Class Members"), bring this action for damages and injunctive relief against Securly, Inc. ("Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, related entities for violations of the California Penal Code § 630, et seq., ("CIPA") including § 631 Wiretapping in relation to the unauthorized collection, recording, and dissemination of Plaintiff's and Class Members' data.

2. The California State Legislature passed CIPA in 1967 to protect the right of privacy of the people of California. The California Penal Code is very clear in its prohibition against unauthorized tapping or connection without the consent of the other person: "Any person who, by means of any machine, instrument, or contrivance, or any other matter, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable. Or instrument of any internal telephonic communication system, or who willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state [violates this section]." Penal Code § 631(a).

3. The California State Legislature passed CIPA in 1967 to protect the right of privacy of the people of California, replacing prior laws, which permitted the recording of telephone conversations with the consent of one party to the conversation.   The California Penal Code is very clear in its prohibition against unauthorized recording without the consent of the other person to the conversation: "Every person who, intentionally and without the consent of all parties to a confidential communication, by

Class Action Complaint for Damages

means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication [violates this section]."  Penal Code § 632(a).

4.     In addition to the general protections afforded to confidential communications by California Penal Code §632, California Penal Code § 632.7 was added to CIPA in 1992 due to specific privacy concerns over the increased use of cellular and cordless telephones.  Section 632.7 prohibits secretly recording all communications involving cellular and cordless telephones, not just confidential communications.  Penal Code 637.2 permits Plaintiff to bring this action for any violation of Penal Code § 632 and provides for statutory damages of $5,000 for each violation.

5.     Defendant made an unauthorized connection with each Plaintiff's mobile device when Defendant collected and stored geolocation data specific to each Plaintiff's mobile device and then provided such information to its clients for targeted advertising and other purposes without their knowledge or consent.

6.     Each Plaintiff brings this action for every violation of California Penal Code § 631 which provides for statutory damages of $2,500 for each violation, pursuant to California Penal Code § 631(a), and Penal Code § 632 for statutory damages of $5,000 for each violation under Penal Code § 637.2.

7.     Defendant collected, sold, licensed, and transferred each Plaintiff's precise geolocation data which were associated to visits to sensitive locations without Plaintiff's knowledge or consent. These actions cause or are likely to cause substantial injury to each Plaintiff which are not outweighed by any benefits to the consumer or competition.

8.     In addition, each Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendant in knowingly disclosing personally identifiable information-including a record of every video they view without consent.

9.     The United States Congress passed the Video Privacy Protection Act ("VPPA") in 1988, seeking to confer onto consumers the power to "maintain control over personal information divulged and generated in exchange for receiving services from video tape

3

service providers." S. Rep. No. 100-599, at 8. "The Act reflects the central principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent." *Id.*

10.   Defendant violated the VPPA by knowingly transmitting each Plaintiff's and the putative class's personally identifiable information to unrelated third parties.

11.   Each Plaintiff brings this class action on behalf of a class with classes and subclasses, as more fully defined infra.

12.   Each Plaintiff makes these allegations on information and belief, except for those allegations that pertain to that Plaintiff, or to Plaintiff's counsel, which each Plaintiff alleges on that Plaintiff's personal knowledge.

13.   Unless otherwise stated, all the conduct engaged in by Defendant took place in California.

14.   All violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

15.   Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

### JURISDICTION & VENUE

16.   Jurisdiction is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because each Plaintiff, a resident of the State of California, seeks relief on behalf of a California class, which will result in at least one class member belonging to a different state than that of Defendant, a Delaware Corporation with its principal place of business in California.  This Court also has federal jurisdiction over this matter under 28 U.S.C. § 1331 based on the VPPA claims which are based on a federal statute.

17.   Each Plaintiff is requesting statutory damages of $2,500 per violation of Cal. Penal Code §631, $5,000 per violation of §632 under §637.2, and $5,000 per violation of §637.7 under §637.2, per unlawful interception, which, when aggregated among a

Class Action Complaint for Damages

proposed class number in the tens of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction under CAFA.

18. Therefore, both diversity jurisdiction and the damages threshold under CAFA are present, and this Court has jurisdiction.

19. Because Defendant conducts business within the State of California, personal jurisdiction is established.

20. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the conduct complained of herein occurred within this judicial district; and (ii) Defendant conducted business within this judicial district at all times relevant.

**PARTIES**

21. Each Plaintiff is, and at all times mentioned herein was, a natural person and resident of the State of California who resides in and conducts business in the County of San Diego.

22. Defendant is, and at all times mentioned herein was, a Delaware corporation with its principal place of business located at:

> **111 North Market St, Suite 400**
>
> **San Jose, California 95113.**

23. Defendant has registered an agent of process with the California Secretary of State, of:

> **1505 Corporation 886**
>
> **Cogency Global Inc.**
>
> **122 E. 42nd St 18th Fl**
>
> **New York, NY 10168**

24. Each Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of California, in the County of San Diego, within this judicial district.

25. Defendant is, and at all times mentioned herein was, a "person", as defined by Cal. Pen. Code § 632(b).

//
//

### FACTUAL ALLEGATIONS

### *Plaintiff Sheri Bate's Individual Experience*

26.  Plaintiff Sheri Bate ("Bate") is the mother of N.M., a minor child.

27.  N.M. attended Julian Charter School located in San Diego County, California.

28.  N.M. was issued a Chromebook® device by his school for use as part of distance learning at the school.

29.  Unbeknownst to Plaintiff Bate, the school district had installed Defendant's Securly software on his device which, amongst other things, tracked N.M.'s geolocation, his web search terms, the websites he visited, and the videos he watched.

30.  Plaintiff Bate was never provided with any disclosure that her minor child's location would be tracked by Defendant, that his personal communications would be intercepted by Defendant, or that his video-viewing habits would be shared with third parties in an effort to create targeted advertisements and marketing campaigns.

31.  Plaintiff Bate was shocked and alarmed when she learned in June 2023 that Defendant had intercepted and disclosed this information to third parties without her or her child's knowledge or consent, written, verbal, or otherwise.

### *Plaintiff Azucena Mejia's Individual Experience*

32.  Plaintiff Azucena Mejia ("Mejia") is the mother of A.S., a minor child.

33.  A.S. attends Rancho de la Nacion in National City, located in San Diego County, California.

34.  A.S. was issued a Chromebook® device by her school for use as part of distance learning at the school.

35.  Unbeknownst to Plaintiff Mejia, the school district had installed Defendant's Securly software on her device which, amongst other things, tracked A.S.'s geolocation, her web search terms, the websites she visited, and the videos she watched.

36.  Plaintiff Mejia was never provided with any disclosure that her minor child's location would be tracked by Defendant, that her personal communications would be intercepted

by Defendant, or that her video-viewing habits would be shared with third parties in an effort to create targeted advertisements and marketing campaigns.

37.   Plaintiff Mejia was shocked and alarmed when she learned in June 2023 that Defendant had intercepted and disclosed this information to third parties without her or her child's knowledge or consent, written, verbal, or otherwise.

