1  | Joshua B. Swigart (SBN 225557)
2  | Josh@SwigartLawGroup.com
   | **SWIGART LAW GROUP, APC**
3  | 2221 Camino del Rio S, Ste 308
4  | San Diego, CA  92108
   | P: 866-219-3343
5  | F: 866-219-8344
6  |
   | *Attorneys for Plaintiffs and The Putative Class*
7  |

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERI BATE, and her child N.M., and AZUCENA MEJIA, and her child A.S., individually and on behalf of others similarly situated,<br><br>              Plaintiffs,<br><br>vs.<br><br><br>SECURLY, INC.,<br><br>              Defendant. | CASE NO: 3:23-CV-01304-AGS-DEB<br><br>CLASS ACTION<br><br>**FIRST AMENDED** COMPLAINT FOR DAMAGES:<br><br>1. UNLAWFUL WIRETAPPING AND INTERCEPTION OF ELECTRONIC COMMUNICATIONS, CAL. PEN. CODE § 631<br><br>2. UNLAWFUL USE OF ELECTRONIC TRACKING DEVICE UNDER CAL. PEN. CODE § 637.7<br><br>3. VIOLATION OF CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT UNDER CAL. PEN. CODE § 502<br><br><br>**JURY TRIAL DEMANDED** |

INTRODUCTION

1.      Sheri Bate, and her child N.M., and Azucena Mejia, and her child A.S. ("Plaintiffs"), individually and on behalf of all other similarly situated California residents ("Class Members"), bring this action for damages and injunctive relief against Securly, Inc. ("Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, related entities for violations of the California Penal Code § 630, et seq., ("CIPA") including § 631 Wiretapping in relation to the unauthorized collection, recording, and dissemination of Plaintiff's and Class Members' data.

2.      The California State Legislature passed CIPA in 1967 to protect the right of privacy of the people of California. The California Penal Code is very clear in its prohibition against unauthorized tapping or connection without the consent of the other person: "Any person who, by means of any machine, instrument, or contrivance, or any other matter, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable. Or instrument of any internal telephonic communication system, or who willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state [violates this section]."  Penal Code § 631(a).

3.      Defendant made an unauthorized connection with each Plaintiff's Chromebook® device when Defendant collected and stored geolocation data specific to each Plaintiff's Chromebook® device and then provided such information to its clients for targeted advertising and/or other purposes without their knowledge or consent.

2

4.    Each Plaintiff brings this action for every violation of California Penal Code §
      631 which provides for statutory damages of $2,500 for each violation, pursuant
      to California Penal Code § 631(a).

5.    Defendant collected, sold, licensed, and transferred each Plaintiff's precise
      geolocation data which were associated to visits to sensitive locations without
      Plaintiff's knowledge or consent. These actions cause or are likely to cause
      substantial injury to each Plaintiff which are not outweighed by any benefits to
      the consumer or competition.

6.    Each Plaintiff brings this class action on behalf of a class with classes and
      subclasses, as more fully defined infra.

7.    Each Plaintiff makes these allegations on information and belief, except for those
      allegations that pertain to that Plaintiff, or to Plaintiff's counsel, which each
      Plaintiff alleges on that Plaintiff's personal knowledge.

8.    Unless otherwise stated, all the conduct engaged in by Defendant took place in
      California.

9.    All violations by Defendant were knowing, willful, and intentional, and
      Defendant did not maintain procedures reasonably adapted to avoid any such
      violation.

10.   Unless otherwise indicated, the use of Defendant's name in this Complaint
      includes all agents, employees, officers, members, directors, heirs, successors,
      assigns, principals, trustees, sureties, subrogees, representatives, and insurers of
      the named Defendant.

## JURISDICTION & VENUE

11.   Jurisdiction is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C.
      § 1332(d)(2), because each Plaintiff, a resident of the State of California, seeks
      relief on behalf of a California class, which will result in at least one class
      member belonging to a different state than that of Defendant, a Delaware
      Corporation with its principal place of business in California.

12. Each Plaintiff is requesting statutory damages of $2,500 per violation of Cal. Penal Code §631 per unlawful interception, which, when aggregated among a proposed class number in the tens of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction under CAFA.

13. Therefore, both diversity jurisdiction and the damages threshold under CAFA are present, and this Court has jurisdiction.

14. Because Defendant conducts business within the State of California, personal jurisdiction is established.

15. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the conduct complained of herein occurred within this judicial district; and (ii) Defendant conducted business within this judicial district at all times relevant.

## PARTIES

16. Each Plaintiff is, and at all times mentioned herein was, a natural person and resident of the State of California who resides in and conducts business in the County of San Diego.

17. Defendant is, and at all times mentioned herein was, a Delaware corporation with its principal place of business located at:

    **111 North Market St, Suite 400**

    **San Jose, California 95113.**

18. Defendant has registered an agent of process with the California Secretary of State, of:

    **1505 Corporation 886**

    **Cogency Global Inc.**

    **122 E. 42nd St 18th Fl**

    **New York, NY 10168**

19. Each Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of California, in the County of San Diego, within this judicial district.

4

20. Defendant is, and at all times mentioned herein was, a "person", as defined by Cal. Pen. Code § 632(b).

**FACTUAL ALLEGATIONS**

***Plaintiff Sheri Bate's Individual Experience***

21. Plaintiff Sheri Bate ("Bate") is the mother of N.M., a minor child.

22. N.M. attended Julian Charter School located in San Diego County, California.

23. N.M. was issued a Chromebook® device by his school for use as part of distance learning at the school.

24. Unbeknownst to Plaintiff Bate, the school district had installed Defendant's Securly software on his Chromebook® device which, amongst other things, tracked N.M.'s geolocation, his web search terms, the websites he visited, and the videos he watched.

25. Plaintiff Bate was never provided with any disclosure that her minor child's location would be tracked by Defendant, that his personal communications would be intercepted by Defendant, or that his video-viewing habits would be shared with third parties in an effort in part to create targeted advertisements and marketing campaigns, and for other undisclosed purposes.

26. Plaintiff Bate was shocked and alarmed when she learned in June 2023 that Defendant had intercepted and disclosed this information to third parties without her or her child's knowledge or consent, written, verbal, or otherwise.

***Plaintiff Azucena Mejia's Individual Experience***

27. Plaintiff Azucena Mejia ("Mejia") is the mother of A.S., a minor child.

28. A.S. attends Rancho de la Nacion in National City, located in San Diego County, California.

29. A.S. was issued a Chromebook® device by her school for use as part of distance learning at the school.

30. Unbeknownst to Plaintiff Mejia, the school district had installed Defendant's Securly software on her Chromebook® device which, amongst other things,

First Amended Class Action Complaint for Damages                    23-CV-01304-AGS-DEB

tracked A.S.'s geolocation, her web search terms, the websites she visited, and the videos she watched.

31. Plaintiff Mejia was never provided with any disclosure that her minor child's location would be tracked by Defendant, that her personal communications would be intercepted by Defendant, or that her video-viewing habits would be shared with third parties in an effort in part to create targeted advertisements and marketing campaigns, and for other undisclosed purposes.

32. Plaintiff Mejia was shocked and alarmed when she learned in June 2023 that Defendant had intercepted and disclosed this information to third parties without her or her child's knowledge or consent, written, verbal, or otherwise.

