Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343
F: 866-219-8344

*Attorneys for Plaintiffs and The Putative Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHERI BATE, and her child N.M., and AZUCENA MEJIA, and her child A.S., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SECURLY, INC.,<br><br>Defendant. | CASE NO: 3:23-CV-01304-AGS-DEB<br><br>CLASS ACTION<br><br>**PLAINTIFFS' OPPOSITION TO SECURLY, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Andrew G. Schopler<br>DATE: January 26, 2024, at 2 p.m.<br>Courtroom: 5C |

## Table of Contents


Introduction ........................................................................................... 1

Argument ............................................................................................... 6

I. Plaintiffs Have Alleged Injury Sufficient For Article III Standing ........... 6

A. The Applicable Rule 12(b)(1) Standard ............................................. 6

B. Plaintiffs Have Sufficiently Alleged Concrete Harm ........................... 7

II. Plaintiffs Have Stated Plausible Claims Under California Statutes .......... 9

A. Plaintiffs Have Stated A Plausible Claim Under CIPA § 631(a) ......... 9

i. Defendant could have violated CIPA 631(a) even if its activities were at the direction of or authorized by schools that installed the Securly Software on their devices ........................................ 9

ii. Defendant acquired minor children's personally identifiable information during "transmission" of their communications .... 12

iii. Third-party tracking software vendors are not merely extensions of their clients ............................................................................ 13

iv. Plaintiffs have alleged the requisite intent to violate CIPA ...... 15

B. Plaintiffs Have Stated A Plausible Claim Under CIPA § 637.7 ......... 17

C. Plaintiffs Have Adequately Stated A Claim Under CDAFA ............. 20

Conclusion ............................................................................................. 23

**Page(s)**

**Cases**

*Aleisa v. Square, Inc.*,
493 F. Supp. 3d 806 (N.D. Cal. 2020) .......... 6

*Apple v. Superior Court*,
56 Cal. 4th 128 (2013) .......... 3

*Augustine v. Lenovo (United States), Inc.*,
2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) .......... 10

*Berman v. Freedom Fin. Network, LLC*,
400 F. Supp. 3d 964 (N.D. Cal. 2019) .......... 6

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 16

*Brown v. Google LLC*,
2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) .......... 8, 21

*Byars v. The Goodyear Tire and Rubber Co.*,
2023 WL 1788552 (C.D. Cal. Feb. 3, 2023) .......... 14

*Byrd v. U.S.*,
138 S. Ct. 1518 (2018) .......... 18

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 16

*Citizens for a Responsible Caltrans Decision v. Dept. of Transp.*,
46 Cal. App. 5th 1103 (2020) .......... 17

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) .......... 12

*Cousin v. Sharp Healthcare*,
2023 WL 4484441 (S.D. Cal. July 12, 2023) .......... 12

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 8

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 .......... 15

*Gonzales v. Uber Techs., Inc.*,
305 F.Supp.3d 1078 (N.D. Cal. 2018) .......... 12

*Greenley v. Kochava, Inc.*,
2023 WL 4833466 (S.D. Cal. July 27, 2023) .......... 7, 8, 9, 22

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
2018 WL 6802818 (C.D. Cal. Oct. 1, 2018) .......... 21

*In re Anthem, Inc. Data Breach Litig.*,
2016 WL 3029783 (N.D. Cal. May 17, 2016) .......... 21

*In re Facebook Privacy Litig.*,
572 F. App'x 494 (9th Cir. 2014) .......... 21

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 8, 9, 14, 21
*In Re Google Location History*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ........ 18, 19
*In re Meta Pixel Healthcare Litig.*,
2022 WL 17869218 ........ 12
*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ........ 21
*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. 2022) ........ 10
*Javier v. Assurance IQ, LLC*,
2023 WL 114225 (N.D. Cal. Jan. 5, 2023) ........ 11, 13, 14, 15
*Jones v. United States*,
(1960) 362 U.S. 257 ........ 18
*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 2838118 (N.D. Cal. April 6, 2023) ........ 14
*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........ 12
*Licea v. Old Navy, LLC*,
2023 WL 3012527 (C.D. Cal. Apr. 19, 2023) ........ 10
*Lindsay-Stern v. Garamszegi*,
2016 WL 11745948 (C.D. Cal. Oct. 13, 2016) ........ 21, 22
*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ........ 16
*Lujan v. Defenders of Wildlife*,
504 U.S. 555 ........ 7
*Mintz v. Mark Bartelstein & Assocs. Inc.*,
906 F. Supp. 2d 1017 (C.D. Cal. 2012) ........ 20
*Moreno v. San Francisco Bay Area Rapid Transit District*
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ........ 19
*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 954 (N.D. Cal. 2014) ........ 20, 21
*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ........ 8
*People v. Superior Ct of Los Angeles Cnty.*,
70 Cal. 2d 123 (1969) ........ 16
*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 14
*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 14
*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ........ 16

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal. App. 5th 427 (2018) .......... 16
*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 11, 13, 14
*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 .......... 14
*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 7, 8
*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (1978) .......... 11
*Thornhill Publ'g Co. v. Gen. Tel.*,
594 F.2d 730 (9th Cir. 1979) .......... 7
*TransUnion v. Ramirez*,
141 S. Ct. 2190 (2021) .......... 8
*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 7
*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 15
*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 10, 13, 15

**Statutes**

18 U.S.C. § 1030 .......... 21
Cal. Pen. Code § 502 .......... 1, 5, 9
Cal. Pen. Code § 631 .......... Passim
Cal. Pen. Code § 637.7 .......... Passim
Cal. Pen. Code § 637.7(d) .......... 17, 19
Cal. Penal Code § 502(c)(1)–(2), (7) .......... 20
§ 502(c) .......... 22
§ 502(c)(1) .......... 23
§ 502(e)(1) .......... 5, 21
§ 631(a) .......... Passim

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 1, 2
Fed. R. Civ. P. 12(b)(6) .......... 1, 2

