Amy Jane Longo (CA Bar No. 198304)
ROPES & GRAY LLP
10250 Constellation Blvd
Los Angeles, CA 90067
Tel: (310) 975-3300
Fax: (310) 975-3400
Email: amy.longo@ropesgray.com

Briana Fasone (*pro hac vice*)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Tel. (212) 596-9000
Fax (212) 596-9090
Email: briana.fasone@ropesgray.com

*Attorneys for Defendant Securly, Inc.*

Edward McNicholas (*pro hac vice*)
Frances Faircloth (*pro hac vice*)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
Tel: (202) 508-4600
Fax: (202) 508-4650
Email:
edward.mcnicholas@ropesgray.com
fran.faircloth@ropesgray.com

*Attorneys for Defendant Securly, Inc.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SHERI BATE, and her child N.M., and AZUCENA MEJIA, and her child A.S., individually and on behalf of others similarly situated,

Plaintiffs,

v.

SECURLY, INC.,

Defendant.

Case No. 23-cv-01304-AGS-DEB

**DEFENDANT SECURLY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Judge: Hon. Andrew G. Schopler

Complaint Filed: July 17, 2023 FAC Filed: September 22, 2023

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. PLAINTIFFS LACK ARTICLE III STANDING .......... 2

II. PLAINTIFFS' CIPA AND CDAFA CLAIMS FAIL ON THE MERITS .......... 5

A. Schools Authorized Securly to Process Student Data .......... 5

B. Plaintiffs Fail to Allege Securly Intentionally Violated § 631(a) .......... 7

C. Plaintiffs Fail to State a Claim Under CIPA Section 637.7 .......... 9

D. Plaintiffs Fail to State a Claim Under CDAFA .......... 9

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Board of Educ. of Indep. Sch. Dist. No. 92 v. Earls*,
536 U.S. 822 (2002) .......... 2

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .......... 10

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) .......... 4

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (2020) .......... 5

*Foster v. Essex Prop. Inc.*,
No. 14-cv-05531, 2017 WL 264390 (N.D. Cal. Jan. 20, 2017) .......... 4

*Graham v. Noom*,
533 F.Supp.3d 823 (N.D. Cal. 2021) .......... 7

*Heiting v. Taro Pharms. USA, Inc.*,
No. 23-cv-08002 (C.D. Cal. Dec. 26, 2023) .......... 8

*James v. Walt Disney Co.*,
No. 23-cv-2500, 2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) .......... 8

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 5

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 6

*Licea v. Vitacost.com, Inc.*,
No. 22-CV-1854, 2023 WL 5086893 (S.D. Cal. July 24, 2023) .......... 7

*M. K. v. Google LLC*,
No. 21-cv-08465, 2023 WL 4937287 (N.D. Cal. Aug.1, 2023) .......... 6

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
No. 17-cv-02911, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) .................... 9

*People v. Hall*,
388 P.3d 794 (Cal. 2017) .................... 7

*Romero v. Securus Techs., Inc.*,
331 F.R.D. 391 (S.D. Cal. 2018) .................... 7

*Savage v. Glendale Union High Sch.*,
343 F.3d 1036 (9th Cir. 2003) .................... 4

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .................... 3

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
393 U.S. 503 (1969) .................... 2

