1  Amy Jane Longo (CA Bar No. 198304)
2  ROPES & GRAY LLP
3  10250 Constellation Blvd
   Los Angeles, CA 90067
4  Tel: (310) 975-3300
5  Fax: (310) 975-3400
6  amy.longo@ropesgray.com

   Edward McNicholas (*pro hac vice*)
   Frances Faircloth (*pro hac vice*)
   ROPES & GRAY LLP
   2099 Pennsylvania Avenue, N.W.
   Washington, DC 20006-6807
   Tel: (202) 508-4600
   Fax: (202) 508-4650
   edward.mcnicholas@ropesgray.com
   fran.faircloth@ropesgray.com

   *Attorneys for Defendant Securly, Inc.*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERI BATE, and her child N.M., and AZUCENA MEJIA, and her child A.S., individually and on behalf of others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>SECURLY, INC.,<br><br>            Defendant. | Case No. 23-cv-01304-AGS-DEB<br><br>**DEFENDANT SECURLY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>[Filed concurrently with Request for Judicial Notice and Declaration of Bharath Madhusudan]<br><br>Hearing Date:  November 8, 2024<br>Hearing Time:  10:00 AM<br>Courtroom:  5C<br>Judge:  Hon. Andrew G. Schopler<br><br>Complaint Filed: July 17, 2023<br>First Amended Complaint Filed: September 22, 2023<br>Second Amended Complaint Filed: September 6, 2024 |

# <u>**TABLE OF CONTENTS**</u>

**Page**

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ....................................................................................... 3

LEGAL STANDARD .................................................................................................. 7

ARGUMENT ............................................................................................................... 8

    A.    THE SAC FAILS TO ESTABLISH THE CONCRETE INJURY
            NECESSARY FOR PLAINTIFFS' STANDING. ..........................................8

    B.    THE SAC FAILS TO STATE ANY CLAIM............................................. 12

            1.    Properly authorized student monitoring software does not
                  violate the California Invasion of Privacy Act ("CIPA")
                  or the federal Wiretap Act ("FWA"). .................................... 12

            2.    Plaintiffs fail to state a claim for unlawful use of an
                  electronic tracking device or pen register under CIPA. ........ 17

            3.    Schools do not hack their own computers by installing
                  student monitoring software. .................................................. 19

            4.    The Stored Communications Act is irrelevant to Securly's
                  software. ................................................................................22

            5.    Students cannot seclude their use of school computers
                  from schools. .........................................................................23

             6.    Plaintiffs plead no economic damage adequate to support
                  a claim under the California UCL. ........................................25

CONCLUSION .........................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................ 7

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
  No. 21-md-2992, 2023 WL 3668535 (S.D. Cal. May 25, 2023) ........................ 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................... 7, 8

*BMA LLC v. HDR Glob. Trading Ltd.*,
  No. 20-CV-03345-WHO, 2021 WL 4061698 (N.D. Cal. Sept. 7, 2021) ......................................................................................... 25

*Board of Educ. of Indep. Sch. Dist. No. 92 v. Earls*,
  536 U.S. 822 (2002) ........................................................................... 24

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) .................................................. 12

*Cline v. Reetz-Laiolo*,
  329 F. Supp. 3d 1000 (N.D. Cal. 2018) ................................................ 14

*Cottle v. Plaid Inc.*,
  536 F. Supp. 3d 461 (N.D. Cal. 2021) .................................................. 20

*Custom Packaging Supply, Inc. v. Phillips*,
  No. 15-CV-04584, 2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) .............. 19, 21

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ............................................................... 2

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ..........................................................*passim*

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*,
  No. SACV 15-00137-JLS, 2015 WL 13273308 (C.D. Cal. July 29, 2015) ......................................................................................... 16

*Gadomski v. Patelco Cred. Union*,
No. 2:17-cv-00695-TLN-AC, 2022 WL 223878 (E.D. Cal. Jan. 24, 2022) ......................................................................................... 10

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...................................... 15, 16

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018), *on reconsideration*,
No. 17-cv-02264, 2018 WL 3068248 (N.D. Cal. June 21, 2018) .................... 20

*In re Google Assist. Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ...................................... 12, 14

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ........................................... 17

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................... 14

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........................................... 18

*Hernandez v. Hillsides, Inc.*,
211 P.3d 1063 (Cal. 2009).................................................... 11, 24

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022).................................................... 22

*India Price v. Carnival Corp.*,
No. 23-CV-236-GPC-MSB, 2024 WL 221437 (S.D. Cal. Jan. 19, 2024).................................................................... 22

*James v. Veros Credit, LLC*,
2019 WL 13102877 (S.D. Cal. Sept. 3, 2019) ................................... 22

*Konop v. Haw. Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ................................................... 14

*Kwikset Corp. v. Super. Ct.*,
246 P.3d 877 (Cal. 2011).................................................... 25

*Licea v. Am. Eagle*,
　659 F. Supp. 3d. 1072 (C.D. Cal. 2023) ................................................. 13

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992) ................................................................................. 8

*LVRC Holdings LLC v. Brekka*,
　581 F.3d 1127 (9th Cir. 2009) ............................................................... 21

*M. K. v. Google LLC*,
　No. 21-cv-08465, 2023 WL 4937287 (N.D. Cal. Aug. 1, 2023) ........... 6

*Mastel v. Miniclip SA*,
　549 F. Supp. 3d 1129 (E.D. Cal. 2021) ................................................. 14

*Mollaei v. Otonomo Inc.*,
　651 F. Supp. 3d 1135 (N.D. Cal. 2023) ................................................. 17

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
　No. 17-cv-02911, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) .......... 17

*Paskenta Band of Nomlaki Indians v. Crosby*,
　No. 15-cv-00538, 2016 WL 3854237 (E.D. Cal. July 15, 2016) .......... 21

*Pena v. GameStop, Inc.*,
　670 F. Supp. 3d 1112 (S.D. Cal. 2023) ........................................... 12, 16

*Perkins v. LinkedIn Corp.*,
　53 F. Supp. 3d 1190 (N.D. Cal. 2014) ................................................... 20

*Pica v. Delta Air Lines, Inc.*,
　812 F. App'x 591 (9th Cir. 2020) .......................................................... 23

*Silver v. Stripe Inc.*,
　No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) .................................................................................................... 25

*Simon v. E. Ky. Welfare Rts. Org.*,
　426 U.S. 26 (1976) ................................................................................... 9

*Sonner v. Premier Nutrition Corp.*,
　971 F.3d 834, 844 (9th Cir. 2020) ........................................................ 25

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................................ 25

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ........................................................................................ 8

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ........................................................................................... 7

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ........................................................................................ 8

*Patterson v. Med. Rev. Inst. of Am., LLC*, No. 22-cv-00413-NMC,
   2022 WL 3702102 (N.D. Cal. Aug. 26, 2022) ................................................ 10

