1  Joshua B. Swigart (SBN 225557)
   Josh@SwigartLawGroup.com
2  **SWIGART LAW GROUP, APC**
   2221 Camino del Rio S, Ste 308
3  San Diego, CA  92108
   P: 866-219-3343
4  F: 866-219-8344
5
6  Attorneys for Plaintiffs
7
8                **UNITED STATES DISTRICT COURT**
9               **SOUTHERN DISTRICT OF CALIFORNIA**
10
11  SHERI BATE, and her child N.M., and          Case No. 3:23-cv-01304-AGS-DEB
    AZUCENA MEJIA, and her child A.S.,
12  individually and on behalf of others similarly   CLASS ACTION
    situated,
13                                                **PLAINTIFFS' OPPOSITION TO**
                        Plaintiffs,              **SECURLY, INC.'S MOTION TO**
14                                                **DISMISS THE SECOND AMENDED**
                                                 **COMPLAINT**
15            v.
16                                                Judge:  Hon. Andrew G. Schopler
    SECURLY, INC.,                                Date:   November 8, 2024
17                                                Time:  10:00 am
                        Defendant.               Courtroom:    5C
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................................7

II.   PROCEDURAL HISTORY ................................................................................7

III.  FACTUAL BACKGROUND..............................................................................7

    A.    Securly's Surveillance Methods                                                    8

    B.    Plaintiffs' Injury                                                                 8

    C.    Plaintiffs' Claims                                                                 8

IV.   LEGAL STANDARD .........................................................................................9

    A.    Federal Rule of Civil Procedure 12(b)(1)                                           9

    B.    Federal Rule of Civil Procedure 12(b)(6)                                          10

V.    ARGUMENT .....................................................................................................10

    A.    Plaintiffs Allege Concrete Injury                                                 10

    B.    Plaintiffs Have Stated A Plausible Claim Under CIPA and the Wiretap Act        13

        a.    Section 631(a)[1]: Wiretapping...........................................14

        b.    Section 631(a)[2]: Eavesdropping........................................15

        c.    Section 631(a)[3]-[4]: Use and Aiding-and-Abetting ...............20

        d.    The Intent Requirement.......................................................20

    C.    Plaintiffs Have Stated A Plausible Claim Under CIPA § 637.7                     21

    D.    Plaintiffs Have Adequately Stated A Claim Under CDAFA                            23

        e.    Standing ...............................................................................24

        f.    Economic Loss ....................................................................24

        g.    Knowingly............................................................................26

        h.    Wrongfully ..........................................................................26

    E.    Plaintiffs Adequately Allege a Violation of the CFAA                             27

    F.    Plaintiffs Adequately Allege a Violation of the SCA                             28

    G.    Plaintiffs Adequately Allege Intrusion Upon Seclusion                           28

    H.    Plaintiffs Adequately Allege Injury Under the UCL                               29

VI.   CONCLUSION .................................................................................................30

Plaintiffs' Opposition to Defendant's Motion to Dismiss        CASE No: 3:23-cv-01304-AGS-DEB

1

**TABLE OF AUTHORITIES**

2

**Cases**

3    *Apple v. Superior Court*, 56 Cal. 4th 128 (2013) ...................................................17

4    *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................11

5    *Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050 (S.D. Cal. Aug. 2, 2023)............18

6    *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1050 (N.D. Cal. 2014) ........................35

7    *Bd. of Educ. of Indep. Sch. Dist. No. 92 v. Earls*, 536 U.S. 822, 830 (2002) ................34

8    *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................11

9    *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) .......................................35

10    *Brown v. Google LLC*, 2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ............................13

11    *Brown v. Google, LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021)............................... 19, 24

12    *Byars v. The Goodyear Tire and Rubber Co.*, 2023 WL 1788552, at *4-5 (C.D. Cal. Feb.

13        3, 2023)..........................................................................................20

14    *Byrd v. U.S.*, 138 S. Ct. 1518, 1528 (2018) ..........................................................26

15    *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021)...................... 24, 35

16    *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156 (9th Cir. 2016).................. 10, 11

   *Cetacean Cmty. v. Bush*, 386 F.3d 1169 (9th Cir. 2004)...........................................11

17    *Citizens for a Responsible Caltrans Decision v. Dept. of Transp.*, 46 Cal. App. 5th 1103,

18        1119 (2020) ....................................................................................25

19    *Clark v. City of Lakewood*, 259 F.3d 996 (9th Cir. 2001) .........................................11

20    *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1050-51 (N.D. Cal. 2018) .....................22

21    *Cousin v. Sharp Healthcare*, 2023 WL 4484441, at *9-10 (S.D. Cal. July 12, 2023).................22

22    *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074 (N.D. Cal. 2019) .....................10

23    *Doe v. MetaPlatforms, Inc.*, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) .....................19

24    *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) .......................................12

25    *Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002) .....................................................17

26    *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)............12

27    *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *5 (S.D. Cal. Jul. 13, 2023)............................21

28    *Gonzales v. Uber Techs., Inc.*, 305 F.Supp.3d 1078, 1086 (N.D. Cal. 2018) .....................22

*Greenley v. Kochava, Inc.*, 2023 WL 4833466 (S.D. Cal. July 27, 2023) ...................... 12, 15, 31

*Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 WL 6802818, at *5 (C.D. Cal. Oct. 1, 2018) ................................................................................................................29

*Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 443 F. Supp. 3d 1152 (E.D. Cal. 2020) ........................................................................ 9, 10

*In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) ................................................................................................................29

*In re Facebook Privacy Litig.*, 572 F. App'x 494 (9th Cir. 2014) ..............................29

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .........................passim

*In Re Google Location History*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) ..............................26

*In re Meta Pixel Tax Filing Cases*, —— F. Supp. 3d ——, ——, 2024 WL 1251350 (N.D. Cal. 2024) ........................................................................... 19, 22

*In re Pharmatrak*, 329 F.3d 9 (1st Cir. 2003) ...............................................................19

*In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2017 WL 3727318, at *13-14, 49 (N.D. Cal. Aug. 30, 2017) ..........................................................29

*Javier v. Assurance IQ*, LLC, 2022 WL 1744107 (9th Cir. 2022) ........................................ 18, 20

*Jones v. United States* (1960) 362 U.S. 257, 259] ..................................................26

*Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *5-6 (N.D. Cal. April 6, 2023) ...........20

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994) .........................................................9

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) ......................................22

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321–22 (2011) ..........................................35

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ..................................................10

*Licea v. Old Navy, LLC*, 2023 WL 3012527 (C.D. Cal. Apr. 19, 2023) ...............................18

*Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at *6 (C.D. Cal. Oct. 13, 2016) .................30

*Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 689 (N.D. Cal. 2021) ..........................................24

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ..................................................12

*Matera v. Google Inc.*, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ........................... 14, 16, 17

*Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1032 (C.D. Cal. 2012) ...........29

*Moreno v. San Francisco Bay Area Rapid Transit District* ........................................27

Plaintiffs' Opposition to Defendant's Motion to Dismiss                          CASE No: 3:23-cv-01304-AGS-DEB

