Amy Jane Longo (CA Bar No. 198304)
ROPES & GRAY LLP
10250 Constellation Blvd
Los Angeles, CA 90067
Tel: (310) 975-3300
Fax: (310) 975-3400
Email: amy.longo@ropesgray.com

Edward McNicholas (*pro hac vice*)
Frances Faircloth (*pro hac vice*)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
Tel: (202) 508-4600
Fax: (202) 508-4650
Email:
edward.mcnicholas@ropesgray.com
fran.faircloth@ropesgray.com

*Attorneys for Defendant Securly, Inc.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SHERI BATE, and her child N.M., and AZUCENA MEJIA, and her child A.S., individually and on behalf of others similarly situated,

Plaintiffs,

v.

SECURLY, INC.,

Defendant.

Case No. 23-cv-01304-AGS-DEB

**DEFENDANT SECURLY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Judge: Hon. Andrew G. Schopler
Date: November 8, 2024
Time: 10:00 am
Courtroom: 5C

# TABLE OF CONTENTS

**Page**


**INTRODUCTION ... 1**

**ARGUMENT ... 2**

**I. THE OPPOSITION DOES NOT RESCUE PLAINTIFFS' FAILURE TO ESTABLISH STANDING TO BRING THEIR CLAIMS ... 2**

**II. NOTHING IN THE OPPOSITION CHANGES PLAINTIFFS' REPEATED FAILURE TO ADEQUATELY STATE ANY CLAIM ... 5**

- **A. Plaintiffs Cannot Establish Wiretapping or Eavesdropping Claims Under CIPA or FWA ... 5**
- **B. Plaintiffs Do Not Adequately Allege Illegal Tracking of Students ... 8**
- **C. Schools' Use of Securly's Tools on School Devices Is Not Hacking ... 9**
- **D. Device Owners Fully Authorized Securly's Access of Data ... 11**
- **E. Securly Does Not Intrude on Student Use of School Devices ... 11**
- **F. Plaintiffs' UCL Claim Fails for Lack of Economic Injury ... 12**

**CONCLUSION ... 12**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple v. Superior Court*, 56 Cal. 4th 128 (2013) ........ 6

*Byrd v. United States*, 138 S. Ct. 1518 (2018) ........ 9

*Caravan Canopy Intl, Inc. v. Home Depot U.S.A., Inc.*, No. CV196224PSGADSX, 2021 WL 831028 (C.D. Cal. Feb. 25, 2021) ........ 4

*Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461 (N.D. Cal. 2021) ........ 10

*D'Angelo v. FCA US, LLC*, No. 3:23-cv-00982-WQH-MMP, 2024 WL 1625771 (S.D. Cal. Mar. 28, 2024) ........ 6, 12

*Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ........ 8

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ........ 4

*Foster v. Essex Prop. Inc.*, No. 14-cv-05531-EJD, 2017 WL 264390 (N.D. Cal. Jan. 20, 2017) ........ 3

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 7, 8

*Greenley v. Kochava, Inc.* 684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 4, 12

*Heiting v. Taro Pharms. USA, Inc.*, No. 23-cv-08002, 2024 WL 3738055 (C.D. Cal. July 31, 2024) ........ 8

*Herrera v. Zumiez*, 953 F.3d 1063 (9th Cir. 2020) ........ 9

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .................. 7

*Jones v. Tonal Sys.*,
No. 23-cv-1267, 2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) .................. 8

*Jones v. United States*, 362 U.S. 257 (1960) .................. 9

*Johnson v. Blue Nile, Inc.*,
No. 20-cv-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .................. 7

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .................. 6

*Lightoller v. JetBlue Airways Corp.*,
No. 23-cv-00361-H-KSC, 2023 WL 3963823 (S.D. Cal. June 12, 2023) .................. 5

*M. K. v. Google LLC*,
No. 21-cv-08465, 2023 WL 4937287 (N.D. Cal. Aug. 1, 2023) .................. 7

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .................. 5

*In re Meta Pixel Tax Filing Cases*,
No. 22-cv-07557-PCP, 2024 WL 1251350 (N.D. Cal. Mar. 25, 2024) .................. 6, 7

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
No. 17-cv-02911, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) .................. 9

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .................. 2

*Saleh v. Nike, Inc.*
562 F. Supp. 3d 503 (C.D. Cal. 2021) .................. 6, 7

