**SWIGART LAW GROUP, APC**
Joshua B. Swigart (State Bar No. 225557)
2221 Camino del Rio S, Suite 308
San Diego, CA 92108
Telephone: (866) 219-3343
Facsimile: (866) 219-8344
E-mail: Josh@SwigartLawGroup.com

**THE BARRY LAW OFFICE, LTD**
Peter F. Barry (MN #0266577)
*Admitted pro hac vice*
1422 Asbury Street N.
St. Paul, MN 55108
Telephone: (612) 379-8800
E-mail: pbarry@lawpoint.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jgavenman@bursor.com
jglatt@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHERI BATE, and her child N.M., and AZUCENA MEJIA, and her child A.S., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SECURLY, INC,<br><br>Defendant. | Case No. 3:23-cv-01304-AGS-DEB<br><br>**PLAINTIFFS' OPPOSITION TO SECURLY, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Hearing Date: October 30, 2025<br>Hearing Time: 10:00 AM<br>Courtroom: 5C<br>Judge: Hon. Andrew G. Schopler<br><br>Complaint Filed: July 17, 2023<br>First Amended Complaint filed: Sept. 22, 2023<br>Second Amended Complaint filed: Sept. 6, 2024 |

# TABLE OF CONTENTS

**PAGE(S)**


LEGAL STANDARD ........ 3

ARGUMENT ........ 3

- A. Securly's Conduct Exceeds What The Law Allows ........ 3
  - 1. Plaintiffs' allegations are plausible. ........ 4
  - 2. Securly vortexes children's data at all times. ........ 5
  - 3. Securly's data collection is not appropriately limited. ........ 7
  - 4. The data is used to create and market a separate product. ........ 8
- B. FCIPA Does Not Displace Statutes Requiring Parental Consent ........ 10
- C. Securly Needs Parental Consent To Obtain Student Data ........ 11
- D. Securly's Actions Are Not Allowed Under FCIPA Or FERPA ........ 14
  - 1. FCIPA explicitly does *not* require tracking of internet use. ........ 15
  - 2. FCIPA does not require Securly's extensive data capture. ........ 15
  - 3. Securly cannot use students' data for commercial purposes. ........ 16
  - 4. Securly's FCIPA interpretation would nullify other statutes. ........ 17
  - 5. Schools need not maintain records of online monitoring. ........ 18
  - 6. Monitoring records are not "education records" under FERPA. ........ 18
- E. California's Education Code Prohibits Securly's Conduct ........ 19
- F. KOPIPA And SOPIPA Prohibit Securly's Alleged Conduct ........ 22
- G. Parents Did Not Consent To Securly's Data Collection ........ 24
  - 1. Plaintiffs' parents never impliedly consented. ........ 24
  - 2. Securly cannot presume parental consent under COPPA. ........ 25
- H. Third Party Certification Does Not Release Securly From Liability ........ 27

CONCLUSION ........ 28

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Arista Recs. LLC v. Does 1-4*,
589 F. Supp. 2d 151 (D. Conn. 2008) .......... 19

*BRV, Inc. v. Sup. Ct. of Siskiyou Cnty.*,
49 Cal. Rptr. 3d 519 (Ct. App. 3d Dist. 2006) .......... 19, 20

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) .......... 28

*Cherkin v. PowerSchool Holdings, Inc.*,
2025 WL 844378 (N.D. Cal. Mar. 17, 2025) .......... passim

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*,
721 F.3d 264 (4th Cir. 2013) .......... 3, 28, 29

*Griggs-Ryan v. Smith*,
904 F.2d 112 (1st Cir. 1990) .......... 24, 25

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
896 F.2d 1542 (9th Cir. 1989) .......... 3, 28

*Hernandez-Silva v. Instructure, Inc.*,
2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) .......... 4

*Hetherington v. Madden*,
640 F. Supp. 3d 1265 (N.D. Fla. 2022) .......... 27

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 4, 5, 28

*In Re Fed.-State Joint Bd. on Universal Serv. Children's Internet Prot. Act*,
16 F.C.C. Rcd. 8182 (2001) .......... 15

*In Re Fed.-State Joint Bd. on Universal Serv.*,
16 F.C.C. Rcd. 2808 (2001) .......... 15

*In re Modiri*,
474 B.R. 511 (Bankr. E.D. Mich. 2012) .......... 27

*Johnston Sch. Comm. v. Rhode Island State Lab. Rels. Bd.*,
2004 WL 877619 (R.I. Super. Apr. 5, 2004) ........ 16

*Jones v. Google LLC*,
73 F.4th 636 (9th Cir. 2023) ........ 28

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........ 27

*Krumme v. Mercury Ins. Co.*,
20 Cal. Rptr. 3d 485 (2004) ........ 28

*Miller v. Nw. Region Libr. Bd.*,
348 F. Supp. 2d 563 (M.D.N.C. 2004) ........ 17

*Morton v. Mancari*,
417 U.S. 535, (1974) ........ 17

*Owasso Indep. Sch. Dist. No. I-011 v. Falvo*,
534 U.S. 426, (2002) ........ 19

*Parents, Families, and Friends of Lesbians and Gays, Inc. v. Camdenton R-III School Dist.*,
853 F. Supp. 2d 888 (W.D. Mo. 2012) ........ 16

*Risica ex rel. Risica v. Dumas*,
466 F. Supp. 2d 434 (D. Conn. 2006) ........ 19

*Robbins ex rel. Robbins v. Lower Merion Sch. Dist.*,
2010 WL 1976869 (E.D. Pa. May 14, 2010) ........ 6

*Rojas v. HSBC Card Servs. Inc.*,
311 Cal. Rptr. 3d 393 (2023) ........ 24

*Ross v. U.S. Bank Nat. Ass'n*,
542 F. Supp. 2d 1014 (N.D. Cal. 2008) ........ 1

*S.A. v. Tulare Cnty. Off. of Educ.*,
2009 WL 3296653 (E.D. Cal. Oct. 6, 2009) ........ 19

*United States v. Am. Libr. Ass'n, Inc.*,
539 U.S. 194 (2003) ........ 15

*United States v. Amen*,
831 F.2d 373 (2d Cir. 1987) ........ 24

*United States v. Mixon*,
930 F.3d 1107 (9th Cir. 2019) .......... 15

*United States v. Van Poyck*,
77 F.3d 285 (9th Cir. 1996) .......... 24

*Weinhoffer v. Davie Shoring, Inc.*,
23 F.4th 579 (5th Cir. 2022) .......... 27

**STATUTES**

15 U.S.C. § 6501 .......... 2

15 U.S.C. § 6502 .......... 10, 18

15 U.S.C. § 6503(b)(2) .......... 28

18 U.S.C. § 2520 .......... 2

20 U.S.C. § 1232 .......... passim

47 U.S.C. § 254 .......... 15, 16, 17

Cal. Bus. & Prof. Code § 22584 .......... passim

Cal. Educ. Code § 49060 .......... 1

Cal. Educ. Code § 49073 .......... passim

Cal. Educ. Code § 49076 .......... 20

Cal. Educ. Code § 49061 .......... 20

Cal. Penal Code § 631, 638.51 .......... 2, 4

**RULES**

Fed. R. Civ. P. 12(c) .......... 3, 5, 28

Fed. R. Civ. P. 12(d) .......... 3, 28, 29

Fed. R. Evid. 201(b) .......... 27

**REGULATIONS**

16 C.F.R. 312 .......... passim

34 C.F.R. § 98 ........ 17

34 C.F.R. § 99 ........ passim

47 C.F.R. § 54.520(c)(1)(i) ........ 16

**OTHER AUTHORITIES**

*Children's Online Privacy Protection Rule*, 64 Fed. Reg. 59,888 (Nov. 3, 1999) ........ 25

*Children's Online Privacy Protection Rule*, 89 Fed. Reg. 2,034 (Jan. 11, 2024) ........ 7, 26

*Children's Online Privacy Protection Rule*, 90 Fed. Reg. 16,918 (April 22, 2025) ........ 7, 26

*Family Educ. Rights and Priv.*, 73 Fed. Reg. 74,806 (Dec. 9, 2008) ........ 12, 13

## INTRODUCTION

Nearly one year ago, Defendant Securly, Inc. ("Defendant" or "Securly") attempted to dismiss this case by a Rule 12(b) motion. ECF No. 26. This was rejected and Securly now takes another run at dismissal, this time by rehashing its prior arguments under the guise of a 12(c) motion. But, in reviewing Rule 12(c) motions, courts utilize the same standard used under Rule 12(b)(6). *Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014, 1023 (N.D. Cal. 2008) ("Rules 12(c) and 12(b)(6) are substantially identical."). Thus, there is no reason the Court should deviate from its holding on the Motion to Dismiss, as virtually nothing has changed—not even the standard by which the Court should review this new motion. Defendant's 12(c) motion should be denied.