### *Defendant's School Surveillance Software Business Model*

38.   The following factual summary includes facts obtained from the Defendant's website, marketing materials, and other, and various other reliable public sources of information describing Defendant's data gathering business practices.

39.   Defendant is, among other things, a location data broker that provides its customers massive amounts of illegally intercepted data collected from elementary, middle, and secondary school student's mobile devices throughout the United States.

40.   Defendant collects a wealth of information about students and their mobile devices by, among other means, illegally and without consent intercepting such data in violation of state and federal law.

41.   Defendant gathers and tracks specific consumer geolocation and other data about student, then combines it with other data to create consumer reporting about individual student by tracking their device location and corresponding application usage.

42.   Defendant describes on of relevant product offering, "Filter" in part as follows:

> Filter, a cloud-based web filter designed specifically for schools, helps you keep students safe with powerful features that make your school safer and your IT team happier. ***Get visibility into online activity, download or email reports, and block inappropriate sites instantly***.

https://www.securly.com/filter last accessed July 6, 2023 (bold italics added).

43.   Under the guise of student safety and completely unbeknownst to the student, Defendant instead vortexes up huge amounts of private student data, including online sites visited, videos watched, and terms searched to drive in part advertising and marketing to children and their parents:

Class Action Complaint for Damages



*Id*.

44.   Defendant promotes its product that essentially spies on children: "Know your students' online activity with a visual audit trail including records of sites visited, exact searches, and video thumbnails." *Id*.

45.   Defendant explains how its Filter product works in a brochure located on its website and includes an instructive visual:

**How [Securly] Filter works**

1. Network traffic, whether from on-campus devices or ***off-campus managed devices***, is captured by Securly Filter.

2. Securly Filter detects users and applies the appropriate policies to them.

A - Traffic that is allowed goes to the user as normal.

B - Encrypted traffic is selectively decrypted and analyzed, and is either allowed or blocked.

C - Blocked traffic will display a block page to the user, and option

***3. In all cases, traffic is logged for administrator review.***

Class Action Complaint for Damages

https://www.securly.com/site/assets/products-pdf/securly_b2b_PB-Filter_0522.pdf

last accessed September 26, 2022 (since removed by Defendant).

46. In part, Defendant sometimes automatically sends some student's parents unsolicited "push" emails that summarize the content that Defendant intercepted from their child's mobile devices.

47. Defendant's push emails inform these parents of the videos their children watched, the terms they searched, and the websites they visited—regardless of how sensitive this information might be—and serve as evidence that Defendant tracks this information carefully and shares it with others.

**Defendant Works to Hide Its Illegal and Surreptitious Surveillance from Parents**

48. Defendant proactively helps school districts hide the information that it takes from school children by allowing the school district to decide how much to tell the parents about its illegal surveillance techniques:

9



https://support.securly.com/hc/en-us/articles/360009607154-What-kind-of-activity-is-shared-with-parents-in-the-activity-log-, last accessed July 6, 2023.

49. Defendant enables school districts to effectively conceal its illegal activities from parents who have a right to know who is watching their children and Defendant has in effect substituted its own judgment for that of parents like these Plaintiffs.

50. Defendant's software operates surreptitiously on a school's mobile devices and on the school system's computers to intercept and collect this sensitive data, without the knowledge, notice or consent of the child using the mobile device or their parent, including these Plaintiffs.

Class Action Complaint for Damages

51. Plaintiffs and the Class Members, and their minor children, are not notified that Defendant is monitoring their communications, intercepting them, and communicating them to third parties and therefore never consented.

52. No advanced notice or consent is given to the child or their parents, including these Plaintiffs, that Defendant will have real-time access to the child's private location, web searches, and video viewing activities on these devices, because Plaintiffs and the other Class Members were never provided with the Defendant's purported terms of service or privacy policies at any time nor were the Plaintiffs given notice of them.

53. Plaintiffs and the Class Members did not receive or have access to any of these facts related to Defendant illegal surreptitious activity directed toward their children because Defendant's Securly software is installed on Plaintiffs' school devices without the prior knowledge, consent, or control of the Plaintiffs.

54. Plaintiffs and the other Class Members are not presented without any pop-ups, click buttons, disclosure windows, or other notice of any kind that Defendant's Securly software application is even running on the child's device.

55. The Plaintiff and other Class Members have never provided any consent to Defendant to operate its Securly software application and conduct surveillance of their minor children because Plaintiffs and the Class Members had absolutely no idea that Securly even existed.

56. Defendant Securly's software is designed to be installed by the school district at the operating system and browser level and cannot be either detected, disabled, or removed by the Plaintiffs and the other Class Members.

57. In effect, Plaintiffs and the Class Members would only learn about Defendant's surveillance practices directed at Plaintiff's minor children if they were affirmatively told by Defendant or its agents.

58. When Plaintiff's and the Class Members and their minor children access a device containing Defendant's Securly software installed on it they are not given an advisory that the Securly app is geotracking, intercepting search terms, monitoring usage, or compiling video watching lists for the child who is using the device.

59. Nevertheless, an investigation into Defendant reveals that it has written on its website about how it operates its business model of gathering geolocation, website usage, and video viewing habits of minor children.

60. Defendant does not provide this information to the children or their parents before Defendant begins gathering sensitive private data of these children, rather directing these disclosures to the school districts with which it contracts.

### *Defendant Uses Intimate Knowledge of Children's Online Activities to Market Its Own Securly Mobile App*

61. At other times, Defendant sends emails to unsolicited emails some parents as "teasers" to encourage these parents to download Defendant's mobile app and sign up for paid versions of its software services.

62. These teaser emails from Defendant reveal to the recipient parent her/his child's web search term history, websites visited, and videos watched.

63. Defendant's invasive emails disclose sensitive and private searches by children violate those children's right to privacy.

Class Action Complaint for Damages

64. Defendant's push emails are not limited to educational information but, rather, contain personal internet activities that occurred while at home or at other locations outside of school often containing harmless, yet embarrassing, online activities by those children.

65. Worse yet, Defendant's Securly app tracks children's sensitive search and video views related to sexual orientation, transgender issues, abortion, and contraception for which children may be unwilling to openly discuss with a parent and then Defendant repurposes this type of sensitive information to promote its mobile app:



https://www.securly.com/home-parent last accessed July 13, 2023.

66. The email-push information sent to parents by Defendant's Securly app is not sent as a safety alert, rather, it is used as a marketing tool to get parent's to sign up for its mobile app by Defendant lurking into a child's online activities without benefit to, or consent from, either the child or the parent affected such as these Plaintiffs.

67. While these Plaintiffs did not receive emails from Defendant, the practice of sending them is emblematic of the capabilities that Defendant has with confidential student data.