### *Defendant's School Surveillance Software Business Model*

33. The following factual summary includes facts obtained from the Defendant's website, marketing materials, and other, and various other reliable public sources of information describing Defendant's data gathering business practices.

34. Defendant is, among other things, a location data broker that provides its customers massive amounts of illegally intercepted data collected from elementary, middle, and secondary school student's mobile devices throughout the United States.

35. Defendant collects a wealth of information about students and their Chromebook® and other brands of mobile computing devices by, among other means, illegally and without consent intercepting such data in violation of state and federal law.

36. Defendant gathers and tracks specific consumer geolocation and other data about student, then combines it with other data to create consumer reporting about individual student by tracking their mobile computing device location and corresponding application usage.

37. Defendant describes a relevant product offering, "Filter" in part as follows:

First Amended Class Action Complaint for Damages                    23-CV-01304-AGS-DEB

Filter, a cloud-based web filter designed specifically for schools, helps you keep students safe with powerful features that make your school safer and your IT team happier. ***Get visibility into online activity, download or email reports, and block inappropriate sites instantly***.

https://www.securly.com/filter last accessed July 6, 2023 (bold italics added).

38.   Under the guise of student safety and completely unbeknownst to the student, Defendant instead vortexes up huge amounts of private student data, including online sites visited, videos watched, and terms searched entered by the students, such as the children of these Plaintiffs, in part to drive in part advertising and marketing to children and their parents:



*Id*.

39.   Defendant promotes its product installed on this mobile computing devices that essentially spies on children without their knowledge or consent: "Know your students' online activity with a visual audit trail including records of sites visited, exact searches, and video thumbnails." *Id*.

40.   Defendant explains how its Filter product works in a brochure located on its website and includes an instructive visual:

First Amended Class Action Complaint for Damages                    23-CV-01304-AGS-DEB

**How [Securly] Filter works**

1. Network traffic, whether from on-campus devices or ***off-campus managed devices***, is captured by Securly Filter.

2. Securly Filter detects users and applies the appropriate policies to them.

  A - Traffic that is allowed goes to the user as normal.

  B - Encrypted traffic is selectively decrypted and analyzed, and is either allowed or blocked.

  C - Blocked traffic will display a block page to the user, and option

***3. In all cases, traffic is logged for administrator review.***



https://www.securly.com/site/assets/products-pdf/securly_b2b_PB-Filter_0522.pdf last accessed September 26, 2022 (since removed by Defendant).

41.   In part, Defendant sometimes automatically sends some student's parents unsolicited "push" emails that summarize the content that Defendant has

intercepted from their children's mobile computing devices and also for the purpose of marketing Defendant's own mobile telephone application for parents to install on their smartphones.

42. Defendant's push emails inform these parents of the videos their children watched, the terms they searched, and the websites they visited—regardless of how sensitive this information might be—and serve as evidence that Defendant tracks this information carefully and shares it with others without the consent of the subjects of that information, video viewing, or private search terms communicated.

***Defendant Works to Hide Its Illegal and Surreptitious Surveillance from Parents***

43. Defendant proactively helps school districts hide the information that it takes from school children by allowing the school district to decide how much to tell the parents about its illegal surveillance techniques:

First Amended Class Action Complaint for Damages                                    23-CV-01304-AGS-DEB



https://support.securly.com/hc/en-us/articles/360009607154-What-kind-of-activity-is-shared-with-parents-in-the-activity-log-, last accessed July 6, 2023.

44. Defendant enables school districts to effectively conceal its illegal activities from parents who have a right to know who is watching their children and Defendant has in effect substituted its own judgment for that of parents like these Plaintiffs.

45. Defendant's software operates surreptitiously on a school's mobile computing devices and on the school system's computers to intercept and collect this sensitive data, without the knowledge, notice or consent of the child using the mobile computing device or their parent, including these Plaintiffs.

46. Plaintiffs and the Class Members, and their minor children, are not notified that Defendant is monitoring their communications, intercepting them, and communicating them to third parties and therefore never consented.

10

47.    No advanced notice or consent is given to the child or their parents, including these Plaintiffs, that Defendant will have real-time access to the child's private location, web searches, and video viewing activities on these devices, because Plaintiffs and the other Class Members were never provided with the Defendant's purported terms of service or privacy policies at any time nor were the Plaintiffs given notice of them.

48.    Plaintiffs and the Class Members did not receive or have access to any of these facts related to Defendant illegal surreptitious activity directed toward their children because Defendant's Securly software is installed on Plaintiffs' school mobile computing devices without the prior knowledge, consent, or control of the Plaintiffs.

49.    Plaintiffs and the other Class Members are not presented with any pop-ups, click buttons, disclosure windows, or other notice of any kind that Defendant's Securly software application is even running on the child's mobile computing device.

50.    The Plaintiff and other Class Members have never provided any consent to Defendant to operate its Securly software application and conduct surveillance of their minor children because Plaintiffs and the Class Members had absolutely no idea that Securly even existed.

51.    Defendant Securly's software is designed to be installed by the school district at the operating system and browser level and cannot be either detected, disabled, or removed by the Plaintiffs and the other Class Members.

52.    In effect, Plaintiffs and the Class Members would only learn about Defendant's surveillance practices directed at Plaintiff's minor children if they were affirmatively told by Defendant or its agents, such as when Defendant send out a push email campaign to parents to encourage them to sign up for Defendant's Securly Home application on their mobile smartphones.

53.    When Plaintiff's and the Class Members and their minor children access a mobile computing device containing Defendant's Securly software installed on it they

First Amended Class Action Complaint for Damages                                    23-CV-01304-AGS-DEB

are not given an advisory that the Securly app is geotracking, intercepting search terms, monitoring usage, or compiling video watching lists for the child who is using the device.

54. Nevertheless, an investigation into Defendant reveals that it has written on its website about how it operates its business model of gathering geolocation, website usage, and video viewing habits of minor children.

55. Defendant does not provide this information to the children or their parents before Defendant begins gathering sensitive private data of these children, rather directing these disclosures to the school districts with which it contracts and apparently relying on the school districts to obtain appropriate consent.

### Defendant Uses Intimate Knowledge of Children's Online Activities to Market Its Own Securly Mobile App

56. At other times, Defendant sends unsolicited emails to some parents as "teasers" to encourage these parents to download Defendant's mobile app and sign up for paid versions of its software services.

57. These teaser emails from Defendant reveal to the recipient parent her/his child's web search term history, websites visited, and videos watched.

58. Defendant's invasive emails disclose sensitive and private searches by children violating those children's right to privacy and demonstrate the level of information that Securly has obtained and retained about these Plaintiffs and the Other Class Members for its own business purposes.

59. Defendant's push emails are not limited to educational information but, rather, contain personal internet activities that occurred while at home or at other locations outside of school often containing harmless, yet embarrassing, online activities by those children.

60. Worse yet, Defendant's Securly app tracks children's sensitive search and video views related to sexual orientation, transgender issues, abortion, and contraception for which children may be unwilling to openly discuss with a

First Amended Class Action Complaint for Damages                                     23-CV-01304-AGS-DEB

parent and then Defendant repurposes this type of sensitive information to promote its mobile app:



https://www.securly.com/home-parent last accessed July 13, 2023.