Plaintiffs Sheri Bate, Azucena Mejia, and their respective minor children N.M. and A.S. ("Plaintiffs"), suing individually and on behalf of all similarly situated California residents ("Class Members"), respectfully submit this Memorandum of Points and Authorities in Opposition to the Motion to Dismiss the First Amended Complaint ("Mot.") filed by Defendant Securly, Inc. ("Defendant") for lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## **INTRODUCTION**

In the First Amended Complaint ("FAC"), Plaintiffs assert claims for unlawful wiretapping and interception of electronic communications under the California Invasion of Privacy Act ("CIPA") (Cal. Pen. Code § 631), unlawful use of an electronic tracking device (Cal. Pen. Code § 637.7), and violation of the California Consumer Data Access and Fraud Act (Cal. Pen. Code § 502). As alleged in the FAC, without any disclosures to Plaintiffs Bate and Mejia, their children's school districts had installed Defendant's Securly software on Chromebook® devices that, among other things, tracked the children's geolocation, their web search terms, the websites they visited, and the videos they watched. FAC ¶¶ 24, 30. It was not until June 2023 that Plaintiffs learned that Defendant had intercepted their minor children's personal communications and shared these and their video-viewing habits with third parties in an effort to create marketing campaigns and for other undisclosed purposes. *Id.* ¶¶ 26, 32.

Based on publicly available information (including information taken from Defendant's own website and marketing materials), Defendant never informs parents or their children before it begins to gather the children's sensitive private data. Instead, it directs its disclosures to the school districts and relies upon the school districts to obtain appropriate consents. FAC ¶ 55. Defendant was not simply filtering out certain content for safety purposes but rather *actively* intercepting search terms, page visits, application usage, and video viewing habits of Plaintiffs' children and children of the other Class Members on tracked mobile computing devices. Defendant later used and shared that intercepted data and communications with third parties to, in part, deliver targeted advertising to those consumers based on their geolocations, spending habits and personal characteristics. *Id.* ¶¶ 3, 71-73. While Defendant's "Student Privacy Policy"

on its website expressly acknowledges the legal obligation to provide prior notice and obtain appropriate consent before intercepting and sharing sensitive personal information from school district children, no such policy was disclosed to Plaintiffs or other Class Members. Defendant similarly failed to provide notice of its surreptitious data gathering or obtain parental consent through a pop-up dialog or sign-in screen on the mobile computing devices. *Id.* ¶¶ 66-72.

In response to these allegations, Defendant initially seeks dismissal under Rule 12(b)(1), arguing that Plaintiffs lack a "cognizable privacy interest" and therefore have no injury in fact and Article III standing. Mot. 3, 9-10. However, even if standing were somehow implicated, Rule 12(b)(1) simply does not entitle Defendant to introduce extrinsic evidence to wave away Plaintiffs' allegations of wrongdoing—including a declaration from its CEO defending how Defendant collects and uses minor school children's personal information and geolocation data obtained through Securly surveillance software installed on school-issued mobile computing devices—when Defendant's jurisdictional argument is based entirely on factual issues going to the merits of this action. And as even Defendant does not dispute, when viewed on their face and taken as true, the FAC's allegations more than sufficiently identify intrusions into privacy constituting the required injury in fact.

Defendant's Rule 12(b)(6) motion strategy fares no better. Before even turning to an analysis of Plaintiffs' claim for illegal eavesdropping in violation of CIPA § 631(a), Defendant dismisses CIPA § 631(a) as "a Cold-War era statute" enacted to address "espionage-related wiretapping and eavesdropping"[1] (Mot. 2, 12)—ignoring the substantial body of federal case law upholding the sufficiency of allegations under CIPA § 631(a) based on the unauthorized interception and sharing of personal information and other data over the internet by those who sell or install tracking software that monitors adult users' website searches and preferences for targeted advertising or other marketing purposes.

[1] It appears this line of argumentation was directly taken from a July 5, 2023, Lexology.com defense article on the subject, which states in part "CIPA is a Cold-War era wiretapping statutes enacted to prevent industrial espionage." https://www.lexology.com/library/detail.aspx?g=59fa6420-fb88-4cbd-b966-b5cc09796222 last accessed November 12, 2023.

It is no secret that laws like CIPA were written before the existence of the sophisticated spyware used by companies today—and like those developed by Defendant. However, companies' deployment of powerful, highly profitable, privacy circumventing technology to secretly monitor the American public—in conjunction with a lack of federal law to address these issues—have left consumers with few options to abate the rapid erosion of their privacy. Courts have determined how to apply these laws to new technologies and recognized this as a natural phenomenon. *See*, *e.g.*, *Apple v. Superior Court*, 56 Cal. 4th 128, 137 (2013) ("Fidelity to legislative intent does not 'make it impossible to apply a legal text to technologies that did not exist when the text was created. . . . Drafters of every era know that technological advances will proceed apace and that the rules they create will one day apply to all sorts of circumstances they could not possibly envision.'") (citation omitted). Ultimately, the conduct prohibited by laws like CIPA remains prohibited, and the teeth of these laws remain necessarily sharp to protect consumers—including minor children and their parents—from unlawful invasions of privacy such as those alleged in this case.

Turning specifically to Plaintiffs' CIPA § 631(a) claim, Defendant ignores the FAC's numerous allegations about how neither its Student Privacy Policy, nor any other terms and conditions for use of the Securly software, were ever disclosed to Plaintiffs and other Class Members—let alone consented to by them on behalf of their minor children. Instead, Defendant argues that: (1) the FAC does not plausibly allege unauthorized eavesdropping in violation of CIPA § 631(a)'s second clause because Defendant collected student personal information and geolocation data "at the direction of schools, providing its services on behalf of schools as their agent," and schools are authorized to monitor this data; (2) the FAC fails to adequately allege that any interception of student communications occurred "while in transit" meaning before the communications reached their intended recipients; (3) the FAC fails to allege that Defendant had the requisite intent to engage in unauthorized eavesdropping; and (4) Defendant cannot have improperly used or attempted to use or communicate information obtained through a violation of CIPA § 631(a) or aided and abetted any third party's wrongdoing under the statute because

the schools consented to Defendant's operation and collection of the relevant student data by installing the software on their mobile computing devices.