**Statutes**

18 U.S.C. § 1030(c)(4)(A)(i) .................... 10

18 U.S.C. § 2511(2)(a) .................... 9

47 U.S.C. § 254(h)(5)(B) .................... 1, 2

Cal. Pen. Code § 20 .................... 7

Cal. Pen. Code § 502 .................... *passim*

Cal. Pen. Code § 630 .................... *passim*

Cal. Pen. Code § 631 .................... 7, 8, 9

Cal. Pen. Code § 637.7 .................... 9

**Other Authorities**

34 C.F.R. § 99.31 (2012) .................... 6

Fed. R. Civ. P. 12(b) .................... 10

# INTRODUCTION

Securly makes software to help schools provide necessary student safety supervision, yet Plaintiffs' Opposition continues their unfounded attempt to hold Securly liable for helping schools monitor activity on school computers. Schools have a statutory obligation to ensure students are safe when using school devices to access the internet. 47 U.S.C. § 254(h)(5)(B)(i)-(ii). As schools have limited internal resources, they rely on software vendors like Securly to provide these lawful services on their behalf. Plaintiffs have had multiple opportunities to walk back their initial false allegations, which were based entirely on quotations from Securly's *website privacy policy*—a document that explicitly states that it does not apply to the educational setting at issue. Instead, both in the amended complaint ("FAC") and in their opposition to the motion to dismiss, Plaintiffs reiterate these baseless allegations, regurgitating fallacious arguments that Securly operates as a data broker based on manipulated disclosures from the incorrect privacy policy and distortions of the correct policy.

Plaintiffs' Opposition dodges the FAC's misrepresentations. It does not, for example, engage with language from the *student privacy policy*, which explains that Securly *does not use student data for advertising or any purpose other than providing its services.* And it does not meaningfully contend with the fact that Securly, whose customers are *schools*, operates only on *school-owned* computers—not personal devices. Despite what Plaintiffs attempt to allege, there is nothing inherently criminal—let alone improper—about Securly's provision of its monitoring software, which functions as a lawful tool for schools that must comply with internet safety laws.

This case should not be allowed to move forward, as Plaintiffs fail to allege facts to support a plausible inference that Securly engaged in *any* privacy violation that would amount to a "concrete" and "particularized" harm, as required for Article III standing. Moreover, nothing in the Opposition cures the FAC's failure to state a claim under either the California Invasion of Privacy Act ("CIPA") or the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"). Plaintiffs' attempt

to criminalize permissible school supervision of minors—and their deliberate and continued distortions of Securly's documented practices—should not be countenanced by the Court. The FAC should accordingly be dismissed with prejudice in its entirety.

## ARGUMENT

### I. PLAINTIFFS LACK ARTICLE III STANDING

Plaintiffs lack Article III standing because the FAC does not allege a cognizable privacy injury. For injury to exist, Plaintiffs must plausibly allege that a legally recognizable interest was violated. The FAC fails to do so. As Plaintiffs concede, this case involves only the alleged "privacy violation" created when schools use Securly software to monitor student activity on *school-owned* Chromebook computers. *See* FAC ¶¶ 23, 29; Opp'n 22 (acknowledging that the computers "belonged to the school"). Despite Plaintiffs' attempt to assume otherwise, students have no reasonable expectation of privacy in this activity: Schools are legally required to monitor—or outsource monitoring—for inappropriate online materials, as mandated by Congress under the Children's Internet Protection Act. 47 U.S.C. § 254(h)(5)(B)(i)-(ii).

While children do not "shed their constitutional rights. . . at the schoolhouse gate," *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969), students do have diminished privacy expectations in school property. *See Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 830 (2002) ("A student's privacy interest is limited in a public school environment where the [s]tate is responsible for maintaining. . . safety."). Plaintiffs make no credible allegations that Securly is selling student data to a third party. Nor are there any plausible claims Securly is even sharing student data with *any party* other than schools and those parties, like parents or guardians, with whom schools are permitted to share student data.

Though Plaintiffs insist without explanation that they have standing to bring suit because the "private nature of the school-aged children's interactions with their devices are self-evident," Opp'n 9, this is in direct conflict with Congress' internet-monitoring mandate, which negates students' expectation of privacy when using a school-owned

device to access the internet. Plaintiffs attempt to analogize students' privacy interest in their activities on school-owned devices to the privacy interests of an adult who rents a car or an apartment, *see* Opp'n 18, but school property—whether a desk or device—is not a car or apartment. Students simply do not have the same privacy expectations in school-monitored computers. Schools contract with Securly (under Securly's Terms of Service) to install safety tools on computers that schools *must monitor pursuant to federal law*. Securly acts as an arm of the school, providing lawful supervision of school devices and using that data only to provide those services to the schools.