*People v. Super. Ct.*,
   449 P.2d 230 (Cal. 1969) (en banc) ............................................................... 15

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
   393 U.S. 503 (1969) ....................................................................................... 24

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ..................................................................................... 8

*Van Buren v. United States*,
   593 U.S. 374 (2021) ................................................................................. 19, 22

*Vartanian v. VW Credit, Inc.*,
   No. 11-cv-10776, 2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) .................. 15

*In re Vizio, Inc., Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017)........................................................... 14

*Wadsworth v. Kross, Lieberman & Stone, Inc.*,
   12 F.4th 665 (7th Cir. 2021).......................................................................... 10

*Warth v. Seldin*,
   422 U.S. 490 (1975) ......................................................................................... 9

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000)...................................................................... 2, 7

*Wiles v. Ascom Transp. Sys., Inc.*,
    478 F. App'x 283 (6th Cir. 2012)....................................................... 10

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) ............................................. 20

*Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
    No. 22-cv-1954, 2023 WL 5837492 (S.D. Cal. Sept. 8, 2023)......................... 13

*Wyatt v. Fletcher*,
    718 F.3d 496 (5th Cir. 2013) ............................................................... 9

**Statutes**

California Comprehensive Computer Data Access and Fraud Act,
    Cal. Pen. Code § 502 ............................................................... 19, 20, 21

California Invasion of Privacy Act, Cal. Pen. Code § 630, *et seq.* ................*passim*

Children's Internet Protection Act, 47 U.S.C. § 254(h) ...........................*passim*

Children's Online Privacy Protection Act of 1998, 15 U.S.C. § 6501,
    *et seq.* ................................................................................ 6, 16

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ............................. 19, 21, 22, 23

Driver's Privacy Protection Act, 18 U.S.C. § 2721 ................................................ 11

Federal Educational Rights and Privacy Act, 20 U.S.C. § 1232g..................*passim*

Federal Wiretap Act, 18 U.S.C. § 2511................................................ 12, 14, 16, 17

Federal Trade Commission Act, 15 U.S.C. §§ 45, 52............................................. 25

Stored Communications Act, 18 U.S.C. § 2701...................................................22, 23

**Rules and Regulations**

16 C.F.R. pt. 312.................................................................................................... 6

34 C.F.R. § 99.31................................................................................................ 1, 3

47 C.F.R. § 54.520........................................................................................*passim*

Federal Rule of Civil Procedure 12(b)(1) ........................................................ 1, 2, 7

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 7, 12

**Other Authorities**

FTC, Complying with COPPA: Frequently Asked Questions,
    https://www.ftc.gov/business-guidance/resources/complying-
    coppa-frequently-asked-questions (last visited Sep. 18, 2024) ........................... 6

U.S. Constitution
    Article III ...................................................................................................... 2, 7, 8

Defendant Securly, Inc. ("Securly") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative for failure to state a claim pursuant to Rule (12)(b)(6).

# INTRODUCTION

This case is about protecting students. More than two decades ago, as the internet was becoming available in classrooms across the country, Congress recognized that schools would need guardrails to protect students with internet access and passed the Children's Internet Protection Act ("FCIPA").[1] FCIPA requires schools to develop and enforce internet safety measures that block or filter student access to obscene or pornographic "visual depictions" and other potentially harmful materials. The law also requires schools to establish a program for "monitoring the online activities of minors."[2]

Securly is a mission-driven education technology company that helps school districts and educational institutions (collectively "schools") fulfill these statutory obligations by providing software services that enable schools to monitor for inappropriate materials as well as information that could signal self-harm or danger to children. The Federal Educational Rights and Privacy Act ("FERPA")[3] allows for schools to engage third parties like Securly to collect Student Information[4] on their behalf, in part to provide such monitoring. Schools voluntarily install Securly's

_____

[1] 47 U.S.C. § 254(h)(5)(B)(i)-(ii) (requiring schools and libraries receiving federal broadband rates to filter and monitor online activity on school computers).

[2] *Id.* § 254(h)(5)(B)(i); 47 C.F.R. § 54.520(c)(i).

[3] 20 U.S.C. § 1232g(b); 34 C.F.R. § 99.31(a)(1)(i)(B) (authorizing educational agencies to disclose personally identifiable information from the student's education records to a contractor, consultant, volunteer, or other party to whom an agency or institution has outsourced institutional services or functions without parental or student consent).

[4] *See infra* at 4 & note 10.

software, and consent to Securly's collection of Student Information as part of their engagement, effectively authorizing Securly to act as their agent and an extension of the school to meet their statutory and ethical obligations to protect students using school devices.

Plaintiffs, a pair of children ("A.S." and "N.M.") and their respective mothers ("Plaintiff Parents"), attempt to twist these student-protection measures into illicit surveillance under tortured applications of California and federal law. The SAC is Plaintiffs' third attempt to plead a viable claim, and like its two predecessors, it misses the mark. After Plaintiffs voluntarily withdrew and amended their initial complaint, the Court dismissed their First Amended Complaint ("FAC") for lack of subject matter jurisdiction. *See* Order (Aug. 23, 2024), ECF No. 24. Now, Plaintiffs try again, asserting six new claims and a hodgepodge of revised standing theories across the 71-page SAC. But the SAC cannot overcome the fundamental flaw inherent in their argument: Securly's software and activity is authorized by schools that are required under federal law to monitor student computers.

Riddled with misrepresentations about Securly, the SAC should be dismissed for either lack of standing or failure to state a claim. First, the SAC fails to establish that Plaintiffs suffered any concrete injury that confers Article III standing because no cognizable privacy interest is alleged.[5] Congress has made clear that schools must monitor students online when using school devices, and students cannot assert a privacy injury contrary to that federal law. Second, the SAC does not plead an actionable claim under *any* of its causes of action, primarily because Plaintiffs' schools authorized Securly's activities and Plaintiffs suffered no injury—including no economic loss, which is the entire basis for the relief they seek. *See* SAC ¶ 120

---

[5] "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a defendant raises a factual attack, as here, the court "need not presume the truthfulness of the plaintiffs' allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

("This suit seeks only damages and injunctive relief *for recovery of economic injury* and it expressly is not intended to request any recovery for personal injury and claims related thereto." (emphasis added)).

Securly's activities are neither unauthorized nor illicit but legal, ethical, and necessary. Securly's tools help schools protect children, and Plaintiffs' third attempt to undercut this important safeguard should be dismissed with prejudice.