*Nat'l Photo Grp., LLC v. Allvoices, Inc.*, 2014 WL 280391 (N.D. Cal. Jan. 24, 2014)...............10

*NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 964 (N.D. Cal. 2014).............. 29, 32

*Osgood v. Main Steet Mktg., LLC*, 2017 WL 131829 (S.D. Cal. Jan. 13, 2017).......................14

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019)........................................................12

*Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112 (S.D. Cal. 2023) .......................................16

*People v. Superior Ct of Los Angeles Cnty.*, 70 Cal. 2d 123, 134 (1969)......................................23

*Phillips v. Ex'r of Est. of Arnold*, 2013 WL 4458790, at *4 (W.D. Wash. Aug. 16, 2013) ..........32

*Raffin v. Medicredit, Inc.*, 2016 WL 7743504 (C D. Cal. Dec. 19, 2016).......................................14

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019); ..............20

*Ribas v. Clark*, 38 Cal. 3d 355 (1985) ................................................................................ 17, 20

*Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) ........................24

*Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 435 (2018)......................................24

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) .........................................10

*Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021) .............................................. 18, 20

*Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 (2021) ..........................................................20

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...................................................................... 12, 14

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001). ......................................11

*Tavernetti v. Superior Court of San Diego Cty.*, 22 Cal. 3d 187 (Cal. 1978). ................................16

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)......................................34

*TransUnion LLC v. Ramirez*, 549 U.S. 413 (2021) ............................................................12

*United States v. Keys*, 703 F. App'x 472, 475 (9th Cir. 2017) ...........................................32

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003)...............................10

*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................................................12

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) .....................................................................10

*Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022)........21

*Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2023 WL 5837492 (S.D. Cal. Sept. 8, 2023)....................................................................................................................16

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) ............................18, 20, 21

**Statutes**

18 U.S.C. § 1030 .................................................................................................7

18 U.S.C. § 2701 .................................................................................................7

California Business and Professions Code § 17200 .............................................7

California Penal Code § 502 .................................................................................7

California Penal Code § 631 .................................................................................7

California Penal Code § 637.7 ..............................................................................7

California Penal Code § 638.51 ............................................................................7

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ..................................................... 7, 10

Federal Rule of Civil Procedure 12(b)(6) .......................................................8, 9

Federal Rule of Civil Procedure 12(h) .................................................................7

**Constitutional Provisions**

U.S. Const. art. III, § 2 ........................................................................................9

Plaintiffs' Opposition to Defendant's Motion to Dismiss                    CASE No: 3:23-cv-01304-AGS-DEB

## I.    INTRODUCTION

Plaintiffs Sheri Bate, Azucena Mejia, and their respective minor children N.M. and A.S. ("Plaintiffs"), suing individually and on behalf of all similarly-situated California residents ("Class Members"), respectfully submit this Memorandum of Points and Authorities in Opposition to the Motion to Dismiss the Second Amended Complaint (the "MTD") filed by Defendant Securly, Inc. ("Defendant") for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs, representing minors unknowingly subjected to invasive monitoring, oppose Defendant Securly, Inc.'s Motion to Dismiss on grounds that Securly's actions flagrantly breach California and federal privacy laws. Installed without parental consent on school-issued devices, Securly's software covertly tracks students' locations, online activities, and shares this sensitive data with third parties under the pretense of school safety. Plaintiffs argue that this unauthorized data collection violates the California Invasion of Privacy Act (CIPA) and the Federal Wiretap Act, infringing on minors' fundamental privacy rights and exposing them to potential harm. The substantial privacy violations detailed here not only underscore Securly's disregard for consent but also establish Plaintiffs' standing and the legal sufficiency of their claims.

## II.    PROCEDURAL BACKGROUND

Plaintiffs initiated this action on July 14, 2023. (ECF No. 1.) When Defendant moved to dismiss the complaint for failure to state a claim, Plaintiffs opted to file a First Amended Complaint in lieu of an opposition. (ECF Nos. 12, 13.) Defendant then moved to dismiss the First Amended Complaint for failure to state a claim. (ECF No. 15.) On August 23, 2024, the Court *sua sponte* dismissed the First Amended Complaint with leave to amend for lack of subject matter jurisdiction and thereby denied Defendant's motion to dismiss as moot. (ECF No. 24.) On September 6, 2024, Plaintiffs filed the operative pleading, the Second Amended Complaint (the "SAC"). (ECF No. 25.) Defendant now moves to dismiss for failure to state a claim and lack of subject matter jurisdiction.

## III.    FACTUAL BACKGROUND

Sheri Bate is the mother of N.M., a child under the age of 13 and a student at Julian Charter School in San Diego, California. (SAC ¶¶ 26–27.) Azucena Mejia is the mother of A.S., a child under

the age of 13 and a student at Rancho de la Nacion in National City, California. (SAC ¶¶ 32–33.) Both N.M. and A.S. were issued Chromebooks by their schools for distance learning. (SAC ¶¶ 28, 32.) Unbeknownst to Plaintiffs, the school district had installed Defendant's software on the Chromebooks, tracking N.M. and A.S.'s geolocation, web searches, websites visited, and videos watched. (SAC ¶¶ 29, 35.) Bate and Mejia were never informed that their children would be monitored and only learned in June 2023 that Defendant had intercepted and shared the collected data with third parties without their knowledge or consent. (SAC ¶¶ 30–31, 36–37.)

### A. Securly's Surveillance Methods

Defendant, under the pretense of protecting students, collects geolocation and app usage data from students' Chromebooks and other mobile devices. Securly lets school districts hide this monitoring by controlling what activity parents can see and installing the software without detection or parental consent. Parents are unaware of the monitoring details. Securly also sends unsolicited emails to some parents, containing children's search history, websites visited, and videos watched, violating privacy rights. Upon downloading the Securly app, parents' personal information is collected and monetized through targeted advertising.

### B. Plaintiffs' Injury

Plaintiffs have suffered significant harm from Defendant's data collection, including exposure to personal identification, discrimination, violence, emotional distress, and other damages. The practices unlawfully intrude into consumers' private lives. Additionally, Defendant's sale of Plaintiffs' private information has caused further harm by violating their children's privacy, reducing their autonomy, and misusing personal data for commercial gain.

### C. Plaintiffs' Claims

Plaintiffs assert nine causes of action: violations of the California Invasion of Privacy Act (CIPA), California Penal Code § 631 for unlawful wiretapping, and § 637.7 for the unlawful use of an electronic tracking device; California Computer Data Access and Fraud Act (CDAFA), California Penal Code § 502, and the use of a pen register or trap and trace device under California Penal Code § 638.51; federal claims for violations of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, the Stored Communications Act (SCA), 18 U.S.C. § 2701, and the Federal Wiretap Act, 18

1  U.S.C. § 2520; and, violation of California's Unfair Competition Law (UCL), California Business

2  and Professions Code § 17200 et seq., and intrusion upon seclusion.

3  **IV.    LEGAL STANDARD**
   **A. Federal Rule of Civil Procedure 12(b)(1)**

4       "Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction

5  over civil actions." *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 443 F.