*Savage v. Glendale Union High Sch.*,
343 F.3d 1036 (9th Cir. 2003) .................. 3

*Shull v. Ocwen Loan Servicing, LLC*,
No. 13-cv-2999, 2014 WL 1404877 (S.D. Cal. Apr. 10, 2014) .................. 8, 12

*St. Clair v. City of Chico*,
880 F.2d 199 (9th Cir. 1989) .................. 3

*Svenson v. Google Inc.*,
No. 13-cv-04080-BLF, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ............ 10

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ............ 5

*Toro v. Napolitano*,
No. 12-cv-2804, 2013 WL 4102158 (S.D. Cal. Aug. 13, 2013) ............ 4

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ............ 5

*Van Buren v. United States*,
593 U.S. 374 (2021) ............ 11

*Vita v. New England Baptist Hospital*,
No. SJC-13542, 2024 WL 4558621 (Mass. Oct. 24, 2024) ............ 6

*Williams v. What If Holdings, LLC*,
22-cv-3780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ............ 7

*Wright v. Ulta Salon, Cosms. & Fragrance, Inc.*,
No. 22-cv-1954, 2023 WL 5837492 (S.D. Cal. Sept. 8, 2023) ............ 5

*Yale v. Clicktale, Inc.*,
No. 20-cv-07575, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ............ 7

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ............ 7

**Statutes**

18 U.S.C. § 2701 ............ 11

20 U.S.C. § 1232g ............ 1

Cal. Pen. Code § 502 ............ 9, 10

Cal. Pen. Code § 631 ............ *passim*

Cal. Pen. Code § 637.7 ............ 8, 9

Cal. Pen. Code § 638.51 ............ 9

**Constitutions**

U.S. Const. art. III.......................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ........................................................................ 2, 12

Fed. R. Civ. P. 12(b)(6) ...................................................................... 1, 2, 12

## INTRODUCTION

Plaintiffs' Opposition confirms that Securly's Motions should be granted and this litigation ended. Even though this is the *third* round of Rule 12 briefing, Plaintiffs' Opposition misunderstands the pending motion to dismiss for lack of subject-matter jurisdiction and fails to rebut Securly's arguments and establish that Plaintiffs have Article III standing. Plaintiffs' arguments in support of their scattershot list of claims fare no better when measured against the Rule 12(b)(6) standard. Plaintiffs cite few cases in support of many of their arguments and ask the Court to ignore the relevant statutory language that authorizes school officials to approve software on school computers. Plaintiffs also ignore the central facts here in attempting to analogize to the cases they do cite: Securly's software helps keep students safe on the internet while helping schools comply with federal law. Nothing illegal or unethical is afoot.

Plaintiffs have had multiple opportunities to correct their false allegations, which are based on Securly's Website Privacy Policy[1], a document that explicitly states that it does not apply to the educational setting at issue.[2] Instead, Plaintiffs continue to repeat their baseless assertions that Securly operates as a data broker, based on manipulated disclosures from the incorrect privacy policy, distortions of the correct policy, and their own imagination. The truth is that Securly acts as an arm of the school, providing lawful supervision of school devices so that schools can carry out legally mandated monitoring and additional safety checks, using school data only to provide those services to the schools. The Opposition refuses to meaningfully contend with the fact that Securly, whose customers are *schools*, provides software that schools approve

[1] All capitalized terms are defined as they were in Securly's Motion.

[2] The Opposition's only engagement with the applicable *Student* Privacy Policy misconstrues a sentence which notes that Securly has the obligation to obtain parental authorization, Opp'n at 26, without addressing the immediately following language from the policy, which clearly explains that Securly *relies on schools to consent on parents' behalf*, MTD at 15, as dictated by FERPA, 20 U.S.C. § 1232g.

and install—no one can dispute that. The facts at issue in this case involve only *school-owned* computers—not personal devices—and so there is no basis whatsoever to suggest that there was anything illicit about the installation of the software.

This case should not be allowed to move forward, as Plaintiffs fail to allege facts to support a plausible inference that Securly engaged in *any* privacy violation that would amount to a "concrete" and "particularized" harm or support any of the SAC's claims. Plaintiffs' attempt to criminalize permissible, indeed federally-mandated, school supervision of minors—and their deliberate and continued distortions of Securly's documented practices—should not be countenanced any longer. The Court was right to dismiss Plaintiffs' First Amended Complaint this summer, and there are even more reasons now to dismiss the SAC, in its entirety, with prejudice.