Securly's argument may appear appealing, it is ultimately unavailing. Securly argues that schools need to use education technology ("ed tech"), and that using modern technology in today's schools would be virtually impossible should schools be required to obtain individualized consent from each parent. As discussed below, this argument merely serves to distract from the real issue: that Securly collects students' data for its own commercial purposes, and the law prohibits schools from requiring the use of an ed tech provider that monetizes students' data without parental consent. *See* Complaint, *U.S. v. Edmodo, LLC*, No. 3:23-cv-02495 (N.D. Cal. May 22, 2023), ECF No. 1 (FTC complaint alleging ed tech platform violated federal law by using student records for commercial purposes while relying on schools to obtain parental consent) (attached as Exhibit 7 to the concurrently filed Request for Judicial Notice ("RJN")).

Securly's arguments under the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g; 34 C.F.R. § 99.1, *et seq.* ("FERPA"), the Federal Children's Internet Protection Act, 114 Stat. 2763A-335 ("FCIPA"),[1] California's Education Code, Cal. Educ. Code § 49060, and the Student Online Personal Information Protection Act,

[1] The Federal Children's Internet Protection Act is commonly referred to as "CIPA." However, to avoid confusion with California's Invasion of Privacy Act (also referred to as "CIPA"), Plaintiffs join Securly in using the acronym "FCIPA."

Cal. Bus. & Prof. Code § 22584 ("SOPIPA") fail to acknowledge the allegations. None permit Securly's use of the information for commercial purposes; none mandate Securly's stunning collection of children's private interactions when they are at home; none displace or preempt the federal and state causes of action alleged here.

Indeed, FCIPA does not require collection of any data at all and *expressly* does not require internet tracking. FERPA (which was enacted in part to protect students' privacy) does not require schools to create records of students' entire digital lives. These statutes must be read consistently with federal laws that limit ed tech providers' collection of children's data, including the Children's Online Privacy Protection Act, 15 U.S.C. § 6501, *et seq.*; 16 C.F.R. §§ 312.1, *et seq.* ("COPPA"), which prohibits ed tech providers from (1) collecting children's data for commercial purposes without parental consent, (2) delegating to schools the obligation to obtain parental consent, and (3) requiring children to provide more data than is necessary to do their schoolwork.

California's Education Code also prohibits the type of data collection and use alleged here. Namely, Plaintiffs allege that Securly's conduct violates Cal. Educ. Code § 49073.6(c)(1), requiring parental notice and restricting a school's gathering of social media data to "only information that pertains directly to school safety or to pupil safety."

Finally, there is no basis from which a court can conclude that Securly's services were "certified" as complying with COPPA, FERPA, or California statutes. And COPPA's safe harbor provision does not bar Securly's liability under the California Invasion of Privacy Act (Cal. Penal Code §§ 631, 638.51), the Wiretap Act (18 U.S.C. § 2520), and for common law intrusion upon seclusion.

Securly does not contend that federal or state law permits it to act as alleged by Plaintiffs. Rather, Securly asserts that federal and state laws permit what *it* claims to have done, under *its* version of the facts, but fails to acknowledge that these statutes forbid what *Plaintiffs* claim it did. Ultimately, this case depends on the facts, and it must be decided on the facts. Securly cannot skirt that requirement through yet another attempt at Rule 12 dismissal.

## LEGAL STANDARD

In deciding a motion under Fed. R. Civ. P. 12(c), "the allegations of the non-moving party must be accepted as true," and the movant's denial of the allegations "are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (reversing grant of Rule 12(c) motion). As the movant, Securly must "clearly establish[] on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.*

If a court considers matters outside the pleadings (as Securly invites it to do here), "the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Specifically, the parties must "first be afforded a reasonable opportunity for discovery." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013) (reversing district court's conversion of a Rule 12(c) motion into a summary judgment motion without allowing non-movant discovery) (cleaned up).

## ARGUMENT

Securly does not contend that federal or state law permits it to act as alleged by Plaintiffs. It instead either ignores Plaintiffs' allegations or disputes them, both improper on a Rule 12(c) motion. Securly asserts that federal and state laws permit what *it* claims to have done, under *its* version of the facts, but it fails to disclose acknowledge that these statutes forbid what *Plaintiffs* claim it did.

### A. Securly's Conduct Exceeds What The Law Allows

Whether the law mandates, permits, or prohibits Securly's conduct cannot be decided without first assessing the conduct at issue. Thus, Plaintiffs will address the facts first, although Securly addresses them last. *See* Securly's Memorandum of Points and Authorities in Support of Motion for Judgment on the Pleadings at 15-22 ("Mem.") (ECF No. 52-1).

**1. Plaintiffs' allegations are plausible.**

Securly argues that Plaintiffs' allegations are inadequate to state a claim. Mem. at 18-22. But this Court has already concluded that Plaintiffs provided sufficient factual allegations to support their claims. Transcript of July 1, 2025, Hearing on Securly's Motion to Dismiss the SAC at 41:9-17 ("Hearing Tr.") (attached as RJN Exhibit 2) (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 604 (9th Cir. 2020)). Securly's assertions add nothing of substance beyond what has already been admitted. To support its argument, Securly relies on a case where the plaintiffs' claims were dismissed because they did not allege "what type of data was collected from them or whom Defendant provided the data." Mem. at 18, 20 (citing *Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210, at *8 (C.D. Cal. Aug. 4, 2025). But Plaintiffs here made the very allegations that were missing in *Hernandez-Silva*: Securly tracked Plaintiffs' geolocation, their keystroked communications, their web search terms, the websites they visited, and the videos they watched. SAC ¶¶ 29, 35. And in its Answer, Securly admits these allegations are true. Answer ¶¶ 29, 35.

*Hernandez-Silva* is further distinguishable. With respect to CIPA § 631, that court found that the complaint contained only "conclusory allegations" and failed to allege "without explaining how the technology allows real-time interception in general or how it was used to intercept Plaintiffs' data in particular." *Hernandez-Silva*, 2025 WL 2233210, at *5. Here, by contrast, Plaintiffs allege Securly intentionally intercepted and contemporaneously acquired the contents of communications with websites, including search queries, video titles, and sensitive web-browsing activity, and disclosed those contents to third parties without consent. SAC ¶¶ 29–36, 44, 46, 50, 78, 198, 272, 285. Plaintiffs allege the precise mechanisms of interception (Securly's monitoring software embedded on school-issued devices), the categories of intercepted data (geolocation, browsing, videos, contents of private searches), and the use of that data for targeted advertising. *Id.* These detailed factual allegations, reflected in Defendant's own policies, stand in stark contrast to the conclusory § 631 allegations in *Hernandez-Silva.* They are

more than sufficient to survive a Rule 12(c) motion.