68. Below as Figure 1 is an example of an unsolicited push email sent directly by Defendant advising another parent of Defendant's interception of their child's internet activities and video viewing habits:

13

**Fig. 1 - Page 1 of Example Email sent by Defendant to a Parent**

Class Action Complaint for Damages

1
2

**Fig. 1 – (Continued) Page 2 of Example Email sent by Defendant to a Parent**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Class Action Complaint for Damages

***Defendant's Used Minor Children's Illegally Gathered Private Data***

***for Advertising and Marketing Purposes***

69.    According to Defendant's website and last updated October 2021, in pertinent parts (<mark>yellow highlights added</mark>):

> Securly, Inc. ("we," "our" or "us") recognizes the importance of privacy. This Privacy Policy describes how we collect, store, use and disclose, or otherwise process (collectively "process") information, including personal information, that we obtain about visitors and users of our website www.securly.com (the "Site") <mark>as well as users of our software and related services including the Securly Parent Portal and mobile applications</mark> (collectively, the "Services").
>
> …
>
> **1. Information We Collect About You**
> <mark>We may collect information, including personal information (as defined by applicable privacy law), directly from you, from third parties such as your child's school, or automatically though your use of the Services. We may combine certain information we collect from these various sources</mark>
>
> **Information We Collect Directly from You.**
> We collect information (including personal information) from you directly as set out below.
>
> **Account and Registration Information**. We collect personal information from you when you sign up for an account with us, including your name and email address. We may also ask or allow you to submit additional account information, such as your phone number, student name, student school, location of school. You may browse parts of our Site without creating an account, however, if you would like to use Securly's Services, we ask you to create an account.
>
> **…**
>
> <mark>**Other Information We Collect Regarding Your Usage of Our Services**. We collect personal information about your use of our Services, such as your purchase history, online related activity such as sites visited, online searches and videos watched, email content, email address, and geolocation information.</mark>
>
> **Information We Collect from Third-Party Sources** We may also collect information about you from third parties, which we append to the information we have collected.

**Information We Collect Automatically**. We automatically collect information about you through your use of our Services, including log files, IP address, app identifier, advertising ID, location info, browser type, device type, domain name, the website that led you to our Services, the website to which you go after leaving our Services, the dates and times you access our Services, and the links you click and your other activities within the Services ("Usage Data"). If you authorize us to collect your geolocation information, we will collect it while our App is running on your device. You can disable our access to your location services by changing your device's location settings. For more information please see the Cookie and Other Tracking Mechanisms Section further below.

…

### 3. How We Use Your Information

…

**Personalizing Content and Ads**. We may use the information we collect about you to personalize the information and content we display to you, including to tailor the content and information that we may send or display to you, and to otherwise personalize your experiences while using Services, including providing you with more relevant ads. (Legal basis: our legitimate interests).

…

**Research and Analytics**. To analyze how you interact with our Services; to monitor and analyze usage and activity trends; and for other research, analytical, and statistical purposes. (Legal basis: our legitimate interests).

…

**Aggregate, De-identified or Anonymous Data**. We also create and use aggregate, anonymous and de-identified data to assess, improve and develop our business, products and services, and for similar research and analytics purposes. This information is not generally subject to the restrictions in this Policy, provided it does not identify and could not be used to identify a particular individual.

### 4. How We Disclose Your Information

In general, we disclose the personal information we collect as follows:

   **1. Affiliates**. We may share your personal information with our affiliates, whose handling of personal information is subject to this Policy.

   **2. Service Providers**. We may disclose the information we collect from you to our third-party vendors, service providers, marketing partners, third parties, contractors or agents who perform functions on our behalf so we can provide you with the Services. These may include   companies   who   send   emails   to   our   customers   and

17

prospective customers; help us to track email response rates, views and forwards; to serve visitor advertisements and to provide advertisements about products of interest to them; and to collect data about how customers and prospective customers interact with our products over time.

…

**6. Aggregate and De-Identified Information**. We may share aggregate or otherwise de-identified information about users with third parties for marketing, advertising, research or similar purposes.

## 5. Use of Cookies and Other Tracking Mechanisms

We and our third-party service providers may use cookies, log files, Web beacons and other tracking mechanisms to track information about your use of our Services. We and our third-party service providers use cookies and other tracking mechanisms to track information about your use of our Services. We may combine this information with other personal information we collect from you (and our third party service providers may do so on our behalf).

**Cookies**. Cookies are alphanumeric identifiers that we transfer to your computer's hard drive through your web browser for record-keeping purposes. Some cookies allow us to make it easier for you to navigate our Site and Services, while others are used to enable a faster login process or to allow us to track your activities at our Site and Service. There are two types of cookies: session and persistent cookies.

…

**Clear GIFs, pixel tags and other technologies**. Clear GIFs are tiny graphics with a unique identifier, similar in function to cookies. In contrast to cookies, which are stored on your computer's hard drive, clear GIFs are embedded invisibly on web pages. We may use clear GIFs (a.k.a. web beacons, web bugs or pixel tags), in connection with our Services to, among other things, track the activities of Site visitors, help us manage content, and compile statistics about Site usage. We and our third party service providers may also use clear GIFs in HTML e-mails to you, to help us track e-mail response rates, identify when our e-mails are viewed, and track whether our e-mails are forwarded.

**Third Party Analytics**. We use automated devices and applications, such as Google Analytics, to evaluate usage of our Site and our Services. We also may use other analytic means to evaluate our Services. We use these tools to help us improve our Services, performance and user experiences. These entities may use cookies and other tracking technologies to perform their services.

18

**Geolocation Information**. ==We may use geolocation information for the purpose of administering our Services to you.==

**Do-Not-Track Signals**. ==Our Site does not currently respond to do-not-track signals.== For more information about do-not-track signals, please click here <u>here</u>. You may, however, disable certain tracking as discussed in the Cookies and Other Tracking Mechanisms section above (e.g., by disabling cookies).

## 6. Interest-Based *Advertising*
We may work with third parties such as ==network advertisers== to assist us in displaying ==advertisements== on third-party websites, and to evaluate the success of our ==advertising campaigns==. We may use information about your visit to our Site for these purposes; however, we do not use personal information collected from the Services for these purposes.

…

## 12. Children
Please refer to our COPPA Policy with respect to the personal information collected from children and students under the age of 13 via the Services. ==Children under the age of 16 cannot legally give their consent. Instead, consent of their parent or legal guardian needs to be provided.==

…

https://www.securly.com/privacy last accessed July 6, 2023 (yellow highlights added).

70.     None of these privacy disclosures or data usage practices were ever disclosed by Defendant to Plaintiffs or the other Class Members, or their children, prior to Defendant's illegal interception of their private communications, private search histories, and private video viewing habits, because the Securly software was installed in their children's devices without out their knowledge or consent.

71.     By actively intercepting this digital information without the consent of knowledge of consumers like these Plaintiffs and the other Class Members, Defendant is able to deliver targeted advertising to those consumers while tracking their locations, spending habits, and personal characteristics, while sharing this rich personal data simultaneously

19

with untold numbers of third-party companies by in essence "fingerprinting" each unique device and user, as well as connecting users across devices and devices across users.

72.    Defendant, without consent, surreptitiously intercepts, collects, and shares each Plaintiff's and Class Members' activity while using various applications including Securly on their mobile devices without their knowledge or consent.