61.   The email-push information sent to parents by Defendant's Securly app is not sent as a safety alert, rather, it is used as a marketing tool to get parent's to sign up for its mobile app by Defendant lurking into a child's online activities without benefit to, or consent from, either the child or the parent affected such as these Plaintiffs.

62.   While these Plaintiffs did not receive emails from Defendant, the practice of sending them is emblematic of the capabilities that Defendant has with confidential student data.

63.   Figure 1 below is an example of an unsolicited push email sent directly by Defendant advising another parent of Defendant's interception of their child's internet activities and video viewing habits:

First Amended Class Action Complaint for Damages                    23-CV-01304-AGS-DEB

**Fig. 1 - Page 1 of Example Email sent by Defendant to a Parent**

First Amended Class Action Complaint for Damages                    23-CV-01304-AGS-DEB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Fig. 1 – (Continued) Page 2 of Example Email sent by Defendant to a Parent**



***Defendant Used Minor Children's Illegally Gathered Private Data***

***for Advertising and Marketing Purposes***

64.    According to pertinent parts of Defendant's website last updated October 2021 (yellow highlights added):

> Securly, Inc. ("we," "our" or "us") recognizes the importance of privacy. This Privacy Policy describes how we collect, store, use and disclose, or otherwise process (collectively "process") information, including personal information, that we obtain about visitors and users of our website www.securly.com (the "Site") as well as users of our software and related services including the Securly Parent Portal and mobile applications (collectively, the "Services").
>
> …
>
> **1. Information We Collect About You**
> We may collect information, including personal information (as defined by applicable privacy law), directly from you, from third parties such as your child's school, or automatically though your use of the Services. We may combine certain information we collect from these various sources
>
> **Information We Collect Directly from You.**
> We collect information (including personal information) from you directly as set out below.
>
> **Account and Registration Information**. We collect personal information from you when you sign up for an account with us, including your name and email address. We may also ask or allow you to submit additional account information, such as your phone number, student name, student school, location of school. You may browse parts of our Site without creating an account, however, if you would like to use Securly's Services, we ask you to create an account.
>
> **…**
>
> **Other Information We Collect Regarding Your Usage of Our Services**. We collect personal information about your use of our Services, such as your purchase history, online related activity such as sites visited, online searches and videos watched, email content, email address, and geolocation information.

16

**Information We Collect from Third-Party Sources** We may also collect information about you from third parties, which we append to the information we have collected.

**Information We Collect Automatically**. <mark>We automatically collect information about you through your use of our Services, including log files, IP address, app identifier, advertising ID, location info, browser type, device type, domain name, the website that led you to our Services, the website to which you go after leaving our Services, the dates and times you access our Services, and the links you click and your other activities</mark> within the Services ("Usage Data"). <mark>If you authorize us to collect your geolocation information, we will collect it while our App is running on your device.</mark> You can disable our access to your location services by changing your device's location settings. For more information please see the Cookie and Other Tracking Mechanisms Section further below.

…

### 3. How We Use Your Information

**…**

**Personalizing Content and Ads**. We may use the information we collect about you to personalize the information and content we display to you, including to tailor the content and information that we may send or display to you, and <mark>to otherwise personalize your experiences while using Services, including providing you with more relevant ads.</mark> (Legal basis: our legitimate interests).

**…**

**Research and Analytics**. To analyze how you interact with our Services; to monitor and analyze usage and activity trends; and for other research, analytical, and statistical purposes. (Legal basis: our legitimate interests).

…

**Aggregate, De-identified or Anonymous Data**. We also create and use aggregate, anonymous and de-identified data to assess, improve and develop our business, products and services, and for similar research and analytics purposes. This information is not generally subject to the restrictions in this Policy, provided it does not identify and could not be used to identify a particular individual.

**4. How We Disclose Your Information**

In general, we disclose the personal information we collect as follows:

**1. Affiliates**. We may share your personal information with our affiliates, whose handling of personal information is subject to this Policy.

**2. Service Providers**. We may disclose the information we collect from you to our third-party vendors, service providers, marketing partners, third parties, contractors or agents who perform functions on our behalf so we can provide you with the Services. These may include companies who send emails to our customers and prospective customers; help us to track email response rates, views and forwards; to serve visitor advertisements and to provide advertisements about products of interest to them; and to collect data about how customers and prospective customers interact with our products over time.

...

**6. Aggregate and De-Identified Information**. We may share aggregate or otherwise de-identified information about users with third parties for marketing, advertising, research or similar purposes.

**5. Use of Cookies and Other Tracking Mechanisms**

We and our third-party service providers may use cookies, log files, Web beacons and other tracking mechanisms to track information about your use of our Services. We and our third-party service providers use cookies and other tracking mechanisms to track information about your use of our Services. We may combine this information with other personal information we collect from you (and our third party service providers may do so on our behalf).

**Cookies**. Cookies are alphanumeric identifiers that we transfer to your computer's hard drive through your web browser for record-keeping purposes. Some cookies allow us to make it easier for you to navigate our Site and Services, while others are used to enable a faster login process or to allow us to track your activities at our Site and Service. There are two types of cookies: session and persistent cookies.

...

**Clear GIFs, pixel tags and other technologies**. Clear GIFs are tiny graphics with a unique identifier, similar in function to cookies. In contrast to cookies, which are stored on your computer's hard drive, clear GIFs are embedded invisibly on web pages. We may use clear GIFs (a.k.a. web beacons, web bugs or pixel tags), in connection with our Services to, among other things, track the activities of Site visitors, help us manage content, and compile statistics about Site usage. We and our third party service providers may also use clear GIFs in HTML e-mails to you, to help us track e-mail response rates, identify when our e-mails are viewed, and track whether our e-mails are forwarded.

**Third Party Analytics**. We use automated devices and applications, such as Google Analytics, to evaluate usage of our Site and our Services. We also may use other analytic means to evaluate our Services. We use these tools to help us improve our Services, performance and user experiences. These entities may use cookies and other tracking technologies to perform their services.

**Geolocation Information**. We may use geolocation information for the purpose of administering our Services to you.

**Do-Not-Track Signals**. Our Site does not currently respond to do-not-track signals. For more information about do-not-track signals, please click here <u>here</u>. You may, however, disable certain tracking as discussed in the Cookies and Other Tracking Mechanisms section above (e.g., by disabling cookies).

**6. Interest-Based *Advertising***
We may work with third parties such as network advertisers to assist us in displaying advertisements on third-party websites, and to evaluate the success of our advertising campaigns. We may use information about your visit to our Site for these purposes; however, we do not use personal information collected from the Services for these purposes.
…
**12. Children**
Please refer to our COPPA Policy with respect to the personal information collected from children and students under the age of 13 via the Services. Children under the age of 16 cannot

==highlight==
legally give their consent. Instead, consent of their parent or legal
guardian needs to be provided.
==

...

https://www.securly.com/privacy last accessed July 6, 2023 (yellow highlights
added).

65.   At no time did Plaintiffs or the Other Class Members receive this "Privacy
Policy" or agree to its terms either in paper form or electronically.