A number of these arguments have previously been rejected by district courts in the Ninth Circuit. First, contrary to Defendant's contentions, communications can be intercepted during "transmission" by being captured or redirected at the same time that they are received by the intended recipient. Second, Plaintiffs have alleged that Defendant's actions were intentional, as opposed to merely negligent, and are not required to show that Defendant knew that it was violating anti-eavesdropping federal and state laws.

Third, Defendant's remaining arguments turn on its faulty theory that it cannot be held responsible for its role in intercepting, using and sharing personal student information and geolocation data without parental knowledge or consent because Defendant was acting merely as an agent of the schools and because the schools were entitled to engage in surveillance with respect to student use of the schools' own mobile computing devices. But whether or not the schools themselves were entitled to implement a surveillance policy with proper disclosures and consent, Defendant did not fulfill its *independent legal obligation* to obtain parental consent in advance prior to collecting and disseminating personal student information.

Fourth, since the FAC is replete with allegations that neither Defendant nor the schools themselves informed Plaintiffs or other Class Members of the fact that student data would be intercepted in any manner, it is irrelevant whether or not Defendant acted as the schools' agent in installing the Securly software on school-issued mobile computing devices and collecting and using this data. Plaintiffs have specifically alleged that Defendant used the intercepted information as a means to promote its own mobile phone app to parents which does its own data gathering. FAC ¶¶41-42.

With respect to Plaintiffs' claim for violation of CIPA § 637.7, Defendant argues that its Securly software installed on a mobile computing device to provide the user's geolocation data does not in itself constitute an electronic tracking device under the statute because: (1) Section 637.7 requires that a "device" be a separate device that is placed on a wrongdoer's vehicle; and (2) the software's alleged geolocation services track the location and datapoints relevant only to

"school-issued devices" and CIPA § 637.7 does not apply when the device owners consent to tracking their own property. Mot. 18-20. However, whether or not the software by itself could constitute a prohibited tracking device, Defendant can still be liable for its role in facilitating the schools' unauthorized tracking since it enabled them to add geolocation functions to mobile computing devices that they issued to their minor students. By way of example, simply owning a vehicle does not entitle a stalker to track the whereabouts of its driver without informed consent. Furthermore, although the Chromebook®-type computers, iPads, tablets and other mobile computing devices issued to the students may have belonged to the schools themselves, the FAC alleges that purpose of installing the software's geolocation functions was not to safeguard or facilitate the retrieval of the devices but to obtain information about the locations where these children's devices were used.

Finally, as for Plaintiffs' claim for violation of California's Comprehensive Computer Data Access and Fraud Act ("CDAFA") § 502, while Defendant asserts that Plaintiffs lack standing to bring their claim because they fail to allege any economic loss, courts have recognized that personally identifiable information is in itself a valuable commodity and that emotional damages are cognizable under CDAFA § 502(e)(1). In addition, although Defendant contends that Plaintiffs fail to plausibly allege that Defendant knowingly accessed and used data without appropriate authorization, the FAC adequately supports this inference because Defendant deliberately collected students' personal information from school-issued mobile computing devices then used and shared this data with third parties for marketing and other purposes while making no attempt to provide appropriate notification and consent mechanisms regarding these practices. Nor does it matter that the schools owned those devices and could have engaged in surveillance with parental consent because, as the FAC alleges, *the schools did not obtain such consent.* Defendant's reliance on its purported status as an "agent" does not entitle it to evade its independent obligations when taking and using these children's personal student data. Moreover, contrary to Defendant's assertions, the FAC's allegations regarding Defendant's unauthorized sharing of students' personal information with third parties to track and target advertisements on other websites, as well as to market Defendant's own mobile app

to parents, makes it plausible to infer that Defendant used student data to "wrongfully control or obtain money, property, or data."

## ARGUMENT

### I. Plaintiffs Have Alleged Injury Sufficient For Article III Standing

#### A. The Applicable Rule 12(b)(1) Standard

Defendant maintains that its Rule 12(b)(1) challenge to the Court's jurisdiction is factual because "[t]he Declaration of Securly's CEO properly controverts the FAC's baseless claims that any privacy interest exists and requires that the plaintiff present actual evidence of the harms they claim to have suffered in order to establish standing." Mot. 10. As a consequence, Defendant contends that the Court can consider this extrinsic evidence of whether Defendant's Securly software improperly tracked or intercepted minor students' personal information and geolocation data and whether Defendant improperly shared this information with third parties for purposes of targeted advertising and marketing, among others. *Id.* 9-10 & n.15. Defendant's reasoning on this point is flawed.

The declaration submitted by Defendant's CEO primarily asserts that the schools were told that they (rather than Defendant) were responsible for obtaining consent from parents of minor children and disputes that the software was designed or used for any purpose other than to help schools keep children safe. But whether Defendant had any obligation to obtain express parental consent to the Securly software's terms and conditions, and whether Defendant infringed on the privacy rights of the students, are questions that must be decided on the merits.

The Court cannot resolve Defendant's factual attack on the Court's jurisdiction (or, specifically, on Plaintiffs' Article III standing based on a failure to establish injury to "a cognizable privacy interest") without simultaneously deciding the merits of Plaintiffs' statutory claims. *See*, *e.g.*, *Aleisa v. Square, Inc.*, 493 F. Supp. 3d 806, 813 (N.D. Cal. 2020) (denying a Rule 12(b)(1) motion to dismiss styled as a "factual" attack on the court's jurisdiction after concluding that the issue of whether "express consent" was obtained "[wa]s a key factual dispute going to the merits and not appropriate for resolution as a standing question"); *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 979 (N.D. Cal. 2019) (explaining that the

court previously denied defendant's Rule 12(b)(1) motion to dismiss because "there are factual issues in dispute that cannot be determined based upon the record here").