Plaintiffs attempt to conjure a privacy injury through a few different tactics, but they fail to allege harm that is "concrete and particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted). First, they allege Securly impermissibly shares "*harmless,* yet embarrassing" information about students' online activities with "some parents." FAC ¶¶ 56, 59. The "marketing" activity that the FAC alleges is not an attempt to sell products to parents, or any entities, but rather a service provided on behalf of schools. Student data is shared as directed by schools: with designated school contacts, with parents, and with law enforcement (only for wellness checks when a student's life is deemed to be at risk), and this sharing with parents is in line with that policy. *See* Mot. 18 (citing the Declaration of Bharath Madhusudan ("Decl.")).

Second, the FAC focuses on the alleged sharing of geolocation data. *See* FAC ¶¶ 79-95. Yet these cut-and-paste claims have nothing to do with Securly: they are near-verbatim allegations from a 2022 FTC complaint against an unrelated data broker ("FTC Complaint"), cited in the FAC. *Compare* FTC Complaint ¶ 29 ("Identification of sensitive and private characteristics of consumers from the location data sold and offered by Kochava injures or is likely to injure consumers through exposure to stigma, discrimination, physical violence, emotional distress, and other harms")[1] *with* FAC ¶

---

[1] Complaint, *FTC v. Kochava*, No. 22-cv-377 (D. Idaho Aug. 29, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/1.%20Complaint.pdf.

89 ("Identification of sensitive and private characteristics of child consumers from the location data sold, shared, exposed and/or offered by Defendant injures or is likely to injure those consumers through potential exposure to stigma, discrimination, physical violence, emotional distress, and other harms").

Though the Opposition focuses on the FAC's unfounded claims that Securly shared student data for marketing, Opp'n 5, these allegations are directly controverted by the very Securly policies the FAC cites, as well as other evidence Defendant submitted as part of its standing challenge. Plaintiffs offer no evidence to counter Defendant's factual standing challenge. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003) ("Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.") (citation omitted)). Instead, Plaintiffs erroneously state that Securly is not entitled to submit extrinsic evidence at the pleadings stage. *See* Opp'n 2. Plaintiffs are entitled to raise such factual challenges and introduce evidence in their support, and courts routinely dismiss privacy actions when defendants, in a factual attack, submit evidence that demonstrates a lack of standing. *See, e.g.*, *Foster v. Essex Prop. Inc.*, No. 14-cv-05531, 2017 WL 264390 (N.D. Cal. Jan. 20, 2017) (finding plaintiffs failed to allege injury after weighing evidence in two declarations).

While Plaintiffs may not *like* the evidence that **Securly does not process student data for any purpose other than providing its services**, the policies and terms cited by Securly are properly incorporated by their reference in the FAC. Courts treat as incorporated into a complaint "documents whose contents are alleged in a complaint and whose authenticity no party questions. . . ." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012). The doctrine of incorporation by reference prevents Plaintiffs from doing precisely what the Opposition suggests the Court do: credit only "portions of documents that support [Plaintiffs'] claims, while omitting

portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

In yet another attempt to find a harm that could confer standing, Plaintiffs cite a report from Common Sense Media ("CSM")[2] that purportedly establishes a privacy injury. Opp'n 7; FAC ¶¶ 103-06. Plaintiffs mischaracterize the report and conveniently omit that Securly's seemingly poor CSM rating (FAC ¶ 104)—which is based almost entirely on the website privacy policy and other online statements—is actually a "good" score under the platform's own grading rubric, despite the attached "warning."

Finally, the Opposition's reliance on *In re Facebook, Inc. Internet Tracking Litig.* to argue it has sufficiently alleged a privacy injury is misplaced. *Facebook* involved plausible allegations that the platform cultivated sensitive data by tracking its users to third-party websites—even when those users were not signed into Facebook—and then sold the collected information to advertisers. 956 F.3d 596, 607-08 (2020). By contrast, Plaintiffs here do not advance any *credible* claims that Securly did anything more than provide the student monitoring services requested and consented to by the schools that downloaded its products on their own devices.