## FACTUAL BACKGROUND

***Securly & Plaintiffs.*** Securly has provided more than 20,000 schools with software and services, and its products have helped to save the lives of more than 2,000 children.[6] Securly does not secretly install its tools on student-owned devices. *See* Declaration of Bharath Madhusudan, Chief Executive Officer, Securly ("Decl.") ¶¶ 4, 9. Instead, schools choose to install and operate Securly's tools on devices schools own and authorize Securly to act on their behalf. SAC ¶¶ 29, 35. Securly thus functions as a "school official," performing an "outsourced institutional service" for schools, as permitted by federal law.[7] Schools control what Student Information[8] Securly collects, how it is used, with whom it is shared, and when it is deleted. *See* Securly, Student Privacy Policy, Request for Judicial Notice ("RJN") Ex. 2; Decl. ¶¶ 22, 32. Student Information is not accessed, shared, or used by Securly—or any other party—for any purpose other than for the benefit of the school for which it was collected. Decl. ¶ 33. No good-faith basis exists for any contrary assertion.

---

[6] Securly, https://www.securly.com (last visited Sept. 18, 2024), RJN Ex. 1.

[7] 34 C.F.R. § 99.31 (explaining that schools may share personal information from education records without parental consent if the disclosure is to a "party to whom an agency or institution has outsourced institutional services or functions").

[8] Student Information is data collected by Securly for schools, which is part of schools' "education records," under federal law. 20 U.S.C. § 1232g(a)(4)(A).

Plaintiffs A.S. and N.M. were allegedly issued school-owned Chromebooks on which their respective schools had installed Securly software. SAC ¶¶ 28-29, 34-35. Plaintiff Parents allege they were "never provided with any disclosure that [their] minor child[ren]'s location would be tracked by [Securly], that [their] personal communications would be intercepted by [Securly], or that [their] video-viewing habits would be shared with third parties in an effort to create targeted advertisements and marketing campaigns." *Id.* ¶¶ 30, 36. Plaintiffs do not identify "third parties" (other than Securly, schools, or parents) with whom this information was allegedly shared, nor do they allege when they received the school-owned computers, just that they learned of the monitoring in June 2023. *Id.* ¶¶ 31, 37.

***Securly's Privacy Policies.*** During the relevant period, two publicly available privacy policies governed the data Securly collects: its Student Privacy Policy and Website Privacy Policy (RJN Ex. 3). *See* SAC ¶¶ 69, 71, 76.[9] Plaintiffs' claims relate to Securly's use of Student Information, which was subject to the Student Privacy Policy and is now subject to Section 1 of the Combined Privacy Policy. *See* RJN Ex. 2; Ex. 5, § 1. The Student Privacy Policy explicitly stated that it "covers [Securly's] use of 'Student Information'," *i.e.*, "data that reasonably can be used to identify a student or that reasonably relates to a student," and further stated that, with respect to Student Information, it "is separate from and supersedes [Securly's] Website Privacy Policy to the extent of any conflict or inconsistency," *id.*[10]

---

[9] On August 14, 2024, Securly updated its privacy policies by combining the Student Privacy Policy and the Website Privacy Policy into one Privacy Policy (the "Combined Privacy Policy"), which is substantially similar to its predecessors in all material respects. *See* Securly, Privacy Policy ("Combined Privacy Policy"), https://www.securly.com/privacy (last visited Sept. 18, 2024), RJN Ex. 5; Decl. ¶ 28. The SAC, filed three weeks later, makes no mention of this.

[10] The Combined Privacy Policy defines Student Information as "any information about a Student that is linked to that Student's identity" and clearly addresses such

The Website Privacy Policy, conversely, applied to information collected from Securly's website users and customers.[11] It clearly stated: "**This Privacy Policy does not apply to . . . the personal information that we process on behalf of schools and other institutional customers that use our services.**" RJN Ex. 3. The Website Privacy Policy went on to note: "Any personal information we collect about students who are children under 13 years old or that is processed on behalf of our school institutional customers *will be treated in accordance with our Student and COPPA Privacy Policy* as well as our Terms of Use and is also subject to the policies and practices of the institution on whose behalf we are processing the information." RJN Ex. 3 (emphasis added).[12]

Reprinting the former privacy policies in bulk, Plaintiffs note that when Securly's services are "used on a personal computing device owned by schools, [Securly] may use geolocation information to determine the location of the device. . . . [Securly] may also use elements of usage and analytics information (such as IP address) to determine generalized location." SAC ¶ 76.[13] But "[s]uch information is specific to *the device only* and is *not specific to any student or child.*" RJN Ex. 2 (emphasis added). That is, to the extent Securly software provides geolocation services, those services track the location relevant only to the *school-*issued device.

_____

information in its Section 1 whereas its Section 2 applies to "adults visiting the Securly Site." *See* RJN Ex. 5, §§ 1a, 2.

[11] *See* RJN Ex. 3 ("This Privacy Policy describes how we collect, store, use and disclose, or otherwise process . . . information, including personal information, that we obtain about visitors and users of our website . . . as well as users of our software and related services including the Securly Parent Portal and mobile applications.").

[12] *See* RJN Ex. 5, § 1 (Student Information "will be treated in accordance with this section of this Privacy Policy as well as our Terms of Use and is also subject to the policies and practices of the School on whose behalf we are processing the information.").

[13] *See* RJN Ex. 5, § 1c.

The Student Privacy Policy acknowledged that Securly is "covered as an operator" under the Children's Online Privacy Protection Act of 1998 ("COPPA") and represented that its systems are designed in accordance with FERPA. RJN Ex. 2.[14] It explained that schools contracting for Securly services consent to the collection of Student Information on behalf of the parents, consistent with federal guidance.[15] RJN Ex. 2.[16] *See* 15 U.S.C. § 6501, *et seq.*; 16 C.F.R. pt. 312. Securly is also certified through iKeepSafe, which demonstrates compliance with laws protecting Student Information. Decl. ¶ 35.

Under these laws, Securly provides schools notice of its Student Information-processing practices and relies on schools to supply disclosures of privacy practices to parents and students. RJN Ex. 2. The SAC alleges that Securly software is installed on school-owned devices without Plaintiffs' knowledge or consent (*see, e.g.*, ¶¶ 31, 37), but Securly "require[s] schools to consent to [the] collection and use of Student Information, on behalf of parents." RJN Ex. 2.[17] As such, a school deploying Securly software must acknowledge that it is "authorized to consent to [Securly's] collection, use and disclosure" of Student Information.[18]

Nevertheless, Plaintiffs contort the separate privacy policies to suggest that Securly is improperly using lawfully collected school Student Information. Plaintiffs allege that Securly provides data about students' online activity to

---

[14] *See* RJN Ex. 5, § 1a.

[15] FTC, Complying with COPPA: Frequently Asked Questions, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited Sep. 18, 2024). *See M. K. v. Google LLC*, No. 21-cv-08465, 2023 WL 4937287, at *3 (N.D. Cal. Aug. 1, 2023) (taking judicial notice of that FTC guidance).

[16] *See* RJN Ex. 5, § 1a.

[17] *See* RJN Ex. 5, § 1b.