6  Supp. 3d 1152, 1156 (E.D. Cal. 2020) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377

7  (1994)), aff'd, 997 F.3d 848 (9th Cir. 2021).  Federal courts "possess only that power authorized by

8  Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377

9  (internal citations omitted). Subject matter jurisdiction is required; it cannot be waived. *Howard*

10 *Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156. Indeed, "[i]f the court determines at any time that it

11 lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h) (3).

12      Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may "challenge a

13 federal court's jurisdiction over the subject matter of the complaint." *Nat'l Photo Grp., LLC v.*

14 *Allvoices, Inc.*, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24, 2014). "A Rule 12(b)(1) jurisdictional

15 attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained

16 in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v.*

17 *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

18      A party, this this Defendant, making a facial attack does not submit supporting evidence with

19 the motion because jurisdiction is challenged based solely on the pleadings. *Howard Jarvis Taxpayers*

20 *Ass'n*, 443 F. Supp. 3d at 1156; *see also Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d

21 1074, 1084 (N.D. Cal. 2019) ("[C]ourts do not consider evidence outside the pleadings when

22 deciding a facial attack.") (citation omitted). "The district court resolves a facial attack as it would a

23 motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as true and drawing all

24 reasonable inferences in the plaintiff's favor, the court determines whether the allegations are

25 sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121

26 (9th Cir. 2014). The court need not, however, assume the truth of legal conclusions cast in the form

27 of factual allegations. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

28

1

2

### B. Federal Rule of Civil Procedure 12(b)(6)

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "A complaint may be dismissed for failure to state a claim only when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of 'his entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Legal conclusions are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* at 545. The Court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff," *Caltex Plastics, Inc.*, 824 F.3d at 1159 (citation omitted), but it need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### V.    ARGUMENT

### A. Plaintiffs Allege Concrete Injury

Defendant argues that Plaintiffs fail to allege specific injury, even as they recognize that a violation of privacy interests is an injury-in-fact. *See* MTD at 8–9. Article III of the Constitution requires courts to adjudicate only actual cases or controversies. U.S. Const. art. III, § 2, cl. 1. "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386

10

1  F.3d 1169, 1174 (9th Cir. 2004). "Standing is determined by the facts that exist at the time the

2  complaint is filed." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001). In order to

3  establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is

4  concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the

5  defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v.*

6  *Ramirez*, 549 U.S. 413, 423 (2021) (*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

7  "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the*

8  *Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (internal citations

9  omitted).

10      To survive a Rule 12(b)(1) facial challenge, "the plaintiff must 'clearly . . . allege facts

11  demonstrating' each element [of standing]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)

12  (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Plaintiffs have done just that. Defendant's Rule

13  12(b)(1) argument only challenges the "injury-in-fact" element of standing, which Plaintiffs properly

14  pled. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally

15  protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

16  hypothetical.' " *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). A "concrete" injury "must

17  be 'de facto'; that is, it must actually exist." *Id.* at 340 (citing Black's Law Dictionary 479 (9th ed.

18  2009)). "Although 'the most obvious' concrete harms are tangible, e.g., physical or monetary,

19  'various intangible harms can also be concrete.' " *Greenley v. Kochava, Inc.*, 2023 WL 4833466, at

20  *3 (S.D. Cal. July 27, 2023) (quoting *TransUnion*, 141 S. Ct. at 2204). These include injuries "with

21  a close relationship to harms traditionally recognized as providing a basis for lawsuits in American

22  courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion."

23  *Id.*

24      "A right to privacy 'encompass[es] the individual's control of information concerning his or

25  her person.' " *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quoting

26  *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)). Violations of this right fall into the

27  category of traditionally recognized harms. *Greenley*, 2023 WL 4833466, at *3 (citing *Patel v.*

28  *Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right

1   to privacy")).  As a result, intrusions into privacy can constitute an injury in fact. *Greenley*, 2023 WL

2   4833466, at *3.

3          In *In re Facebook*, 956 F.3d 589, which concerned whether Facebook-users had standing to

4   sue Facebook for tracking their browsing histories after they had logged out of Facebook, the Ninth

5   Circuit reasoned that Facebook's practices enabled it to "amass a great degree of personalized

6   information . . . without affording users a meaningful opportunity to control or prevent the

7   unauthorized exploration of their private lives." *Id.* at 599. The Ninth Circuit firmly rejected the claim

8   that private data collection is not an injury in fact: "In an era when millions of Americans conduct

9   their affairs increasingly through electronic devices, the assertion . . . that federal courts are powerless

10  to provide a remedy when an internet company surreptitiously collected private data . . . is untenable."

11  *Id.* (citation omitted). For this reason, the Ninth Circuit found standing. *See id.* at 598-99. *See also*

12  *Brown v. Google LLC*, 2023 WL 5029899, at *5 (N.D. Cal. Aug. 7, 2023) (holding that account users

13  had alleged concrete privacy harms sufficient to confer Article III standing where users "ha[d] set

14  forth specific facts demonstrating that the reason Google ha[d] access to their anonymous, aggregated

15  data [wa]s through the collection and storage of information from users' private browsing history

16  without consent") (citations omitted).

17         Here, Securly misdirects the Court and argues that "Plaintiffs' privacy interests were not

18  violated by Securly's actions. Securly is not Facebook. Securly does not secretly install hidden

19  software or collect Student Information for its own purposes, nor does it share such information with

20  entities or persons besides designated school contacts, parents (when requested by schools), and, as

21  necessary, law enforcement; it does not sell Student Information or use it for marketing or targeted

22  advertising."[1]  MTD at 9.

23

24

---

25  [1] The declaration of Securly's Chief Executive Officer is improper on a motion to dismiss and should
    be stricken. A court typically limits its review to the complaint's four corners in such motions. *See Van*

26  *Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at the face of the
    complaint to decide a motion to dismiss."); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)

27  ("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6),
    'review is limited to the complaint.'"). Plaintiffs also object to judicial notice of Defendant's exhibits,

28  as their accuracy can reasonably be questioned. *See* Fed. R. Evid. 201(b)(2).

1   But "violations of [p]laintiffs' statutory rights under CIPA, [even] without more, constitute

2   injury in fact because instead of a bare technical violation of a statute, ... a CIPA violation involves ...

3   a violation of privacy rights.'" *Osgood v. Main Streat Mktg., LLC*, 2017 WL 131829, at *7 (S.D. Cal.