## ARGUMENT

### I. THE OPPOSITION DOES NOT RESCUE PLAINTIFFS' FAILURE TO ESTABLISH STANDING TO BRING THEIR CLAIMS

Although this is the *third* round of Rule 12(b)(1) briefing, Plaintiffs still do not recognize Securly's *factual* challenge to Plaintiffs' standing. *See, e.g.*, MTD at 2 n.5. Instead, they stubbornly argue that the challenge is facial and the Madhusudan Declaration is improper, citing authorities regarding 12(b)*(6)* motions. *See* Opp'n at 12 n.1.[3] A party making a 12(b)*(1)* factual challenge is permitted to offer supporting evidence, as Securly has here, and the Court may consider that evidence, along with

[3] In a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Securly's jurisdictional attack is factual because Defendant challenges Plaintiffs' contention that Securly collected Student Information without authorization. *See id.* (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (explaining that a jurisdictional challenge was a factual attack where it "relied on extrinsic evidence and did not assert lack of subject matter jurisdiction solely on the basis of the pleadings")).

any evidence offered by the opposing party, though Plaintiffs offer none.[4] *See St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). While Plaintiffs find these truths to be inconvenient, Securly has clearly stated that it does not process Student Information for any purpose other than providing its services; the policies and other materials cited by Securly are properly incorporated by reference in the SAC, and the facts in the Declaration and statements in Securly's privacy policies stand unrebutted. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003) ("Once the moving party has converted the motion to dismiss into a factual motion . . . the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." (citation omitted)). The Court should therefore dismiss the SAC for lack of standing. *See, e.g.*, *Foster v. Essex Prop. Inc.*, No. 14-cv-05531-EJD, 2017 WL 264390, at *3-4 (N.D. Cal. Jan. 20, 2017) (dismissing privacy action on basis of defendants' evidence showing lack of standing).

Plaintiffs lack Article III standing because the SAC does not allege a cognizable injury. Plaintiffs allege that a "privacy violation" occurred when schools used Securly software to monitor student activity on *school-owned* Chromebook computers. *See* SAC ¶¶ 28-29, 34-35; Opp'n at 26 (acknowledging that "the schools owned the devices"). Despite Plaintiffs' suggestions otherwise, students have no reasonable expectation of privacy in these circumstances: schools are *legally required* to monitor activities on school-owned computers for inappropriate online materials, as mandated by Congress under FCIPA. *See* MTD at 1. Plaintiffs make no plausible allegation that Securly is sharing Student Information with *any* "third parties" other than schools and those individuals, like parents, with whom applicable law allows such sharing.

Plaintiffs attempt to salvage their argument by citing inapplicable and outdated

---

[4] Plaintiffs' argument against the consideration of company webpages Securly has identified as incorporated by reference and judicially noticeable is also mistaken for the reasons set out in Securly's RJN.

caselaw. For instance, *Greenley v. Kochava, Inc.*, whose facts are distinguishable, did not find that the mere *assertion* of an intrusion relieves Plaintiffs of their burden to establish injury, but rather that "intrusions into privacy *can* constitute an injury in fact." 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 588-89 (9th Cir. 2020). Securly does not "misdirect[]" the Court, Opp'n at 12, by noting the vast factual differences between itself and data brokers. Securly is fulfilling contractual obligations with school customers—this context is crucial in assessing this case against those that Plaintiffs cite. Securly did not secretly install hidden software—schools chose to install the software; Securly did not surreptitiously collect Student Information for its own purposes—it collected data from school computers on behalf of schools; and it does not share Student Information with anyone besides designated school contacts, parents, and law enforcement (only when necessary as determined by the school or applicable law)—it does not sell Student Information or use it for marketing or targeted advertising. Decl. ¶¶ 28, 29-31.

After including a special "Injury-in-Fact and Harm" section in the SAC, Plaintiffs' Opposition fails to address *any* of Securly's caselaw-backed arguments regarding that jumble of theories. *See* MTD at 8-12. Instead, Plaintiffs simply restate some of those theories (along with outlandish theories like "discrimination" and "violence" that were not alleged in the SAC[5]) in a section of the Opposition mischaracterized as "Factual Background." Opp'n at 7-8. Plaintiffs' failure to rebut Securly's arguments means they have conceded those theories of standing. *See Caravan Canopy Intl, Inc. v. Home Depot U.S.A., Inc.*, No. CV196224PSGADSX, 2021 WL 831028 , at *3 (C.D. Cal. Feb. 25, 2021) ("Plaintiff does not address this argument, and arguments to which no response is supplied are deemed conceded.").