**2. Securly vortexes children's data at all times.**

Securly ingests a staggering amount of private student data, including all social media activity and messages, online sites visited, videos watched, web search terms, electronic communications, and geolocation, even when the student is using the school-provided device at home. Second Amended Complaint ("SAC") (ECF No. 25) ¶¶ 29, 35, 43, 76, 111-12. As it admits in its "Student Privacy Policy," which governs its ed tech services provided to schools (attached as RJN Exhibit 1), Securly collects "social media usernames and activity, electronic communications, and general web browsing activity of the student," *id.* at § 4, including "the web pages viewed or blocked, the length of time a student visited a website, links clicked, and messages sent or posted," *id.* at § 6. It also collects students' "private posts" on social media if the school consents. *Id.* at § 7. Securly contends that Plaintiffs' allegations are incorrectly based on Securly's "former privacy policies" that apply only to "visitors and users of . . . www.securly.com." Mem. at 18-19. To the contrary, in its Answer, Securly admits that "its products collect data regarding students' web usage on school-owned devices and that it uses geolocation information . . . to determine the location of school-owned devices." Answer (ECF No. 48) ¶¶ 29, 35. And Plaintiffs' allegations as to the data Securly collects are based on its Student Privacy Policy (Ex. 1), which applies to Securly's ed tech services for schools.

Securly records all digital expressions of the most private aspects of children's lives, including their most intimate questions through web searches and communications about school crushes, parents' divorces, political musings, religious expressions, and sexual orientation—creating a commercially invaluable digital "fingerprint" of each child.[2] SAC ¶¶ 64-65, 78, 82; *see also In re Facebook, Inc. Internet Tracking Litig.*, 956

---

[2] Another court addressing similar issues with an ed tech company emphasized, "with the ever-rapid progression of technology and data processing, courts in various contexts have acknowledged the heightened privacy interests implicated by the aggregation of data over time to create detailed profile[s] about individuals." *Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 844378, at *2 (N.D. Cal. Mar. 17, 2025) (citing cases).

F.3d 589, 599 (9th Cir. 2020) (denying motion to dismiss allegations that defendant correlated browsing history with social media information, creating "a cradle-to-grave profile"); *Robbins ex rel. Robbins v. Lower Merion Sch. Dist.*, 2010 WL 1976869, at *2 (E.D. Pa. May 14, 2010) (enjoining school from accessing files contained on school-issued laptops, including internet usage logs and web browsing histories, without the written consent of parents or students).

Securly's data capture is not limited to children's keystroke communications. Securly also collects the geolocation of children by tracking the school-issued device, Ex. 1 at § 6, thereby capturing their physical location and how they got there, giving insight into their potential conduct and inner thoughts. *See*, *e.g.*, SAC ¶ 91 (identifying whether student who is physically at a reproductive health clinic searched for "pregnancy"). Securly tries to downplay the allegations, grousing that the "Classroom" product merely gives educators visibility of the school-issued device during school hours. Mem. at 16. But the "Classroom" product monitors the student "*while that child is in their own home*." SAC ¶ 111 (emphasis added). As Securly admitted on its website, "there might be a liability/privacy issue with viewing a student's screen while he/she is at home." *Id.* ¶ 113. It cannot now avoid an action pressing that very question by ignoring allegations.

Securly wrongly asserts that geolocation data "is specific to the device only and is not specific to any student or child," Ex. 1 at § 6, and thus Securly may not protect it as "Student Information." But under COPPA, "geolocation information sufficient to identify street name and name of a city or town" is protected personal information. 16 C.F.R. § 312.2. Similarly, under FERPA, indirect identifiers like device IDs, IP addresses, and geolocation can be personally identifiable information because it is "information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty." 34 C.F.R. § 99.3. SOPIPA also protects a K-12 student's "geolocation information" from disclosure. Cal. Bus. & Prof. Code §§ 22584(i)(3); *see also* Cal. Bus.

& Prof. Code §§ 22584(a)(2)(C). Securly's data capture is thus far outside legal bounds.

**3. Securly's data collection is not appropriately limited.**

Securly wins no points by insisting that its products are "purpose-built to discharge school requirements under FCIPA." Mem. at 17. Nowhere does its Student Privacy Policy limit Securly's data usage or collection to what is necessary to protect students' safety as required by California's Education Code. It states that it is collecting data for "authorized educational/school purposes," but does not identify what those purposes are. On this Rule 12 motion, a Court cannot adopt Securly's inference that the purpose is solely for students' safety. Even more, its Student Privacy Policy states that Securly uses the data for its own commercial purposes (to improve the services and for "other research and analytical purposes *related* to" its services). *See* Ex. 1 at §§ 8, 9.

These are commercial uses not permitted by COPPA, and they squarely take Securly outside FERPA's "school official" exception to parental consent. In fact, in 2024, the FTC tentatively considered amending the rule to allow operators use student information to "engage in limited product improvement and development, provided certain safeguards are in place . . . consistent with the requirement under FERPA's school official exception that a school have a 'legitimate educational interest' to share personal information without parental consent." Children's Online Privacy Protection Rule, 89 Fed. Reg. 2,034, 2,056 (Jan. 11, 2024) (proposing adding a definition of "school-authorized education purpose"). But the FTC highlighted its concern that this "could open the door to ed tech providers exploiting the exception," *id.*, and ultimately elected to not adopt the proposal. *See* Children's Online Privacy Protection Rule, 90 Fed. Reg. 16,918, 16,918 (April 22, 2025).

Regardless, whether Securly in fact limits its service improvements to a school-authorized purpose is a question that cannot be resolved by the pleadings. Plaintiffs thus adequately allege that Securly's data collection is not appropriately limited.

**4. The data is used to create and market a separate product.**

Taking the vast data it collects about children, Securly created a separate product, "Home," for parents. SAC ¶ 65. "Home" is not provided to schools, and on the alleged facts before the Court, it is not a school-authorized use of students' data. For parents who install "Home," Securly sends the child's website activities conducted on the school-owned device, which Securly previously insisted it collected solely for schools. SAC ¶¶ 61-68. In other words, Securly admits that it is collecting this student search data for the as-yet-undisclosed later purpose of showing it to curious parents who install its app. Plaintiffs have also plausibly alleged that this intercepted data is used to send promotional emails directly to parents to encourage them in install the "Home" app. And, it is a question of fact whether any class member ever consented to that.

While Securly insists that it does not use student data for marketing or commercial purposes, *see* Mem. at 19, Plaintiffs' allegations show otherwise. Securly sends unsolicited marketing emails to parents for the "Home" app that reveals the child's identifiable data. SAC ¶¶ 46, 61-66, 68. At the top of the message, before providing the websites the child visited and the videos the child watched, Securly emphasizes: "Why wait a week for your child's activity highlights[?] Get them everyday with Stories in your Home app." SAC at ¶ 68. Securly tries yet again to downplay its email marketing as parental notifications under FERPA and FCIPA, Mem. at 17, 18. However, these messages are unsolicited, and FERPA allows disclosure to parents only upon the parent's *request*. 34 C.F.R. § 99.10; *see also* 16 C.F.R. § 312.6(a) (same for COPPA). Moreover, FERPA allows disclosure only of "education records," but a students' keystroked communications and website activity are not education records under FERPA.

Nonetheless, resolving all reasonable inferences in Plaintiffs' favor, these email messages start with its marketing for "Home," which suggests that they are primarily commercial marketing messages. Nothing in the email requires the conclusion that they are parental notifications regarding safety. For example, in the email provided at SAC at ¶ 68, what is the safety-related reason for notifying parents that the child visited

forever21.com (a clothing store), or a watched video about how someone got "brandy melville [a clothing brand] for cheap"? There is none.

Further, Securly incorrectly argues that it derives no revenue from its "Home" product. Mem. at 18. Aside from being an improper factual dispute of the pleadings, *see* SAC ¶ 61, like many other technology products offered for free, Securly monetizes the "Home" app through advertising. Once the parent downloads "Home," Securly's non-school "Privacy Policy"[3] kicks in (attached as RJN Exhibit 3), where Securly admits it may combine information received from "your child's school" together with information it receives from the parent to provide "more relevant ads" and "serve visitor advertisements." SAC ¶ 69; Ex. 3 at §§ 1, 3, 4.2.[4] And, analysis of Securly's software determined that Securly shared the data with third parties, including for third-party marketing, ***without*** de-identification. SAC ¶ 117 (§§ 3.2, 3.15, 10.4).