73.    This data collection includes all sorts of website information, as well as each Plaintiffs' and the Class Members' respective IP addresses, browser and device information, user IDs, geolocation data, and other data, are used by Defendant to "fingerprint" individuals across the internet for Defendant's benefit, deriving revenue from the targeted marketing and sale of this information to third parties.

74.    Defendant and others installed and otherwise used a software system on each Plaintiffs' mobile device which gathers geo-location data from each Plaintiffs' whereabouts, as well as the previously described datapoints on that device, but without that Plaintiff's express consent or knowledge and then created consumer reports based upon this information.

75.    Defendant uses its software to combine this information with other data points Defendant has obtained about each Plaintiff to create a composite of that Plaintiffs' physical locations and sensitive consumer behavior.

76.    Defendant also makes it easy for third parties to review and analyze all the data it has intercepted about Plaintiffs and the Other Class members by using an administrative portal that shows complete lists of the following for the minor children it has surveilled:

Class Action Complaint for Damages

7. The "Sites" tab will list all the websites visited.

8. The "Videos" tab lists all YouTube videos the user searched for and watched.

9. The "Searches" tab lists the keywords that the student searched for.

10. The "Wiki" tab lists what the student searched for or viewed specifically on Wikipedia.

11. The "SocialPosts" tab will display all activity on social media platforms like Facebook and Twitter.

12. For details about each entry, you can mouse over the info icon on the right-hand side to the display category under which it was blocked and the public IP address that attempted to access it.

https://support.securly.com/hc/en-us/articles/360049583613-How-is-user-activity-displayed-under-the-Activities-tab-, last accessed July 13, 2023.

***Defendant's Data Can Be Used to Identify Children and***

***Track Them to Sensitive Private Locations***

77.   On August 29, 2022, the Federal Trade Commission filed a federal lawsuit against another company for its market conduct in illegally gathering geo-location data. *Federal Trade Commission v. Kochava, Inc*., USDC-Dist. Idaho Case 2:22-cv-00377-DCN Document 1 Filed 08/29/22 ("FTC Complaint").

78.   The FTC Complaint details how precise geolocation data associated with mobile advertising identifiers ("MAIDS"), such as the data gathered and sold by Defendant, may be used to track consumers to sensitive locations, including places of religion, domestic abuse shelters, places inferring LGBTQ+ identification, medical facilities, welfare and homeless shelters, and reproductive health clinics.

Class Action Complaint for Damages

79.   Since each set of these geolocation coordinates is time-stamped, it is also possible to identify when a mobile device visited a certain location such as a Plaintiff's child's home, playground, or even their bedroom.

80.   The location data that Defendant obtains is not anonymized and it is possible to use the geolocation data combined with the mobile device's MAID to identify the user or owner of the device since that information is also provided to Defendant, as evidenced by the unsolicited email alerts Defendant sends out to the parents of the children utilizing Defendant's software system listing websites visited, terms searched, and videos watched by the child.

81.   The geolocation data gathered by Defendant includes multiple timestamped signals identifying the Plaintiff's child's geolocation during app usage and video viewing.

82.   By plotting each of these signals of a map, much can be inferred about the Plaintiff's child's mobile device users and private device usage patterns.

### *Defendant Practices Cause Substantial Injury to Consumers*

83.   As described above, the data collected, stored, and sold by Defendant may be used to identify individual consumers and their visits to sensitive locations such as these Plaintiffs. The collection, sharing, access, use and/or sale of such data poses an unwarranted and unauthorized intrusion into the most private areas of a consumer's life and caused or is likely to cause substantial injury to the consumers such as these Plaintiffs and the other members of the class.

84.   The dangers associated with Defendant's practices are numerous. For example, the data set makes it possible to identify a mobile device which visited a reproductive health clinic website, searched for the word "pregnancy" or can demonstrate a child's location,

Class Action Complaint for Damages

path of travel, and routines by showing location data from a particular address, numerous times, in a single week.

85. Defendant collects and stores and disseminates this data all without the user's knowledge or consent.

86. Allowing a person access to such information, even for a brief period, can cause substantial injury to the consumer such as these Plaintiffs and their children.

87. Identification of sensitive and private characteristics of child consumers from the location data sold, shared, exposed and/or offered by Defendant injures or is likely to injure those consumers through potential exposure to stigma, discrimination, physical violence, emotional distress, and other harms, by which the Plaintiffs and their children are directly harmed.

88. The collection and use of the Plaintiffs' location data by Defendant are completely unknown and/or opaque to these child consumers and their parents, who typically do not know who has collected their location data and how it is being used—let alone to consent to the interception and use of that data.

89. Oftentimes the mobile tablet-type school-issued devices that Defendant tracks have been removed from the school setting and taken home by the children such as these Plaintiffs who are unwittingly sharing sensitive geolocation data with Defendant using her or his parent's own internet service.

90. Once the information has been collected and stored by Defendant, the Plaintiffs information can be sold multiple times to companies those consumers have never heard of and never interacted with and the Plaintiffs are therefore unable to take reasonable steps to avoid the above-described injuries.

91. By Defendant's own admissions, the data it collects from children students violates California's broad remedial statutory scheme supporting consumer privacy rights, as codified under Cal. Pen. Code § 630, et seq.

92. Defendant then combines this sensitive private information with other third-party information to "quilt" a picture of a child's interests, habits, and locations and market and advertise to the parents and children such as these Plaintiffs.

93. Defendant itself admits that it tracks sensitive consumer geolocation data in violation of California law because it has absolutely no consent to gather such tracking information from Plaintiffs but rather simply announces that fact on its website after it has already done it:

> **Geolocation Information**. We may use geolocation information for the purpose of administering our Services to you.

> https://www.securly.com/privacy last accessed July 6, 2023.

94. Defendant also readily admits that it will use the sensitive and valuable private information it gathers about children such as the Plaintiffs, combines it with other third-party data, and uses it to sell advertising.

> **How We Disclose Your Information**

> In general, we disclose the personal information we collect as follows:

> 1. Affiliates. We may share your personal information with our affiliates, whose handling of personal information is subject to this Policy.
> 2. Service Providers. We may disclose the information we collect from you to our third-party vendors, service providers, marketing partners, third parties, contractors or agents who perform functions on our behalf so we can provide you with the Services. These may include companies who send emails to our customers and prospective customers; help us to track email response rates, views and forwards; to serve visitor advertisements and to provide

24

advertisements about products of interest to them; and to collect data about how customers and prospective customers interact with our products over time.

3.  Business Transfers. We may disclose information to another entity in connection with, including during negotiations of, an acquisition or merger, sale or transfer of our assets, a, bankruptcy proceeding or as part of any other similar business transfer, including during negotiations related to such transactions.

4.  In Response to Legal Process. We also may disclose the information we collect from you in order to comply with the law, a judicial proceeding, court order, or other legal process, such as in response to a court order or a subpoena.