### *Defendant's Student Privacy Policy*

66.   Moreover, Defendant has a separate "Student Privacy Policy" last updated April
2023, also located on its website, which acknowledges the legal obligation to
provide prior notice and obtain appropriate consent before sensitive personal
information is intercepted by Defendant from school districts like those of the
Plaintiff and other Class Members:

**2. Consent**

Securly is covered as an operator under COPPA when our
Services are directed to children under 13. Under COPPA, **we
are required to obtain parental consent to the collection of
personal information online from children under 13.** When
schools use our Services, the school (including a teacher, school
district, or an administrator or other designated employee of the
school or district), **we require schools to consent to our
collection and use of Student Information, on behalf of
parents**. When parents use the Services independent of a school,
we require parental consent to the collection and use of personal
information from children under 13 as part of the Services.

All Student Information transmitted to Securly by its customers
is and will continue to be the property of and under the control
of the customer. **By transmitting Student Information to
Securly, schools and parents (1) authorize Securly to use the
Student Information as described in this Student Policy and
(2) acknowledge that it is the responsibility of the
transmitting party to provide appropriate notification and
consent mechanisms where required by regulation or statute.**

> You may withdraw your consent to our processing of the personal information of your student at any time. However, withdrawing consent may result in a student's inability to continue using some or all of the Services.

https://www.securly.com/students-privacy last accessed September 21, 2023

(bold emphasis added).

67. At no time did Plaintiffs or the Other Class Members receive this "Student Privacy Policy" or agree to its terms either in paper form or electronically.

68. At no time were Plaintiffs or the Other Class Members presented with a pop-up dialog or sign in screen on their mobile computing devices which referred to either the Privacy Policy, Student Privacy Policy, or any other term or condition for Defendant's use of its Securly software which would have given them notice and/or provided their consent.

69. For comparison, the federal court system presents a consent pop-up every single time a user logs into the PACER System requiring users to affirmatively acknowledge important redaction responsibilities every time a user logs on:

**Redaction Agreement**

**IMPORTANT NOTICE OF REDACTION RESPONSIBILITY:**

All filers must redact: Social Security or taxpayer-identification numbers; dates of birth; names of minor children; financial account numbers; and in criminal cases, home addresses in compliance with Fed. R. App. P. 25(a)(5), Fed. R. Civ. P. 5.2, Fed. R. Crim. P. 49.1, or Fed. R. Bankr. P. 9037. This requirement applies to all documents, including attachments.

☑ I understand that, if I file, I must comply with the redaction rules. I have read this notice.

Continue    Cancel

70. In contrast, nothing that Defendant did gave Plaintiffs or any Other Class Member any actual or constructive notice that by accessing their mobile computing devices that Defendant was going to intercept the data and communications from their private search terms, video viewing habits, and website visits.

71. Defendant's conduct was not simply filtering out certain content, but rather actively intercepting search terms, page visits, application usage, and video viewing habits of students like the children of Plaintiffs and the other Class Members and using that intercepting data and communications:

**4. Student Information**
Student Information and User Information may be collected directly from you or from students, from third parties, and automatically through use of the Services. Such information may include, but is not limited to, personal information, and the online

22

activity, social media usernames and activity, electronic communications, and general web browsing activity of the student.

## 5. Information We Collect Directly

We collect students' mobile device ID; device name and model; and operating system type, name, and version of school issued devices. Some of our Services may require users (including students, teachers, staff, administrators, or anyone else given login credentials to our software) to have appropriate user credentials to log in to access software. This information Student Information or User Information may include user first and last names, user email addresses, user graduation years, and other related data that may be considered personal information under relevant data privacy regulations and statutes. You may provide this information to Securly rather than Securly collecting it directly from end users.

## 6. Information We Collect Automatically

In order to provide our Services and to understand a student's activity while using our Services, we may automatically collect the following information about a student or user through cookies, web beacons, and other technologies: information regarding a student's personal computing device, browser type, browser language, operating system, Internet Protocol ("IP") address, and the actions a student or user takes while using the Services including while online (such as the web pages viewed or blocked, the length of time a student visited a website, links clicked, and messages sent or posted).

When the Services are used on a personal computing device owned by schools, we may use geolocation information to determine the location of the device. Such information is specific to the device only and is not specific to any student or child. We may also use elements of usage and analytics information (such as IP address) to determine generalized location.

## 7. Student Information that We Collect from Social Networking Sites

If you permit your students to use Facebook, Twitter, or other social networking sites ("Social Networking Sites") in connection with the Services, we will collect students' Social Networking Site activity including students' public and private posts on Social Networking Sites and other messaging activity for purposes of

> providing the Services, including, as applicable, for detection of cyber-bullying or risk of self-harm.
>
> We store students' Social Networking activity with other Student Information.

*Id.*

72. None of these privacy disclosures or data usage practices in the "Student Privacy Policy" or the alternative "Privacy Policy" were ever disclosed by Defendant to Plaintiffs or the other Class Members, or their children, prior to Defendant's illegal interception of their private communications, private search histories, and private video viewing habits, because the Securly software was installed in their children's mobile computing devices without out their prior knowledge or consent.

73. By actively intercepting this digital information without the consent of knowledge of consumers like these Plaintiffs and the other Class Members, Defendant is able to in part deliver targeted advertising to those consumers while tracking their locations, spending habits, and personal characteristics, while sharing this rich personal data simultaneously with untold numbers of third-party companies by in essence "fingerprinting" each unique mobile computing device and user, as well as connecting users across devices and devices across users.

74. Defendant, without consent, surreptitiously intercepts, collects, and shares each Plaintiff's and Class Members' activity while using various applications including Securly on their mobile computing devices without their knowledge or consent.

75. This data collection includes all sorts of website information, as well as each Plaintiffs' and the Class Members' respective IP addresses, browser and device information, user IDs, geolocation data, and other data, used by Defendant to "fingerprint" individuals across the internet for Defendant's benefit, in part by

1   deriving revenue from the targeted marketing and sale of this information to third

2   parties.

3   76.   Defendant and others installed and otherwise used a software system on each

4         Plaintiffs' mobile computing device which gathers geo-location data from each

5         Plaintiffs' whereabouts, as well as the previously described datapoints on that

6         device, but without that Plaintiff's express consent or knowledge and then created

7         consumer reports based upon this information.

8   77.   Defendant uses its software to combine this information with other data points

9         Defendant has obtained about each Plaintiff to create a composite of that

10        Plaintiffs' physical locations and sensitive consumer behavior.

11  78.   Defendant also makes it easy for third parties to review and analyze all the data

12        it has intercepted about Plaintiffs and the Other Class members by using an

13        administrative portal that shows complete lists of the following for the minor

14        children it has surveilled:

15
16        7. The "Sites" tab will list all the websites visited.

17        8. The "Videos" tab lists all YouTube videos the user searched for
18        and watched.

19        9. The "Searches" tab lists the keywords that the student searched
20        for.

21        10. The "Wiki" tab lists what the student searched for or viewed
22        specifically on Wikipedia.

23        11. The "SocialPosts" tab will display all activity on social media
24        platforms like Facebook and Twitter.

25        12. For details about each entry, you can mouse over the info icon
26        on the right-hand side to the display category under which it was
          blocked and the public IP address that attempted to access it.

27        https://support.securly.com/hc/en-us/articles/360049583613-How-is-user-

28        activity-displayed-under-the-Activities-tab-, last accessed July 13, 2023.