Even if these questions were suitable to resolve on a motion to dismiss (they are not), at least one independent source (Common Sense Media) has published warnings about the serious data privacy issues identified in Securly software, including amongst others: (i) the automatic collection of personally identifiable information ("PII"), education records and geolocation data for minor children; (ii) the sharing of collected information with third parties in a non-anonymous or de-identified format and seemingly unrestricted use of that data by these third parties for analytics, product marketing and improvement; and (iii) the lack of any apparent opt-in consent for users or means for users to control the use of their information through privacy settings. FAC ¶¶ 103-06. While the CEO's self-serving declaration may attempt to dispute any wrongful conduct infringing on Plaintiffs' statutorily recognized privacy rights, it is simply not enough to force Plaintiffs to litigate disputes going to the merits of the claims at this stage.

**B. Plaintiffs Have Sufficiently Alleged Concrete Harm**

Notably, Defendant concedes that any facial challenge to this Court's jurisdiction under Rule 12(b)(1) would fail, undoubtedly because then "the presumption of truthfulness attaches to the allegations in the complaint," and the Court would be "limited to the four corners of the pleading in determining whether it has jurisdiction over the matter." *Greenley v. Kochava, Inc.*, 2023 WL 4833466, at *3 (S.D. Cal. July 27, 2023) (*citing Thornhill Publ'g Co. v. Gen. Tel. Elec*, 594 F.2d 730, 733 (9th Cir. 1979)). To survive a Rule 12(b)(1) facial challenge, "the plaintiff must 'clearly . . . allege facts demonstrating' each element [of standing]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (*quoting Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Plaintiffs have done just that.

Defendant's Rule 12(b)(1) argument only challenges the "injury-in-fact" element of standing, which Plaintiffs properly pled. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560. A "concrete" injury "must be 'de facto'; that

is, it must actually exist." *Id.* at 340 (*citing Black's Law Dictionary* 479 (9th ed. 2009)). "Although 'the most obvious' concrete harms are tangible--e.g., physical or monetary, 'various intangible harms can also be concrete.'" *Greenley*, 2023 WL 4833466, at *3 (*quoting TransUnion v. Ramirez*, 141 S. Ct. 2190, 2204). These include injuries "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*

"A right to privacy 'encompass[es] the individual's control of information concerning his or her person.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (*quoting Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)). Violations of this right fall into the category of traditionally recognized harms. *Greenley*, 2023 WL 4833466, at *3 (*citing Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to privacy")). As a result, intrusions into privacy can constitute an injury in fact. *Greenley*, 2023 WL 4833466, at *3.

In *In re Facebook*, 956 F.3d 589, which concerned whether Facebook-users had standing to sue Facebook for tracking their browsing histories after they had logged out of Facebook, the Ninth Circuit reasoned that Facebook's practices enabled it to "amass a great degree of personalized information . . . without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives." *Id.* at 599. The Ninth Circuit categorically rejected the argument that the collection of private data is not an injury in fact: "In an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion . . . that federal courts are powerless to provide a remedy when an internet company surreptitiously collected private data . . . is untenable." *Id.* (citation omitted). For this reason, the Ninth Circuit upheld standing. *See id.* at 598-99. *See also Brown v. Google LLC*, 2023 WL 5029899, at *5 (N.D. Cal. Aug. 7, 2023) (holding that account users had alleged concrete privacy harms sufficient to confer Article III standing where users "ha[d] set forth specific facts demonstrating that the reason Google ha[d] access to their anonymous, aggregated data [wa]s through the collection and storage of information from users' private browsing history without consent") (citations omitted).

Here, Plaintiffs allege that Defendant violated three California statutes by intercepting Plaintiffs' minor children's personal information and geolocation data without their knowledge or consent while those children were carrying and using mobile computing devices issued to them that contained Defendant's software. Plaintiffs further allege that Defendant combined this data with other data collected by them and shared it with third parties for marketing and other undisclosed purposes, including promoting Defendant's own mobile app to parents. At no point did Defendant take steps to ensure that parents were properly informed about Defendant's own Student Privacy Policy or other terms and conditions regarding the Securly software prior to engaging in these surreptitious interceptions and data gathering activities.

Through these allegations, and throughout the First Amended Complaint, Plaintiffs easily have met their pleading burden to demonstrate an injury-in-fact. Plaintiffs' minor children unwittingly revealed their locations, search terms and video watching habits (among other things) on mobile computing devices on which Defendant's tracking software was installed. Defendant caused this secretly gathered data to be intercepted, analyzed, and used by third parties without an inkling of Plaintiffs' consent. The private nature of the school-aged children's interactions with their devices are self-evident. Plaintiffs thus have standing to bring this suit. *See Greenley*, 2023 WL 4833466, at *3; *In re Facebook*, 956 F.3d at 598-99.

**II. Plaintiffs Have Stated Plausible Claims Under California Statutes**

Defendant seeks dismissal under Rule 12(b)(6) in the alternative on the grounds that Plaintiffs have failed to state claims for unlawful wiretapping and interception of electronic communications (Cal. Pen. Code § 631), unlawful use of an electronic tracking device (Cal. Pen. Code § 637.7), and violation of the CDAFA (Cal. Pen. Code § 502). Defendant's arguments fail to establish the legal insufficiency of these claims.

**A. Plaintiffs Have Stated A Plausible Claim Under CIPA § 631(a)**

i. <u>Defendant could have violated CIPA § 631(a) even if its activities were at the direction of or authorized by schools that installed the Securly Software on their devices</u>

Defendant contends that it cannot plausibly be liable for itself engaging in unauthorized eavesdropping itself in violation of CIPA second clause, using such information in violation of

CIPA § 631(a)'s third clause, or aiding and abetting another party's unauthorized eavesdropping in violation of CIPA § 631(a)'s fourth clause because Defendant collected student personal information and geolocation data "at the direction of schools, providing its services on behalf of schools as their agent," and schools are authorized to monitor this data. Mot. 6-7, 11, 14.