## II. PLAINTIFFS' CIPA AND CDAFA CLAIMS FAIL ON THE MERITS

### A. Schools Authorized Securly to Process Student Data

Plaintiffs' Opposition repeats the FAC's allegations that Defendant "failed to provide notice of its surreptitious data gathering or obtain parental consent," Opp'n 2, but these allegations focus on the wrong party. Plaintiffs acknowledge that schools consent to Securly's use and collection of student data. FAC ¶ 66. Securly relies on schools to provide any necessary notice and obtain any necessary consents from parents. Even so, the consent of schools is all that is necessary, under federal law, for Securly to collect and process data about student use of school devices as a contractor

[2] *Privacy Ratings*, https://privacy.commonsense.org/resource/privacy-ratings (last visited Jan. 18, 2024).

to the school.[3] Securly is essentially acting as an arm of the school, enabling it to provide appropriate supervision of student safety. Securly's software allows schools to carry out both the legally mandated monitoring as well as additional safety checks that allow schools to protect their property and their students. Schools authorize Securly's collection of student data on parents' behalf—a system permitted under federal law, which allows schools acting *in loco parentis* to consent to the schools' outsourcing of necessary technology functions.[4]

The Opposition cites a string of cases involving Google to argue that Securly cannot avoid its obligation to confirm that consent was properly maintained, but these cases miss the point. While Securly may not have required schools to provide proof of consents that they received from parents, Securly appropriately relied on the consent of the schools, as the owners of the devices in question, to provide appropriate monitoring of student activity on school devices. Again, the schools must install Securly's software on their computers; this is not clickthrough consent.

The FAC alleges that, because Securly did not have parental consent to monitor activity on school devices, the monitoring that the Defendant carried out on behalf of schools violated CIPA's "eavesdropping" provisions, but Securly cannot "eavesdrop" on student activity that schools have deputized it to monitor. California law is "well settled that a party to the communication is not liable for recording their own conversation under section 631(a)." *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1081 (C.D. Cal. 2023). In cases where a service—like the services provided by Securly—behaves more like a "tool ... that allows [the primary party] to record and

---

[3] 34 C.F.R. § 99.31 (2012) (explaining that schools "may disclose personally identifiable information from an education record of a student" without consent of the student or parent if that disclosure is to a "school official," such as a contractor acting on behalf of the school).

[4] Schools "may act as the parent's agent and consent under COPPA to the collection of [student] information on the parent's behalf." *M. K. v. Google LLC*, No. 21-cv-08465, 2023 WL 4937287, at *3 (N.D. Cal. Aug.1, 2023) (citation omitted).

analyze its own data in aid of [the primary party]," the party exemption applies, and the technology is not considered a "third-party eavesdropper." *Graham v. Noom*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021). Despite the Opposition's attempt to suggest otherwise, the majority of courts in this Circuit have held that the kind of software technology used by Securly constitutes a permissible tool, the use of which does not violate CIPA. *See, e.g.*, *Licea v. Vitacost.com, Inc.*, No. 22-CV-1854, 2023 WL 5086893, at *4 (S.D. Cal. July 24, 2023) ("[A] website owner that engages a vendor to record website-based communications for the website owner's own purposes is not thereby aiding and abetting eavesdropping by a third party in violation of Section 631(a).") (citing cases). Though the FAC certainly contains unsupported allegations that Securly used student data for its own benefit, the documents incorporated into the FAC establish that Securly only ever provided services on behalf of schools as their agent. *See* Request for Judicial Notice ("RJN") Ex. 2.

Finally, while the Opposition tries to rescue these failures by arguing that Securly aids and abets "the schools to eavesdrop on minor students' communications," Opp'n 13, this argument fails for the reasons explained above. Schools are not acting illegally, but rather have a legally recognized interest in monitoring student activity on school devices. Securly cannot be liable for "aiding and abetting" this lawful activity.