[18] Securly, Terms of Service, https://www.securly.com/terms-and-conditions (last visited Sept. 18, 2024), RJN Ex. 4.

parents—but, notably, not Plaintiff Parents, *see* SAC ¶ 67—via what it calls "teaser emails" that promote Securly's Home app. *Id.* ¶ 61. This app is provided at no cost to parents as a service to schools; Securly receives no monetary benefit from parents' downloading the app. *See* Decl. ¶ 8. The SAC alleges, without any support other than language from the inapplicable privacy policy, that Securly provides Student Information "to its clients for targeted advertising," "to drive in part advertising and marketing to children and their parents," and "to sell advertising" using marketing profiles built from Student Information, as if Securly were Facebook. SAC ¶¶ 3, 43, 82, 101. But even if Plaintiffs' statements about how Securly claims to use *adult website visitor data* are true, they do not apply to its use of *Student Information*. *See, e.g.*, RJN Ex. 2 ("(1) We do not collect Student Information for the purpose of sale of such information in any way or for building profiles for commercial purposes not related to the provision of the Services. (2) We do not use Student Information for advertising.").[19]

## LEGAL STANDARD

Under Rule 12(b)(1), a court must dismiss a claim where a plaintiff fails to establish Article III standing under the U.S. Constitution. *White*, 227 F.3d at 1242; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998). To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Id.* Courts are not obligated "to accept legal conclusions

---

[19] *See* RJN Ex. 5, § 1d.

couched as factual allegations and 'formulaic recitation[s] of the elements of a cause of action' aren't sufficient." *In re Bank of Am. Cal. Unemployment Benefits Litig.*, No. 21-md-2992, 2023 WL 3668535, at *4 (S.D. Cal. May 25, 2023) (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

While Plaintiffs added federal claims to address the diversity-related pleading defect that led the Court to dismiss the FAC, they still cannot establish the necessary Article III standing because they fail to allege any concrete injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). Even if the Court finds the allegations sufficient for standing, the SAC's failure to state a claim warrants dismissal with prejudice.

## A. THE SAC FAILS TO ESTABLISH THE CONCRETE INJURY NECESSARY FOR PLAINTIFFS' STANDING.

The Constitution limits "federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting U.S. Const. art. III, § 2). To establish constitutional standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 597 (9th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 338). Plaintiffs must suffer "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, (1992)). Even where statutory violations are alleged, Article III standing still requires concrete and particularized harm. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("[I]njury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.").

Despite the SAC's addition of a new section titled "Injury-in-Fact and Harm," ¶¶ 104-110, filled with a litany of oft-rejected theories, Plaintiffs fail to allege they have suffered any concrete injury. Although a violation of privacy interests can, in

other circumstances, be an injury-in-fact,[20] there is no such injury here. Plaintiffs' privacy interests were not violated by Securly's actions. Securly is not Facebook. Securly does not secretly install hidden software or collect Student Information for its own purposes, nor does it share such information with entities or persons besides designated school contacts, parents[21] (when requested by schools), and, as necessary, law enforcement; it does not sell Student Information or use it for marketing or targeted advertising. Decl. ¶¶ 28, 29-31. Schools install Securly's tools on their own computers and engage Securly's operations to protect their students.

**Generalized "Privacy Violations."** Plaintiffs fail to allege that they were even affected, much less harmed, by the alleged misconduct. The SAC asserts that Securly "sends unsolicited emails to some parents," SAC ¶ 61, which reveal the "web search term history, websites visited, and videos watched" by the recipient parents' children, SAC ¶ 62. Plaintiff Parents admit they did not receive any such emails, SAC ¶ 67, and do not allege that A.S.'s or N.M.'s online activities were shared in this way, suggesting they lack standing to make such claims. Vague assertions that others might be harmed are insufficient for Plaintiffs to assert purported class injuries. *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976) (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'")).

---

[20] *See, e.g.*, *In re Facebook*, 956 F.3d at 598-600 (plaintiffs adequately claimed privacy harms by alleging, among other things, that defendant's tracking of private internet browsing allowed it to amass personal information for unrelated purposes).
[21] Sharing even sensitive student information with that student's parent is not a privacy violation. *See Wyatt v. Fletcher*, 718 F.3d 496, 499 (5th Cir. 2013) ([T]here is no clearly established law holding that a student in a public secondary school has a privacy right under the Fourteenth Amendment that precludes school officials from discussing *with a parent* the student's private matters.").

***"Emotional Distress," "Shock and Alarm," and "Breach of Trust."*** The SAC fails to allege any harm that is "concrete and particularized." Plaintiffs may not rely on new vague and conclusory allegations of "emotional distress and anxiety" or "shock[] and alarm[]," SAC ¶¶ 105-06, to confer standing, as these are not injuries-in-fact, but rather "quintessential abstract harms" that do not confer standing. *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021).[22] To the extent Plaintiffs now attempt to rely on "breach of trust between parents, children, and [schools]," SAC ¶ 108, to confer standing, this theoretical harm is neither concrete nor particularized, and no precedent appears to support this contention.

***"Undermined . . . Reasonable Expectation of Privacy."*** Federal law mandates that schools "monitor[] the online activities of minors," and schools accordingly have a duty to students and parents to screen for inappropriate sexual material, sexual abuse, or other information that reflects harm to the student or harm to others.[23] This precludes Plaintiffs' theory that their reasonable expectations of privacy in their school-owned device usage have been injuriously undermined. *See* SAC ¶ 109. Where a statute directly authorizes the monitoring of students' online activity, a student whose online activity is monitored pursuant to that statute cannot have a reasonable expectation that such activity would be kept private from those authorized to monitor it. *See Wiles v. Ascom Transp. Sys., Inc.*, 478 F. App'x 283, 294 (6th Cir. 2012) (holding that plaintiffs whose personal information was

---

[22] *See also Patterson v. Med. Rev. Inst. of Am., LLC,* No. 22-cv-00413-NMC, 2022 WL 3702102 at *2 (N.D. Cal. Aug. 26, 2022) (finding theories of lost time, embarrassment, and anxiety, without more, insufficient to establish standing); *Gadomski v. Patelco Cred. Union*, No. 2:17-cv-00695-TLN-AC, 2022 WL 223878, *4 (E.D. Cal. Jan. 24, 2022) ("Plaintiff's alleged emotional distress fails to establish standing because it is not concrete and particularized. . . . Plaintiff's allegations for emotional distress are vague and conclusory.").