4   Jan. 13, 2017) (internal citation omitted); *see also Raffin v. Medicredit, Inc.*, 2016 WL 7743504, at *3

5   (C.D. Cal. Dec. 19, 2016) ("Following *Spokeo*, district courts in the Ninth Circuit consistently have

6   concluded that, to satisfy injury in fact, a plaintiff in a CIPA action need not allege actual harm beyond

7   the invasion of the private right conferred by the statute."); *Matera v. Google Inc.*, 2016 WL 5339806,

8   at *11 (N.D. Cal. Sept. 23, 2016) (denying motion to dismiss holding that alleged violations of

9   Plaintiff's statutory rights under CIPA constitute concrete injury in fact under *Spokeo*).

10   Plaintiffs claim Defendant violated California state and federal laws by secretly collecting

11   personal and geolocation data from their children's mobile devices without consent. Defendant

12   combined this data with other information and shared it with third parties for marketing and other

13   undisclosed purposes, including promoting its own app to parents. Defendant never informed parents

14   about the Student Privacy Policy or relevant terms regarding its software. Plaintiffs' children

15   unknowingly revealed private data such as location, search terms, and video habits. Defendant

16   intercepted and shared this data without consent, giving Plaintiffs standing to sue. *See Greenley*, 2023

17   WL 4833466, at *3; *In re Facebook*, 956 F.3d at 598-99.

18   **B. Plaintiffs Have Stated A Plausible Claim Under CIPA and the Wiretap Act**

19   To plead a plausible claim under the Federal Wiretap Act, Plaintiffs must demonstrate that

20   Defendant (1) without consent (2) intentionally intercepted the (3) contents of a communication (4)

21   using a device. *See* 18 U.S.C. § 2511.

22   California's CIPA statute, enacted in 1967 to confront "the development of new devices and

23   techniques for the purpose of eavesdropping," serves to "protect the right of privacy" of the state's

24   citizenry. Cal. Penal Code § 630. Plaintiffs allege violation of section 631 of CIPA, which

25   proscribes four specific acts of wiretapping. It provides, in relevant part:

26   (a) Any person who, by means of any machine, instrument, or contrivance, or in
      any other manner,

27   [1] intentionally taps, or makes any unauthorized connection, whether
28   physically, electrically, acoustically, inductively, or otherwise, with any

1

telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or

2

3

[2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or

4

5

6

[3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or

7

8

[4] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section,

9

is punishable [under this Section].

10

Cal. Penal Code § 631(a) (subsections added and formatted for clarity). The Supreme Court of

11

California has distilled this down to "three distinct and mutually independent patterns of conduct:

12

intentional wiretapping, wilfully attempting to learn the contents or meaning of a communication in

13

transit over a wire, and attempting to use or communicate information obtained as a result of engaging

14

in either of the previous two activities." *Tavernetti v. Superior Court of San Diego Cty.*, 22 Cal. 3d

15

187, 192 (Cal. 1978). The federal and California wiretap laws are treated as largely analogous. *See,*

16

*e.g.*, *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1117 (S.D. Cal. 2023) (" 'The analysis for a

17

violation of CIPA [Cal. Penal Code § 631] is the same as that under the federal Wiretap Act.' ")

18

**a. Section 631(a)[1]: Wiretapping**

19

Defendant claims that Section 631(a)'s wiretapping provision applies solely to telephone

20

communications and does not cover the internet-related allegations in this case. In support, Defendant

21

cites *Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2023 WL 5837492, at *4-5 (S.D. Cal. Sept.

22

8, 2023). In that case, Judge Cynthia Bashant acknowledged a split among courts on this issue. Laws

23

like CIPA were enacted before the development of advanced spyware used by companies like

24

Defendant. As corporations use privacy-invading technology to monitor the public, and with

25

insufficient federal laws, consumers have limited options to protect their shrinking privacy.

26

In *Matera v. Google Inc.*, 2016 WL 8200619, at *20 (N.D. Cal. Aug. 12, 2016), the court held

27

in interpreting CIPA "that a technology [that] did not exist at the time of a statute's enactment does

28

not necessarily preclude the application of the statute to that technology." Courts should focus on the

1   legislative intent behind a statute, not just its language, particularly in a fast-changing technological

2   landscape. This is the approach taken by the California Supreme Court. As *Matera* noted, "the

3   California Supreme Court has instructed courts to interpret CIPA in the manner that 'fulfills the

4   legislative purpose of [CIPA] by giving greater protection to privacy interests.' [Citation.] Thus, when

5   faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA

6   in accordance with the interpretation that provides the greatest privacy protection." *Matera*, 2016

7   WL 8200619, at *19 (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002) and *citing Ribas*

8   *v. Clark*, 38 Cal. 3d 355, 360-61 (1985)).

9       Courts have naturally applied these laws to new technologies, recognizing it as an expected

10  development. *See, e.g.*, *Apple v. Superior Court*, 56 Cal. 4th 128, 137 (2013) ("Fidelity to legislative

11  intent does not 'make it impossible to apply a legal text to technologies that did not exist when the

12  text was created. . . . Drafters of every era know that technological advances will proceed apace and

13  that the rules they create will one day apply to all sorts of circumstances they could not possibly

14  envision.'") (citation omitted). The conduct prohibited by laws like CIPA remains illegal, even as its

15  form evolves. These laws are designed to protect consumers, including minors and their parents, from

16  unlawful privacy invasions like those alleged here. Therefore, the Court should follow *Matera* and

17  broadly interpret the first clause to provide the strongest privacy protection.

18      **b. Section 631(a)[2]: Eavesdropping**

19      Defendant argues it cannot be liable for violating CIPA § 631(a)'s second, third, or fourth

20  clauses regarding unauthorized eavesdropping because it collected student data "at the direction of

21  schools" and acted as their agent. Defendant claims schools are authorized to monitor this

22  information. These fact-intensive arguments simply miss the mark.

23      **i.  The Schools' Consent**

24      First, Defendant overlooks the SAC's multiple allegations that the schools failed to properly

25  disclose the use of Securly software on school-issued devices before allowing Defendant to track and

26  use students' personal information and geolocation data. Plaintiffs have met their pleading burden by

27  asserting they did not provide express or implied consent to the alleged violations. *See Augustine v.*

28  *Lenovo (United States), Inc.*, 2023 WL 4938050, at *2 (S.D. Cal. Aug. 2, 2023) ("Plaintiff asserts in

her amended complaint that she never consented to Defendant's actions . . . and that Defendant failed to present a pop-up disclosure or consent form alerting her that her website visits were being monitored and recorded. . . . Defendant's consent defense turns on the outcome of multiple factual disputes such as whether Plaintiff actually saw and interacted with the pop-up and whether Plaintiff viewed the privacy policy. These factual disputes are not suitable for resolution at this stage in the proceedings. . . . As a result, the Court declines to dismiss Plaintiff's first cause of action [for violation of CIPA § 631] based on consent."); *Licea v. Old Navy, LLC*, 2023 WL 3012527, at *4 (C.D. Cal. Apr. 19, 2023) ("Plaintiff explicitly pleads that he and the purported class members did not consent to the recording of their conversations with Defendant.") (citation omitted); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) (plaintiff's pleading that stated she did not consent to recording was sufficient to overcome a 12(b)(6) motion); *Javier v. Assurance IQ*, LLC, 2022 WL 1744107 (9th Cir. 2022) (plaintiff met his pleading burden where he alleged he did not give express prior consent).