---

[5] The Court should disregard these new and unfounded theories as Plaintiffs cannot amend the SAC through their Opposition. *See Toro v. Napolitano*, No. 12-cv-2804-IEG WVG, 2013 WL 4102158, at *3 (S.D. Cal. Aug. 13, 2013).

Plaintiffs seem to believe that simply alleging a mess of state and federal claims establishes their Article III standing; it does not. As Securly has noted, "[a]lthough a violation of privacy interests *can, in other circumstances*, be an injury-in-fact, *there is no such injury here*." MTD at 8-9 (emphasis added). Merely asserting legal conclusions as allegations—like Plaintiffs' purported "CIPA violation"—without any supporting factual allegation does not automatically confer standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) ("Article III standing requires a concrete injury even in the context of a statutory violation." (citation omitted)). This Court has therefore recognized that "a bare CIPA violation by itself is insufficient to demonstrate Article III injury in fact." *Lightoller v. JetBlue Airways Corp.*, No. 23-cv-00361-H-KSC, 2023 WL 3963823, at *3 (S.D. Cal. June 12, 2023).

## II. NOTHING IN THE OPPOSITION CHANGES PLAINTIFFS' REPEATED FAILURE TO ADEQUATELY STATE ANY CLAIM

### A. Plaintiffs Cannot Establish Wiretapping or Eavesdropping Claims Under CIPA or FWA

**CIPA Wiretapping.** As several courts have held, § 631(a) does not apply to internet communications. To avoid that conclusion, Plaintiffs first urge the Court to ignore *Wright v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. 22-cv-1954-BAS-BLM, 2023 WL 5837492 (S.D. Cal. Sept. 8, 2023), which correctly read § 631(a) wiretapping as limited to telephone communications, in favor of an older Northern District case that has not been followed even in that district. *Compare Matera v. Google Inc.*, 2016 WL 8200619, at *20 (N.D. Cal. Aug. 12, 2016), *with Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (explaining that courts have "uniformly" interpreted § 631(a)'s first clause as excluding internet communications).

Plaintiffs then argue that the Court should disregard the clear language of § 631(a) concerning telephones and replace that language with words describing new and different technologies to "give[] greater protection to privacy interests." Opp'n at 15. Rejecting such illogical modes of statutory interpretation, this Court has previously

declined to apply another of Plaintiffs' cases, *Apple v. Superior Court*, 56 Cal. 4th 128, 137 (2013), to CIPA claims, noting that CIPA "did not 'predate' internet technology" and that the legislature has amended CIPA several times but has not extended it to internet technologies. *D'Angelo v. FCA US, LLC*, No. 3:23-cv-00982-WQH-MMP, 2024 WL 1625771, at *15 (S.D. Cal. Mar. 28, 2024); *see also Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1080 (C.D. Cal. 2023) (noting that the California Legislature amended CIPA in 1988, 1992, 2011, and 2022 without adding protections for internet communications); *Vita v. New England Baptist Hospital*, No. SJC-13542, 2024 WL 4558621 (Mass. Oct. 24, 2024) (holding common internet tracking technology did not violate state wiretap law).

**CIPA Eavesdropping.** Plaintiffs' § 631(a) eavesdropping claim fails both because Securly acted as an authorized school agent and because the SAC does not adequately allege "in transit" interceptions. The Opposition repeats the SAC's allegations that Securly software is installed on school-owned devices without Plaintiffs' knowledge or consent, Opp'n at 8, but Securly "require[s] schools to consent to [the] collection and use of Student Information, on behalf of parents," RJN Ex. 2; RJN Ex. 5, § 1b. Plaintiffs simply ignore the lawful FERPA consent mechanism at issue in this case. *See* MTD at 3 n.7. Of the handful of cases they cite to contend that no prior consent was provided, Opp'n at 16, none concerned internet safety in schools or the FERPA consent mechanism, or addressed the validity of school consent; *Licea* did not address consent at all in dismissing the § 631(a) claim. Plaintiffs rely solely on irrelevant website cases in which plaintiffs alleged defendants received *no consent whatsoever*; here, Securly requires its school customers to provide consent, which is allowed by FERPA and conceded by Plaintiffs in the SAC. ¶ 71. Plaintiffs' true complaint appears to be not with Securly, but with Plaintiffs' schools or FERPA itself.