This is enough for Securly to be put on notice of what the claims against it are, and Plaintiffs need not do more. Plaintiffs identify the specific product being marketed ("Home"), how Securly used identifiable student data to market the product (providing an image of an unsolicited marketing email that discloses private student data), and how Securly further used that data to profit from the "Home" product (by combining schools' and parents' data to sell advertisements). Securly argues that Plaintiffs "do not identify a single customer, transaction, or participant in Securly's alleged monetization scheme," Mem. at 1, but such a level of detail is not required at the pleading stage.

[3] Securly argues that this non-school Privacy Policy is "inapplicable." Mem. at 1. Not so. It shows how Securly monetizes children's data: it combines schools' and parents' data to sell advertising and share data with third parties. Ex. 3 at §§ 1, 3, 4.2.

[4] "We may collect information . . . from third parties such as your child's school, or automatically though your use of the Services. We may combine certain information we collect from these various sources." Ex. 3 at § 1. "We may use the information we collect about you to . . . provid[e] you with more relevant ads." *Id.* at § 3. "We may disclose the information we collect from you to our . . . marketing partners, third parties . . . to serve visitor advertisements and to provide advertisements about products of interest to them . . ." *Id.* at § 4.2.

### B. FCIPA Does Not Displace Statutes Requiring Parental Consent

As this Court recognized at the hearing on Securly's motion to dismiss, Plaintiffs are not claiming that ed tech providers are prohibited from collecting data to prevent cyber-bullying, self-harm, or child pornography, or other similar matters. Instead, the question is: can they collect such data without parental consent? *See* Hearing Tr. at 64:6-14 (Ex. 2). The law says "no," clearly and repeatedly.

For example, FERPA[5] prohibits disclosure of education records to any third party without prior written parental consent. 20 U.S.C. § 1232g(b)(1); *see also id.* at § 1232g(b)(4)(B); *Cherkin*, 2025 WL 844378, at *2 (denying motion to dismiss claim that ed tech provider used children's data for commercial purposes without parental consent).

COPPA also requires providers like Securly to "obtain verifiable parental consent" before collecting children's personal information. 15 U.S.C. § 6502(b)(1)(A)(ii); *see also* 16 C.F.R. § 312.3(b) (same). Securly must give parents "direct notice," 16 C.F.R. § 312.4(b), which is separate from, and in addition to, website notice. *Id.* at § 312.4(d). Securly cannot delegate its obligation to obtain parental consent onto schools, as Securly attempts to do in its Student Privacy Policy. *Compare* § G.2, *infra*, *with* Ex. 1 at § 2 (attempting to delegate the responsibility of obtaining parental consent onto schools).

COPPA additionally prohibits Securly from conditioning its educational services on students' disclosure of data. 15 U.S.C. § 6502(b)(1)(C); 16 C.F.R. § 312.3(d). According to the FTC's policy on COPPA and ed tech providers, "[c]hildren should not have to needlessly hand over their data and forfeit their privacy in order to do their schoolwork or participate in remote learning, especially given the wide and increasing adoption of ed tech tools." *Policy Statement of the Federal Trade Commission on Education Technology and the Children's Online Privacy Protection Act* at 4 (May 19,

---

[5] Securly notes that Plaintiffs did not lodge a complaint with the Department of Education for their schools' FERPA violation. Mem. at 9-10. This is a distraction. Plaintiffs do not sue under FERPA, and there is no requirement that students must first seek to have their school's federal funding withdrawn—the only remedy available under FERPA.

2022) ("FTC Policy Statement") (attached as RJN Exhibit 4). Securly does precisely that, by "requir[ing] schools to consent" to its data collection and use, and threatening that "withdrawing consent may result in a student's inability to continue using some or all of the Services." Ex. 1 at § 2.

Trying to circumvent the law, Securly presents a convoluted argument that the collection of children's data is required by FCIPA, a statute that (1) conditions discounts on internet services on using filtering programs to block obscene visual depictions, and (2) does not address consent. *See* § D, *infra*. But FCIPA does not preempt or otherwise displace federal and state laws that more specifically limit the data that ed tech companies can collect about children, such as COPPA. And compliance with FCIPA does not foreclose Securly's liability on Plaintiffs' causes of action, including the California Invasion of Privacy Act, the Wiretap Act, and common law intrusion upon seclusion claims. To be sure, Securly's attempt to conflate blocking with collection is nothing more than misdirection—preventing access is not, and never has been, the same as harvesting data. Denying access to content is like calling a number and getting a busy signal—the call never goes through. Collecting data, by contrast, is like having your call connected, recorded without your consent, and then shared with third parties.

**C. Securly Needs Parental Consent To Obtain Student Data**

FERPA generally requires schools obtain parental consent before disclosing education records to a third party. 20 U.S.C. § 1232g. However, FERPA does not require parental consent before disclosing records to a third party who acts as a "school official." This narrow exception recognizes that a school will sometimes hire a third party to do what it would otherwise do itself, and the third party's use of the records is tantamount to the school's own use of the records. 34 C.F.R. § 99.31(a)(1)(i)(B). Parental consent is required if the third party uses the data for its own commercial purposes. *See* 34 C.F.R. § 99.31(a)(1)(i)(A) (stating that "school officials, including teachers" can access education records only for "legitimate educational interests.").

Securly argues that it is a "school official" under FERPA. Mem. at 6-10. Even if

that were true—it is not—it fails to establish that Securly is entitled to judgment on the facts here. Instead, the exception permits a school to disclose records to a third party without parental consent only *to the extent* that it will be used only for educational purposes.[6] *See*, *e.g.*, *Cherkin*, 2025 WL 844378, at *3 (finding that students "have a reasonable expectation of privacy with respect to how [] information will be used for bona fide educational purposes, and by whom"). A third party qualifies as a "school official" under FERPA only if it:

> (1) Performs an institutional service or function for which the agency or institution would otherwise use employees;
> (2) Is under the direct control of the agency or institution with respect to the use and maintenance of education records; and
> (3) Is subject to the requirements of § 99.33(a) governing the use and redisclosure of personally identifiable information from education records.

34 C.F.R. § 99.31(a)(1)(i)(B). Securly fails to show, on the pleadings, that it satisfies any of these three requirements. Each requirement is addressed in turn.

**The first requirement**, that the third party perform a service for which the school would otherwise use employees, 34 C.F.R. § 99.31(a)(1)(i)(B)(1), ensures the school official exception does not swallow the rule and allow disclosure "any time a vendor or other outside party wants access to education records to provide a product or service to schools, parents, and students." Family Educ. Rights and Priv., 73 Fed. Reg. 74,806, 74,814 (Dec. 9, 2008). But that is precisely what we have here: Securly is a service provider, not a school official. Securly provides a technology service to schools, but a school would not otherwise use employees to track students' geolocation, keystroked communications, website activity, and private messages *when the student is not in school*. Securly offers nothing on the pleadings that compels a different conclusion.

---

[6] Securly baselessly contends that that school officials have "unencumbered access" to education records, which may be "accessed freely." Mem. at 6. That is wrong.

**The second requirement** for the school official exception is that the third party's use of the records must be under the "direct control" of the school. 34 C.F.R. § 99.31(a)(1)(i)(B)(2). But here, far from retaining control over Securly's use or redisclosure of the data, schools are allowed to only review, change, or delete the data. Ex. 1 at § 12. Securly can unilaterally change the terms of the agreement, and the school's continued usage "will constitute [its] acceptance of any such changes." *Id.* at § 13. Indeed, Securly does not even *inform* schools how it is using students' information to "improve" the services or to do research "related to" the services. *See id.* at § 8.

Contrary to Securly's argument, this requirement is not satisfied by a mere agreement to use the records only as authorized by the school. Mem. at 7. Securly cites 73 Fed. Reg. at 74,816, which simply notes that schools "*should* make clear" such restrictions in its agreements, but it nowhere states that "direct control" is established by a mere agreement. In fact, schools "are responsible under FERPA for . . . *ensuring* that outside parties . . . do not maintain, use, or redisclose education records except as directed by the agency or institution . . ." *Id.* (emphasis added).