5.  To Protect Us and Others. We also may disclose the information we collect from you where we believe it is necessary to investigate, prevent, or take action regarding illegal activities, suspected fraud, situations involving potential threats to the safety of any person, violations of our Terms of Use or this Policy, or as evidence in litigation in which we are involved.

6.  Aggregate and De-Identified Information. We may share aggregate or otherwise de-identified information about users with third parties for marketing, advertising, research or similar purposes.

*Id.*

95.  At no time were Plaintiffs ever told about the surreptitious use of Defendant's Securly surveillance software on their children's school-issued devices.

96.  At no time did Plaintiffs ever consent in writing, verbally, or otherwise to the gathering of sensitive geolocation data of their children or the tracking of videos watched, words searched, or websites visited by their children.

***Defendant's Securly Software Allows Teachers, Administrators and Technical Staff to Watch Children's Devices While at Home***

97.  Defendant's Securly app installed on Plaintiffs and the other Class Members has the capability to even surreptitiously view a child's device screen, while that child is in their own home without their knowledge, control, or consent:

Class Action Complaint for Damages



Class Action Complaint for Damages



98.   https://support.securly.com/hc/en-us/articles/360044710933-Classroom-Allow-
      students-to-be-monitored-while-at-home-Turn-off-IP-Exclusion-for-Teacher-Tools-
      last accessed July 13, 2023.

99.   This capability is recognized even by the Defendant to be fraught with potential danger:
      "Please also remember that there might be a liability/privacy issue with viewing a
      student's screen while he/she is at home." *Id.*

100.  The Plaintiffs and other Class Members certainly had a reasonable expectation of
      privacy within their own homes and other private places outside the school grounds and
      the Defendant's use of a screen-sharing feature outside of the school violated their right
      to privacy, especially when accessing these devices on their own WIFI connections.

**Defendant's Unlawful Recording of Confidential Communications**

101.   California Penal Code § 632(a) prohibits recording of such confidential communications, including digital communications like those between Plaintiffs and Defendant, without the consent of the other person, and states:

> A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio [violates this section].

102.   California Penal Code § 632.7(a) is clear in its prohibition against such unauthorized recording of any communications without the consent of all parties to the communication:

> "Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone [violates this section]."

103.   California Penal Code § 637.2 permits these Plaintiffs to bring this action for any violation of California Penal Code § 632.7(a) and provides for statutory damages of $5,000 for each violation.

104.   Defendant recorded or otherwise made an unauthorized connection to each Plaintiff's confidential communications in violation of California's statutory and common law against such unlawful intrusions into a person's private affairs, including the California Constitution's prohibition in Article 1, Section 1.

105.   This suit seeks only damages and injunctive relief for recovery of economic injury and it expressly is not intended to request any recovery for personal injury and claims related thereto.

106.   Each Plaintiff is informed and believes, and thereon alleges, that Defendant intentionally recorded a confidential communication as prohibited by California Penal Code § 632.

107.   Each Plaintiff is informed and believes, and thereon alleges, that Defendant intentionally recorded a communication transmitted between a cellular radio telephone and a landline telephone without Plaintiffs' consent as prohibited by California Penal Code § 632.7(a).

108.   Defendant violated each Plaintiffs' constitutionally protected privacy rights by failing to advise or otherwise provide notice at the beginning of the recorded communication with each Plaintiff that the communication would be recorded, and Defendant did not try to obtain each Plaintiff's consent before such recording.

109.   The recording or other unauthorized connection was done without each Plaintiff's prior knowledge or consent.  Each Plaintiff was damaged thereby, as detailed herein, in at least an amount permitted by the statutory damages mandated by California Penal Code § 637.2(a).

110.   Defendant, its employees or agents, secretly recorded a cellular communication made involving each Plaintiff and others.  At no time before, during, or after any of the communications was either Plaintiff warned, told, advised or otherwise given any indication by Defendant, its employees or agents, that the content of the Plaintiff's communications were recorded.

Class Action Complaint for Damages

111.   As a result thereof, each Plaintiff has been damaged as set forth in the Prayer for Relief herein.

112.   Each Plaintiff seeks statutory damages and injunctive relief under California Penal Code § 637.2.

### *Defendant's Unlawful Use of an Electronic Tracking Device*

113.   California Penal Code § 637.7 prohibits the use of surreptitious electronic tracking devices:

> **§ 637.7. Electronic tracking device**
>
> (a) **No person or entity in this state shall use an electronic tracking device to determine the location or movement of a person.**
> (b) This section shall not apply when the registered owner, lessor, or lessee of a vehicle has consented to the use of the electronic tracking device with respect to that vehicle.
> (c) This section shall not apply to the lawful use of an electronic tracking device by a law enforcement agency.
> (d) **As used in this section, "electronic tracking device" means any device attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals.**
> (e) A violation of this section is a misdemeanor.
> (f) A violation of this section by a person, business, firm, company, association, partnership, or corporation licensed under Division 3 (commencing with Section 5000) of the Business and Professions Code shall constitute grounds for revocation of the license issued to that person, business, firm, company, association, partnership, or corporation, pursuant to the provisions that provide for the revocation of the license as set forth in Division 3 (commencing with Section 5000) of the Business and Professions Code.

(Bold added.)

114.   This suit seeks only damages and injunctive relief for recovery of economic injury and it expressly is not intended to request any recovery for personal injury and claims related thereto.

30

115.   Each Plaintiff is informed and believes, and thereon alleges, that Defendant intentionally used an electronic tracking device as prohibited by California Penal Code § 637.7.

116.   Each Plaintiff is informed and believes, and thereon alleges, that Defendant intentionally tracked each Plaintiff's geolocation on that Plaintiff's movable device without that Plaintiff's consent as prohibited by California Penal Code § 637.7.

117.   Defendant violated each Plaintiffs' constitutionally protected privacy rights by failing to advise or otherwise provide notice at the beginning of the recorded tracking of geolocation data with that Plaintiff that the sensitive and private geolocation data would be recorded, and Defendant did not try to obtain either Plaintiff's consent before such use of an electronic tracking device and the recording of its results.

118.   The use of the electronic tracking device by Defendant as described further herein was unauthorized and done without either Plaintiffs' prior knowledge or consent.  Each Plaintiff was damaged thereby, as detailed herein, in at least an amount permitted by the statutory damages mandated by California Penal Code § 637.2.

119.   Defendant, its employees, or agents, secretly recorded an electronic communication made involving each Plaintiff and others.

120.   At no time before, during, or after any of the communications was either Plaintiff warned, told, advised, or otherwise given any indication by Defendant, its employees or agents, that the content of each Plaintiff's communications were recorded.

121.   As a result thereof, each Plaintiff has been damaged as set forth in the Prayer for Relief herein.

122. Each Plaintiff seeks statutory damages and injunctive relief under California Penal Code § 637.2.

### *Defendant's Unlawful Disclosure of Telephonic Messages*

123. California Penal Code § 637 prohibits the disclosure of telephonic messages:

> **§ 637. Disclosure of telegraphic or telephonic message; punishment; exception**
>
>> Every person not a party to a telegraphic or telephonic communication who **willfully discloses the contents of a telegraphic or telephonic message, or any part thereof, addressed to another person**, without the permission of that person, unless directed so to do by the lawful order of a court, is punishable by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by fine not exceeding five thousand dollars ($5,000), or by both that fine and imprisonment.