25

***Defendant's Data Can Be Used to Identify Children and***

***Track Them to Sensitive Private Locations***

79.   On August 29, 2022, the Federal Trade Commission filed a federal lawsuit against another company for its market conduct in illegally gathering geo-location data. *Federal Trade Commission v. Kochava, Inc*., USDC-Dist. Idaho Case 2:22-cv-00377-DCN Document 1 Filed 08/29/22 ("FTC Complaint").

80.   The FTC Complaint details how precise geolocation data associated with mobile advertising identifiers ("MAIDS"), such as the data gathered and sold by Defendant, may be used to track consumers to sensitive locations, including places of religion, domestic abuse shelters, places inferring LGBTQ+ identification, medical facilities, welfare and homeless shelters, and reproductive health clinics.

81.   Since each set of these geolocation coordinates is time-stamped, it is also possible to identify when a mobile device visited a certain location such as a Plaintiff's child's home, playground, or even their bedroom.

82.   The location data that Defendant obtains is not anonymized and it is possible to use the geolocation data combined with the mobile device's MAID to identify the user or owner of the device since that information is also provided to Defendant, as evidenced by the unsolicited email alerts Defendant sends out to the parents of the children utilizing Defendant's software system listing websites visited, terms searched, and videos watched by the child.

83.   The geolocation data gathered by Defendant includes multiple timestamped signals identifying the Plaintiff's child's geolocation during app usage and video viewing.

84.   By plotting each of these signals of a map, much can be inferred about the Plaintiff's child's mobile device users and private device usage patterns.

//

*Defendant Practices Cause Substantial Injury to Consumers*

85. As described above, the data collected, stored, and sold by Defendant may be used to identify individual consumers and their visits to sensitive locations such as these Plaintiffs. The collection, sharing, access, use and/or sale of such data poses an unwarranted and unauthorized intrusion into the most private areas of a consumer's life and caused or is likely to cause substantial injury to the consumers such as these Plaintiffs and the other members of the class.

86. The dangers associated with Defendant's practices are numerous. For example, the data set makes it possible to identify a mobile device which visited a reproductive health clinic website, searched for the word "pregnancy" or can demonstrate a child's location, path of travel, and routines by showing location data from a particular address, numerous times, in a single week.

87. Defendant collects and stores and disseminates this data all without the user's knowledge or consent.

88. Allowing a person access to such information, even for a brief period, can cause substantial injury to the consumer such as these Plaintiffs and their children.

89. Identification of sensitive and private characteristics of child consumers from the location data sold, shared, exposed and/or offered by Defendant injures or is likely to injure those consumers through potential exposure to stigma, discrimination, physical violence, emotional distress, and other harms, by which the Plaintiffs and their children are directly harmed.

90. The collection and use of the Plaintiffs' location data by Defendant are completely unknown and/or opaque to these child consumers and their parents, who typically do not know who has collected their location data and how it is being used—let alone to consent to the interception and use of that data from their mobile computing devices.

91. Oftentimes the mobile tablet-type school-issued devices that Defendant tracks have been removed from the school setting and taken home by the children such

as these Plaintiffs who are unwittingly sharing sensitive geolocation data with Defendant using her or his parent's own internet service.

92. Once the information has been collected and stored by Defendant, the Plaintiffs' information can be sold multiple times to companies those consumers have never heard of and never interacted with and the Plaintiffs are therefore unable to take reasonable steps to avoid the above-described injuries.

93. By Defendant's own admissions, the data it collects from children students violates California's broad remedial statutory scheme supporting consumer privacy rights, as codified under Cal. Pen. Code § 630, et seq.

94. This sensitive private information can then be combined with other third-party information to "quilt" a picture of a child's interests, habits, and locations and market and advertise to the parents and children such as these Plaintiffs.

95. Defendant itself admits that it tracks sensitive consumer geolocation data in violation of California law because it has absolutely no consent to gather such tracking information from Plaintiffs but rather simply announces that fact on its website after it has already done it:

> **Geolocation Information**. We may use geolocation information for the purpose of administering our Services to you.

https://www.securly.com/privacy last accessed July 6, 2023.

96. Defendant also readily admits that it will use the sensitive and valuable private information it gathers about children such as the Plaintiffs, combines it with other third-party data, and uses it to sell advertising.

> **How We Disclose Your Information**
>
> In general, we disclose the personal information we collect as follows:
>
> 1. Affiliates. We may share your personal information with our affiliates, whose handling of personal information is subject to this Policy.

2. Service Providers. We may disclose the information we collect from you to our third-party vendors, service providers, marketing partners, third parties, contractors or agents who perform functions on our behalf so we can provide you with the Services. These may include companies who send emails to our customers and prospective customers; help us to track email response rates, views and forwards; to serve visitor advertisements and to provide advertisements about products of interest to them; and to collect data about how customers and prospective customers interact with our products over time.

3. Business Transfers. We may disclose information to another entity in connection with, including during negotiations of, an acquisition or merger, sale or transfer of our assets, a, bankruptcy proceeding or as part of any other similar business transfer, including during negotiations related to such transactions.

4. In Response to Legal Process. We also may disclose the information we collect from you in order to comply with the law, a judicial proceeding, court order, or other legal process, such as in response to a court order or a subpoena.

5. To Protect Us and Others. We also may disclose the information we collect from you where we believe it is necessary to investigate, prevent, or take action regarding illegal activities, suspected fraud, situations involving potential threats to the safety of any person, violations of our Terms of Use or this Policy, or as evidence in litigation in which we are involved.

6. **Aggregate and De-Identified Information**. We may share aggregate or otherwise de-identified information about users with third parties for marketing, advertising, research or similar purposes.

*Id.* (bold added).

97. At no time were Plaintiffs or their children ever told about the surreptitious use of Defendant's Securly surveillance software on their children's school-issued mobile computing devices and they never provided consent for the interception of their private communications, either verbally or in writing.

First Amended Class Action Complaint for Damages                    23-CV-01304-AGS-DEB

98.   At no time did Plaintiffs ever consent in writing, verbally, or otherwise to the gathering of sensitive geolocation data of their children or the tracking of videos watched, words searched, or websites visited by their children.

***Defendant's Securly Software Allows Teachers, Administrators and Technical Staff***

***to Watch Children's Devices While at Home***

99.   Defendant's Securly app installed on Plaintiffs and the other Class Members has the capability to even surreptitiously view a child's device screen, while that child is in their own home without their knowledge, control, or consent:

(NEXT PAGE)



First Amended Class Action Complaint for Damages                    23-CV-01304-AGS-DEB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16   100.   https://support.securly.com/hc/en-us/articles/360044710933-Classroom-Allow-
17          students-to-be-monitored-while-at-home-Turn-off-IP-Exclusion-for-Teacher-
18          Tools- last accessed July 13, 2023.

19   101.   This capability is recognized even by the Defendant to be fraught with potential
20          danger: "Please also remember that there might be a liability/privacy issue with
21          viewing a student's screen while he/she is at home." *Id*.

22   102.   The Plaintiffs and other Class Members certainly had a reasonable expectation of
23          privacy within their own homes and other private places outside the school
24          grounds and the Defendant's use of a screen-sharing feature outside of the school
25          violated their right to privacy, especially when accessing these mobile computing
26          devices on their own WIFI connections.