Defendant conveniently ignores the FAC's numerous allegations that the schools themselves did not properly disclose the use of the Securly software on school-issued mobile computing devices prior to allowing Defendant to track and use personal student information and geolocation data. *See*, *e.g.*, FAC ¶¶ 24-26, 30-32, 46-55. Plaintiffs have met their pleading burden by stating that they did not provide express or implied consent to the wrongs alleged in the FAC. *See Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050, at *2 (S.D. Cal. Aug. 2, 2023) ("Plaintiff asserts in her amended complaint that she never consented to Defendant's actions . . . and that Defendant failed to present a pop-up disclosure or consent form alerting her that her website visits were being monitored and recorded. . . . Defendant's consent defense turns on the outcome of multiple factual disputes such as whether Plaintiff actually saw and interacted with the pop-up and whether Plaintiff viewed the privacy policy. These factual disputes are not suitable for resolution at this stage in the proceedings. . . . As a result, the Court declines to dismiss Plaintiff's first cause of action [for violation of CIPA § 631] based on consent."); *Licea v. Old Navy, LLC*, 2023 WL 3012527, at *4 (C.D. Cal. Apr. 19, 2023) ("Plaintiff explicitly pleads that he and the purported class members did not consent to the recording of their conversations with Defendant.") (citation omitted); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) (finding that plaintiff's pleading that stated she did not consent to recording was sufficiently pled to overcome a 12(b)(6) motion); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. 2022) (finding that the plaintiff met his pleading burden where he alleged he did not give express prior consent).

Furthermore, it would make very little sense if a third-party software provider could avoid liability under CIPA § 631(a) by simply delegating responsibility for obtaining user consent to the customer who installs its tracking software on mobile computing devices, even though the provider knows said devices will be issued to others. Nothing in the text, caselaw, or

legislative history surrounding CIPA § 631 supports Defendant's argument that "any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). On the contrary, "Defendant[] invite[s] an interpretation that would vitiate the statute's protections." *Id.*

CIPA § 631(a) imposes liability "for three *distinct and mutually independent* patterns of conduct: [1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978) (emphasis added). In other words, "reading" the data being intercepted (prong two) and "using" the intercepted data (prong three) are separate and distinct theories of liability; an entity can violate prong two without using the data for its own purpose. Defendant's interpretation would "read[] a use requirement into the second prong [and] would add requirements that are not present (and swallow the third prong in the process)." *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023).

Going further, the fourth prong of CIPA § 631(a) specifically provides for liability for one who "aids, agrees with, *employs*, or conspires with any person" to violate the statute. Cal. Penal Code § 631(a)[iv] (emphasis added). This provision contemplates liability for those who wiretap solely for the benefit of another, such as in an employer-employee or contractor/service provider relationship. But again, Defendant's theory would add language to this section of the statute by requiring allegations that Defendant was not simply wiretapping at the direction of or for the benefit of the schools. And again, such additional textual requirements are unsupported. *Cf. Javier*, 2023 WL 114225, at *6. Thus, Plaintiffs' allegations that Defendant collected and accessed the contents of students' private activities, regardless of whether Defendant used them for its own purposes, is sufficient to state a violation of CIPA § 631(a)[ii].

ii. Defendant acquired minor children's personally identifiable information during "transmission" of their communications

Defendant also asserts that the FAC fails to plausibly allege that student communications were intercepted while "in transit" to the school or other intended recipients. Again, this argument is not grounded in the facts alleged and ignores controlling legal authority.

Courts construe the CIPA "in transit" element in the same manner as the similar "intercepted" element of the federal Wiretap Act, which merely requires that interception occur while the communications are being made to the intended recipient and does not require that those communications be recorded or read before they reach the recipient. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (holding that under the federal Wiretap Act, a useful analog to CIPA, the plaintiff must allege "acquisition contemporaneous with transmission"); *cf. Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1050-51 (N.D. Cal. 2018) (recognizing that the CIPA "in transit" element is analogous to the federal Wiretap Act's "intercepted" element and requires the same analysis); *Gonzales v. Uber Techs., Inc.*, 305 F.Supp.3d 1078, 1086 (N.D. Cal. 2018) (defining "intercept" under the federal Wiretap Act to require acquisition contemporaneous with transmission, as that is most consistent with the ordinary meaning of "intercept").

In fact, the FAC alleges that the Securly software was designed for the *very purpose* of eavesdropping on student communications (including website search terms and video selections) by surreptitiously and contemporaneously redirecting these communications to Defendant. A similar allegation was made in *In re Meta Pixel Healthcare Litigation*, where Meta "d[id] not dispute that the intentional or interception elements [we]re met" when "Meta receive[d] information through the Pixel." *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *11. *See also Cousin v. Sharp Healthcare*, 2023 WL 4484441, at *9-10 (S.D. Cal. July 12, 2023) (rejecting hospital defendant's argument that communications with plaintiffs were not intercepted "in transit" because "Meta Pixel creates two separate communications, one between the user's browser and the hospital, and a second between the user's browser and Meta"; plaintiffs had adequately alleged an interception "in transit" at the pleadings stage where

they alleged that "without their authorization [defendant] intentionally installed Meta Pixel on its website and shared user's information with Meta in real time").

Here, Plaintiffs assert that their minor children were sending and communicating information on school-issued mobile computing devices and at the same time the children's actions and the content of their communication were simultaneously captured by Defendant through its Securly software without their or Plaintiffs' knowledge. Defendant is not alleged to have merely shared information with the schools or third parties after recording the data. While Defendant broadly asserts that allegations that it intercepted data as it was being transmitted "in real time" is insufficient (Mot. 15), the above cases confirm that such surreptitious interception of communications with websites on the mobile computing devices in real time satisfies the "in transit" requirement at the pleadings stage.

iii. <u>Third-party tracking software vendors are not merely extensions of their clients</u>

Defendant also argues that since the schools themselves consented to permit the Securly software to track student communications and geolocations, there cannot have been a violation of CIPA § 631(a) even if the minor students' parents did not consent. This is another variant of Defendant's contention that it acted as the schools' agent and was therefore authorized to use its tracking software to the extent that the schools themselves were authorized. But, again, as the FAC alleges, the schools did not properly disclose the use of the Securly software on school-issued mobile computing devices or obtain consent. *See*, *e.g.*, FAC ¶¶ 24-26, 30-32, 46-55. To the extent Defendant enabled the schools to eavesdrop on minor students' communications without the consent of the students' parents, this would facilitate a violation of CIPA § 631(a) and thus is conduct that squarely falls under the aiding and abetting prong of that law.