### B. Plaintiffs Fail to Allege Securly Intentionally Violated § 631(a)

CIPA is a criminal statute and incorporates a scienter element, requiring specific intent to "willfully" intercept the contents of communications in violation of the law. Cal. Pen. Code § 631(a); *see* § 20 ("In every crime or public offense there must exist a union, or joint operation of act and intent."). Courts commonly construe criminal statutes "against the backdrop of the common law presumption that scienter is required and imply the requisite mental state, even where the statute is silent." *People v. Hall*, 388 P.3d 794, 798 (Cal. 2017) (citation omitted); *see Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 402 (S.D. Cal. 2018) ("The general rule that a defendant must have 'some form of guilty intent, knowledge, or criminal negligence is of such long standing

and so fundamental to our criminal law' that this requirement 'is an invariable element of every crime unless excluded expressly or by necessary implication.'") (quoting *In re Jorge M.*, 4 P.3d 297, 300 (Cal. 2000)). The allegations in the FAC do not establish that Securly intended to eavesdrop or that it was aware that its school customers were engaging in any conduct that could amount to § 631(a) violation.

Plaintiffs allege in conclusory fashion that Securly violated CIPA "willfully" by collecting data without consent. FAC ¶ 141. In other words, the consent element is a necessary piece of the CIPA violation alleged by Plaintiffs. To allege a willful violation, Plaintiffs must, therefore, allege Securly collected data with full awareness that there was not proper consent. To the contrary, Plaintiffs acknowledge that schools installed Securly products on their own devices, thus providing Securly with the necessary consent to run their services on school devices. FAC ¶ ¶ 23, 29; Opp'n 22.

Nothing in the FAC plausibly alleges an intention by Securly to eavesdrop or commit wrongdoing by collecting student data on behalf of schools. Plaintiffs state the FAC alleges that Securly uses its own software to "intercept" and "disseminate" student data "despite knowing that neither [Securly] nor its school district clients had obtained parental permission beforehand." Opp'n 15. The Opposition even cites to five paragraphs in the FAC that purportedly contain this allegation. *Id.* (citing FAC ¶¶ 36, 77, 82, 94, 96). But the FAC does not include *any* allegation that Securly knew that its school customers did not fulfill consent obligations, and ultimately fails to allege that Securly possessed the requisite scienter to violate § 631(a).

The Opposition suggests that intent cannot be resolved at the pleadings stage, Opp'n 16, but this baseless legal conclusion carries no weight and ignores recent decisions in this Circuit granting motions to dismiss CIPA claims on the ground that plaintiffs do not plead scienter. *See, e.g.*, Order, *Heiting v. Taro Pharms. USA, Inc.*, No. 23-cv-08002 (C.D. Cal. Dec. 26, 2023) (Plaintiff failed to allege scienter under § 631(a) because she did not allege facts showing defendant acted with knowledge or intent to violate the fourth prong of § 631); *James v. Walt Disney Co.*, No. 23-cv-2500,

2023 WL 7392285, at *9 (N.D. Cal. Nov. 8, 2023) (dismissing § 631(a) claim because "it cannot reasonably be inferred" that defendant knew its vendor would unlawfully intercept for the benefit of anyone other than defendant).

**C. Plaintiffs Fail to State a Claim Under CIPA Section 637.7**

In Opposition, Plaintiffs attempt to stretch § 637.7 beyond its statutory breaking point and convert it into an all-purpose tracking provision. Opp'n 17 (advancing a purportedly "better reading of the statute" that does not appear to be directly supported by any caselaw). This portion of the statute is narrowly tailored to address tracking devices attached to vehicles or other moveable things. Securly software does not constitute an "electronic tracking device" under § 637.7 because software is not "attached" to a device for purposes of triggering CIPA—a conclusion supported by decisions that the Opposition only superficially addresses. *See, e.g.*, *Moreno v. S.F. Bay Area Rapid Transit Dist.*, No. 17-cv-02911, 2017 WL 6387764, at *4 (N.D. Cal. Dec. 14, 2017).