[23] 47 C.F.R. § 54.520; 47 U.S.C. § 254(h), (l).

disclosed pursuant to the Driver's Privacy Protection Act did not have a reasonable expectation that such information would be kept private).[24]

  *"Misuse of Personal Information."* Securly operates as an extension of a school standing *in loco parentis* when it carries out its services.[25] Contrary to the SAC's flood of unsupported allegations (and insinuations) that Securly indiscriminately "shares" Student Information collected through school-owned devices with unnamed "third parties" (SAC ¶ 79) or that it operates as a "location data broker" (*id.* ¶ 39), Securly discloses Student Information only at the direction of the school and does not engage in selling, marketing, or brokering any Student Information. No child suffers any harm by schools' voluntary implementation and use of Securly's targeted student-safety software. In fact, the opposite is true: Securly has *prevented harm*—concrete, actual harm—through its monitoring services that have flagged for schools and parents content related to cyberbullying, violence, and even risk of suicide. Decl. ¶¶ 14-19.

  The Declaration of Securly's CEO properly controverts the SAC's baseless allegations that there has been any "misuse of personal information for commercial purposes," SAC ¶ 107, or that any privacy injury exists, requiring Plaintiffs to present actual evidence of the various harms they now claim to have suffered in

---

[24] Even where—unlike here—a reasonable expectation of privacy exists, an intrusion upon that privacy "must also be 'highly offensive' to a reasonable person and 'sufficiently serious' *and unwarranted* so as to constitute 'egregious breach of the social norms.'" *In re Facebook*, 956 F.3d at 601 (quoting *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1078 (Cal. 2009)) (emphasis added). Here, Securly's actions were not just authorized by law, but unquestionably warranted to help schools protect students from harmful materials online.

[25] As Securly explains to its school customers in the Student Privacy Policy: "You, the school, have engaged Securly, under contract, to collect Student Information, for the use and benefit of the students and the school in the educational context as authorized by you." RJN Ex. 2. *See* RJN Ex. 5 § 1.

order to establish standing. They cannot: Securly harms no privacy interests, and Plaintiffs have suffered no injury-in-fact.

**B.   THE SAC FAILS TO STATE ANY CLAIM.**

Even if Plaintiffs had sufficiently pled standing—which they have not—the SAC's allegations fail to state a claim under Rule 12(b)(6) because their allegations do not satisfy the requirements of the claims they raise.

**1.  Properly authorized student monitoring software does not violate the California Invasion of Privacy Act ("CIPA") or the federal Wiretap Act ("FWA").**

The FWA forbids "'the unauthorized interception of an electronic communication,' as well as the intentional disclosure or use of such intercepted communications." *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1117 (S.D. Cal. 2023) (quoting *In re Facebook*, 956 F.3d at 606–07). CIPA—also enacted during the Cold War to address the threat of espionage-related wiretapping and eavesdropping—similarly prohibits "(i) 'intentional wiretapping,' (ii) 'willfully attempting to learn the contents or meaning of a communication in transit over a wire,' and (iii) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.'" *Id.* (quoting *In re Google Assist. Priv. Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020)).[26] The CIPA and FWA analyses are "the same." *Id.* (quoting *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020)). These two claims fail because schools properly consented to the alleged activity and Securly neither intentionally nor willfully wiretapped or eavesdropped on students.

---

[26] Anyone who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned" in CIPA may also be liable. Cal. Penal Code § 631(a).

### (a)    California Invasion of Privacy Act

*No Wiretapping.* First, Section 631(a)'s "wiretapping" provision only applies to telephone communications and therefore has no application to the internet-related allegations at issue here. *See Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 22-cv-1954, 2023 WL 5837492, at *4-5 (S.D. Cal. Sept. 8, 2023).

*No Eavesdropping.* The SAC therefore focuses on § 631(a)'s "eavesdropping provision," which imposes liability on anyone who "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit . . . ." Cal. Pen. Code § 631(a). This second clause of § 631(a) is also inapplicable to Securly, which schools authorize to monitor students' online activities, as required by federal law.

As described above, Securly collects Student Information at the direction of schools, providing its services on behalf of schools as their agent. Plaintiffs' allegations support this understanding of Securly as monitoring data use on the devices within its control as an agent of its school customers. *See, e.g.*, SAC ¶ 56. Schools are authorized, and even required, by federal law to monitor the information that Securly collects on their behalf.[27] Because Securly is acting as an authorized agent of the schools in this regard, there is no unauthorized eavesdropping. *See Licea v. Am. Eagle*, 659 F. Supp. 3d. 1072, 1083 (C.D. Cal. 2023) (holding that a vendor who handles data on behalf of a customer is not a third party).

Moreover, Plaintiffs fail to adequately allege that any interception of purported communications occurred "while . . . in transit," and that an unauthorized interceptor read the communication "before it reached its intended recipient."

---

[27] 47 U.S.C. § 254(h), (l); 47 C.F.R. § 54.520(1)(c)(i)

*Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021).[28] Other than parroting the word "transit" from the statute (SAC ¶ 199), the SAC does not allege facts showing that any alleged communications were acquired during a transmission—a deficiency that dooms Plaintiffs' claim under the second clause of § 631(a) since the "in transit" requirement cannot be satisfied with "vague allegations about how [the] data collection occurs 'in real time.'" *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017).

***No Use or Aiding-and-Abetting.*** Because Plaintiffs fail to "establish that the information . . . was obtained through a violation of the first or second clauses," "they also have failed to plead a violation of the third clause of § 631(a)," concerning use of such information. *In re Google Assist. Priv. Litig.*, 457 F. Supp. 3d at 827. Plaintiffs' fleeting references to aiding and abetting (SAC ¶¶ 200, 202) similarly fail to state a cognizable claim. Plaintiffs do not identify any third party who could have violated CIPA. As such, Plaintiffs fail to state a derivative claim against Securly for "aiding and abetting" misconduct. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("[Defendant] is not liable for aiding and abetting [a third-party vendor's] wrongdoing because there is no wrongdoing.")

***No Bad Intent.*** CIPA requires a showing that the defendant *intentionally* engaged in wiretapping or eavesdropping. *See* Cal. Pen. Code § 631(a) (defendant must "intentionally" wiretap or "willfully" eavesdrop). As the SAC concedes, the schools voluntarily install and administer Securly's tools, *see* ¶¶ 29, 35, 56, to

---

[28] Liability under this second prong of § 631(a) exists only when a defendant "intercepted" or "acquired [the communication] during transmission." *Konop v. Haw. Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (noting that an interception in violation of the FWA must be "acquired during transmission"). *See also Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (CIPA's "in transit" element is analogous to FWA's "intercepted" element, requiring the same analysis).

comply with federal internet-filtering laws.[29] Securly accordingly operates on the basis that its software services comply with law at the direction of its clients, the schools. Because CIPA requires a showing that a defendant engaged in unlawful conduct *with the purpose or desire* of doing so—or that a defendant had *knowledge to a substantial certainty* that certain behavior will result in unlawful conduct—the SAC's lack of plausible allegations that Securly *intended* to wiretap or eavesdrop upon Plaintiffs' communications is fatal.[30] Plaintiffs' conclusory allegations that Securly "intentionally tapped" communications, SAC ¶ 198, do not suffice. *See Vartanian v. VW Credit, Inc.*, No. 11-cv-10776, 2012 WL 12326334, *2-3 (C.D. Cal. Feb. 22, 2012) (dismissing § 632 claim for failure to plead intent).