Second, it is illogical for a third-party software provider to evade liability under CIPA § 631(a) by shifting the responsibility for obtaining user consent to the customer who installs its tracking software, especially when the provider knows the devices will be issued to others. Defendant's argument is unsupported by the text, caselaw, or legislative history of CIPA § 631. Nothing supports Defendant's argument that "any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). On the contrary, "Defendant[] invite[s] an interpretation that would vitiate the statute's protections." *Id.*

Third, courts have consistently rejected the idea that one party's consent to use a service implies broad consent to all forms of misconduct related to that use. *See, e.g.*, *In re Pharmatrak*, 329 F.3d 9, 20 (1st Cir. 2003). *Brown v. Google, LLC*, 525 F. Supp. 3d 1049, 1068 (N.D. Cal. 2021); *see also Doe v. MetaPlatforms, Inc.*, 2023 WL 5837443, *5 (N.D. Cal. Sept. 7, 2023) (rejecting argument that health care providers consented to interception of Health Information because it is dependent on what was "disclosed," how it was "described," and what they "understood" about "information [that] ... would be collected"). Because consent is not an "all or nothing proposition," partial disclosures

1    do not carry the burden. *Brown v. Google, LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021).

2    Here, the schools' consent to Defendant's software alone is insufficient to dismiss Plaintiffs'

3    claims. *See In re Meta Pixel Tax Filing Cases*, —— F. Supp. 3d ——, ——, 2024 WL 1251350, at

4    *5 (N.D. Cal. 2024) (rejecting similar consent arguments). At this stage, Defendant has not provided

5    judicially noticeable documentation showing that its consent legally covered the transmission of

6    geolocation data, sensitive personal information, or browsing history. Determining whether actual

7    consent was given requires examining what Defendant disclosed to the schools, how it trained and

8    described the software to them, and how the schools understood Defendant's data collection

9    practices. These fact-based inquiries are not suitable for resolution on a motion to dismiss.

10    ### ii. Third-Party Software Provider

11    Courts have acknowledged that a third-party software provider installing tracking software is

12    not simply an agent or extension of the website operator or another entity using the software, and the

13    provider itself can violate CIPA § 631(a). The authority on this point is overwhelming. *See*, *e.g.*,

14    *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *3-*6 (N.D. Cal. Jan. 5, 2023); *Saleh v. Nike, Inc.*,

15    562 F. Supp. 3d 503, 520-21 (C.D. Cal. 2021); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073,

16    1081 (C.D. Cal. 2021); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23,

17    2019); *Byars v. The Goodyear Tire and Rubber Co.*, 2023 WL 1788552, at *4-5 (C.D. Cal. Feb. 3,

18    2023); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *5-6 (N.D. Cal. April 6, 2023). *Saleh*

19    explained that "FullStory is a separate legal entity that offers 'software-as-a-service' and not merely

20    a passive device. Defendants' argument would imply that any third party who surreptitiously

21    recorded a conversation between two parties would not violate § 631(a) so long as it was recording

22    the conversation at the direction and for the benefit of a party. The text of section 631(a), however,

23    does not contain any such exception . . . ." 562 F. Supp. 3d at 520.

24    The California Supreme Court has also twice explained that the "express objective" of CIPA

25    is to "protect a person placing or receiving a call from a situation where the person on the other end

26    of the line permits an outsider to tap his telephone or listen in on the call." *Ribas v. Clark*, 38 Cal. 3d

27    355, 364 (1985); *see also Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 (2021) ("As [the California

28    Supreme Court] explained in *Ribas* . . . a substantial distinction has been recognized between the

secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.") (emphasis added). The Ninth Circuit similarly explained in *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020), that one of the purposes of wiretapping and eavesdropping statutes is "to prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor'" like Defendant here. *See also id.* at 598 (explaining similar legislative goals of CIPA and the federal Wiretap Act). Defendant's position cannot be reconciled with the authorities it ignored, instead of addressing the merits of this case.

In *Javier*, after a comprehensive analysis the district court held that the third-party eavesdropper could be held liable under the second prong of section 631(a) despite the defendants' characterization of the third party as a mere "extension" of the party to the communication, i.e., the website owner/operator. *Id.*, 2023 WL 114225, at *3-6. After acknowledging conflicting case law on this issue, the court explained why the rulings that treat software vendors as mere "extensions" of the websites using them are unconvincing. *See Javier*, 2023 WL 114225, at *6; *see also Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (distinguishing between allegations of mere recordation that is "routine documentation" as opposed to "data mining," noting that the outcome of its holding would have been different if the third party "affirmatively engages with that data in any way other than to store it").

Plaintiffs claim that Defendant's actions went beyond mere tape recording; they assert that Defendant acted as a third-party eavesdropper (or that this is a factual dispute) because Plaintiffs can plausibly allege that Defendant used, or could use, the data for its own benefit or for other third parties with whom it shared the data. As the court in *Yoon* articulated, this is "beyond the ordinary function of a tape recorder." *Yoon*, 549 F. Supp. 3d at 1081. *See also Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *5 (S.D. Cal. Jul. 13, 2023) (noting that "[i]n cases where courts have found software companies to be thirdparty eavesdroppers, those third parties had mined information from other websites and used that information for their own purposes") (citations omitted).

18

### iii.  The "In Transit" Requirement

Defendant argues that Plaintiffs have not sufficiently alleged that any interception of communications occurred "while... in transit," or that an unauthorized interceptor accessed the communication "before it reached its intended recipient." MTD at 13. This is simply wrong.

Courts interpret CIPA's "in transit" element similarly to the "intercepted" element in the federal Wiretap Act, which only requires that the interception occur while communications are being transmitted to the intended recipient, without needing to be recorded or read before reaching the recipient. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (holding that under the federal Wiretap Act, a useful analog to CIPA, the plaintiff must allege "acquisition contemporaneous with transmission"); *cf. Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1050-51 (N.D. Cal. 2018) (recognizing that the CIPA "in transit" element is analogous to the federal Wiretap Act's "intercepted" element and requires the same analysis); *Gonzales v. Uber Techs., Inc.*, 305 F.Supp.3d 1078, 1086 (N.D. Cal. 2018) (defining "intercept" under the federal Wiretap Act to require acquisition contemporaneous with transmission, as that is most consistent with the ordinary meaning of "intercept").

The SAC alleges that Securly's software was specifically designed to eavesdrop on student communications, such as search terms and video selections, by secretly and contemporaneously redirecting these communications to Defendant. A similar claim was made in *In re Meta Pixel Healthcare Litigation*, where Meta "d[id] not dispute that the intentional or interception elements [we]re met" when "Meta receive[d] information through the Pixel." *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *11. *See also Cousin v. Sharp Healthcare*, 2023 WL 4484441, at *9-10 (S.D. Cal. July 12, 2023) (rejecting hospital defendant's argument that communications with plaintiffs were not intercepted "in transit" because "Meta Pixel creates two separate communications, one between the user's browser and the hospital, and a second between the user's browser and Meta"; plaintiffs had adequately alleged an interception "in transit" at the pleadings stage where they alleged that "without their authorization [defendant] intentionally installed Meta Pixel on its website and shared user's information with Meta in real time").