Plaintiffs' reliance on *Saleh v. Nike, Inc.* and *In re Meta Pixel Tax Filing Cases* is misplaced. *See* Opp'n 16-17. Unlike schools, those companies have no special relationship to allow them to consent on their customers' behalf. *See Saleh*, 562 F.

Supp. 3d 503, 520 (C.D. Cal. 2021). But schools can and do authorize Securly's collection of Student Information on parents' behalf—a system permitted under federal law.[6] Plaintiffs refuse to engage with the argument that Securly obtained valid consent from schools for the collection of school data, in compliance with federal laws that do not apply to Meta or other private companies. While Meta may not have had the consent of its users or the websites deploying its technology to collect user information, *In re Meta Pixel Tax Filing Cases*, No. 22-cv-07557-PCP, 2024 WL 1251350, at *5 (N.D. Cal. Mar. 25, 2024), this has no bearing on the consent at issue in this case.

The SAC makes no plausible allegation that Securly uses Student Information for its own benefit, or operates outside of its role as an extension of the schools themselves. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021) (distinguishing between service providers who use information collected for their own benefit from those who use it for the sole benefit of the party to the communication).[7] Even those courts, like *Javier v. Assurance IQ, LLC*, that have deemed software providers to be third parties have predicated that finding on plausible allegations that the provider has the capability to use collected information for its own purposes or benefit. *See* 649 F. Supp. 3d 891, 897-901 (N.D. Cal. 2023). Plaintiffs have not plausibly alleged such capabilities here. *See Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972-73 (N.D. Cal. 2023) (no adequate allegations to support a reasonable inference that a provider had such capability even where plaintiffs alleged the provider directly received electronic communications and analyzed interactions in real time).

---

[6] Schools "may act as the parent's agent and consent under COPPA to the collection of [student] information on the parent's behalf." *M. K. v. Google LLC*, No. 21-cv-08465, 2023 WL 4937287, at *3 (N.D. Cal. Aug. 1, 2023) (citation omitted).

[7] *See also Johnson v. Blue Nile, Inc.*, No. 20-cv-08183-LB, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021); *Yale v. Clicktale, Inc.*, No. 20-cv-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021); *Williams v. What If Holdings, LLC*, 22-cv-3780 WHA, 2022 WL 17869275, at *3-4 (N.D. Cal. Dec. 22, 2022).

Plaintiffs' allegations of "real-time" acquisition, SAC ¶ 52, are insufficient to allege that communications were acquired "in transit." Similar allegations have been deemed "insufficient because they required the Court to take on the task of determining how the software code embedded on Defendant's website works while failing to provide any facts regarding the method, or nature, of the alleged interception." *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-cv-08002-SPG-E, 2024 WL 3738055, at *3 (C.D. Cal. July 31, 2024). Plaintiffs fail to make any allegations about who the intended recipient was for the allegedly "intercepted" communications, or how communications are supposedly intercepted, requiring dismissal. *See Jones v. Tonal Sys.*, No. 3:23-cv-1267-JES-BGS, 2024 WL 4357558, at *7 (S.D. Cal. Sept. 30, 2024) (dismissing statements that chats were "intercepted in real time" as conclusory).

**CIPA Use or Aiding-and-Abetting.** Because Plaintiffs have not adequately pleaded wiretapping or eavesdropping, they have not pleaded a violation of the use or aiding-and-abetting provisions. *Graham*, 533 F. Supp. 3d at 833. The aiding-and-abetting claim also fails because Plaintiffs have not identified any third party to whom information was provided and because they have failed to allege intent. *See Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102 DMS(KSC), 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (dismissing § 631 claim for failure to plead requisite intent).

**FWA.** Plaintiffs have not stated an FWA claim either, including for the additional reasons that Securly set out in its opening brief but that the Opposition ignored. *See* MTD at 16-17. For instance, Plaintiffs do not address Securly's argument that collections incident to rendition of electronic communications do not violate the FWA, conceding this argument. *See Shull v. Ocwen Loan Servicing, LLC*, No. 13-cv-2999-BEN WVG, 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014) (failure to address arguments means "the claims are abandoned and dismissal is appropriate.").