Securly similarly mischaracterizes a Department of Education Best Practices document.[7] First, "[t]his document does not address online services or social media that students may use in their personal capacity outside of school," *id.* at 2, and thus this document does not address the facts here. Moreover, Securly omits that the guidance only states that, "in *some* cases," the agreement "*may*" contain all the necessary legal provisions. *Id.* at 4. It instructs schools to "[d]efine the specific purposes for which the provider may use student information, and bind the provider to only those approved uses." *Id.* at 9. The Student Privacy Policy[8] falls short of this advice. It states that

[7] *See* U.S. Dep't of Educ., *Protecting Student Privacy While Using Online Education Services: Requirements and Best Practices* (Feb. 2014), *available at* https://perma.cc/YP5N-9RA.

[8] There is no evidence in the record that the schools, students or parents involved ever saw or even agreed to this Student Privacy Policy which apparently was posted on Securly's website. Questions of fact loom large about how this policy could have been

Securly will use students' information as authorized by the school, but there is nothing by which this Court could determine what those authorizations even are.

Securly further incorrectly claims that Plaintiffs "do not dispute" that Securly has the "requisite" contracts in place. Mem. at 7. Securly has *a* contract, *see* SAC ¶ 60, but not the *requisite* contracts to show it falls within the "school official" exception.

**The third requirement**, that the third party did not use "education records for any purpose other than the purposes for which disclosure was made," cannot be shown on Securly's Rule 12(c) motion. Mem. at 7. Here, Securly baldly asserts that "Plaintiffs do not plead any *facts* demonstrating that Securly improperly used or redisclosed student records." Mem. at 7. But Plaintiffs did just that: as outlined in greater detail above, Securly used the tracking data it collects "to improve" its services, to create a different product it does not offer schools (the "Home" app), and to market that "Home" app through unsolicited emails. Securly does nothing more than effectively deny the allegations, which this Court has already rejected under Rule 12. *See* Hearing Tr. 5:5-13 (Ex. 2); *see also Cherkin*, 2025 WL 844378, at *4 (similarly rejecting ed tech provider's dispute of plaintiffs' allegations of what it does with students' data).

### D. Securly's Actions Are Not Allowed Under FCIPA Or FERPA

Securly contends that FERPA and FCIPA "require[] schools and online education services to provide parents with students' web search" history. Mem. at 9. Securly's argument proceeds as follows: as a condition to receiving discounts on internet connections, FCIPA requires schools monitor minors' online activities and block or filter access to harmful or obscene materials. *Id.* at 4, 8, 12. From this, Securly assumes that students' online activities become "education records" under FERPA, and because schools must provide parents with education records, schools must capture and record students' online behavior. *Id.* at 9. Securly errs at every step. A roadblock that prevents cars from entering is not the same as a toll booth that waves them through, records their

---

delivered let alone agreed to by a student or parent who did not even know Securly was surreptitiously installed on their device.

license plates, and profits from their passage.

### 1. FCIPA explicitly does *not* require tracking of internet use.

Securly "track[s] students' online activities," Ex. 1 at § 8, but FCIPA *explicitly* does not require internet tracking:

> DISCLAIMER REGARDING PRIVACY. Nothing in this title or the amendments made by this title shall be construed to require the tracking of Internet use by any identifiable minor or adult user.

47 U.S.C. § 254, Statutory Notes, Disclaimer Regarding Internet Access and Privacy;[9] *see also In Re Fed.-State Joint Bd. on Universal Serv. Children's Internet Prot. Act*, 16 F.C.C. Rcd. 8182, 8186 (2001) ("[F]CIPA does not, however, require the tracking of Internet use by any identifiable minor or adult user."). Securly can track and certainly does identify minors, as demonstrated by the emails sent to parents detailing their child's internet searches and video viewing habits.

### 2. FCIPA does not require Securly's extensive data capture.

FCIPA does not require the collection of any data, much less every communication and social media post.[10] Securly does not even provide a theory of how tracking a child's *physical movements* (geolocation) is required by a statute regarding *internet safety*.

As a condition to receiving discounts, FCIPA requires schools "block and filter"[11] access to "visual depictions" that are obscene or pornographic.[12] 47 U.S.C. §

---

[9] FCIPA is not codified in a single statute but is an amendment to several statutes. *See, e.g.*, *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 199 (2003); *In Re Fed.-State Joint Bd. on Universal Serv.*, 16 F.C.C. Rcd. 2808, 2808 n.1, 2816 (2001). FCIPA's full text is in an appendix to 16 F.C.C. Rcd. at 2817. But statutory notes have the effect of law. *See United States v. Mixon*, 930 F.3d 1107, 1111 n.3 (9th Cir. 2019) (treating statutory note as controlling law).

[10] Plaintiffs did not "concede" that FCIPA mandates Securly's massive data gathering. Mem. at 15 (citing SAC ¶ 170). Instead, "[F]CIPA mandates the filtering of harmful content and monitoring for educational purposes, but it does not authorize the collection of vast amounts of personal data from children for commercial use." SAC ¶ 170.

[11] 47 U.S.C. § 254(h)(7)(G) (defining "technology protection measure" as technology that "blocks or filters internet access to" such obscene visual depictions).

[12] The statute references "visual depictions that are … harmful to minors," 47 U.S.C. §

254(h)(5)(B); *see also* 47 C.F.R. § 54.520(c)(1)(i). It also instructs schools to adopt and implement an internet safety policy that addresses inappropriate online materials and students' safety when using direct communications. *See* 47 U.S.C. § 254(l)(1)(A). "The restrictions imposed by [FCIPA] are limited to the protection of students from obscene material, including child pornography. [FCIPA] does not seek to restrict the casual personal use of the internet." *Johnston Sch. Comm. v. Rhode Island State Lab. Rels. Bd.*, 2004 WL 877619, at *6 (R.I. Super. Apr. 5, 2004) (holding internet policy that delved into "subjects unrelated to student safety" was not required by FCIPA).

Securly argues that a school cannot comply with FCIPA without collecting every aspect of students' digital lives, even when they are at home. But its factual claim (improper on a Rule 12(c) motion) is also contrary to common sense. For example, many schools use "CIPAFilter" to comply with FCIPA's "filter" or "block" requirement. *See, e.g.*, *Parents, Families, and Friends of Lesbians and Gays, Inc. v. Camdenton R-III School Dist.*, 853 F. Supp. 2d 888, 893 (W.D. Mo. 2012) (preliminarily enjoining school from using filtering software that had the effect of blocking websites with a particular viewpoint, concluding that CIPAFilter was more effective at complying with FCIPA). Securly devotes much of its briefing to retroactive justifications for why it has done what it has, but none of it alters the basic reality that Plaintiffs have alleged: conduct that violates federal law. Simply put: blocking a road and turning cars back is not the same as searching their trunks, bugging their phones, and photographing all of their possessions.

**3. Securly cannot use students' data for commercial purposes.**

Even if FCIPA required collecting children's digital lives to protect student safety—it does not, as already discussed—nothing in its provisions permit using that data for commercial purposes. But that is precisely what is alleged here. Other federal statutes, such as COPPA and FERPA, prohibit companies from using children's data for commercial purposes without parental consent. *See* Ex. 4 at 3 (FTC Policy Statement);

---

254(h)(5)(B)(i)(III), defined as images of unsuitable sexual acts or lewd exhibition of genitals. 47 U.S.C. § 254(h)(7)(G).

16 C.F.R. § 312.2 (prohibiting using information "to contact a specific individual, including through behavioral advertising, to amass a profile on a specific individual, or for any other purpose") ("Support for the internal operations" at § 2).