(Bold added.)

124. This suit seeks only damages and injunctive relief for recovery of economic injury and it expressly is not intended to request any recovery for personal injury and claims related thereto.

125. Each Plaintiff is informed and believes, and thereon alleges, that Defendant intentionally disclosed both Plaintiff's and the other Class Members telephonic messages, and or parts thereof, while using its software devices on cellular telephones, as prohibited by California Penal Code § 637, and as described further herein.

126. Defendant violated each Plaintiffs' constitutionally protected privacy rights by failing to advise or otherwise provide notice at the beginning of the disclosing such telephonic messages by that Plaintiff that the sensitive and private messages would be disclosed, and Defendant did not try to obtain either Plaintiffs' consent before such disclosures.

127. These disclosures of each Plaintiff and Class Member's telephonic messages by Defendant as described further herein was unauthorized and done without their prior knowledge or consent. Each Plaintiff and the other Class Members were damaged thereby, as detailed herein, in at least an amount permitted by the statutory damages mandated by California Penal Code § 637.2.

128. As a result thereof, each Plaintiff has been damaged as set forth in the Prayer for Relief herein.

129. Each Plaintiff seeks statutory damages and injunctive relief under California Penal Code § 637.2.

### Defendant's Video Privacy Protection Act ("VPPA") Violations

130. The origins of the VPPA begin with President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court. During the confirmation process, a movie rental store disclosed the nominee's rental history to the Washington City Paper, which then published that history. Congress responded by passing the VPPA, with an eye toward the digital future. As Senator Patrick Leahy, who introduced the VPPA, then explained:

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home. I am concerned because in an era of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in the store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone. And if they are in a place with a computer security system, you could even tell whether they came home late at night or did not even come home at all. I think that is wrong. I think that really is Big Brother, and I think it is something that we have to guard against. I think that that is something that is not a conservative or a liberal or moderate

33

issue. It is an issue that goes to the deepest yearnings of all Americans that we are here and we cherish our freedom and we want our freedom. We want to be left alone.

S. Rep. 100-599, at 5-6 (internal ellipses and brackets omitted).

131.   A video service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

132.   Defendant is a "video service provider" insofar as it is engaged in and/or affecting the interstate commerce of the rental, sale, or delivery of prerecorded audiovisual materials, namely videos viewed by school children for which it monitors, tracks, and reports such usage to various parties without the consent of the children or their parents.

133.   The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1).

134.   Defendant knowingly discloses without their consent the personally identifiable information of these Plaintiffs' child consumers, namely, the name of each video watched by that child during a particular time period.

135.   The VPPA defines personally identifiable information as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3).

136.   The names of the videos tracked and provided by Defendant and watched by the Plaintiffs' children constitute personally identifiable information in that they identify the particular videos watched by particular children from various video sources on the internet.

34

137.  Defendant has repeatedly violated the VPPA with respect to the Plaintiffs and the Class by surreptitiously gathering and sharing this private video viewing information with third parties without the consent of these Plaintiffs.

138.  Each time these Plaintiffs watched a video on their devices, Defendant also disclosed to others what videos were watched by Plaintiffs, transmitting event data like what web page was accessed and details about the video requested, including the name of the video and a screen capture of the video's title frame.

139.  Each Plaintiff discovered Defendant surreptitiously collected and transmitted this personally identifiable video viewing information in or around June 2023.

140.  At no time did either Plaintiff provide informed, written consent to Defendant to intercept and transmit this private video information to others.

141.  Defendant never received consent from either Plaintiff in a form separate and distinct from other legal obligations.

142.  Defendant also never provided either Plaintiff with an ability to limit these private video-viewing information disclosures within two years or on a case-by-case basis.

### CLASS ACTION ALLEGATIONS

143.  Each Plaintiff brings this lawsuit as a class action on behalf of himself and Class Members of the proposed Classes. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

//

//

//

//

Class Action Complaint for Damages

144.   Each Plaintiff proposes the following Classes consisting of and defined as follows:

**A.  The Confidential Communication Class for Violation of Penal Code §631, consisting of;**

All persons in California whose communications were intercepted and recorded by Defendant, and or its agents.

**B.  The Confidential Communication Class for Violation of Penal Code § 632, consisting of;**

All persons in California whose conversations were recorded by Defendant, and or its agents, within the one year prior to the filing of the Complaint.

**C.  The Cellular Phone Communication Sub-Class for Violation of Penal Code §632.7, consisting of;**

All persons in California whose cellular telephone conversations were intercepted and recorded by Defendant, and or its agents, within the one year prior to the filing of the Complaint.

**D.  The Electronic Tracking Device Class for Violation of Cal. Pen. Code § 637.7, consisting of;**

All persons in California whose devices had tracking devices attached by Defendant, and or its agents, within the one year prior to the filing of the Complaint.

**E.  The Video Privacy Protection Act Class for Violation of 18 U.S.C. § 2710 *et seq.*, consisting of;**

> All persons in California whose personally identifiable information related video materials or services that were requested or obtained was disclosed by Defendant, and or its agents, within the two years prior to the filing of the Complaint.

145. Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to redefine the Class and to add subclasses as appropriate based on discovery and specific theories of liability

146. **Numerosity**: The Class Members are so numerous that joinder of all members would be unfeasible and impractical. The membership of the entire Class is currently unknown to either Plaintiff at this time; however, given that, on information and belief, Defendant accessed thousands of unique mobile devices, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

147. **Commonality**: There are common questions of law and fact as to Class Members that predominate over questions affecting only individual members, including, but not limited to:

   - Whether, within the statutory period, Defendant intercepted any confidential communications with Class Members;

   - Whether, the intercepted communications concerned confidential

Class Action Complaint for Damages

communications Class Members;

- Whether, within the statutory period, Defendant transmitted any confidential communications of Class Members to a third party;

- Whether Defendant had, and continues to have, a policy during the relevant period of intercepting digital communications of Class Members;

- Whether Defendant's policy or practice of intercepting Class Members digital communications constitutes a violation of Cal. Penal Code § 631;

- Whether Defendant's policy or practice of recording telephone communications with Class Members constitutes a violation of Cal. Penal Code § 632

- Whether Defendant's policy or practice of recording telephone communications with Class Members constitutes a violation of Cal. Penal Code § 632.7;

- Whether Defendant's policy or practice of utilizing electronic tracking devices with respect to Class Members digital communications constitutes a violation of Cal. Penal Code § 637.7;

148. **Typicality**: Each Plaintiff's wire and cellular telephone communications were intercepted, unlawfully tapped and recorded without consent or a warning of such interception and recording, and thus, each Plaintiff's injuries are also typical to Class Members.