27   //
28   //

***Independent Analysis Published a "Warning"***

***to Educators and Parents About Defendant's Securly Software***

103. Common Sense Media is "the nation's leading nonprofit organization dedicated to improving the lives of all kids and families by providing the trustworthy information, education, and independent voice they need to thrive in the 21st century." https://www.commonsense.org/ last accessed September 21, 2023.

104. Common Sense published an analysis of Securly software on June 7, 2021, and provided in the following headline on its website:



105. Common Sense issued this WARNING about Securly because of a myriad of issues it identified with Defendant's privacy practices, including but not limited to the following categories and commentary, in its independent analysis (available at https://privacy.commonsense.org/privacy-report/securly last accessed September 21, 2023):

**2.1: DATA COLLECTION**
- ⚠ Personally identifiable information (PII) is collected. Geolocation data are collected.
- ⚠ Interactions, behaviors, or usage analytics data are collected.
- ⚠ Data is automatically collected.

**2.2: DATA SOURCE**
- ⚠ Personal information or education records are collected from preK-12 students.
- ⚠ Personal information from children under 13 years of age is collected.

**2.3: DATA EXCLUDED**
- ⚠ Specific types of collected information are excluded from the privacy policy.

**3.1: DATA SHARED WITH THIRD PARTIES**
- ⚠ Collected information is shared with third parties.

**3.2: DATA USE BY THIRD PARTIES**
- ⚠ Data are shared for analytics.

⚠ Data are shared for research and/or product improvement.

⚠ Personal information is shared for third-party marketing.

**3.5: THIRD-PARTY DATA ACQUISITION**

⚠ Personal information about users is obtained from third parties.

**3.8: THIRD-PARTY DATA COLLECTION**

⚠ Personal information of users is collected by a third party.

**3.9: THIRD-PARTY DATA MISUSE**

⚠ Unclear whether personal information can be deleted from a third party.

**3.13: THIRD-PARTY DATA COMBINATION**

⚠ Company may combine data with additional data from third-party sources.

**3.14: THIRD-PARTY AUTHENTICATION**

⚠ Personal information from third-party login providers is collected.

**3.15: DE-IDENTIFIED OR ANONYMIZED DATA**

⚠ User information that is shared is not shared in an anonymous or de-identified format.

**4.1: DATA USE**

⚠ Unclear whether use of information is limited to the purpose for which it was collected.

⚠ Unclear whether this product treats combined information as personally identifiable information (PII).

**4.3: DATA NOTICE**

⚠ Unclear whether notice is provided if the context in which data are collected changes.

**5.1: USER CONTENT**

⚠ Unclear whether opt-in consent is requested from users at the time personal information is collected.

**5.3: REMEDY PROCESS**

⚠ Unclear whether a grievance or remedy mechanism is available for users to file a complaint.

**5.4: DATA SETTINGS**

⚠ Unclear whether users can control the use of their information through privacy settings.

**5.5: DATA DISCLOSURE**

⚠ Unclear whether users can opt out from the disclosure or sale of their data to a third party.

⚠ Unclear whether users can request to know what personal information has been shared with third parties.

34

⚠ Unclear whether notice is provided in the event the company receives a government or legal request for a user's information.

**6.1: DATA ACCESS**

⚠ Unclear whether methods are available to restrict who has access to data.

**7.1: DATA HANDLING**

⚠ User information can be transferred to a third party in the event of a merge, acquisition, or bankruptcy.

⚠ Unclear whether notice is provided to users if the company assigns its rights or delegates its duties to another company.

⚠ Unclear whether users are notified if their information is transferred to a third party.

**7.2: TRANSFER REQUEST**

⚠ Unclear whether user information can be deleted prior to its transfer to a third party.

**8.1: USER IDENTITY**

⚠ Unclear whether a user's identity is verified with additional personal information.

**9.2: DATA VISIBILITY**

⚠ Unclear whether personal information can be displayed publicly.

⚠ Unclear whether this product allows users to control how their data are displayed to others.

**10.4: AD TRACKING**

⚠ Data are collected by third-parties for their own purposes.

⚠ User's information is used to track and target advertisements on other third-party websites or services.

⚠ Unclear whether ads displayed to children are filtered for inappropriate content.

**10.6: MARKETING COMMUNICATIONS**

⚠ The company can send marketing messages.

**10.8: DO NOT TRACK**

⚠ Company does not respond to "Do Not Track" or other opt-out mechanisms.

⚠ The company does provide a method for users to opt-out from third-party tracking.

**11.1: CHILDREN UNDER 13**

⚠ Company does have actual knowledge that personal information from users under 13 years of age is collected.

35

⚠  The company does provide a section, heading, or separate policy for children in their policies.

⚠  Unclear whether this product restricts or prohibits account creation for users under 13 years of age.

106. What is abundantly clear from the Common Sense analysis of Securly is that the claims made by the Plaintiffs and the other class Members are well-grounded in law, in fact, and in concern for the data privacy practices of this Defendant.

*Defendant's Unlawful Use of an Electronic Tracking Device*

107. California Penal Code § 637.7 prohibits the use of surreptitious electronic tracking devices:

**§ 637.7. Electronic tracking device**

 (a) **No person or entity in this state shall use an electronic tracking device to determine the location or movement of a person.**

(b) This section shall not apply when the registered owner, lessor, or lessee of a vehicle has consented to the use of the electronic tracking device with respect to that vehicle.

(c) This section shall not apply to the lawful use of an electronic tracking device by a law enforcement agency.

(d) **As used in this section, "electronic tracking device" means any device attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals.**

(e) A violation of this section is a misdemeanor.

(f) A violation of this section by a person, business, firm, company, association, partnership, or corporation licensed under Division 3 (commencing with Section 5000) of the Business and Professions Code shall constitute grounds for revocation of the license issued to that person, business, firm, company, association, partnership, or corporation, pursuant to the provisions that provide for the revocation of the license as set forth in Division 3 (commencing with Section 5000) of the Business and Professions Code.

(Bold added.)

First Amended Class Action Complaint for Damages                    23-CV-01304-AGS-DEB

108. This suit seeks only damages and injunctive relief for recovery of economic injury and it expressly is not intended to request any recovery for personal injury and claims related thereto.

109. Each Plaintiff is informed and believes, and thereon alleges, that Defendant intentionally used an electronic tracking device as prohibited by California Penal Code § 637.7.

110. Each Plaintiff is informed and believes, and thereon alleges, that Defendant intentionally tracked each Plaintiff's geolocation on that Plaintiff's movable device without that Plaintiff's consent as prohibited by California Penal Code § 637.7.

111. Defendant violated each Plaintiffs' constitutionally protected privacy rights by failing to advise or otherwise provide notice at the beginning of the recorded tracking of geolocation data with that Plaintiff that the sensitive and private geolocation data would be recorded, and Defendant did not try to obtain either Plaintiff's consent before such use of an electronic tracking device and the recording of its results.

112. The use of the electronic tracking device by Defendant as described further herein was unauthorized and done without either Plaintiffs' prior knowledge or consent. Each Plaintiff was damaged thereby, as detailed herein, in at least an amount permitted by the statutory damages mandated by California Penal Code § 637.2.

113. Defendant, its employees, or agents, secretly recorded an electronic communication made involving each Plaintiff and others.