Furthermore, courts have recognized that a third-party software provider that installs tracking software is not merely an agent or extension of the website operator, or other independent entity that uses that software for its own purposes, and can itself violate CIPA § 631(a). The authority on this point is overwhelming. *See*, *e.g.*, *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *3-*6 (N.D. Cal. Jan. 5, 2023); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520-21 (C.D. Cal. 2021); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal.

2021); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019); *Byars v. The Goodyear Tire and Rubber Co*., 2023 WL 1788552, at *4-5 (C.D. Cal. Feb. 3, 2023); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *5-6 (N.D. Cal. April 6, 2023). *Saleh* explained that "FullStory is a separate legal entity that offers 'software-as-a-service' and not merely a passive device. Defendants' argument would imply that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party. The text of section 631(a), however, does not contain any such exception . . . ." 562 F. Supp. 3d at 520.

The California Supreme Court has also twice explained that the "express objective" of CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line permits an outsider to tap his telephone or listen in on the call." *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985); *see also Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 ("As [the California Supreme Court] explained in *Ribas* . . . a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.") (emphasis added). The Ninth Circuit similarly explained in *In re Facebook Internet Tracking Litig*., 956 F.3d 589, 608 (9th Cir. 2020), that one of the purposes of wiretapping and eavesdropping statutes is "to prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor'" like Defendant here. *See also id.* at 598 (explaining similar legislative goals of CIPA and the federal Wiretap Act). Defendant's position simply cannot be reconciled with these authorities that it chose to overlook in in lieu of addressing the merits of this case.

In *Javier*, after a comprehensive analysis the district court held that the third-party eavesdropper could be held liable under the second prong of section 631(a) despite the defendants' characterization of the third party as a mere "extension" of the party to the communication, i.e., the website owner/operator. *Id.*, 2023 WL 114225, at *3-6. After recognizing dueling sets of cases on this precise issue, the court explained why the case law holding that software vendors are "extensions" of the websites that employ them is

unpersuasive. *See Javier*, 2023 WL 114225, at *6; *see also Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (distinguishing between allegations of mere recordation that is "routine documentation" as opposed to "data mining," noting that the outcome of its holding would have been different if the third party "affirmatively engages with that data in any way other than to store it").

Here, the Court should agree with the reasoning of cases like *Yoon*, *Saleh*, and *Revitch*, and find that Defendant acted as a third-party eavesdropper (or at the very least that this is a disputed issue of fact) because Plaintiffs can plausibly allege that Defendant used or had the capability to use the data for their own benefit or the benefit of other third parties with which it chose to share that data. As the court in *Yoon* articulated, this is "beyond the ordinary function of a tape recorder." *Yoon*, 549 F. Supp. 3d at 1081. *See also Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *5 (noting that "[i]n cases where courts have found software companies to be third-party eavesdroppers, those third parties had mined information from other websites and used that information for their own purposes") (citations omitted).

iv. <u>Plaintiffs have alleged the requisite intent to violate CIPA</u>

Section 631 of CIPA states that any person who "willfully and without the consent of all parties to the communication . . . reads, or attempts to read, or to learn the contents or meaning of any . . . communication" is liable for violation of the statute. Cal. Penal Code § 631(a). Defendant now argues that Plaintiffs have failed to allege that Defendant intentionally sought to intercept or capture the content of electronic communications without consent. Mot. 16-17. However, the FAC makes these allegations repeatedly, emphatically, and unmistakably, rendering Defendant's arguments to nothing more than a factual dispute as to its intent.

The FAC comprehensively alleges that Defendant intentionally used its Securly software to intercept, collect and disseminate the personal communications and other data of Plaintiffs' and the other Class Members' minor children despite knowing that neither Defendant nor its school district clients had obtained parental permission beforehand. FAC ¶¶ 36, 77, 82, 94, 96. At the pleadings stage, these allegations plausibly support a reasonable inference that Defendant had the requisite intent to engage in unauthorized eavesdropping, to use information obtained

from such eavesdropping, and to enable the schools to engage in conduct violating CIPA § 631(a). Even so, intent is a typical example of a factual issue that cannot be resolved at the pleadings stage, and Defendant's argument at most concedes that there is now a factual dispute for a jury to resolve. *See People v. Superior Ct of Los Angeles Cnty.*, 70 Cal. 2d 123, 134 (1969).

At a minimum, Plaintiffs' allegations demonstrate that Defendant deployed a surveillance and eavesdropping software program on school-issued mobile computing devices and that this program was specifically designed to capture contents of communications, and courts have found that such allegations are sufficient to support the required element of willfulness. *See Lopez v. Apple, Inc*., 519 F. Supp. 3d 672, 689 (N.D. Cal. 2021) (willfulness properly alleged where Apple was aware that at least some confidential communications were being recorded, even if "accidentally"); *see also Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 435 (2018) (finding element satisfied where company intended to record work-related calls, but designed the system to record all calls).

To the extent Defendant suggests that § 631 extends the "willfulness" element to actual knowledge of lack consent, this is refuted by the very language of the statute. Section 631 makes a defendant liable who "willfully and without the consent of all parties to the communication ... reads, or attempts to read, or to learn the contents or meaning of any [intercepted] message, report, or communication." Cal. Penal Code § 631(a). The willfulness requirement thus applies to the reading or learning of the contents of the communication; the statute is violated if that conduct is done intentionally. "[T]he party seeking the benefit of the [consent] exception" to CIPA bears "the burden to prove consent," not simply to prove that the defendant believed there was consent. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021). *See also Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (plaintiffs properly alleged CIPA claim despite argument that plaintiffs had consented based on disclosures); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021) ("any consent [to the wiretap] must be actual" (emphasis added)).

Here, Plaintiffs do not allege that Defendant "accidentally" intercepted the contents of their communications; rather, Plaintiffs allege that Defendant's Securly surveillance software

functioned exactly as Defendant designed, and that Defendant was and is aware of this interception, which was without Plaintiffs' consent.