Moreover, despite the Opposition's attempt to twist Chromebooks into personal smartphones, the FAC concedes that Securly software runs on *school-owned computers*. *See* FAC ¶¶ 23, 29. While Plaintiffs argue that CIPA prohibits schools from monitoring their own devices, this reading of the statute would effectively prevent individuals and entities from protecting their own property and fulfilling federal legal obligations. The federal wiretapping statute, on which CIPA is based, generally permits monitoring that is necessary to rendition of service and to protect the rights or property of the provider of the electronic communications. 18 U.S.C. § 2511(2)(a). CIPA does not include that text, but accepting Plaintiffs' interpretation of the state law would create a conflict with federal law, raising significant federal preemption questions.

**D. Plaintiffs Fail to State a Claim Under CDAFA**

Plaintiffs fail to plead a CDAFA claim under §§ 502(c)(1), (2), and (7). A private right of action under § 502(c) exists only for the owner/lessee of a computer or its residing data. The FAC does not establish this ownership element, and Plaintiffs do

not adequately allege any actionable "damage or loss" as required by the statute. In Opposition, Plaintiffs insist that CDAFA's "damage or loss" requirement sets such a "low bar" that any amount will do, Opp'n 20, but Plaintiffs fail to plead facts supporting an inference that use of Securly caused *any* tangible harm. The FAC's vague references to Securly somehow becoming "unjustly enriched" at their expense (FAC ¶ 167) does not identify any cognizable damage or loss under CDAFA. *See Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021).

The Opposition cites to cases that appear to stand for the proposition that theft or misappropriation of personal data, resulting in its loss of value, constitutes a cognizable loss under CDAFA, but there are no allegations in the FAC regarding any loss of value in Plaintiffs' information. This is not a data breach case. Perhaps to obscure this pleading deficiency, Plaintiffs attempt to analogize to the Computer Fraud and Abuse Act ("CFAA"). *See* Opp'n 21. While the Opposition is correct that a plaintiff can obtain compensatory damages under the CFAA, civil actions under the federal statute are only possible *if the violation results in a specific loss or damage identified by the statute*, such as physical injury, a threat to public health or safety, damage to ten or more protected computers, or specified monetary losses—none of which are plausibly alleged here. 18 U.S.C. § 1030(c)(4)(A)(i).

Even if Plaintiffs could establish standing to bring a CDAFA claim, they do not plausibly allege Securly "knowingly" accessed their property "without permission," because the devices at issue are school property. *See* Mot. 23-24. Finally, Plaintiffs fail to allege facts establishing a fraudulent scheme or use of any student data to "wrongfully control or obtain money, property, or data" to establish liability under § 502(c)(1). *See* Mot. 25.

## III. CONCLUSION

Securly respectfully requests that the Court dismiss all claims for lack of standing under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6).

Dated: January 19, 2024

Respectfully submitted,

By: */s/ Amy Jane Longo*

Amy Jane Longo
ROPES & GRAY LLP
10250 Constellation Blvd
Los Angeles, CA 90067
Tel: (310) 975-3300
Fax: (310) 975-3400
Email: amy.longo@ropesgray.com

Edward R. McNicholas (*pro hac vice*)
Frances Faircloth (*pro hac vice*)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
Tel: (202) 508-4600
Fax: (202) 508-4650
Email:
edward.mcnicholas@ropesgray.com
fran.faircloth@ropesgray.com

Briana Fasone (*pro hac vice*)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090
Email: briana.fasone@ropesgray.com

*Attorneys for Defendant Securly, Inc.*

**CERTIFICATE OF SERVICE**

**BY CM/ECF TRANSMISSION:** In accordance with the Electronic Case Filing Administrative Policies and Procedures Manual for the United States District Court, Southern District of California, the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 19, 2024, at Los Angeles, California.

*/s/ Amy Jane Longo*
Amy Jane Longo