*Consent.* The CIPA claim also fails for the independent reason that schools consented to Securly's operation and collection of Student Information by installing the software. *See* Cal. Pen. Code § 631(a) (prohibiting conduct that is done "without the consent of all parties to the communication, or in any unauthorized manner"). "Where lack of consent is an express element of a claim . . . it must be alleged in the complaint." *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015). To state a claim for relief then, Plaintiffs must plausibly allege there was no consent to Securly's processing of Student Information.

Plaintiffs allege that Securly software operated on school devices without their knowledge or consent, *see, e.g.*, SAC ¶¶ 37, 40, 50-55, 77-79, but they also acknowledge Securly's Student Privacy Policy (*id.* ¶ 71), which states that Securly, per its COPPA obligations, "require[s] schools to consent to [the] collection and use of Student Information, on behalf of parents." Plaintiffs fail to allege that Securly

---

[29] 47 U.S.C. § 254(h)(5)(B)(i)-(ii); 47 C.F.R. § 54.520(1)(c)(i).

[30] *See People v. Super. Ct.*, 449 P.2d 230, 238 (Cal. 1969) (en banc) (requiring that "person using the recording equipment does so with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that his use of the equipment will result in [such] recordation").

did not obtain requisite consent from schools. Because Plaintiffs fail to allege that *Securly* lacked valid consent from the schools to collect information alleged, they cannot establish a claim under § 631(a). *See Garcia*, 78 F. Supp. 3d at 1136.

### (b) Federal Wiretap Act

For the same reasons Plaintiffs' "in transit" allegations are insufficient under CIPA, their "interception" allegations under FWA fall short. *See supra* note 28. As with their CIPA claim, Plaintiffs have also failed to properly plead the intentionality required for their FWA claim. *See Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, No. SACV 15-00137-JLS (RNBx), 2015 WL 13273308, at *7 (C.D. Cal. July 29, 2015) (dismissing FWA claim against recording system vendor due to conclusory intentionality allegations). The FWA claim also fails for at least two additional reasons.

***Party Exception.*** Under the FWA, "[i]t shall not be unlawful . . . for a person . . . to intercept a[n] electronic communication where such person is a party to the communication," so long as such interception is not "for the purpose of committing any criminal or tortious act[.]" *Pena*, 670 F. Supp. 3d at 1117-18 (citations omitted). As the owners of the Chromebooks and per their obligation to monitor students' online activity, Plaintiffs' schools were a party to their communications. In contracting with Securly to perform its filtering and monitoring services on their behalf, Plaintiffs' schools authorized Securly to collect this data as an extension of the school, therefore excepting it from FWA liability.

***Incident to Rendition of ECS.*** Further, the FWA generally permits monitoring that is "a necessary incident to the rendition of [the electronic communication] service or to the protection of the rights or property of the provider of that service . . . ." *See* 18 U.S.C. § 2511(2)(a). Here, Plaintiffs' schools provided the internet-enabled Chromebooks to Plaintiffs. SAC ¶¶ 28, 33. Under E-Rate and other federal laws and programs, Plaintiffs' schools are required to undertake certain measures to make internet use on such Chromebooks safe for students like

N.M. and A.S. Plaintiffs' schools contracted with Securly, the schools' agent and a school official under FERPA, to provide this necessary service to protect all involved. In this way, because Securly was acting as the agent of the electronic communications service provider, Securly did not intercept N.M.'s or A.S.'s communications in violation of the FWA.

### 2. Plaintiffs fail to state a claim for unlawful use of an electronic tracking device or pen register under CIPA.

Securly's software is not an electronic tracking device, a pen register, or a trap-and-trace device by the plain language of CIPA.

***Tracking device.*** Violations of CIPA § 637.7 require that "the location or movement of a person" be determined by an "electronic tracking device," *i.e.*, a device "attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals." Cal. Pen. Code § 637.7(a), (d). Where a plaintiff alleged that a mobile application on his phone violated § 637.7 by tracking his movement, the Northern District dismissed the claim, finding that the application was not "attached" to a "movable thing" (the cell phone) because "[t]he ordinary meaning of 'to attach' in this context is 'to join or fasten (something) to something else." *Moreno v. S.F. Bay Area Rapid Transit Dist.*, No. 17-cv-02911, 2017 WL 6387764, at *4-5 (N.D. Cal. Dec. 14, 2017). The same reasoning applies here.[31]

Further, § 637.7 does not apply when owners—here, the schools—consent to tracking of their own property. *See* Cal. Pen. Code § 637.7(b).

---

[31] *See also Mollaei v. Otonomo Inc.*, 651 F. Supp. 3d 1135, 1141 (N.D. Cal. 2023) (holding that a "device" under § 637.7 "must be a separate device that is attached, or placed, onto an automobile by the alleged wrongdoer"); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 194 (N.D. Cal. 2019) (citing CIPA's legislative history to reject "GPS hardware, cellular radios, and WiFi chips as 'electronic tracking devices.'").

***Pen Register / Trap-and-Trace Device.*** To plead a claim under Cal. Pen. Code § 638.51, a plaintiff must allege the following elements: (1) the defendant installed or used; (2) a pen register or trap and trace device; (3) without a court order; and (4) no exception, such as user consent, applies. Plaintiffs' allegation that Securly's software is "pen register," SAC ¶ 233, therefore fails for several reasons.

In addition to lacking statutory standing because they have pleaded no injury, Plaintiffs also fail to plead that Securly's software is a "pen register," *i.e.*, "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, *but not the contents of a communication*." § 638.50(b) (emphasis added). Plaintiffs allege that Securly's software is a device that records their "sensitive personal information," SAC ¶ 233, *i.e.*, the content of the communication. The factual circumstances of this case—a student-safety service that monitors students' use of school-owned and -issued computers to help schools comply with federal law—also distinguish it from recent cases where software was found to meet the statutory definition. *See, e.g.*, *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023) (concluding data broker's software development kits that allowed application developers to intercept their users' data from their telephones so data broker could package the data and sell it for advertising purposes were pen registers). Further, Plaintiffs fail to plead that Securly "installed or used" the alleged pen register. Instead, they allege that "the school district had installed . . . Securly software" on the Chromebooks. SAC ¶¶ 29, 35.