Here, Plaintiffs claim that their minor children were sending and communicating information on school-issued devices, while their actions and communication content were simultaneously captured by Defendant through its Securly software, without their or Plaintiffs' knowledge. Defendant is not simply accused of sharing the information after recording it, but of capturing it in real-time. *See, e.g.*, SAC ¶ 52 ("real-time access"), ¶ 76 (Securly's privacy police notes that it collects information "directly from you or from students, from third parties, and *automatically* through use of the Services."). While Defendant broadly claims that allegations of real-time data interception are insufficient, the cited cases confirm that surreptitious interception of communications in real time on mobile devices satisfies the "in transit" requirement at the pleadings stage.

### c. Section 631(a)[3]-[4]: Use and Aiding-and-Abetting

As discussed, Plaintiffs have adequately alleged violations of § 631(a)[1] and [2]. Therefore, their claim that Defendant violated § 631(a)[3] by using the improperly obtained information for marketing purposes is sufficient to proceed. Similarly, their derivative claim under § 631(a)[4] is also sufficient.

### d. The Intent Requirement

Defendant argues that Plaintiffs failed to allege that it intentionally intercepted or captured electronic communications without consent. However, the SAC repeatedly and clearly makes these allegations, turning Defendant's argument into a factual dispute over intent. The SAC extensively claims that Defendant intentionally used its Securly software to intercept, collect, and share the communications and data of Plaintiffs' minor children, knowing that neither Defendant nor the schools had obtained parental consent. *See, e.g.*, SAC ¶¶ 36, 77, 82, 97.

At the pleadings stage, these allegations plausibly suggest that Defendant had the intent to engage in unauthorized eavesdropping, use the information obtained, and enable the schools to violate CIPA § 631(a). Intent is a factual issue that cannot be decided at this stage, and Defendant's argument merely acknowledges a factual dispute for the jury to resolve. *See People v. Superior Ct of Los Angeles Cnty.*, 70 Cal. 2d 123, 134 (1969).

At a minimum, Plaintiffs allege that Defendant used surveillance software on school-issued devices, designed to capture communication contents, and courts have found such claims sufficient

to demonstrate willfulness. *See Lopez v. Apple, Inc*., 519 F. Supp. 3d 672, 689 (N.D. Cal. 2021) (willfulness properly alleged where Apple was aware that at least some confidential communications were being recorded, even if "accidentally"); *see also Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 435 (2018) (finding element satisfied where company intended to record work-related calls, but designed the system to record all calls).

Defendant's suggestion that § 631 requires actual knowledge of lack of consent is contradicted by the statute's language. Section 631 holds a defendant liable for "willfully and without the consent of all parties... reads, or attempts to read, or learn the contents or meaning of any [intercepted] message, report, or communication." Cal. Penal Code § 631(a). The willfulness requirement applies to the act of reading or learning the contents of a communication; the statute is violated if this is done intentionally. "[T]he party seeking the benefit of the [consent] exception" to CIPA bears "the burden to prove consent," not simply to prove that the defendant believed there was consent. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021). *See also Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (plaintiffs properly alleged CIPA claim despite argument that plaintiffs had consented based on disclosures); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021) ("any consent [to the wiretap] must be actual" (emphasis added)).

Plaintiffs allege that Defendant did not "accidentally" intercept their communications. Instead, they claim Defendant's Securly software worked as designed, and Defendant knowingly intercepted the data without Plaintiffs' consent.

### C.  Plaintiffs Have Stated A Plausible Claim Under CIPA § 637.7

Section 637.7 of the CIPA prohibits the use of an "electronic tracking device" without consent and defines "electronic tracking device" as "any device attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals." Cal. Pen. Code § 637.7(d).

Defendant focuses on whether it "attached" a device to track students' geolocation and that the devices belonged to the schools. However, as the SAC alleges, Defendant enabled schools to add geolocation functions to these devices, turning them into "electronic tracking devices" used to reveal

1   the students' locations while being transported in vehicles like cars, buses, subways, and bikes. SAC

2   ¶¶ 29, 35, 41, 69, 80, 100, 122–23.

3        As mentioned, while the Legislature did not anticipate future technological developments,

4   California courts have held that a statute's *purpose* is the key factor. *See Citizens for a Responsible*

5   *Caltrans Decision v. Dept. of Transp.*, 46 Cal. App. 5th 1103, 1119 (2020) ("Well-established rules

6   of statutory construction require us to ascertain the intent of the enacting legislative body so that we

7   may adopt the construction that best effectuates the purpose of the law.") (citation omitted). Thus,

8   technological advancements enabling wireless surveillance without consent violate the statute.

9   Devices like cell phones, iPads, Chromebooks, and AirTags clearly fall under the Legislature's

10  definition of "electronic tracking devices."

11       While Defendant claims the schools were entitled to track their own devices, the statute does

12  not allow tracking just because the tracker owns the device, even if it is loaned to the user (in this

13  case, students). The SAC alleges the devices tracked students' locations, not solely to protect school

14  property. The expectation of privacy, such as a student's right to exclude others from a school-issued

15  device, remains the same regardless of ownership. *See Byrd v. U.S.*, 138 S. Ct. 1518, 1528 (2018)

16  ("The Court sees no reason why the expectation of privacy that comes from lawful possession and

17  control and the attendant right to exclude would differ depending on whether the car in question is

18  rented or privately owned by someone other than the person in current possession of it, much as it

19  did not seem to matter whether the friend of the defendant in *Jones v. United States* (1960) 362 U.S.

20  257, 259] owned or leased the apartment he permitted the defendant to use in his absence. Both would

21  have the expectation of privacy that comes with the right to exclude.").

22       Defendant relies on irrelevant cases. For example, some courts found that software like

23  Google Maps and Chrome, which store geolocation data, is not considered "equipment" on the

24  devices themselves. *In Re Google Location History*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019).

25  Here, the issue is not whether the Securly software is a "device" but whether Defendant collaborated

26  with schools to create a tracking "device" by enabling geolocation on mobile devices given to

27  students. Defendant focuses on form over function. Simply put, Defendant and the schools jointly

28

1    enabled tracking of students traveling to and from school, their homes, and other destinations using

2    devices equipped for this purpose.

3          There is no real dispute that the mobile devices with Defendant's Securly software are

4    considered mechanical equipment. Indeed, the *In re Google* court deemed facially plausible

5    plaintiffs' alternative argument there that "the GPS hardware, cellular radios, and WiFi chips

6    embedded in mobile devices constitute 'electronic tracking devices' within the meaning of Section

7    637.7" because "Section 637.7 defines 'electronic tracking device' broadly" to "reach[ ] any device

8    that 'determine[s] the location or movement of a person.'" 428 F. Supp. 3d at 194. However, the

9    plaintiffs' argument in that case failed only because, at the motion to dismiss stage, they did not

10    provide "facts from which the Court c[ould] infer GPS hardware, cellular radios, and/or WiFi chips

11    actually determine[d] the location of movement of a person." *Id.* The SAC raises a factual dispute

12    over whether devices with Defendant's Securly software track students' movements while they travel.

13    No information deserves more privacy protection than the whereabouts of schoolchildren, especially

14    when it can be personally identified to a specific child.