### B. Plaintiffs Do Not Adequately Allege Illegal Tracking of Students

With respect to § 637.7, Plaintiffs again argue that this Court should ignore the express language of the statute in favor of what Plaintiffs think is its purpose. But

statutory interpretation begins with the text, not with the legislative history—and certainly not with Plaintiffs' unsupported theories of purpose. *See Herrera v. Zumiez*, 953 F.3d 1063, 1071 (9th Cir. 2020). Plaintiffs argue that § 637.7 "does not allow tracking just because the tracker owns the device," Opp'n at 22, but, in fact, it does. *See* § 637.7(b) ("This section shall not apply when the registered owner . . . consented to the use of the electronic tracking device."). Plaintiffs' citations to inapplicable Fourth Amendment cases where owners did not consent to police searches, *see* Opp'n at 22 (*Byrd v. United States*, 138 S. Ct. 1518, 1528 (2018); *Jones v. United States*, 362 U.S. 257, 259 (1960)), do not controvert the statute's plain language.

Moreover, § 637.7 addresses physical tracking devices "attached" to vehicles or other moveable things, but Securly's software is not "attached" in any sense of the word. *See, e.g.*, *Moreno v. S.F. Bay Area Rapid Transit Dist.*, No. 17-cv-02911, 2017 WL 6387764, at *4 (N.D. Cal. Dec. 14, 2017). Plaintiffs strain reason in arguing that the computers themselves are attachments "adapted for the particular purpose of tracking student movements," Opp'n at 23, especially as the SAC does not allege that schools provided students with laptops to track them.[8]

### C. Schools' Use of Securly's Tools on School Devices Is Not Hacking

**CDAFA.** Plaintiffs' CDAFA claim remains defective for several reasons. First, a § 502(c) claim exists only for the owner or lessee of a computer or its residing data. Plaintiffs' Opposition baldly asserts that students are "lessees" of the devices, Opp'n at 24, but points to no agreement or consideration to support this assertion or establish the statute's standing requirement.

Next, Plaintiffs do not adequately allege any actionable "damage or loss," as unsupported assertions of *emotional* harm do not amount to the *economic* damages

---

[8] The Court should also dismiss Plaintiffs' § 638.51 claim (Count 4), as the Opposition does not address any of Securly's arguments against it. *See* MTD at 18-19.

required under CDAFA. *Compare* Opp'n at 24-26, *with* MTD at 20. Plaintiffs cannot rely on a diminution-in-value theory without first establishing "both the existence of a market for [their] personal information and an impairment of [their] ability to participate in that market," which they do not. *Svenson v. Google Inc.*, No. 13-cv-04080-BLF, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016).[9] Plaintiffs' allegations that Securly somehow "unjustly enriched" itself at their expense by "intercepting, acquiring, taking, or using [their] data, communications, and personal information without their permission," SAC ¶¶ 219, 225, or "collected, sold, licensed, and transferred" geolocation data, *id.* ¶ 5, are not the kind of "damage or loss" contemplated by CDAFA. *See Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (rejecting plaintiffs' theorized "loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data").

Plaintiffs also do not plausibly allege Securly "knowingly" accessed their property "without permission," because the devices at issue are school property. *See* MTD at 21. Plaintiffs argue that Securly knowingly accessed Student Information without *parental* consent, but not that Securly did so without the *school's* consent. Plaintiffs' baseless and implausible allegations of a fraudulent scheme or use of Student Information to "wrongfully control or obtain money, property, or data" are not sufficient to state a claim under § 502(c)(1).

**CFAA.** Plaintiffs also fail to adequately plead either the requisite $5,000 loss or lack of authorization to make out a CFAA claim. Plaintiffs assert that they have "allege[d] Defendant collected information beyond what was authorized by the schools," Opp'n at 27, but provide no citation to the SAC or any other basis for this fabrication. Meanwhile, Plaintiffs do not engage with any of Securly's CFAA caselaw,

---

[9] Plaintiffs' assertion of a vague "ownership interest in some of the data from their children's communications," Opp'n at 26, is based on facts not pleaded in the SAC and would not be a valid theory of economic loss besides.

*see* MTD at 21-22, nor do they even use their own definitions of "loss" or "damage," *see* Opp'n at 27-28, instead generally referring to their confused SAC allegations on this point. Plaintiffs have not adequately alleged "their private information" has "financial value," *id.* at 28 (hence no cite to the SAC), never mind that it is worth more than $5,000 in some unidentified market.