**4. Securly's FCIPA interpretation would nullify other statutes.**

Reading § 254 as *requiring* massive data collection without parental consent would put § 254 at odds with other federal statutes, violating the "the cardinal rule that repeals by implication are not favored." *Morton v. Mancari*, 417 U.S. 535, 549, (1974) (cleaned up). "[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Id.* at 551. It also puts § 254 at odds with constitutional protections, including those protecting privacy. *See Miller v. Nw. Region Libr. Bd.*, 348 F. Supp. 2d 563, 569-70 (M.D.N.C. 2004) (holding almost identical online monitoring provisions for libraries under 47 U.S.C. §§ 254(h) and (l) "does not stand for the proposition that no constitutional protections apply to Internet computers . . .").

For example, under the Protection of Pupil Rights Amendment ("PPRA"), 20 U.S.C. § 1232h, 34 C.F.R. § 98.4, no student can be required to submit, without prior consent of the student or parent, to any "method of obtaining information … that is not directly related to academic instruction and that is designed to elicit information about attitudes, habits, traits, opinions, beliefs or feelings" where the primary purpose is to reveal information concerning "illegal, anti-social, self-incriminating and demeaning behavior." 34 C.F.R. §§ 98.4(a)(4), (b).[13] If § 254 really mandated the collection of every electronic communication and social media post, then PPRA would be a nullity.

FERPA specifically addresses when a school can disclose education records to protect students' safety, stating that the information must be "necessary" to protect students' safety and must be in connection with an emergency. 20 U.S.C. §

[13] Securly actively searches for activities to flag, and thus undoubtedly collects information in a way designed to elicit beliefs or feelings to reveal information beyond "illegal, anti-social, self-incriminating and demeaning behavior." 34 C.F.R. § 98.4(a)(4).

1232g(b)(1)(l). COPPA similarly limits the data collected for child safety purposes to only the child's and parent's names and online contact information, though even here, COPPA still requires direct notice to parents. 16 C.F.R. 312.4(c)(4); 16 C.F.R. § 312.5(c)(5).

The effect of Securly's argument conditions remote learning on a massive sweep of children's information. But COPPA prohibits ed tech providers from conditioning remote education on disclosing more information than is reasonably necessary. 15 U.S.C. § 6502(b)(1)(C); 16 C.F.R. § 312.7. "Students must not be required to submit to unnecessary data collection in order to do their schoolwork." Ex. 4 at 3 (FTC Policy Statement). If FCIPA required an ed tech provider to collect *all* such data under the guise of protecting students' safety, these limitations are effectively meaningless.

**5. Schools need not maintain records of online monitoring.**

Securly assumes that, because FCIPA requires online monitoring and FERPA requires parents have access to education records, the school must create records relevant to FCIPA monitoring. *See* Mem. at 9. Securly cites no statute and no case law supporting its assumption. Nor could it, as no such authority exists.

FERPA gives parents the right to request *existing* education records, but it does not mandate that schools *create* such records. It certainly does not mandate schools create records of children's keystrokes, web search history, geolocation data, social media posts, or the panoply of other private data that Securly sweeps up in real time. Such an interpretation of FERPA would be consistent with its purpose of protecting students' privacy and its general rule prohibiting disclosure of education records without written parental consent. 20 U.S.C. § 1232g(b)(1). It would be peculiar, to say the least, to conclude that FERPA implicitly nullifies the parental consent requirement for records of students' most private affairs when at home.

**6. Monitoring records are not "education records" under FERPA.**

FERPA governs a narrow subset of student data—"education records"—not all student data. *See* 20 U.S.C. § 1232g(a)(4)(A). Because schools must provide a hearing

to parents wishing to challenge the accuracy of an education record, 20 U.S.C. § 1232g(a)(2), along with adjudication and the opportunity for representation by counsel, 34 C.F.R. § 99.22, the definition of "education records" must be narrowly construed, as "[t]he logical consequences of [a contrary] view are all but unbounded." *Owasso Indep. Sch. Dist. No. I-011 v. Falvo,* 534 U.S. 426, 435, (2002) (holding homework and classroom work are not "education records"). "It is doubtful Congress would have provided parents with this elaborate procedural machinery to challenge the accuracy of" every record a school or its proxy creates. *Id.*; *see also* 20 U.S.C. § 1232g)(a)(4)(B)(i) (excluding administrative records from the definition of education records).

Students' electronic communications and social media posts are not education records. "Congress contemplated that education records would be kept in one place with a single record of access . . . by a single central custodian, such as a registrar." *Owasso*, 534 U.S. at 434-35. "Emails, like assignments passed through the hands of students, have a fleeting nature," and the assertion that emails (and similar communications) in "retrievable electronic database, are maintained in the same way the registrar maintains a student's folder in a permanent file—is fanciful." *S.A. v. Tulare Cnty. Off. of Educ.*, 2009 WL 3296653, at *4 (E.D. Cal. Oct. 6, 2009) (internal quotation marks and citation omitted); *see also Risica ex rel. Risica v. Dumas*, 466 F. Supp. 2d 434, 441 (D. Conn. 2006) (holding a student's angrily written "hit list" is not an education record); *Arista Recs. LLC v. Does 1-4*, 589 F. Supp. 2d 151, 153 (D. Conn. 2008) (holding discovery request did not implicate FERPA-protected materials; "A student's MAC address is not part of his or her educational records.").

**E. California's Education Code Prohibits Securly's Conduct**

Securly inexplicably claims that California's Education Code "authorizes online education services to collect and use student data without parental permission." Mem. at 10 (citing *BRV, Inc. v. Sup. Ct. of Siskiyou Cnty.*, 49 Cal. Rptr. 3d 519, 524-27 (Ct. App. 3d Dist. 2006)). That assertion is simply untethered to legal reality.

The California Education Code generally prohibits access to pupil records without

parental consent. Cal. Educ. Code § 49076(a). *BRV* also does not stand for the proposition that online education service providers are allowed to collect student data without parental permission. Instead, it narrowly held that a report of a school administrator's malfeasance was not a "pupil record" under Cal. Educ. Code §§ 49061 and 49076. Securly's reliance on *BRV* to excuse its interception of student data is thus not only misplaced, but it borders on frivolous.

Indeed, the California Education Code <u>prohibits</u> some of the specific conduct that Plaintiffs allege. Securly gathers *all* social media activity, Ex. 1 at §§ 4, 6-7, but under the Education Code, schools can gather from social media "only information that pertains *directly* to school safety or to pupil safety." Cal. Educ. Code § 49073.6(c)(1) (emphasis added).[14] Further, before collecting social media information, a school must first give notice and an opportunity for public comment at a regularly scheduled public meeting. *Id.* at § 49073.6(b). These restrictions apply even when a school contracts with a third party to gather that social media information. *Id.* at § 49073.6(c)(3)(C).

Securly also cites Cal. Educ. Code § 49073.1, which places requirements on contracts "for the digital storage, management, and retrieval of pupil records." Cal. Educ. Code § 49073.1(a)(1). Yet Securly's services go far beyond digital storage, management, and retrieval. It *creates* records where none would otherwise exist, tracking every website link clicked, every video watched, every keystroke typed, every web search term used, and every duration of a student's website visit. It further analyzes students' web behaviors to provide alerts. *See* Mem. at 17. No doubt, two things can be true. It can be true that Securly performs some lawful function for a school district within the limits of the law, while it simultaneously violates a student's privacy rights and unlawfully intercepts their communications and private data.

[14] Securly's collection of social media activity is not limited to cyber-bullying or risk of self harm. Ex. 1 at §§ 4, 6; *see also id.* at § 7 (collecting private social media posts "for purposes of providing the Services, *including*, as applicable, for detection of cyber-bullying or risk of self-harm.") (emphasis added).

Even if Securly's services fell within § 49073.1, it does not give contractors the ability to do just *anything*. It simply requires that contracts with schools include specific provisions related to securing pupil records. And Securly's Student Privacy Policy—the only thing approximating a contract here—falls far short of § 49073.1's requirements. For example, that policy fails to state how *students* can "retain possession and control of their own pupil-generated content" or transfer this content to a "personal account" as required by § 49073.1(b)(2).