Class Action Complaint for Damages

149.  Plaintiffs and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally intercepted, tapped, recorded, and stored each Plaintiff's and Class Members' digital communications, geolocations, and other sensitive personal data from their digital devices with others, and Defendant invaded the privacy of each Plaintiff and Class. Each Plaintiff and Class Members were damaged thereby.

150.  Further, the communications at issue were concerning matters which constitutes a "confidential" communication pursuant to California Penal Code §632.

151.  **Adequacy**: Each Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom these Plaintiffs are similarly situated, as demonstrated herein.  Each Plaintiff acknowledges that that Plaintiff has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member.  Plaintiffs' attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement.  In addition, Plaintiffs' attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. The proposed class counsel is experienced in handling claims involving consumer actions and violations of the California Penal Code §§ 632 and 632.7.  Each Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

152.  **Predominance**: Questions of law or fact common to the Class Members predominate over any questions affecting only individual members of the Class. The elements of the

Class Action Complaint for Damages

legal claims brought by the Plaintiffs and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

153.  **Superiority**: A class action is a superior method for the fair and efficient adjudication of this controversy because:

a.  Class-wide damages are essential to induce Defendant to comply with California and Federal law.

b.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.

c.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

d.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

e.  Class action treatment is manageable because it will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would endanger.

f.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.

154.  Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is

40

also superior to other available methods because as individual Class Members have no way of discovering that Defendant intercepted, recorded, and disclosed the Class Member's digital communications and video viewing habits without Class Members' knowledge or consent.

155.   The Class may also be certified because:

- the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

- the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

- Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

156.   This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

157.   The joinder of Class Members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court.  The Class Members can be identified through Defendant's records.

41

**FIRST CAUSE OF ACTION**

**UNLAWFUL WIRETAPPING AND INTERCEPTION OF ELECTRONIC COMMUNICATION**

**CALIFORNIA PENAL CODE § 631**

158. Each Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

159. At all relevant times to this complaint, Defendant intercepted and recorded components of each Plaintiff's and the putative class' private telephone communications and transmissions when these Plaintiffs and other Class Members accessed Defendant's software via their mobile devices within the State of California.

160. At all relevant times to this complaint, the Plaintiffs and the other Class Members did not know Defendant was engaging in such interception and recording and therefore could not provide consent to have any part of their private and confidential communications intercepted and recorded by Defendant and thereafter transmitted and/or disclosed to others.

161. Each Plaintiff was completely unaware that Defendant had intercepted and stored Plaintiff's geolocation and other personal data and communications on that Plaintiff's mobile device until well after the fact and was therefore unable to consent.

162. At the inception of Defendant's surveillance conduct, it illegally intercepted and stored each Plaintiff's geolocation and other personal data, Defendant never advised either Plaintiff or the other Class Members that any part of this sensitive personal data would be intercepted, recorded, and transmitted to third parties.

163. Each Plaintiff was completely unaware that components of Plaintiff's private use of Plaintiff's mobile device were in part being recorded and stored and thereafter transmitted to third parties.

42

164. To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
> *Or*
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
> *Or*
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
> *Or*
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

165. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. See *Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, --- F.3d --- 2020 WL 1807978 (9th Cir. Apr. 9, 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

43

Class Action Complaint for Damages

166. Defendant's use of and its software are both a "machine, instrument, contrivance, or . . . other manner" used to engage in the prohibited conduct at issue here.

167. At all relevant times, by using Defendant's software as well as tracking each Plaintiff's and Class Member's geolocation, Defendant intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiff and class members on the one hand, and the specific sites and locations Plaintiffs and Class Members visited on the other.

168. At all relevant times, by using Defendant's geolocation tracking software technology, Defendant willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of each Plaintiff and putative class members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

169. The Plaintiffs and Class Members did not consent to any of Defendant's actions in implementing these wiretaps within its geolocation tracking software. Nor have the Plaintiffs or Class Members consented to Defendants' intentional access, interception, reading, learning, recording, and collection of Plaintiff and Class Members' electronic communications.

170. The Plaintiffs and Class Members' devices of which Defendant accessed through its unauthorized actions included their computers, smart phones, and tablets and/or other electronic computing devices.

171. Defendant violated Cal. Penal Code § 631 by knowingly accessing and without permission accessing Plaintiffs' and Class members' devices to obtain their personal

information, including their device and location data and personal communications with others, and for Defendant to share that data with third parties, in violation of Plaintiff's and Class Members' reasonable expectations of privacy in their devices and data.

172. Defendant violated Cal. Penal Code § 631 by knowingly and without permission intercepting, wiretapping, accessing, taking, and using Plaintiffs' and the Class Members' personally identifiable information and personal communications with others.

173. The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing in that each Plaintiff and each class member has suffered a concrete harm by having their privacy invaded by Defendant.

174. Each Plaintiff and Class Members seek all relief available under Cal. Penal Code § 631, including $2,500 per violation.

**SECOND CAUSE OF ACTION**

**RECORDING OF CONFIDENTIAL CALLS**

**UNDER CALIFORNIA PENAL CODE § 632**

175. Each Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

176. At all relevant times hereto, Defendant had and followed a policy and practice of using a telecommunications system that enabled it to surreptitiously record confidential communications between the Plaintiffs and Class Members, and third parties.

177. Because of the nature of its business, the geolocation and other private and sensitive data and communications that Defendant surreptitiously recorded of the Plaintiffs and the Class Members were, by definition, "confidential" communications as a matter of law.

Class Action Complaint for Damages

178.   At all relevant times the Plaintiffs and all Class Members have an expectation of privacy in their communication that were intercepted and recorded by Defendant, and did not expect, or have knowledge of, any such illegal recording or other unauthorized connections to their communications.

179.   At all relevant times hereto, Defendant had and followed a policy and practice of not advising or warning the Plaintiffs and Class Members at the beginning of a communication that their confidential communications with third parties would be recorded.

180.   Defendant failed to obtain consent of the Plaintiffs and Class Members prior to recording any of their confidential communications.

181.   Because Defendant and its employees and agents recorded or otherwise made unauthorized connections to the Plaintiffs and other Class Members' confidential communications, Defendant is liable for the greater of $5,000 per violation or three times the amount of actual damages sustained by each Plaintiff and Class Member.

182.   Each Plaintiff is seeking only the statutory damages for the members of the Class under this cause of action.

183.   Such conduct by this Defendant was willful, deliberate, malicious, and intentional, and in violation of California Penal Code §§ 632 and 637.2.  Such conduct violated the California Privacy Act, set forth in California Penal Code §§ 630, et seq.

184.   As a result of such unlawful conduct, the Plaintiffs and the Class Members were damaged, in an amount according to proof.

**THIRD CAUSE OF ACTION**

**RECORDING OF CELLULAR CALLS**

**UNDER CALIFORNIA PENAL CODE § 632.7**

185. Each Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

186. At all relevant times hereto, Defendant had and followed a policy and practice of using software systems that enabled it to surreptitiously record cellular telephone communications between the Plaintiffs and Class Members, and other third parties.