114. At no time before, during, or after any of the communications was either Plaintiff warned, told, advised, or otherwise given any indication by Defendant, its employees or agents, that the content of each Plaintiff's communications were recorded.

115. As a result thereof, each Plaintiff has been damaged as set forth in the Prayer for Relief herein.

116. Each Plaintiff seeks statutory damages and injunctive relief under California Penal Code § 637.2.

## CLASS ACTION ALLEGATIONS

117. Each Plaintiff brings this lawsuit as a class action on behalf of himself and Class Members of the proposed Classes. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

118. Each Plaintiff proposes the following Classes consisting of and defined as follows:

**A. The Confidential Communication Class for Violation of Penal Code §631, consisting of;**

All persons in California whose communications were intercepted and recorded by Defendant, and or its agents.

**B. The Electronic Tracking Device Class for Violation of Cal. Pen. Code § 637.7, consisting of;**

All persons in California whose devices had tracking devices attached by Defendant, and or its agents, within the one year prior to the filing of the Complaint.

**C. The California Computer Data Access and Fraud Act Class for Violation of Cal. Pen. Code §502, consisting of;**

All persons in California whose devices accessed without permission by Defendant, and or its agents, within the one year prior to the filing of the Complaint.

119. Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to redefine the

38

Class and to add subclasses as appropriate based on discovery and specific theories of liability

120. **Numerosity**: The Class Members are so numerous that joinder of all members would be unfeasible and impractical.  The membership of the entire Class is currently unknown to either Plaintiff at this time; however, given that, on information and belief, Defendant accessed thousands of unique mobile computing devices, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

121. **Commonality**: There are common questions of law and fact as to Class Members that predominate over questions affecting only individual members, including, but not limited to:

- Whether, within the statutory period, Defendant intercepted any confidential communications with Class Members;
- Whether, the intercepted communications concerned confidential communications Class Members;
- Whether, within the statutory period, Defendant transmitted any confidential communications of Class Members to a third party;
- Whether Defendant had, and continues to have, a policy during the relevant period of intercepting digital communications of  Class Members;
- Whether Defendant's policy or practice of intercepting Class Members digital communications constitutes a violation of Cal. Penal Code § 631;
- Whether Defendant's policy or practice of utilizing electronic tracking devices with respect to Class Members digital communications constitutes a violation of Cal. Penal Code §

39

637.7;

- Whether Defendant had, and continues to have, a policy during the relevant period of knowingly accessing the computers of Class Members; Whether Defendant's policy or practice of accessing computers with respect to Class Members constitutes a violation of Cal. Penal Code §502.

122. **Typicality**: Each Plaintiff's wire and cellular telephone communications were intercepted, unlawfully tapped and recorded without consent or a warning of such interception and recording, and thus, each Plaintiff's injuries are also typical to Class Members.

123. Plaintiffs and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally intercepted, tapped, recorded, and stored each Plaintiff's and Class Members' digital communications, geolocations, and other sensitive personal data from their mobile computing devices with others, and Defendant invaded the privacy of each Plaintiff and Class.  Each Plaintiff and Class Members were damaged thereby.

124. **Adequacy**: Each Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom these Plaintiffs are similarly situated, as demonstrated herein.  Each Plaintiff acknowledges that that Plaintiff has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member.  Plaintiffs' attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement.  In addition, Plaintiffs' attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. The proposed class counsel is experienced in handling claims involving consumer actions and violations of the California Penal Code §§ 502, 631 and 637.7.  Each Plaintiff has incurred, and throughout the duration of this action,

First Amended Class Action Complaint for Damages                    23-CV-01304-AGS-DEB

will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

125. **Predominance**: Questions of law or fact common to the Class Members predominate over any questions affecting only individual members of the Class. The elements of the legal claims brought by the Plaintiffs and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

126. **Superiority**: A class action is a superior method for the fair and efficient adjudication of this controversy because:

a.    Class-wide damages are essential to induce Defendant to comply with California and Federal law.

b.    Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.

c.    Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

d.    Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

e.    Class action treatment is manageable because it will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would endanger.

f.    Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.

127. Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is also superior to other available methods because individual Class Members have no way of discovering that Defendant intercepted, recorded, and disclosed the Class Member's digital communications and video viewing habits without Class Members' knowledge or consent.

128. The Class may also be certified because:

- the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

- the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

- Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

129. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

130. The joinder of Class Members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The Class Members can be identified through Defendant's records.

//

//

First Amended Class Action Complaint for Damages                    23-CV-01304-AGS-DEB

**FIRST CAUSE OF ACTION**

**UNLAWFUL WIRETAPPING AND INTERCEPTION OF ELECTRONIC COMMUNICATION**

**CALIFORNIA PENAL CODE § 631**

131. Each Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

132. At all relevant times to this complaint, Defendant intercepted and recorded components of each Plaintiff's and the putative class's private communications and transmissions when these Plaintiffs and other Class Members accessed Defendant's software via their mobile computing devices within the State of California.

133. At all relevant times to this complaint, the Plaintiffs and the other Class Members did not know Defendant was engaging in such interception and recording and therefore could not provide consent to have any part of their private and confidential communications intercepted and recorded by Defendant and thereafter transmitted and/or disclosed to others.

134. Each Plaintiff was completely unaware that Defendant had intercepted and stored Plaintiff's geolocation and other personal data and communications on that Plaintiff's mobile computing device until well after the fact and was therefore unable to consent.

135. At the inception of Defendant's surveillance conduct, it illegally intercepted and stored each Plaintiff's geolocation and other personal data, Defendant never advised either Plaintiff or the other Class Members that any part of this sensitive personal data would be intercepted, recorded, and transmitted to third parties.

136. Each Plaintiff was completely unaware that components of Plaintiff's private use of Plaintiff's mobile computing device were in part being recorded and stored and thereafter transmitted to third parties.

137.   To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> **Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,**
>
> **Or**
>
> **Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,**
>
> **Or**
>
> **Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.**

(bold added).

138.   Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. See *Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, --- F.3d --- 2020 WL 1807978 (9th Cir. Apr. 9, 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

139.   Defendant's Securly software is a "machine, instrument, contrivance, or . . . other manner" used to engage in the prohibited conduct at issue here.

---

44

140.   At all relevant times, by using Defendant's software as well as tracking each Plaintiff's and Class Member's geolocation, Defendant intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiff and class members on the one hand, and the specific sites and locations Plaintiffs and Class Members visited on the other.

141.   At all relevant times, by using Defendant's geolocation tracking software technology, Defendant willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of each Plaintiff and putative class members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

142.   The Plaintiffs and Class Members did not consent to any of Defendant's actions in implementing these wiretaps within its geolocation tracking software. Nor have the Plaintiffs or Class Members consented to Defendants' intentional access, interception, reading, learning, recording, and collection of Plaintiff and Class Members' electronic communications in violation of the second, third, and fourth prongs of Cal. Pen. Code §631 (acquire confidential communications, use those communications, and/or otherwise aid and abet a violation of §631).

143.   The Plaintiffs and Class Members' devices of which Defendant accessed through its unauthorized actions included their Chromebook®-type computers, iPads, tablets and/or other mobile computing devices which utilized Defendant's Securly software.