**B. Plaintiffs Have Stated A Plausible Claim Under CIPA § 637.7**

Section 637.7 of the CIPA prohibits the use of an "electronic tracking device" without consent and defines "electronic tracking device" as "any device attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals." Cal. Pen. Code § 637.7(d). Defendant improperly focuses on whether or not Defendant "attached" a device to track the geolocation of the minor students to whom schools issued Chromebook®-type computers, iPads, tablets and other mobile computing devices for distance learning purposes, and also on the fact that the mobile computing devices on which Defendant's Securly software was installed belonged to the schools. Mot. 18-19.

As alleged in the FAC, Defendant enabled schools to add geolocation functions to mobile computing devices that were issued to students; this caused those devices to become "electronic tracking devices" because they were used to reveal the location at any given time of students being transported in vehicles or other moving things (including cars, school buses, subways and bikes). FAC ¶¶ 79-95, 149-52. While the statute may not originally have contemplated that subsequent technological advancements would introduce devices that a vehicle passenger could simply carry or use *en route* to the passenger's destination, but that should not be dispositive. A better reading of the statute should be: technological advancements that make wireless electronic surveillance possible on non-consenting consumers still results in conduct prohibited by the statute—namely, tracking a vehicle's location or movement without consumer consent. It is logical to infer that tracking a vehicle's location or movement will also track its occupant's location or movement; the Legislature could not have meant to criminalize the use of devices to track only unoccupied or abandoned vehicles. *See Citizens for a Responsible Caltrans Decision v. Dept. of Transp.*, 46 Cal. App. 5th 1103, 1119 (2020) ("Well-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.") (citation omitted).

Moreover, while Defendant asserts that the schools were entitled to track their own mobile computing devices, the statute does not permit the use of tracking devices merely because those devices are themselves owned by the tracker and loaned to a vehicle's occupant (here, the minor students to whom the devices were issued for educational purposes). Were it otherwise, anyone could simply attach a tracking tag to any item they own, lend it out to another, and then assert its own permission to geotrack it. That result is directly contrary to CIPA's purpose. The FAC alleges that the devices were used to determine the students' locations—not for the sole or primary purpose of safeguarding school property. Indeed, the expectation of privacy that derives from the right to exclude others (such as a student's right to exclude others from use of a school-issued mobile computing device) is the same regardless of whether the property is owned by or only loaned to a party. *See Byrd v. U.S.*, 138 S. Ct. 1518, 1528 (2018) ("The Court sees no reason why the expectation of privacy that comes from lawful possession and control and the attendant right to exclude would differ depending on whether the car in question is rented or privately owned by someone other than the person in current possession of it, much as it did not seem to matter whether the friend of the defendant in *Jones v. United States* (1960) 362 U.S. 257, 259] owned or leased the apartment he permitted the defendant to use in his absence. Both would have the expectation of privacy that comes with the right to exclude.").

Defendant relies on cases in which software, like Google Maps and Chrome that stored users' geolocation data, was found not be "devices" attached to a mobile device under § 637.7 "because [software is] not equipment" (*In Re Google Location History*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (*In re Google*)) (Mot. 19), the issue is not whether the Securly software itself was a "device" but rather whether Defendant collaborated with the schools to create such a "device" by enabling those schools to install the software's geolocation functions on mobile computing devices that were then given to students being transported in cars and other moving things. Defendant argues form over function. Put another way, Defendant and the schools jointly enabled these students to be tracked as they traveled to and from the schools, their residences, and other destinations, using devices equipped by Defendant for this purpose.

There can be no serious dispute that the mobile computing devices containing Defendant's Securly software are mechanical equipment. Indeed, the *In re Google* court deemed facially plausible plaintiffs' alternative argument there that "the GPS hardware, cellular radios, and WiFi chips embedded in mobile devices constitute 'electronic tracking devices' within the meaning of Section 637.7" because "Section 637.7 defines 'electronic tracking device' broadly" to "reach[ ] any device that 'determine[s] the location or movement of a person.'" 428 F. Supp. 3d at 194. However, the plaintiffs' argument in that case failed only because, at the motion to dismiss stage, they did not provide "facts from which the Court c[ould] infer GPS hardware, cellular radios, and/or WiFi chips actually determine[d] the location of movement of a person." *Id.* Here, the FAC raises a triable dispute that the devices with Defendant's Securly software installed receive and transmit signals that enable the students' movements to be tracked while traveling with those devices. No information is more worthy of privacy protection than schoolchildren's whereabouts while travelling to or from school, especially when that information is personally identifiable to a particular child.

To the extent that an "attached" electronic tracking device is necessary to violate CIPA § 637.7, there are sufficient facts here to show this occurred. Mot. 18-19. The court in *Moreno v. San Francisco Bay Area Rapid Transit District* held that a user-downloaded application is not an attached device within the meaning of section 637.7(d) because it is not "a thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment." 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017). Here, however, students are issued Chromebook®-type computers, iPads, tablets and other mobile computing devices by the schools *already* containing the Securly surveillance software. Students do not "download" the software or its geolocation functions. Rather, the Securly software is pre-installed on the school-issued mobile computing devices to enable the devices' tracking features. As those devices are "mechanical" equipment adapted for the particular purpose of tracking student movements, they meet CIPA § 637.7's definition of device—even under *Moreno*'s standard.

**C. Plaintiffs Have Adequately Stated A Claim Under CDAFA**

Under CDAFA, a person who knowingly accesses a computer system or computer data may be guilty of a public offense. Section 502(c) states in relevant part:

> [A]ny person who commits any of the following acts is guilty of a public offense:
>
> (1) Knowingly accesses and without permission . . . uses any data, computer, computer system, or computer network in order to . . . wrongfully control or obtain money, property, or data.
>
> (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network. . . .
>
> (7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

Cal. Penal Code § 502(c)(1)–(2), (7).

Defendant argues that Plaintiffs have failed to allege a cognizable violation of these subsections because: (1) Plaintiffs do not have standing to bring a civil claim under CDAFA because they fail to allege any actionable "loss or damage" with sufficient particularity; (2) Defendant could not plausibly have "knowingly" accessed Plaintiffs' mobile computing system "without permission" because (according to Defendant's own characterization) the Securly software "operates as a lawful tool used by schools" and the computers and data at issue belonged to the schools, not to the students; and (3) Plaintiffs fail to allege that Defendant used student data to "wrongfully control or obtain money, property, or data." Mot. 23-25. Each of these arguments is misplaced.