Furthermore, Securly's software fits several of the statutory exceptions. First, the schools use Securly's software to "operate" and "maintain" the schools' electronic communication service, *i.e.*, the internet-enabled Chromebooks; FCIPA requires such monitoring, so the schools could not provide this service to its students, including Plaintiffs, without Securly's software. Cal. Pen. Code § 638.51(b)(1). Second, Securly's software, which Plaintiffs allege record the

location of the Chromebooks, "protect[s] the . . . property of the provider," *i.e.*, the schools' Chromebooks. *Id.* § 638.51(b)(2). Third, Securly's software, which Plaintiffs allege flags inappropriate material viewed by students, "protect[s] users of the service from abuse of the service or unlawful use of the service." *Id.* § 638.51(b)(3). And if Securly is the provider of the service, then the statute's consent exception applies. *See id.* § 638.51(b)(5). The schools are the users, and they consent to the "pen register" on the Chromebooks; they also consent for parents and students through FERPA to meet FCIPA's requirements.

### 3. Schools do not hack their own computers by installing student monitoring software.

The Computer Fraud and Abuse Act ("CFAA") and its California analog, the California Computer Data Access and Fraud Act ("CDAFA"), are primarily criminal statutes targeting hackers, not educational technology companies like Securly who work with schools to protect students. *See Van Buren v. United States*, 593 U.S. 374, 378-79 (2021); *Custom Packaging Supply, Inc. v. Phillips*, No. 15-CV-04584, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015). The data-processing practices alleged are not related to the cybercrime activity that spawned these laws.

### (a)    California Computer Data Access and Fraud Act

Plaintiffs attempt to shoehorn purported grievances about Securly's monitoring and filtering into three subsections of CDAFA, all of which, like the CFAA, require, among other things, (1) specific "damage or loss" suffered by the property owner; and (2) a showing that the defendant "knowingly" accessed property "without permission."

***No Standing.*** First, CDAFA provides that only "the *owner* or *lessee* of the computer, computer system, computer network, computer program, or data who suffers damage or loss . . . may bring a civil action against the violator." Cal. Pen. Code § 502(e)(1) (emphasis added). As alleged, the devices at issue are *school* computers—not owned by students or parents—and the SAC contains no

allegations that Plaintiffs were "lessees" of the devices or owners of the Student Information on the devices. In fact, Securly's Terms of Service explicitly state that the schools, not Securly, own Student Information. *See* RJN Ex. 4 ("Customer shall retain all title to and ownership of and all proprietary rights with respect to User Data, and shall be solely responsible for its use thereof."). For that reason alone, Plaintiffs' claims under CDAFA should be dismissed. *See Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018) (dismissing CDAFA claim for failure to allege defendant "accessed *Plaintiff's* computer, computer system, etc."), *on reconsideration*, No. 17-cv-02264, 2018 WL 3068248 (N.D. Cal. June 21, 2018).

***No Economic Loss.*** CDAFA also requires a showing of economic "*damage or loss* by reason of a violation," which Plaintiffs do not (and cannot) plausibly allege. Cal. Pen. Code § 502(e)(1) (emphasis added); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018). Plaintiffs' unsupported claims that Securly somehow "unjustly enriched" itself at their expense by "intercepting, acquiring, taking, or using [their] data, communications, and personal information without their permission," SAC ¶¶ 219, 225, or "collected, sold, licensed, and transferred" geolocation data, *id.* ¶ 5, are not the kind of "damage or loss" contemplated by CDAFA. *See Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (rejecting plaintiffs' theorized "loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data").

The SAC merely recites CDAFA's private-right-of-action provisions, ignoring much of the statute's essential language about damages. *See* SAC ¶¶ 227-229. Since Plaintiffs have not adequately alleged that they have suffered harm covered by CDAFA, their claim must be dismissed. *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219 (N.D. Cal. 2014) (dismissing CDAFA claim lacking plausible allegations that plaintiffs "suffered any tangible harm from the alleged Section 502 violations").

***No Allegations Securly "Knowingly" Accessed Property "Without Permission."*** Sections 502(c)(1)(2) and (7) further require Securly to have acted "knowingly" and "without permission" in "access[ing]" a computer. *Paskenta Band of Nomlaki Indians v. Crosby*, No. 15-cv-00538, 2016 WL 3854237, at *3 (E.D. Cal. July 15, 2016). Each of these subsections requires "knowing" conduct, which cannot be plausibly alleged: Securly software operates as a lawful tool that schools authorize and install on their own devices. The SAC fails to plead facts supporting any allegation that Securly accessed any computers or data "without permission"— let alone any hardware or information *owned by students or parents. See Custom Packaging*, 2015 WL 8334793, at *4 (noting that because CDAFA is a criminal statute, courts interpret "without permission" narrowly).

***"Wrongfully Control or Obtain Money, Property, or Data."*** CDAFA liability under § 502(c)(1) also only attaches where an individual "uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data." Cal. Pen. Code § 502(c)(1). The SAC lacks any plausible allegations establishing subparts (A) or (B). The SAC thus fails to plead any liability under § 502(c)(1).

### (b)    Computer Fraud and Abuse Act

As under CDAFA, to plead a CFAA claim, Plaintiffs must show that Securly "(1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that [it] (3) thereby obtained information (4) from any protected computer (if the conduct involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009). Plaintiffs fail to adequately plead either the requisite loss or that Securly's actions lacked authorization.

***No Loss or Damage.*** Plaintiffs only allege a conclusory "loss," *i.e.*, "the

impairment of the integrity and availability of data, programs, and systems on Plaintiffs' . . . computers," SAC ¶ 242, subject to dismissal. *See India Price v. Carnival Corp.*, No. 23-CV-236-GPC-MSB, 2024 WL 221437, at *8 (S.D. Cal. Jan. 19, 2024) (citing *James v. Veros Credit, LLC*, 2019 WL 13102877, at *2 (S.D. Cal. Sept. 3, 2019) (dismissing unsupported CFAA claim). A "loss" is an economic loss of more than $5,000, *see* § 1030(e)(11); § 1030(g) & (c)(4)(A)(i)(I); what Plaintiffs describe is "damage," *see* § 1030(e)(8). They have alleged no loss and not adequately alleged any damage. After all, the Chromebooks belonged to schools, not Plaintiffs, and Plaintiffs make no plausible allegations that there was any impairment of the integrity or availability of the Chromebooks; there was none.

*"Without Authorization" or "Exceeds Authorized Access."* Plaintiffs also cannot plausibly allege Securly accessed N.M.'s or A.S.'s school-owned computer "without authorization," as required by under § 1030(a)(2). "The 'without authorization' clause . . . protects computers themselves by targeting so-called outside hackers—those who 'acces[s] a computer without any permission at all.'" *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1198 (9th Cir. 2022) (quoting *Van Buren*, 593 U.S. at 389). Plaintiffs do not contest that their schools *authorized* Securly to access their Chromebooks. *See* SAC ¶ 71.