15          If an "attached" electronic tracking device is required to violate CIPA § 637.7, sufficient facts

16    have been presented to show this occurred. The court in *Moreno v. San Francisco Bay Area Rapid*

17    *Transit District* held that a user-downloaded application is not an attached device within the meaning

18    of section 637.7(d) because it is not "a thing made or adapted for a particular purpose, especially a

19    piece of mechanical or electronic equipment." 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017).

20    Here, however, students are issued Chromebook®-type computers, iPads, tablets and other mobile

21    computing devices by the schools *already* containing the Securly surveillance software. Students do

22    not "download" the software or its geolocation functions. Rather, the Securly software is pre-installed

23    on the school-issued mobile computing devices to enable the devices' tracking features. As those

24    devices are "mechanical" equipment adapted for the particular purpose of tracking student

25    movements, they meet CIPA § 637.7's definition of device—even under *Moreno*'s standard.

26    **D.  Plaintiffs Have Adequately Stated A Claim Under CDAFA**

27          Under CDAFA, a person who knowingly accesses a computer system or computer data

28    may be guilty of a public offense. Section 502(c) states in relevant part:

[A]ny person who commits any of the following acts is guilty of a public offense:

(1) Knowingly accesses and without permission . . . uses any data, computer, computer system, or computer network in order to . . . wrongfully control or obtain money, property, or data.

(2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network. . . .

(7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

Cal. Penal Code § 502(c)(1)–(2), (7).

Defendant argues that Plaintiffs have not alleged a valid violation because: (1) Plaintiffs lack standing to bring a civil claim under CDAFA; (2) Plaintiffs fail to allege "loss or damage" with enough detail; (3) Defendant couldn't have "knowingly" accessed Plaintiffs' devices "without permission" since Securly was a lawful tool used by schools, and the devices belonged to the schools, not the students; and (4) Plaintiffs don't allege Defendant used student data to "wrongfully control or obtain money, property, or data." Mot. at 19–22. Each of these arguments is misplaced.

### e.   Standing

Defendant contends that Plaintiffs lack standing because the CDAFA only permits actions by "the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss." Cal. Penal Code § 502(e)(1). Defendant ignores Plaintiffs' claim that it accessed their information through school-issued devices. As users of these devices for distance learning, Plaintiffs qualify as "lessee[s]" under the CDAFA.

### f.   Economic Loss

The CDAFA's "damage or loss" requirement sets a low bar such that "any amount of loss or damage may be sufficient." *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1032 (C.D. Cal. 2012) (time restoring password and investigating who had hacked his email account sufficient to state a claim for damage or loss under the CDAFA) (internal citation omitted). Courts generally require a fact-intensive inquiry before determining that a plaintiff has not suffered a "qualifying loss." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 964 (N.D. Cal. 2014) (collecting cases under CDAFA's more burdensome federal counterpart). Specifically, "any amount

of damage or loss caused by the defendant's CDAFA violation is enough to sustain the plaintiff's claims." *Id.*

Most recent decisions have found that personally identifiable information ("PII") is a "valuable commodity," and that theft of this information results in loss of its sales value. *See, e.g.*, *In re Facebook Privacy Litig.*, 572 F. App'x 494 (9th Cir. 2014) (allegation that Facebook disseminated plaintiffs' PII, and that plaintiffs were harmed "by losing the sales value of that information," adequately stated claim for damages); *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) (same); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2017 WL 3727318, at *13-14, 49 (N.D. Cal. Aug. 30, 2017) (finding that "loss of value of PII" is "sufficient to plausibly allege injury" for the purposes of Article III standing); *Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 WL 6802818, at *5 (C.D. Cal. Oct. 1, 2018) ("In recent data breach cases, however, courts have found that the allegations that one's PII is a 'valuable commodity' and that theft of this information results in loss of its sales value are sufficient to plead damages . . . ."). *Accord Brown*, 2023 WL 5029899, at *19 (Ninth Circuit had recognized "that plaintiffs can state an economic injury for their misappropriated data," and that "[b]ecause plaintiffs proffer[ed] evidence that there is a market for their data—one Google itself has created—the Court [could not] . . . rule, as a matter of law, that plaintiffs suffered no damages under CDAFA") (*citing In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020)).

Furthermore, CDAFA is California's version of the federal CFAA, and courts in this circuit have applied the CFAA definitions of "loss" and "damage" to it. *See, e.g.*, *Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at *6 (C.D. Cal. Oct. 13, 2016) (citing cases). The current text of the CFAA explicitly allows "compensatory damages" in most situations and such damages "generally include damages for pain, suffering, and other emotional harms." *Id.* (citations omitted). "There is no reason to artificially constrict the scope of CFAA damages—and, by extension, CDAFA damages—and no binding precedent mandates such a holding." *Id.* (citations omitted).

Accordingly, because emotional damages are cognizable under CDAFA § 502(e)(1), "it is not necessary to reach . . . [the issue of] whether any economic damages have been shown," nor is it necessary to "evaluat[e] whether CDAFA's 'loss' term encompasses more than economic loss." *Id.*

The SAC alleges that Defendant's actions caused Plaintiffs significant emotional distress as parents of minors whose privacy was violated. It also claims Plaintiffs have an ownership interest in some of the data from their children's communications, which Defendant shared with third parties for marketing and other purposes without consent.

### g. Knowingly

Defendant is alleged to have knowingly enabled the surveillance of students' personal information and shared it with third parties for its own purposes, without providing notification or obtaining consent. Despite its Student Privacy Policy stating that Defendant had the legal responsibility to obtain parental authorization, it relied entirely on the schools. The SAC alleges that Plaintiffs and other Class Members were unaware that students' data was being intercepted and shared by Defendant.

These alleged facts—highlighted in an independent review of Securly's software and Defendant's privacy practices (SAC ¶¶ 115–18)—are sufficient to plausibly infer that Defendant knowingly accessed and used the data without parental consent. *See*, *e.g.*, *Greenley v. Kochava, Inc.*, 2023 WL 4833466, at *13 (S.D. Cal. July 27, 2023) (Hon. J. Bashant discussing the "without permission" element of CDAFA, noting that "[t]o establish consent under CDAFA, a defendant must 'explicitly notify users of the practice at issue'" through "specific disclosures provided to the user") (citation omitted). Given the schools' failure to obtain consent, Defendant cannot evade liability under CDAFA § 502(c) by claiming the data belonged to the schools that owned the devices. While the schools owned the devices, the students had an expectation of privacy. Defendant and other vendors acting as "agents" of the schools could not use student data without restrictions, even if the schools were entitled to surveillance with proper disclosures and parental consent. Defendant's argument that schools can do whatever they want with data proves too much and does not excuse its independent role in using student data without parental authorization.

### h. Wrongfully

The SAC alleges that Defendant shared personal information with third parties for advertising, marketing, and promoting its own app without students' or parents' knowledge or consent (SAC ¶¶ 69, 78, 101, 136). These facts support a reasonable inference that Defendant used student

1    data to "wrongfully control or obtain money, property, or data." Despite Defendant ignoring these

2    claims, they must be credited at the pleading stage and support Plaintiffs' claim under CDAFA §

3    502(c)(1).