**D. Device Owners Fully Authorized Securly's Access of Data**

As for the SCA claim, Securly did not access "without authorization a facility through which an electronic communication service is provided" or exceed their authorization to access such a facility, as required by 18 U.S.C. § 2701(a). Regardless of whether the school devices qualify as facilities—they do not—Plaintiffs concede that the schools owned the devices, SAC ¶¶ 28, 34; Opp'n at 26, and that the schools willingly installed Securly's products on those devices to monitor and collect school data, SAC ¶¶ 29, 35; Opp'n at 8. Because both the devices and the data in question are the schools' and the schools authorized the access, there is no valid SCA claim.

Plaintiffs cite no caselaw—contra Securly's Motion or otherwise—to support their SCA claim. Plaintiffs do not deny that Securly's actions were authorized by the schools, in compliance with FCIPA. Instead, they argue that Securly "exceeded" that authorization by using the data that they were authorized to collect to email parents regarding their own children. Opp'n at 28. In other words, according to Plaintiffs, even though Securly was authorized to access data on school computers, they had unauthorized motives for using the data. This argument runs counter to the plain text of the SCA, which places no limits on use of otherwise authorized access. The Supreme Court has rejected similar arguments regarding motives for use of authorized access under the CFAA. *Van Buren v. United States*, 593 U.S. 374, 378 (2021) (holding that the CFAA does not prohibit access to authorized data even when a defendant has "improper motives").

**E. Securly Does Not Intrude on Student Use of School Devices**

Plaintiffs once again cite nothing to contradict what they admit are Securly's

"accurate" caselaw citations. Plaintiffs' only argument is based on an unsupported allegation that Securly goes beyond monitoring school-issued devices by "selling minors' private data." Opp'n at 29. As stated in the Student Privacy Policy on which the SAC largely relies, Securly does not engage in selling, marketing, or brokering Student Information. *See* MTD at 7. To the extent Plaintiffs' arguments rest entirely on the *collection* of Student Information, such collection was authorized by the schools as part of their duty to monitor school-issued devices, which the Opposition appears to concede is a legitimate obligation. Opp'n at 29. Plaintiffs do not explain how monitoring of a school-issued computer is consistent with "somewhat diminished privacy at school" but "highly offensive" when the student takes that same school-issued computer off campus for distance learning. *Id.*; SAC ¶¶ 28, 34.

### F. Plaintiffs' UCL Claim Fails for Lack of Economic Injury

Recognizing they have not pleaded an economic injury as required by the UCL, Plaintiffs now assert that a loss of personal data qualifies, Opp'n at 29, even though they alleged no such loss in the SAC. Regardless, this Court has rejected that exact theory. *See Greenley*, 684 F. Supp. 3d at 1054 ("Courts have consistently found that alleging the economic value of data is not enough, if a plaintiff fails to allege the economic value to *him*."); *see also D'Angelo*, 2024 WL 1625771, at *8. Further, Plaintiffs have not alleged that they themselves could have profited from the Student Information, much less how the alleged conduct has limited their ability to so profit.

Plaintiffs also do not rebut Securly's caselaw foreclosing their "unlawful" theory, explain their "actual reliance" for their "fraudulent theory," or address *Sonner*, which is dispositive of their claim. *See* MTD at 25 n.33. For all these reasons, the Court should dismiss Plaintiffs' UCL claim. *See Shull*, 2014 WL 1404877, at *2.

## CONCLUSION

Securly respectfully requests that the Court dismiss with prejudice all claims for lack of standing under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6).

Dated: November 1, 2024

Respectfully submitted,

By: */s/ Amy Jane Longo*

Amy Jane Longo
ROPES & GRAY LLP
10250 Constellation Blvd
Los Angeles, CA 90067
Tel: (310) 975-3300
Fax: (310) 975-3400
Email: amy.longo@ropesgray.com

Edward R. McNicholas (*pro hac vice*)
Frances Faircloth (*pro hac vice*)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
Tel: (202) 508-4600
Fax: (202) 508-4650
Email:
edward.mcnicholas@ropesgray.com
fran.faircloth@ropesgray.com

*Attorneys for Defendant Securly, Inc.*

# CERTIFICATE OF SERVICE

**BY CM/ECF TRANSMISSION:** In accordance with the Electronic Case Filing Administrative Policies and Procedures Manual for the United States District Court, Southern District of California, the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 1, 2024, at Los Angeles, California.

*/s/ Amy Jane Longo*
Amy Jane Longo