Securly then resorts to a strained and untenable reading of Cal. Educ. Code § 49073.1 as permitting the use of pupil records for marketing and product improvement. Mem. at 10. Here, Securly seems to argue that, because § 49073.1(b) requires it to protect student privacy, it must be able to use pupil records to improve and market its services.[15] But nothing in the statute comes even close to supporting such a claim. *See, e.g.*, *id.* at § 49073.1(b)(9) (requiring the contract prohibit using personally identifiable information in pupil records for targeted advertising); *id.* at § 49073.1(b)(3) (requiring the contract prohibit using pupil records for any purpose other than what is specifically permitted by the contract). Securly gets no help from § 49073.1(d)(5)(B) which defines "pupil records" as excluding de-identified information used to improve educational products or to demonstrate the effectiveness of its products in marketing. At most, Securly can argue that § 49073.1(b)(9) does not require a contract to prohibit using de-identified[16] pupil records to market or improve its products, but this is not equal to a third party to use identifiable pupil records for marketing and product development. In any case, as Plaintiffs allege, Securly used personally identifiable information in pupil records

---

[15] Cal. Educ. Code § 49073.1(b)(5) requires a "description of the actions" the provider will take to ensure the security and confidentiality. Section 11 of Securly's Student Privacy Policy describes these actions, Ex. 1, and nowhere does it identify product improvement or marketing as being necessary to ensure data security and confidentiality.

[16] Again, these records plainly are not de-identified, as evidenced by Plaintiffs' allegations of Securly's direct email solicitations sent to the very parents of the very students whose data it claims to have anonymized.

to market its "Home" app, which is not an educational product.

**F. KOPIPA And SOPIPA Prohibit Securly's Alleged Conduct**

Securly then relies on the Student Online Personal Information Protection Act, Cal. Bus. & Prof. Code § 22584 ("SOPIPA"), which was in effect from January 1, 2016 to December 31, 2024. However, its citations are to the current statute, K-12 Pupil Online Personal Information Protection Act, Cal. Bus. & Prof. Code § 22584 ("KOPIPA"). Unless otherwise noted, the citations below are to both KOPIPA and SOPIPA.

First, KOPIPA and SOPIPA do not address consent, and they do not mandate operators like Securly maintain or create any record.[17] They also cannot displace federal law, which requires consent before using student information for commercial purposes. Relevant here, subsection (b) of KOPIPA and SOPIPA generally forbids operators like Securly from using student information "to amass a profile" about a student "except in furtherance of K-12 school purposes," or from disclosing student information unless it is "in furtherance of the K-12 purpose of the site, service, or application." Cal. Bus. & Prof. Code §§ 22584(b)(2), (4)(A). Other sections narrow these prohibitions, but do not give statutory authorization to perform what was excluded from them. Most relevantly here:

> (f) This section does not prohibit an operator from using deidentified pupil covered information as follows:
>
> > (1) Within the operator's site, service, or application or other sites, services, or applications owned by the operator to improve educational products.
> >
> > (2) To demonstrate the effectiveness of the operator's products or services, including in their marketing.
>
> (g) This section does not prohibit an operator from sharing aggregated deidentified pupil covered information for the development and improvement of educational sites, services, or applications.

Cal. Bus. & Prof. Code §§ 22584(f), (g); *see also* Cal. Bus. & Prof. Code §§ 22584(f), (g)

[17] Curiously, of all the records Securly created, a notably absent student record is one of student or parental consent to being wiretapped.

(West 2014) (similar).

Securly misleadingly omits key language from §§ 22584(f) and (g) to claim these sections permit its alleged conduct. *See* Mem. at 11. But instead of using only "deidentified" student information to improve its educational products, Cal. Bus. & Prof. Code §§ 22584(f)(1), Securly uses *identified* students' "online activities, including the information a student distributes, displays, or shares." Ex. 1 at § 8 (second bullet). Students' "search activity" is specifically protected under the statute. Cal. Bus. & Prof. Code § 22584(a)(2)(C) (West 2023); Cal. Bus. & Prof. Code § 22584(i)(3) (West 2014). Similarly, instead of using only deidentified student information to market the "Home" app, *id.* at § 22584(f)(2), Securly uses *identifiable* student information (students' web search activity) to market the product. Cal. Bus. & Prof. Code § 22584(a)(2)(C) (West 2023) ("search activity" is protected student information); Cal. Bus. & Prof. Code § 22584(i)(3) (West 2014) (same).

Finally, instead of using deidentified student information to improve or develop only "educational sites, services, or applications," *id.* at § 22584(g), Securly uses it "[f]or other research and analytical purposes *related* to the Services." Ex. 1 at § 8 (emphasis added). In other words, it makes money from it. That Securly misuses student information solely to advance its own for-profit software business does nothing to lessen the gravity of the misuse.

Misreading the statute, Securly argues that the statute "authorizes" operators to use student data "for adaptive learning or customized pupil learning processes." Mem. at 11 (citing Cal. Bus. & Prof. Code § 22584(i) (West 2023) ("This section does not limit the ability of an operator to use pupil data, including covered information, for adaptive learning or customized pupil learning purposes.") and Cal. Bus. & Prof. Code § 22584 (West 2014) (similar)). This argument is a diversion, not a defense. Securly is alleged to use students' data for purposes beyond adaptive learning and customized pupil learning processes. Securly does not provide any "adaptive learning or otherwise customized pupil learning processes" to any students. Its sole function is to run in the background of

laptops, tablets, and other devices to intercept student communications and activities and then keep the data it wants and report what it wants. It teaches nothing—except perhaps that invading student privacy can be done with impunity.

Securly also points out that the statute recognizes that personally identifiable information will be created or provided by pupils using an operator's site. Mem. at 11. *See* Cal. Bus. & Prof. Code § 22584(a)(2)(A) (West 2023) (defining "covered information"); Cal. Bus. & Prof. Code § 22584(i)(1) (West 2014) (same). Again, this is a diversion. These provisions simply define "covered information" that is protected. It does not allow operators use that covered information for its own purposes and without consent.

**G. Parents Did Not Consent To Securly's Data Collection**

This Court already rejected Securly's argument that schools' consent is sufficient to avoid liability, and held that Plaintiffs sufficiently alleged their parents did not consent. *See* Hearing Tr. at 27:4-29:20, 62:25-63:7 (Ex. 2). Nonetheless, Securly attempts to relitigate the issue here.

**1. Plaintiffs' parents never impliedly consented.**

As Plaintiffs allege, their parents were never informed of Securly's collection and usage of their data. SAC ¶¶ 29-31, 35-37. Nevertheless, Securly argues that consent can be implied because regulations require online monitoring, citing to *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996); *United States v. Amen*, 831 F.2d 373, 379 (2d Cir. 1987); *Rojas v. HSBC Card Servs. Inc.*, 311 Cal. Rptr. 3d 393, 415-18 (2023) *review denied* (Nov. 21, 2023); and *Griggs-Ryan v. Smith*, 904 F.2d 112, 117 (1st Cir. 1990). Mem. at 12-13. All are distinguishable.

In two of these cases, prison inmates consented to their phone calls being recorded because they signed a written consent form and a sign above the prison's telephones warned that calls were being monitored and recorded. *See Van Poyck*, 77 F.3d at 292; *Amen*, 831 F.2d at 379. In *Rojas,* the court held the plaintiff impliedly consented to the bank recording her calls because she was notified, during the call, that "this call may be recorded" and received disclosures in her card member agreement. 311 Cal. Rptr. 3d at

411 (affirming judgment following bench trial). Similarly in *Griggs-Ryan*, the undisputed evidence was that the defendant repeatedly informed the plaintiff that all incoming telephone calls were recorded. 904 F.2d at 117 (granting summary judgment). None of these cases support, much less require, a finding of consent on the pleadings.

**2. Securly cannot presume parental consent under COPPA.**

Baldly misciting Plaintiffs' allegations, Securly claims that Plaintiffs acknowledge that COPPA authorized their schools to consent on their behalf to the use of Securly's software. Mem. at 13-14 (citing SAC ¶ 141). They did no such thing. They instead alleged that "[w]hile COPPA allows schools to provide limited consent on behalf of parents, [Securly] exceeded the scope of that consent by collecting and sharing children's personal data for commercial purposes, including marketing, targeted advertising, and product promotions." SAC ¶ 141.