187. At all relevant times hereto, Defendant intentionally and secretly recorded cellular communications concerning confidential matters between Defendant and Plaintiffs and Class Members.

188. At all relevant times hereto, Defendant had and followed a policy and practice of not advising or warning the Plaintiffs and Class Members at the beginning of a communication that their cellular communications with third parties would be recorded.

189. Defendant failed to obtain consent of the Plaintiffs and Class Members prior to recording any of their cellular communications.

190. This conduct by Defendant violated section 632.7(a) of the California Penal Code.

191. The Plaintiffs and Class Members are entitled to recovery of statutory punitive damages in the amount of $5,000 per violation of Cal. Pen. Code § 632.7.

192. Plaintiffs' counsel is also entitled to attorneys' fees and costs pursuant to Cal. Code of Civ. Proc. § 1021.5.

**FOURTH CAUSE OF ACTION**

**UNLAWFUL USE OF ELECTRONIC TRACKING DEVICE**

**UNDER CALIFORNIA PENAL CODE § 637.7**

193. Each Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

47

194.   At all relevant times hereto, Defendant had and followed a policy and practice of using software systems that enabled it to surreptitiously intercept and record each Plaintiff's geolocation data.

195.   At all relevant times hereto, the Plaintiffs and the Class Member's geolocation data was inherently private in nature, and they did not consent to sharing that private information with Defendant.

196.   At all relevant times hereto, Defendant had and followed a policy and practice of not advising or warning the Plaintiffs and Class Members that their geolocation information would be intercepted and recorded to be later provided to third parties.

197.   Defendant failed to obtain consent of the Plaintiffs and Class Members prior to intercepting and recording any of their geolocation data.

198.   This conduct by Defendant violated section 637.7 of the California Penal Code.

199.   The Plaintiffs and Class Members are entitled to recovery of statutory punitive damages in the amount of $5,000 per violation of Cal. Pen. Code § 637.2.

200.   Plaintiffs' counsel is also entitled to attorneys' fees and costs pursuant to Cal. Code of Civ. Proc. § 1021.5.

### FIFTH CAUSE OF ACTION

### VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT

### 18 U.S.C. § 2710, ET SEQ.

201.   Each Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

202.   Defendant is a "video tape service provider" because it is "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

48

203. The Plaintiffs and members of the Class are "consumers" because they are subscribers to subscriber of goods or services from a video tape service provider, namely Defendant. 18 U.S.C. § 2710(a)(1).

204. Defendant disclosed to third parties each Plaintiff's and the Class members' personally identifiable information including that Plaintiff's identifying information along with that Plaintiffs' video viewing behavior, like the title of the videos they viewed.

205. The Plaintiffs and the Class members viewed video clips using various websites known to Defendant because of its surreptitious interceptions.

206. Defendant thereafter knowingly disclosed the Plaintiff's personally identifiable information to third parties and used that data to build targeted advertising campaigns.

207. The Plaintiffs and Class members did not provide Defendant with any form of consent—either written or otherwise—to disclose their personally identifiable information and video viewing habits to third parties.

208. Defendant's intentional third-party video viewing disclosures about Plaintiffs and the other Class Members were not made in the "ordinary course of business" as the term is defined by the VPPA.

209. Defendant's third-party disclosures of Plaintiff's personally identifiable information and viewing habits were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

210. On behalf of themselves and the Class, Plaintiffs seek:

        (i)     declaratory relief;

Class Action Complaint for Damages

(ii)   injunctive and equitable relief as is necessary to protect the interests of the Plaintiffs and the Class by requiring Defendant to comply with VPPA's requirements for protecting a consumer's PII;

(iii)   statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c);

(iv)   punitive damages; and

(v)   reasonable attorneys' fees and costs and other litigation expenses.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class Members pray that judgment be entered against Defendant, and Plaintiffs and the Class be awarded damages from Defendant, as follows:

- Certify the Class as requested herein;

- Appoint Plaintiffs to serve as the Class Representatives for the Class; and

- Appoint Plaintiffs' Counsel as Class Counsel in this matter for the Class.

In addition, Plaintiffs and the Class Members pray for further judgment as follows against Defendant:

### UNLAWFUL WIRETAPPING AND INTERCEPTION OF ELECTRONIC COMMUNICATIONS UNDER CALIFORNIA PENAL CODE § 631

- $2,500 to each Class Member pursuant to California Penal Code § 631(a) for each such unlawful interception of communications;

- Reasonable attorneys' fees pursuant to Cal. Code of Civ. Proc. § 1021.5;

- Injunctive relief to prevent the further occurrence of such illegal acts pursuant to California Penal Code § 631;

- An award of costs to Plaintiffs; and

- Any other relief the Court may deem just and proper including interest.

## RECORDING OF CONFIDENTIAL COMMUNICATIONS

## UNDER CALIFORNIA PENAL CODE § 632

- $5,000 to each Class Member pursuant to California Penal Code § 637.2(a) for each such unlawful recording;

- Reasonable attorneys' fees pursuant to Cal. Code of Civ. Proc. § 1021.5;

- Injunctive relief to prevent the further occurrence of such illegal acts pursuant to California Penal Code § 637.2(b);

- An award of costs to Plaintiffs; and

- Any other relief the Court may deem just and proper including interest.

## RECORDING OF CELLULAR COMMUNICATIONS

## UNDER CALIFORNIA PENAL CODE § 632.7

- $5,000 to each Class Member pursuant to California Penal Code § 637.2(a) for each such unlawful recording;

- Reasonable attorneys' fees pursuant to Cal. Code of Civ. Proc. § 1021.5;

- Injunctive relief to prevent the further occurrence of such illegal acts pursuant to California Penal Code § 637.2(b);

- An award of costs to Plaintiffs; and

- Any other relief the Court may deem just and proper including interest.

## UNLAWFUL USE OF ELECTRONIC TRACKING DEVICE

## UNDER CALIFORNIA PENAL CODE § 637.7

- $5,000 to each Class Member pursuant to California Penal Code § 637.2(a) for each such unlawful tracking;

- Reasonable attorneys' fees pursuant to Cal. Code of Civ. Proc. § 1021.5;

- Injunctive relief to prevent the further occurrence of such illegal acts pursuant to California Penal Code § 637.2(b);

- An award of costs to Plaintiffs; and

- Any other relief the Court may deem just and proper including interest.

### VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT

### 18 U.S.C. § 2710, ET SEQ.

- Actual damages to each Class Member but not less than liquidated damages in an amount of $2,500 for each such violation;

- Punitive damages to each Class Member for each such violation;

- Reasonable attorneys' fees and other litigation costs reasonably incurred pursuant to 18 U.S.C. § 2710(c); and

- Such other preliminary and equitable relief as the court determines to be appropriate.

### TRIAL BY JURY

211.   Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs and Class Members are entitled to, and demand, a trial by jury.

Respectfully submitted,

**SWIGART LAW GROUP**

Date:  July 14, 2023

By:  *s/ Joshua Swigart*
Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com
Attorneys for Plaintiff

Class Action Complaint for Damages