144.   Defendant violated the second, third, and fourth prongs of Cal. Penal Code § 631 by knowingly accessing and without permission accessing Plaintiffs' and Class members' devices to obtain their personal information, including their device and location data and personal communications with others, and for Defendant to share that data with third parties, in violation of Plaintiff's and Class Members'

45

reasonable expectations of privacy in their devices and data and or aided and abetted others to do the same.

145. Defendant violated Cal. Penal Code § 631 by knowingly and without permission intercepting, wiretapping, accessing, taking, and using Plaintiffs' and the Class Members' personally identifiable information and personal communications with others.

146. The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing in that each Plaintiff and each class member has suffered a concrete harm by having their privacy invaded by Defendant.

147. Each Plaintiff and Class Members seek all relief available under Cal. Penal Code § 631, including $2,500 per violation.

## SECOND CAUSE OF ACTION

## UNLAWFUL USE OF ELECTRONIC TRACKING DEVICE

## UNDER CALIFORNIA PENAL CODE § 637.7

148. Each Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

149. At all relevant times hereto, Defendant had and followed a policy and practice of using software systems that enabled it to surreptitiously intercept and record each Plaintiff's geolocation data.

150. At all relevant times hereto, the Plaintiffs and the Class Member's geolocation data was inherently private in nature, and they did not consent to sharing that private information with Defendant.

151. At all relevant times hereto, Defendant had and followed a policy and practice of not advising or warning the Plaintiffs and Class Members that their geolocation information would be intercepted and recorded to be later provided to third parties.

152. Defendant failed to obtain consent of the Plaintiffs and Class Members prior to intercepting and recording any of their geolocation data while carrying the mobile

46

computing devices issued to them that contained the Defendant's Securly software.

153. This conduct by Defendant violated section 637.7 of the California Penal Code.

154. The Plaintiffs and Class Members are entitled to recovery of statutory punitive damages in the amount of $5,000 per violation of Cal. Pen. Code § 637.2.

155. Plaintiffs' counsel is also entitled to attorneys' fees and costs pursuant to Cal. Code of Civ. Proc. § 1021.5.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT

### CAL. PENAL CODE. § 502

156. Each Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

157. The California legislature enacted the CDAFA with the intent of "expand[ing] the degree of protection afforded to individuals . . . from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a). The enactment of CDAFA was motivated by the finding that "the proliferation of computer technology has resulted in a concomitant proliferation of . . . unauthorized access to computers, computer systems, and computer data." *Id.*

158. Plaintiff's and Class members' mobile computing devices and personal computers containing Defendant's Securly software constitute "computers" within the scope of the CDAFA.

159. Defendant violated the following sections of the CDAFA:

   A.   Section 502(c)(1), which makes it unlawful to "knowingly access[] and without permission . . . use[] any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data;"

47

B.    Section 502(c)(2), which makes it unlawful to "knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network;"

C.    Section 502(c)(7), which makes it unlawful to "knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network."

160.  Defendant knowingly accessed Plaintiff's and Class members' computers without their permission by including within the Securly software described herein, which intercepts and transmits data, communications, and personal information concerning Plaintiff and Class members.

161.  Defendant used data, communications, and personal information that it intercepted and took from Plaintiff's and Class members' computers to wrongfully and unjustly enrich itself at the expense of Plaintiff and Class members.

162.  Defendant took, copied, intercepted, and made use of data, communications, and personal information from Plaintiff's and Class members' computers.

163.  Defendant knowingly and without Plaintiff's and Class members' permission accessed or caused to be accessed their computers, by installing its Securly software without Plaintiff's and Class members' informed consent, a software that intercepts and/or takes data, communications, and personal information concerning Plaintiff and Class members.

164.  Plaintiff and Class members are residents of California and used their computers in California at all relevant times in which Defendant made such unauthorized access.

165. Defendant accessed or caused to be accessed Plaintiff's and Class members' data, communications, and personal information from California.

166. Defendant uses data servers that are in part located in California and allow Defendant to access and process the data, communications and personal information concerning Plaintiff and Class members.

167. Defendant was unjustly enriched by intercepting, acquiring, taking, or using Plaintiff's and Class members' data, communications, and personal information without their permission, and using it for Defendant's own financial benefit. Defendant has been unjustly enriched in an amount to be determined at trial.

168. As a direct and proximate result of Defendant's violations of the CDAFA, Plaintiff and Class members suffered damages.

169. Pursuant to CDAFA Section 502(e)(1), Plaintiff and Class members seek compensatory, injunctive and equitable relief in an amount to be determined at trial.

170. Pursuant to CDAFA Section 502(e)(2), Plaintiff and Class members seek an award of reasonable attorneys' fees and costs.

171. Pursuant to CDAFA Section 502(e)(4), Plaintiff and Class members seek punitive or exemplary damages for Defendant's willful violations of the CDAFA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class Members pray that judgment be entered against Defendant, and Plaintiffs and the Class be awarded damages from Defendant, as follows:

- Certify the Class as requested herein;
- Appoint Plaintiffs to serve as the Class Representatives for the Class; and
- Appoint Plaintiffs' Counsel as Class Counsel in this matter for the Class.

In addition, Plaintiffs and the Class Members pray for further judgment as follows against Defendant:

//

First Amended Class Action Complaint for Damages                    23-CV-01304-AGS-DEB

**UNLAWFUL WIRETAPPING AND INTERCEPTION OF ELECTRONIC COMMUNICATIONS**

**UNDER CALIFORNIA PENAL CODE § 631**

- $2,500 to each Class Member pursuant to California Penal Code § 631(a) for each such unlawful interception of communications;
- Reasonable attorneys' fees pursuant to Cal. Code of Civ. Proc. § 1021.5;
- Injunctive relief to prevent the further occurrence of such illegal acts pursuant to California Penal Code § 631;
- An award of costs to Plaintiffs; and
- Any other relief the Court may deem just and proper including interest.

**UNLAWFUL USE OF ELECTRONIC TRACKING DEVICE**

**UNDER CALIFORNIA PENAL CODE § 637.7**

- $5,000 to each Class Member pursuant to California Penal Code § 637.2(a) for each such unlawful tracking;
- Reasonable attorneys' fees pursuant to Cal. Code of Civ. Proc. § 1021.5;
- Injunctive relief to prevent the further occurrence of such illegal acts pursuant to California Penal Code § 637.2(b);
- An award of costs to Plaintiffs; and
- Any other relief the Court may deem just and proper including interest.

**VIOLATION OF THE CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT**

**CAL. PENAL CODE. § 502**

- An award of compensatory, injunctive and equitable relief pursuant to CDAFA Section 502(e)(1), in an amount to be determined at trial;
- An award of punitive or exemplary damages for Defendant's willful violations of the CDAFA pursuant to CDAFA Section 502(e)(4);
- An award of reasonable attorneys' fees and costs to Plaintiffs pursuant to to CDAFA Section 502(e)(2);
- Any other relief the Court may deem just and proper including interest.

• Such other preliminary and equitable relief as the court determines to be appropriate.

### TRIAL BY JURY

172.   Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs and Class Members are entitled to, and demand, a trial by jury.

Respectfully submitted,

**SWIGART LAW GROUP**

Date:  September 22, 2023

By:  _s/ Joshua Swigart_
Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com
Attorneys for Plaintiffs
and the Putative Class