First, the CDAFA's "damage or loss" requirement sets a low bar such that "any amount of loss or damage may be sufficient." *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1032 (C.D. Cal. 2012) (finding time restoring password and investigating who had hacked his email account sufficient to state a claim for damage or loss under the CDAFA) (internal citation omitted). Typically, only after a fact-intensive inquiry will courts find that a plaintiff has not sustained a "qualifying loss." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 964 (N.D. Cal. 2014) (collecting cases under CDAFA's more burdensome federal counterpart).

Specifically, "any amount of damage or loss caused by the defendant's CDAFA violation is enough to sustain the plaintiff's claims." *Id.*

Most recent decisions have found that personally identifiable information ("PII") is a "valuable commodity," and that theft of this information results in loss of its sales value. *See, e.g.*, *In re Facebook Privacy Litig.*, 572 F. App'x 494 (9th Cir. 2014) (allegation that Facebook disseminated plaintiffs' PII, and that plaintiffs were harmed "by losing the sales value of that information," adequately stated claim for damages); *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) (same); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2017 WL 3727318, at *13-14, 49 (N.D. Cal. Aug. 30, 2017) (finding that "loss of value of PII" is "sufficient to plausibly allege injury" for the purposes of Article III standing); *Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 WL 6802818, at *5 (C.D. Cal. Oct. 1, 2018) ("In recent data breach cases, however, courts have found that the allegations that one's PII is a 'valuable commodity' and that theft of this information results in loss of its sales value are sufficient to plead damages . . . ."). *Accord Brown*, 2023 WL 5029899, at *19 (finding that the Ninth Circuit had recognized "that plaintiffs can state an economic injury for their misappropriated data," and that "[b]ecause plaintiffs proffer[ed] evidence that there is a market for their data—one Google itself has created—the Court [could not] . . . rule, as a matter of law, that plaintiffs suffered no damages under CDAFA") (*citing In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020)).

Furthermore, CDAFA is California's version of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), and courts in this circuit have applied the CFAA definitions of "loss" and "damage" to CDAFA. *See, e.g.*, *Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at *6 (C.D. Cal. Oct. 13, 2016) (citing cases). The current text of the CFAA explicitly allows "compensatory damages" in most situations and such damages "generally include damages for pain, suffering, and other emotional harms." *Id.* (citations omitted). "There is no reason to artificially constrict the scope of CFAA damages—and, by extension, CDAFA damages—and no binding precedent mandates such a holding." *Id.* (citations omitted). Accordingly, because emotional damages are cognizable under CDAFA § 502(e)(1), "it is not

necessary to reach . . . [the issue of] whether any economic damages have been shown," nor is it necessary to "evaluat[e] whether CDAFA's 'loss' term encompasses more than economic loss." *Id.* The FAC's allegations support Plaintiffs' claim that Defendant's actions caused Plaintiffs substantial emotional distress as parents of minor children whose privacy rights were infringed, and, furthermore, that Plaintiffs have an ownership interest in at least some of the data in some of their children's communications to which Defendant provided access to third parties without Plaintiffs' consent for marketing and other commercial and unknown purposes.

Second, Defendant is alleged to have knowingly enabled school surveillance of students' personal information and other data and shared this data with third parties for Defendant's own purposes without taking even minimal steps to provide appropriate notification and consent mechanisms regarding these practices. Despite acknowledging in its own Student Privacy Policy that it was Defendant's legal responsibility as the party collecting and transmitting this data to obtain the required parental authorization before engaging in such activities, Defendant now confirms that it relied entirely on the schools to fulfill its own obligation. Yet, the FAC alleges that Plaintiffs and other Class Members were previously unaware that students' personal information was being intercepted and disseminated by Defendant.

These alleged facts—which the FAC notes were also flagged in an independent publication's review of the Securly software and Defendant's privacy practices (FAC ¶¶ 103-05)—are more than enough to plausibly infer that Defendant knowingly accessed and used this data without parental permission. *See*, *e.g.*, *Greenley v. Kochava, Inc.*, 2023 WL 4833466, at *13 (S.D. Cal. July 27, 2023) (Hon. J. Bashant discussing the "without permission" element of CDAFA, noting that "[t]o establish consent under CDAFA, a defendant must 'explicitly notify users of the practice at issue'" through "specific disclosures provided to the user") (citation omitted).

Given the schools' own alleged failure to obtain the required consent, Defendant can hardly avoid liability for its practices under CDAFA § 502(c) by merely asserting that the data in question belonged to the schools that owned the mobile computing devices. While the devices belonged to the schools, the expectation of privacy belonged to the students. The student

data on those devices could not be used without restriction by Defendant or other software vendors acting as the schools' "agents" even if the schools were otherwise entitled to engage in certain surveillance on those devices *even assuming* that they had provided appropriate disclosures and obtaining appropriate parental consent. But Defendant's argument that schools may do whatever they wish with data on mobile computing devices issued to students simply proves too much and cannot negate Defendant's independent role in taking and using such student data without the authorization of the students' parents.

Lastly, the FAC's allegations regarding Defendant's sharing of personal information with third parties to target advertising and improve marketing (among other purposes including promoting its own mobile app to parents) without the knowledge or consent of the students or their parents (FAC ¶¶ 25, 31, 42, 73, 96-98, 144) support a reasonable inference that Defendant used student data to "wrongfully control or obtain money, property, or data." While Defendant completely ignores these allegations, they are entitled to be credited by the Court at the pleading stage and undoubtedly support Plaintiffs' claim under CDAFA § 502(c)(1).

**CONCLUSION**

For all of the foregoing reasons, this Court should deny Defendant's Motion in its entirety.

Respectfully submitted,

**SWIGART LAW GROUP**

Date: January 11, 2024

By: *s/ Joshua Swigart*
Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com
Attorneys for Plaintiffs
and the Putative Class