The "'exceeds authorized access' clause . . . provide[s] complementary protection for certain information within computers . . . by targeting so-called inside hackers—those who access a computer with permission, but then '"exceed" the parameters of authorized access by entering an area of the computer to which [that] authorization does not extend.'" *hiQ Labs*, 31 F.4th at 1198 (quoting *Van Buren*, 593 U.S. at 389-90). Plaintiffs make no allegations that Securly entered an area of the device that it was not authorized to access, so this theory fails as well.

### 4. The Stored Communications Act is irrelevant to Securly's software.

Like the CFAA, the SCA requires Plaintiffs to plead that Securly (1) gained unauthorized access to a "facility" where it (2) accessed an electronic

communication in "electronic storage," *In re Facebook*, 956 F.3d at 608 (citing 18 U.S.C. § 2701(a)), or "intentionally exceed[ed] an authorization to access that facility," 18 U.S.C. § 2701(a)(2). Plaintiffs allege that Securly accessed their "electronic communications stored on school-issued devices without authorization" or that Securly "exceeded any authorized access" by disclosing Plaintiffs' "stored electronic communications for commercial gain." SAC ¶¶ 245, 247.

Plaintiffs' first SCA theory fails because Plaintiffs do not allege any "electronic storage." *See In re Facebook, Inc.*, 956 F.3d at 608–09. Further, as just noted with respect to the CFAA claim, Securly was authorized by schools, in compliance FCIPA, to access any stored communications at issue, as the schools owned the Chromebooks and contracted with Securly to monitor them. *See* SAC ¶¶ 29, 35. *See Pica v. Delta Air Lines, Inc.*, 812 F. App'x 591, 592–93 (9th Cir. 2020) (affirming no § 2701(a) violation where tech vendor was provided access).

Plaintiffs' second SCA theory also fails. No well-pleaded fact or good-faith basis supports the contention that Securly disclosed Plaintiffs' "stored electronic communications for commercial gain." Plaintiffs baldly allege that Securly shared students' video-viewing habits with "third parties," *see, e.g.*, SAC ¶¶ 30, 31, but the only plausibly alleged disclosures were to the students' own parents, *see id.* ¶ 67.[32] Any parental disclosures were not for commercial gain, and Plaintiffs do not plausibly allege otherwise—the emails simply inform parents of their children's activities on school computers. SAC ¶ 62. Finally, these emails do not exceed authorized access, as reporting about student computer use to schools and parents are Securly's duties under their school contracts. *See* SAC ¶ 42.

### 5.  Students cannot seclude their use of school computers from schools.

To plead a California common-law claim for intrusion upon seclusion, a plaintiff must adequately allege that (1) a defendant "intentionally intrude[d] into a

_____

[32] As noted previously, there are no allegations Plaintiffs were affected by this.

place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,]" and (2) the intrusion "occur[red] in a manner highly offensive to a reasonable person." *In re Facebook*, 956 F.3d at 601 (quoting *Hernandez*, 211 P.3d at 1078).

Plaintiffs do not allege how A.S. and N.M.—minors under the age of 13 using school-issued computers—had a "reasonable expectation of privacy" in their activity on those devices. While children do not "shed their constitutional rights . . . at the schoolhouse gate," *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969), students have diminished privacy expectations with respect to school-related activity, *see Bd. of Educ. of Indep. Sch. Dist. No. 92 v. Earls*, 536 U.S. 822, 830 (2002) ("A student's privacy interest is limited in a public school environment where the [s]tate is responsible for maintaining . . . safety."). Students have no reasonable expectation of privacy in their school computer usage, as schools are legally required to monitor—or outsource monitoring—for inappropriate online materials, as mandated by Congress under FCIPA. *See* 47 U.S.C. § 254(h)(5)(B)(i)-(ii); 47 C.F.R. § 54.520.

"While analysis of a reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *In re Facebook*, 956 F.3d at 606 (quoting *Hernandez*, 211 P.3d at 1073). The "highly offensive" analysis "requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Id.* (citing *Hernandez*, 211 P.3d at 1073). Here, Plaintiffs suffered no cognizable harm, and Securly's "motives and objectives" were to help schools protect their students. SAC ¶¶ 42. Either Plaintiffs' assertions are not based on well-pleaded allegations, *see id.* ¶ 285, or they misunderstand how to protect children, *see id.* ¶¶ 282-84. Securly's monitoring was authorized by Plaintiffs' schools and federal law and therefore cannot be "highly offensive to a reasonable person."

### 6. Plaintiffs plead no economic damage adequate to support a claim under the California UCL.

To maintain standing under the UCL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, *i.e.*, economic injury; and (2) show that economic injury was the result of, *i.e.*, caused by, the unfair business practice . . . that is the gravamen of the claim." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 965 (S.D. Cal. 2012) (quoting *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 885 (Cal. 2011). Here, Plaintiffs have not pleaded any economic injury—no money paid or property lost, just theoretical harms—compelling the dismissal of the UCL claim.[33]

### CONCLUSION

Securly respectfully requests that the Court grant its Motion to Dismiss the SAC with prejudice.

---

[33] Plaintiffs' UCL claim also fails because they have not plausibly alleged a valid predicate violation (for "unlawfulness"), that Securly shared Student Information for commercial gain (for "unfairness"), that Plaintiffs' relied on any of Securly's statements (the "fraudulent" prong), of that they lack an adequate remedy at law. *See, e.g.*, *BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-CV-03345-WHO, 2021 WL 4061698, at *16 (N.D. Cal. Sept. 7, 2021) (FTC Act cannot be predicate for UCL claim); *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *7 (N.D. Cal. July 28, 2021) ("consumers may not use the CCPA as a basis for a private right of action under any statute"); *In re Sony*, 903 F. Supp. 2d at 969 (UCL "fraudulent" theories require "actual reliance"); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal of UCL claim where plaintiff failed to show she lacked "an adequate remedy at law").

Dated: September 20, 2024                Respectfully submitted,

                                         By: _/s/ Amy Jane Longo_____
                                              Amy Jane Longo
                                              ROPES & GRAY LLP
                                              10250 Constellation Blvd
                                              Los Angeles, CA 90067
                                              Tel: (310) 975-3300
                                              Fax: (310) 975-3400
                                              amy.longo@ropesgray.com

                                              Edward R. McNicholas (*pro hac vice*)
                                              Frances Faircloth (*pro hac vice*)
                                              ROPES & GRAY LLP
                                              2099 Pennsylvania Avenue, N.W.
                                              Washington, DC 20006-6807
                                              Tel: (202) 508-4600
                                              Fax: (202) 508-4650
                                              edward.mcnicholas@ropesgray.com
                                              fran.faircloth@ropesgray.com

                                              *Attorneys for Defendant Securly, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

**BY CM/ECF TRANSMISSION:**  In accordance with the Electronic Case Filing Administrative Policies and Procedures Manual for the United States District Court, Southern District of California, the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 20, 2024, at Los Angeles, California.


*/s/ Amy Jane Longo*
Amy Jane Longo