4    **E.  Plaintiffs Adequately Allege a Violation of the CFAA**

5         "Whoever knowingly causes the transmission of a program, information, code, or command,

6    and as a result of such conduct, intentionally causes damage without authorization, to a protected

7    computer" is liable under the CFAA. 18 U.S.C. § 1030(a)(5)(A). "Any person who suffers damage

8    or loss by a reason of a violation of [18 U.S.C. § 1030]" may bring a civil action for "compensatory

9    damages" and injunctive or other equitable relief. 18 U.S.C. § 1030(g).

10        "[T]he term 'damage' means any impairment to the integrity or availability of data, a program,

11   a system, or information." 18 U.S.C. § 1030(e)(8). The material at issue need not be permanently

12   lost. *See United States v. Keys*, 703 F. App'x 472, 475 (9th Cir. 2017) (affirming denial of jury

13   instruction that "information altered by a defendant was not damaged under the CFAA, if the original

14   version was not permanently lost"). Finally, "the term 'loss' means any reasonable cost to any victim,

15   including the cost of responding to an offense, conducting a damage assessment, and restoring the

16   data, program, system, or information to its condition prior to the offense, and any revenue lost, cost

17   incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. §

18   1030(e)(11). "Thus, while 'damage' covers harm to data and information, 'loss' refers to monetary

19   harms sustained by the plaintiff." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 961

20   (N.D. Cal. 2014) (citing *Phillips v. Ex'r of Est. of Arnold*, 2013 WL 4458790, at *4 (W.D. Wash. Aug.

21   16, 2013)).

22        Defendant claims Plaintiffs cannot meet the "without authorization" or "exceeds authorized

23   access" requirements, but this is false. Plaintiffs allege Defendant collected information beyond what

24   was authorized by the schools. While Defendant insists it had permission, these self-serving

25   statements are irrelevant at the motion to dismiss stage. Plaintiffs present a factual dispute regarding

26   Defendant's conduct, requiring evidence on the scope of authorization and the type of data collected.

27   These issues are not suitable for resolution at this stage.

28

Defendant claims Plaintiffs cannot allege "loss" or "damage," but this too is simply incorrect. Plaintiffs allege that Defendant's actions caused loss and damage, including invasion of privacy, unauthorized use of personal information, and impairment of data integrity on Plaintiffs' and Class Members' protected computers (SAC ¶¶ 240–42). Plaintiffs also assert that Defendant monetized their private information, which has financial value. Whether this monetization meets the financial threshold for CFAA liability is a factual issue for the trier of fact.

### F.  Plaintiffs Adequately Allege a Violation of the SCA

With certain exceptions, the SCA prohibits the intentional access without authorization of a facility through which an electronic communication service is provided. 18 U.S.C. § 2701(a). Plaintiffs allege that Defendant violated the SCA by intentionally accessing their and Class Members' electronic communications stored on school-issued devices without authorization. Defendant also exceeded authorized access by using surveillance software to access and disclose stored communications for commercial gain. SAC ¶¶ 245–50.

Defendant claims Plaintiffs' SCA claim fails because they do not allege "electronic storage" and lack facts supporting the disclosure of data for commercial gain. Both arguments fail. First, Plaintiffs repeatedly allege in the SAC that Defendant compiled information stored on their electronic devices. *See, e.g.*, SAC ¶¶ 3, 13–14, 69, 247. Second, Plaintiffs allege that Defendant uses this data to send marketing materials to parents, luring them to download the Securly app or visit its website, where it then collects information about the parents' usage and interactions. *See e.g.*, SAC ¶¶ 66, 68. That information is then shared with third parties for personalized content and advertising. SAC ¶ 68. With these allegations, Plaintiffs have properly claimed that Defendant divulged data from "electronic storage" to third parties, and thereby satisfied the requirements for an SCA claim.

### G.  Plaintiffs Adequately Allege Intrusion Upon Seclusion

An intrusion upon seclusion occurs when "[o]ne intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, [and] is [then] subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B.

1  Defendant's citation of the law is accurate: While children do not "shed their constitutional

2  rights . . . at the schoolhouse gate," *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506

3  (1969), students have diminished privacy expectations with respect to school-related activity, *see Bd.*

4  *of Educ. of Indep. Sch. Dist. No. 92 v. Earls*, 536 U.S. 822, 830 (2002) ("A student's privacy interest

5  is limited in a public school environment where the [s]tate is responsible for maintaining . . . safety.").

6  Defendant's argument is fundamentally flawed. Defendant claims Plaintiffs lack a reasonable

7  expectation of privacy because schools must monitor school-issued devices. However, Plaintiffs

8  argue that Defendant's Securly software goes beyond this duty by collecting and selling minors'

9  private data, including geolocation, without consent. This conduct would be highly offensive to a

10  reasonable person. While students may have somewhat diminished privacy at school, they do not

11  lose all privacy rights simply because they are issued a Chromebook that follows them onto a bus

12  and into their home. At this stage, these allegations are sufficient to state a claim.

13  **H. Plaintiffs Adequately Allege Injury Under the UCL**

14  The UCL "provides a cause of action for business practices that are (1) unlawful, (2) unfair,

15  or (3) fraudulent." *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1050 (N.D. Cal. 2014) (citing Cal.

16  Bus. & Prof. Code § 17200).  Plaintiffs allege that Defendant violated all three prongs of the UCL.

17  To bring a claim under the UCL, a plaintiff must demonstrate statutory standing, requiring

18  them to have suffered an injury in fact and lost money or property as a result of the unfair competition.

19  *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009).  To satisfy this requirement, a plaintiff

20  must merely suffer an injury in fact that is an "economic injury." *Kwikset Corp. v. Superior Court*, 51

21  Cal. 4th 310, 321–22 (2011).  Courts in this district, including the Ninth Circuit, have held that the

22  loss of personal data is sufficient to demonstrate an economic injury.  *Calhoun v. Google LLC*, 526

23  F. Supp. 3d 605, 636 (N.D. Cal. 2021) ("Plaintiffs who suffered a loss of their personal information

24  suffered economic injury and had standing.").

25  Defendant's other UCL-related arguments are raised in Footnote 33, where it claims

26  Plaintiffs' UCL claim fails due to a lack of predicate facts for the unlawful, unfair, or fraudulent

27  prongs. However, Plaintiffs adequately allege that Defendant violated various laws, including the

28  Children's Online Privacy Protection Act (COPPA), 15 U.S.C. § 6502, and California's Consumer

29

Privacy Laws ("unlawful"); that Defendant unfairly profited from children's personal information without parental knowledge or consent ("unfair"); and that Defendant actively concealed its data collection practices from parents, schools, and children ("fraudulent"). SAC ¶¶ 264–75. These allegations are sufficient to state a UCL claim.

## VI.    CONCLUSION

For these reasons, the Court should deny Defendant's Motion in full. If the Court is inclined to grant any part of the motion, Plaintiffs respectfully request leave to amend.

Respectfully submitted,

**SWIGART LAW GROUP, APC**

Date:  October 25, 2024                    By:  /s/ Joshua B. Swigart
                                                Joshua B. Swigart, Esq.
                                                Josh@SwigartLawGroup.com
                                                Counsel for Plaintiffs