Securly then argues that it is enough that schools consented to Securly's product. *See* Mem. at 13-15. After all, requiring a school to obtain each parent's consent for every IT system would be practically impossible. Mem. at 14. Here, Securly quotes the 1999 interpretation of the COPPA Rule that "the operator can presume that the school's authorization is based on the school's having obtained the parent's consent." Mem. at 13-14 (quoting Children's Online Privacy Protection Rule, 64 Fed. Reg. 59,888, 59,903 (Nov. 3, 1999) (Securly's emphasis omitted).

Securly errs on both the facts and the law. ***First, the facts***. This Court has already rejected the argument that schools' consent is enough because "[t]heir own privacy policy says that schools are responsible for . . . obtain[ing] any necessary consents from the parent or student. Even if the schools consented, Securly does not go beyond that to show how the schools obtained the parents' or the students' consent." Hearing Tr. at 27:24-28:5 (Ex. 2); *see also* Ex. 1 at § 2 ("we require schools to consent to our collection and use of Student Information, on behalf of parents."). That is, even if *other* ed tech providers can rely on consent of only the school, Securly's Student Privacy Policy necessitated parental consent.

***Second, the law***. Since the 1999 COPPA rules (which have been twice amended), the FTC issued "long-standing guidance" that schools can authorize the collection of children's data only "in very limited circumstances, specifically, where the data is used for a school-authorized education purpose ***and no other commercial purpose***." Children's Online Privacy Protection Rule, 89 Fed. Reg. 2,034, 2,055 (Jan. 11, 2024) (emphasis added) (citing FTC Policy Statement (Ex. 4) and "Complying with COPPA: Frequently Asked Questions" document ("COPPA FAQs") (attached as RJN Exhibit 5).

"If . . . an operator intends to use or disclose children's personal information for its own commercial purposes in addition to the provision of services to the school, it will need to obtain parental consent." COPPA FAQs at § N.2 (Ex. 5). "[T]he school's ability to consent for the parent is limited to the educational context – where an operator collects personal information from students for the use and benefit of the school, and for no other commercial purpose." *Id.* at § N.1; *see also* Children's Online Privacy Protection Rule, 90 Fed. Reg. 16,918, 16,918 (April 22, 2025) (citing COPPA FAQ at § N and confirming it would enforce COPPA in the ed tech context under this guidance); COPPA Guidance for Ed Tech Companies and Schools during the Coronavirus at 1-2 (attached as RJN Exhibit 6).

As the operator, it is Securly's obligation to "obtain verifiable parental consent."[18] 16 C.F.R. § 312.4. "Importantly, operators should not state in Terms of Service or anywhere else that the school is responsible for complying with COPPA, as it is the responsibility of the operator to comply with the Rule." COPPA FAQ at § N.1 (Ex. 5). Yet this is precisely what Securly did. Ex. 1 at § 2.

The FTC's complaint in *U.S. v. Edmodo*, LLC, No. 3:23-cv-02495 (N.D. Cal. May 22, 2023) ("*Edmodo* Compl.") (Ex. 7) is directly on point. Like Securly, Edmodo was an ed tech platform offered to schools. *Id.* ¶¶ 13-14, 18. There, like here, its contracts with

[18] One suspects that if Securly, in fact, had the Plaintiffs' verifiable parental consent to these alleged wiretaps of their children's devices, it might have put that assertion in its answer to the Second Amended Complaint.

schools "suggested that schools and teachers were responsible for obtaining the verifiable parental consent required by the COPPA Rule." *Id.* ¶ 26; *see* Ex. 1 at § 2. There, like here, the ed tech provider did not notify the schools that it was using students' information to provide contextual advertising. *Edmodo* Compl. ¶ 38. And there, like here, Edmodo violated COPPA.

"Where an operator engages in such non-educational commercial uses, it must obtain consent directly from the parents." *Edmodo* Compl. ¶ 38; *see also* COPPA FAQs at § N.2 (Ex. 5). So too here.

### H. Third Party Certification Does Not Release Securly From Liability

Securly claims that it was certified as being compliant with COPPA, FERPA, and California law by a private third party. Mem. at 2, 17. But ***first***, Securly cites nothing that can support its claim, especially on a Rule 12(c) motion. It cites a "perma" website[19] link purporting to be a 2025 website from iKeepSafe, *id.*, but this webpage does not say anything about Securly being certified, nor whether the services Securly provided to schools (rather than other products) were certified, nor whether Securly was certified throughout the class period.

---

[19] Securly also cites to its *own* 2025 website claiming to be certified. Mem. at 2 n.1. It contends that this is "judicially noticeable on Securly's website." Mem. at 17 n.11. But it is not a fact that is generally known, and a "perma" link to Securly's website is not a source whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 584 (5th Cir. 2022) (reversing district court's judicial notice of an archived website, holding it "falls short of being a source whose accuracy cannot reasonably be questioned as required by Rule 201."). Even if a court can judicially notice that Securly's website *claimed* it was certified, its website is hearsay and it cannot take judicial notice that it was in fact certified. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."); *In re Modiri*, 474 B.R. 511, 513 n.2 (Bankr. E.D. Mich. 2012) (declining to take judicial notice of contents of company's website, ruling it to be hearsay); *Hetherington v. Madden,* 640 F. Supp. 3d 1265, 1271 (N.D. Fla. 2022) (similar).

***Second***, certification by a private party does not foreclose liability under state and federal law. Securly cites a safe harbor provision under COPPA, but that provision does not explicitly prohibit liability under other laws. "[A] safe harbor statute must explicitly prohibit liability for the defendant's acts or omissions." *Krumme v. Mercury Ins. Co.*, 20 Cal. Rptr. 3d 485, 497 n.5 (2004); *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 183 (1999) (the "provision must actually 'bar' the action or clearly permit the conduct."). And COPPA "does not bar state-law causes of action that are parallel to, or proscribe the same conduct forbidden by, COPPA." *Jones v. Google LLC*, 73 F.4th 636, 644 (9th Cir. 2023) (reversing dismissal of claim alleging online video platform impermissibly tracked and targeted minors for advertising revenue).

***Third,*** an operator is deemed to have complied with COPPA only "*if*" it complied with Commission-approved safe harbor program guidelines, 15 U.S.C. § 6503(b)(2) (emphasis added); 16 C.F.R. § 312.11(h) (emphasis added), but there is no indication that Securly has in fact complied with those guidelines, nor that they were approved by the Commission.

***Finally***, Securly's claim goes beyond the pleadings, and cannot be considered without converting Securly's motion to one for summary judgment and allowing Plaintiffs discovery so they have a fair chance to respond. *See* Fed. R. Civ. P. 12(d); *Greater Baltimore*, 721 F.3d at 281. Among other facts that this Court would need before ruling: What service was certified? When? What is Securly's evidence that it in fact complied with this third-party's program guidelines?

**CONCLUSION**

Plaintiffs respectfully request Securly's motion be denied. Ultimately, Securly's arguments come down to its dispute of Plaintiffs' alleged facts, which must be taken as true on a Rule 12(c) motion. *Hal Roach*, 896 F.2d at 1550. Allegations of "surreptitious data collection when individuals were not using [the relevant website] are sufficient to survive a dismissal motion on the issue." *In re Facebook Internet Tracking Litig.*, 956

F.3d at 606. Securly "has not asserted any basis for concluding otherwise where, as here, the complaint alleges such tracking of public-school children." *Cherkin*, 2025 WL 844378, at *4.

In the alternative, should this Court wish to address Securly's arguments that go beyond the pleadings, Plaintiffs request it convert Securly's motion to one for summary judgment and provide Plaintiffs the opportunity to conduct discovery and respond with evidence. Fed. R. Civ. P. 12(d); *see also Greater Baltimore*, 721 F.3d at 281.

Respectfully submitted,

Dated: September 19, 2025

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jgavenman@bursor.com
jglatt@bursor.com