Amy Jane Longo
(CA Bar No. 198304)
ROPES & GRAY LLP
10250 Constellation Blvd
Los Angeles, CA 90067
Tel: (310) 975-3300
Fax: (310) 975-3400
amy.longo@ropesgray.com

Edward McNicholas (*pro hac vice*)
Frances Faircloth (*pro hac vice*)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
Tel: (202) 508-4600
edward.mcnicholas@ropesgray.com
fran.faircloth@ropesgray.com

*Attorneys for Defendant Securly, Inc.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SHERI BATE, and her child N.M., and AZUCENA MEJIA, and her child A.S., individually and on behalf of others similarly situated,

Plaintiffs,

v.

SECURLY, INC.,

Defendant.

Case No. 23-cv-01304-AGS-DEB

**DEFENDANT SECURLY, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Hearing Date: October 30, 2025
Hearing Time: 10:00 AM
Courtroom: 5C
Judge: Hon. Andrew G. Schopler

Complaint Filed: July 17, 2023
First Amended Complaint Filed: September 22, 2023
Second Amended Complaint Filed: September 6, 2024

# TABLE OF CONTENTS


**Page**

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 3

I. Plaintiffs cannot maintain claims against Securly for complying with federal and state law. ........ 3

A. FCIPA authorizes schools to install and operate Securly's software on their own devices ........ 3

B. FERPA authorizes schools to use Securly's software to administer educational services, regardless of Plaintiffs' consent ........ 5

(1) The "school official" exception applies ........ 6

(2) The student data that Securly collects from school-owned devices are "education records." ........ 9

C. COPPA regulations authorize schools to consent on parents' behalf to Securly's collection and use of student data on school devices for the purpose operating its software ........ 10

D. California law, best read as consistent with federal law, contemplates schools' use of software to protect students using school property to access the internet ........ 12

(1) The California Education Code authorizes Securly's collection and use of student data ........ 13

(2) Securly complies with SOPIPA and KOPIPA ........ 14

E. A direct application of FCIPA is consistent with federal law ........ 15

II. Plaintiffs consented to Securly's data collection as a matter of law. ........ 16

III. Plaintiffs offer no plausible allegations that would place Securly's conduct outside the ambit of what federal and california law permit. ........ 17

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arista Recs. LLC v. Does 1–4*,
589 F. Supp. 2d 151 (D. Conn. 2008) ........ 10

*New Mexico ex rel. Balderas v. Google, LLC*,
489 F. Supp. 3d 1254 (D.N.M. 2020) ........ 11, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 18

*BRV, Inc. v. Sup. Ct. of Siskiyou Cnty.*,
49 Cal. Rptr. 3d 519 (Ct. App. 3d Dist. 2006) ........ 13

*Cherkin v. PowerSchool Holdings, Inc.*,
2025 WL 844378 (N.D. Cal. Mar. 17, 2025) ........ 19

*Close v. Sotheby's, Inc.*,
894 F.3d 1061 (9th Cir. 2018) ........ 4

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ........ 8

*Greenfield v. Newman Univ., Inc.*,
2020 WL 2766172 (D. Kan. May 28, 2020) ........ 9

*Hernandez-Silva v. Instructure, Inc.*,
2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) (appeal pending, 9th Cir. No. 25-5438) ........ 8, 18, 19, 20

*Johnston Sch. Comm. v. R. I. State Lab. Rels. Bd.*,
2004 WL 877619 (R.I. Super. Ct. Apr. 5, 2004) ........ 4

*M.K. v. Google LLC*,
2023 WL 4937287 (N.D. Cal. Aug. 1, 2023) ........ 11

*Miller v. Nw. Region Libr. Bd.*,
348 F. Supp. 2d 563 (M.D.N.C. 2004) ........ 15

*Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 12

*Owasso Independent School Dist. No. I-011 v. Falvo*,
534 U.S. 426 (2002) .......... 9

*Parents, Families, and Friends of Lesbians and Gays, Inc. v. Camdenton R-III School Dist.*,
853 F. Supp. 2d 888 (W.D. Mo. 2012) .......... 4

*Rojas v. HSBC Card Servs. Inc.*,
311 Cal. Rptr. 3d 393 (Cal. Ct. App. 2023) .......... 17

*S.A. v. Tulare County Office of Education*,
2009 WL 3296653 (E.D. Cal. Oct. 6, 2009) .......... 10

*Stewart v. Kodiak Cakes, LLC*,
537 F. Supp. 3d 1103 (S.D. Cal. 2021) .......... 20

*United States v. Amen*,
831 F.2d 373 (2d Cir. 1987) .......... 17

*United States v. Miami Univ.*,
294 F.3d 797 (6th Cir. 2002) .......... 6, 9

**Statutes**

18 U.S.C. § 2510 .......... 1

18 U.S.C. § 2701 .......... 1

20 U.S.C. § 1232g .......... 9, 16

20 U.S.C. § 1232h .......... 16

47 U.S.C. § 254 .......... 3, 18

Cal. Bus. & Prof. Code § 22584 .......... 15

Cal. Educ. Code § 49060 .......... 14

Cal. Educ. Code § 49073.1(a)(2) .......... 13

Cal. Educ. Code § 49073.6 .......... 13

Fed. R. Civ. P. 12(b) .......... 2

Fed. R. Civ. P. 12(c) .......... 20

**Regulations and Secondary Sources**

16 C.F.R. § 312 .......... 12, 16

34 C.F.R. § 98.4 .......... 15, 16

34 C.F.R. § 99.10 .......... 8, 17

34 C.F.R. § 99.31 .......... *passim*

34 C.F.R. § 99.33 .......... 8

47 C.F.R. § 54.520 .......... 3

Children's Online Privacy Protection Rule, 64 Fed. Reg. 59,888 (Nov. 3, 1999) .......... 10, 11, 12, 16

Children's Online Privacy Protection Rule, 89 Fed. Reg. 2,034 (Jan. 11, 2024) .......... 12

Children's Online Privacy Protection Rule, 90 Fed. Reg. 16,918 (Apr. 22, 2025) .......... 12

Family Educational Rights and Privacy Act, 73 Fed. Reg. 74,806 (Dec. 9, 2008) .......... 6, 7

FTC, *Complying with COPPA: Frequently Asked Questions* (2020), https://perma.cc/3CPB-M59H .......... 11

U.S. Dep't of Educ., *Protecting Student Privacy While Using Online Education Services: Requirements and Best Practices* (Feb. 2014), https://perma.cc/YP5N-9RA2 .......... 5, 7

U.S. Dep't of Educ., *FAQ: Cloud Computing* (Feb. 2014), https://perma.cc/R936-BZM7 .......... 9

U.S. Dep't of Educ., Priv. Tech. Assistance Ctr., *Integrated Data Systems and Student Privacy* (Jan. 2017), https://perma.cc/C429-Y8FU ........ 5

U.S. Dep't of Educ., *Student Privacy Policy Compliance Office, A Parent Guide to FERPA* (rev. Apr. 2021), https://perma.cc/9WXW-QWHP ........ 7

U.S. Dep't of Educ., *What Is an Education Record?*, https://perma.cc/L45A-M3R5 ........ 9

U.S. Dep't of Com., Nat'l Telecomms. & Info. Admin., *A Report to Congress on CIPA and Study of Tech. Prot. Measures in § 1703* (Aug. 14, 2003), https://perma.cc/NSY2-M2CW ........ 3

S. Rep. No. 106-141 (1999) ........ 4

## PRELIMINARY STATEMENT

In an attempt to preserve what remains of their case, Plaintiffs conflate two central issues: first, whether schools can authorize monitoring of school computers via a service provider; and second, whether the SAC[1] sufficiently alleges that Securly misused the data entrusted to it. Neither issue presents a ground to deny Securly's motion.

On the issue of authorization, Plaintiffs offer virtually no response to Securly's Motion. They do not and cannot contest that the law allows schools to monitor their own computers. Instead of grappling with this fundamental point, Plaintiffs blur two distinct issues—arguing that the SAC's vague, baseless allegations of data misuse somehow invalidate schools' ability to authorize monitoring of their own computers. But schools, like employers, governments, and all other network providers, have the right to monitor their own computers. *See, e.g.*, 18 U.S.C. §§ 2511(2)(a)(i), 2701(c)(1). Each of these entities can hire agents to do that monitoring for them. With schools, Congress went further and *mandated* monitoring—a statutory reality that Plaintiffs do not welcome but cannot contest. Nothing in the Opposition refutes the core truth that school officials act legally when they sign contracts buying Securly software for the purpose of monitoring the use of their own computers. Plaintiffs' argument—that schools are required to obtain parental consent before any student monitoring—must fail, lest this case establish precedent authorizing students and parents to obstruct school compliance with federal law by withholding consent. Any interception of student communications on school computers by the school or its agent—Securly—is entirely legal and requires dismissal of all of Plaintiffs' statutory claims.

---

[1] All capitalized terms are defined as they were in Securly's opening brief ("Mot."), ECF No. 52-1.

No doubt appreciating the tenuousness of defending the first issue, Plaintiffs spend their entire Opposition conflating authorization with alleged data misuse, hoping to preserve a tort claim. Unsurprisingly, Plaintiffs cite several cases that support their tautology that the misuse of data is illegal. But the federal pleading standard requires more. Plaintiffs' suggestion that Securly secretly collects student information to build "consumer reports" of elementary school children to sell to "untold numbers of third party companies," is speculative and implausible. *See* SAC ¶¶ 41, 78. Plaintiffs' ever-evolving theory of the case depends on unidentified data buyers and is based—at best—on conspiratorial "information and belief" rather than a fair reading of Securly's website or any tangible effect or evidence of Securly's monitoring.

Contrary to Plaintiffs' characterization, Securly's motion is not a reprise of its Rule 12(b) briefing that led to the Court's July 1, 2025 dismissal of most of Plaintiffs' claims. If that were true, Plaintiffs would not have required extra pages to introduce inapposite case law and yet another FTC complaint against a different company. With their deluge of irrelevant sources and unsupported aspersions, Plaintiffs seek to distract from the interlocking federal and state statutes that authorize schools to install and operate monitoring software to protect students and comply with the law. Accepting Plaintiffs' theories would not just disrupt Securly's important student safety mission; it would upend an entire industry built upon Congress's command to protect students using the Internet on school computers.

The Court should recognize Plaintiffs' allegations for what they are: a baseless bid for burdensome discovery to drive settlement leverage, not a legitimate concern about technology that has faithfully implemented Congress's design, saving children's lives in the process. Viewing Plaintiffs' allegations against the full statutory backdrop and the Parties' submissions, the Court can—and should—put an end to this litigation.

## ARGUMENT

### I. PLAINTIFFS CANNOT MAINTAIN CLAIMS AGAINST SECURLY FOR COMPLYING WITH FEDERAL AND STATE LAW.

Securly's software complies with a comprehensive web of federal and state statutes and regulations—FCIPA, FERPA, COPPA, and California law—and is not only permitted but expressly contemplated by a legal regime that protects student privacy and promotes safe educational environments. Plaintiffs incorrectly state that the law "clearly and repeatedly" requires direct and express parental consent before schools may use Securly's software to protect children from pornography, cyber-bullying, or self-harm. Pls.' Opp. Br. ("Opp.") at 9. Rather, the applicable statutory and regulatory framework does not require direct parental consent.

#### A. FCIPA authorizes schools to install and operate Securly's software on their own devices.

FCIPA predicates schools' eligibility for critical federal "e-Rate" funding on their certification of compliance with internet safety and filtering requirements.[2] 47 U.S.C. § 254(h)(5)(B); 47 C.F.R. § 54.520(c)(1)(i). Sadly, no single "technological 'silver bullets' or 'permanent solutions'" can keep children safe from "pornography, indecent material, hate sites, . . . sites promoting violations, [and] online predators." U.S. Dep't of Com., Nat'l Telecomms. & Info. Admin., *A Report to Congress on CIPA and Study of Tech. Prot. Measures in § 1703* at 5, 8 (Aug. 14, 2003), https://perma.cc/NSY2-M2CW. FCIPA therefore affords educational institutions wide latitude to craft effective and evolving internet safety policies to keep pace with dynamic threats to school safety and to comply with baseline requirements relating to student safety and harmful content—even when those solutions leverage

---

[2] While FCIPA does not *require* compliance unless schools want to receive standard federal e-Rate funding, Opp. at 11, 14–15, a minority of parents cannot be allowed to compel their schools to forgo federal funding for critical school services.

large amounts of student data. *See* S. Rep. No. 106-141, at 8 (1999) (explaining that "[l]ocal officials are granted the authority to determine what technology is used," as well as "policies for determining how such technology is used," in order to restrict student access to "harmful material via school and library computers").

Plaintiffs reason that Securly violates the law because FCIPA does not specifically "require" schools to track internet use or perform data capture.[3] But Plaintiffs "have misunderstood the difference between a law that permits an act and a law that compels an act." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1071 (9th Cir. 2018). They marshal no authority that supports their restrictive view of FCIPA compliance. Instead, they point (at Opp. 16) to instances where schools have adopted illegal policies that either discriminated against viewpoints, *Parents, Families, and Friends of Lesbians and Gays, Inc. v. Camdenton R-III School Dist.*, 853 F. Supp. 2d 888, 893 (W.D. Mo. 2012), or "regulate[d] teachers' non-work-related use of the internet with no correlation to child safety issues," *Johnston Sch. Comm. v. R. I. State Lab. Rels. Bd.*, 2004 WL 877619, at *3 (R.I. Super. Ct. Apr. 5, 2004) (analyzing FCIPA's predecessor, the Child Online Protection Act). Securly's software—deployed by schools on school-owned devices for an educational purpose—suffers from neither of these legal defects. Its use accordingly falls well within schools' "wide discretionary latitude" to adopt appropriate "'Internet Safety Policies' and 'Internet Acceptable Use Policies. . . .'"[4] *Id.* at *7.

---

[3] *See, e.g.*, Opp. at 15 ("FCIPA . . . does not require tracking of internet use."); *id.* ("FCIPA does not *require* Securly's extensive data capture.") (emphasis added); *id.* at 17 ("Reading [FCIPA] as *requiring* massive data collection without parental consent would put [FCIPA] at odds with other federal statutes . . . .") (emphasis added); *id.* at 18 ("Schools need not maintain records of online monitoring.").

[4] Contrary to Plaintiffs' suggestion, a school has no obligation to adopt defunct "CIPAFilter" software simply because a Missouri court cited it approvingly more than a decade ago. *Contra* Opp. at 16 (citing *Parents*, 853 F. Supp. 2d at 893).

**B. FERPA authorizes schools to use Securly's software to administer educational services, regardless of Plaintiffs' consent.**

FCIPA alone does not permit Securly to access protected student data. Rather, it establishes a requirement that schools may fulfill by deputizing third-party technology providers to monitor student activity on school devices. Such providers then monitor student data on school devices under FERPA's rules.

FERPA addresses the pragmatic realities of protecting student privacy in modern schools. 34 C.F.R. § 99.31(a) (detailing procedures under which disclosure of records without consent is permitted, including to school officials with legitimate educational interests). FERPA's regulatory framework allows schools—and service providers—to use student data for school purposes, including compliance with FCIPA. *See, e.g.*, U.S. Dep't of Educ., Priv. Tech. Assistance Ctr., *Integrated Data Systems and Student Privacy* 3–4, 6–11 (Jan. 2017), https://perma.cc/C429-Y8FU (explaining that FERPA authorizes schools to disclose student data to integrated systems and use large, linked datasets).

As Plaintiffs concede, "FERPA does not require parental consent before disclosing records to a third party who acts as a 'school official' [and] recognizes that a school will sometimes hire a third party to do what it would otherwise do itself, and the third party's use of the records is tantamount to the school's own use of the records." Opp. at 11 (citing C.F.R. § 99.31(a)(1)(i)(B)). This "school official" exception recognizes that schools must delegate essential educational tasks, including safety and online classroom management, to vendors.[5] *See* U.S. Dep't of Ed., *Protecting Student Privacy While Using Online Education Services: Requirements and Best Practices*, at 2–4 (Feb. 2014), https://perma.cc/YP5N-9RA2

---

[5] Plaintiffs do not dispute that compliance with FCIPA is a valid educational purpose for the use of software from an outside provider under FERPA. *See* Opp. at 16 (noting that "many schools use 'CIPAFilter'" to comply with FCIPA).

("U.S. Dep't of Ed., Protecting Student Privacy") (noting that FERPA's school-official exception covers outside service providers performing institutional services). Entire school functions depend on the school-official exception, which allows providers to access student information without the "crippl[ing]" burden of individualized parental consent. *United States v. Miami Univ.*, 294 F.3d 797, 812–13 (6th Cir. 2002); *see, e.g.*, 73 Fed. Reg. 74,806, 74,814 (Dec. 9, 2008) (noting that "school districts may . . . disclose personally identifiable information from education records to outside legal counsel . . . .").

Plaintiffs contend that FERPA is inapplicable here because: (1) Securly is not a "school official," Opp. at 12, and (2) data from school-owned devices are not "education records," *id.* at 18–19. Both arguments miss the mark.

**(1) The "school official" exception applies.**

Securly is a quintessential "school official" under FERPA and satisfies each statutory prerequisite for schools to provide it access to student information without the need for parental consent. 34 C.F.R. § 99.31(a)(1)(i).

*First*, the company performs a school function by monitoring student activity on school-owned devices to promote safety and classroom learning. 34 C.F.R. § 99.31(a)(1)(i)(B). For this requirement, it is sufficient that Securly is "acting for" its school customers, 73 Fed. Reg. at 74,814, which install Securly's software "at the operating system and browser level." SAC ¶ 56.

Plaintiffs argue that Securly is a "service provider, not a school official" because "a school would not "track students' geolocation, keystroke[s], communications, website activity, and private messages *when the student is not in school*."[6] Opp. at 12. This ignores the fact that Securly collects this data only *from*

---

[6] Although Plaintiffs contend Securly does not "provide a theory of how tracking a child's *physical movements* (geolocation) is required," Opp. at 15, they ignore that Securly's geolocation is specific to the device—not the child. *See* SAC ¶ 56

*school devices at the direction of schools*. Plaintiffs cite no authority for their imagined geographical limitation, which contravenes regulatory guidance describing a range of off-campus functions performed by outside "school officials." *See, e.g.*, 73 Fed. Reg. at 74,815 (independent bus operators); U.S. Dep't of Educ., *Student Privacy Policy Compliance Office, A Parent Guide to FERPA*, at 3 (rev. Apr. 2021), https://perma.cc/9WXW-QWHP (field trip chaperones).

Plaintiffs' location-based view of FERPA would prove especially unworkable in COVID and post-COVID learning environments, which involve remote learning and off-campus educational activities beyond traditional school hours. For purposes of FERPA, the relevant inquiry is whether Securly performs an institutional function for which the school would otherwise use employees—not whether that function is performed on school grounds. 73 Fed. Reg. at 74,814.

*Second*, Securly operates "under the direct control" of schools "with respect to the use and maintenance of education records[.]" 34 C.F.R. § 99.31(a)(1)(i)(B)(2). The company enters standard form contracts with its customers, *see* Ex. A to Madhusudan Decl., ECF No. 26-3 (Securly agreement with Terms and Conditions), that "contain all the necessary legal provisions [to satisfy direct control]."[7] U.S. Dep't of Educ., Protecting Student Privacy at 4. This contractual approach to direct control is endorsed by Department of Education regulations. *See* 73 Fed. Reg. at 74,816 (allowing use of written agreements or

---

(alleging that "Securly's software is designed to be installed . . . at the operating system and browser level").

[7] Plaintiffs concede that Securly's contracts "may" contain all the necessary legal provisions for direct control, Opp. at 13, but attempt to refocus the Court's attention from these contracts (to which they previously alluded, SAC ¶ 60) to Securly's public-facing website, Opp. at 13–14. However, the pages cited do not govern or even address contractual obligations to Securly's school customers. *See, e.g.*, Student Privacy Policy, Ex. 1 to Pls.' RJN, ECF No. 62-2, at 1 (stating that "[t]his policy covers our use of 'Student Information,' not contractual commitments").

contracts to establish direct control).

Ultimately, Plaintiffs offer not a single authority to support their assertion that Securly lacks "the *requisite* contracts" with its school customers. Opp. at 14. Their speculation "that the schools 'do not control' Defendant's 'generation, collection, storage, use, or disclosure of student data' . . . [is] in tension with their suggestion that [Securly] is acting jointly with the schools . . . ." *Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210, at *4 (C.D. Cal. Aug. 4, 2025) (appeal pending, 9th Cir. No. 25-5438); *see, e.g.*, SAC ¶ 49 ("[Securly] enables school districts to effectively conceal its illegal activities from parents who have a right to know who is watching their children . . . ."). Plaintiffs lack any colorable argument that Securly does not operate "under the direct control" of its school customers in all relevant respects. 34 C.F.R. § 99.31(a)(1)(i)(B)(2).

*Third*, Securly does not redisclose education records for any purpose other than that for which the disclosure was made. 34 C.F.R. § 99.31(a)(1)(i)(B)(3). Although Plaintiffs claim that the Court previously determined their unsubstantiated "monetization theory" was plausible, Opp. at 4 (citing Hr'g Tr. at 41:9–17), the transcript portion they cite addresses general data-collection allegations, which Plaintiffs' inaccurately equate to "pixel" tracking. Opp. at 4 (citing *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020)). To avoid judgment on the pleadings, Plaintiffs must establish the plausibility of their claim that Securly redistributes student information to "untold numbers of third-party companies," SAC ¶ 78, which they have failed to do.[8] *See infra* Section III.

---

[8] Plaintiffs also claim that Securly improperly rediscloses student data by sharing it with parents without a prior request. Opp. at 8. The emails referenced by Plaintiffs, *see, e.g.*, SAC ¶¶ 46–47, 57, 61–68, are not a redisclosure to "any other party," 34 C.F.R. § 99.33(a)(1), and the relevant FERPA regulations do not limit the disclosure of education records "only upon the parent's *request*." Opp. at 8 (citing 34 C.F.R. § 99.10). Nothing in FERPA prohibits the provision of education records to parents.

**(2) The student data that Securly collects from school-owned devices are "education records."**

Plaintiffs' position that FERPA does not apply because the student activity data that Securly collects on behalf of schools are not "education records," Opp. at 18–19, contradicts the statute's plain language, which "broadly defines 'education records'" to mean any record that (i) contains information directly related to a student and (ii) is maintained by an educational agency or institution *or by a person acting for such agency or institution*. *Miami Univ.*, 294 F.3d at 807 (citing 20 U.S.C. § 1232g(a)(4)(A)). FERPA's expansive statutory definition of "education records" encompasses data in *any* format, whether handwriting, print, or "computer media." U.S. Dep't of Educ., *What Is an Education Record?*, https://perma.cc/L45A-M3R5.

Plaintiffs nonetheless argue that their "electronic communications and social media posts" are not "education records" because such information is not "kept in one place with a single record of access . . . by a single central custodian, such as a registrar." Opp. at 19 (citing *Owasso Independent School Dist. No. I-011 v. Falvo*, 534 U.S. 426, 434–35 (2002)). But in the digital era, the "place" and "custodian" of "education records" can be a secure server managed by a vendor, provided that the records are systematically maintained, preserved, and accessible for parental inspection. *See Greenfield v. Newman Univ., Inc.*, 2020 WL 2766172, at *1–2 (D. Kan. May 28, 2020) (noting that FERPA's definition of "education records" involves systematic maintenance and accessibility); *see also* U.S. Dep't of Educ., *FAQ: Cloud Computing* (Feb. 2014), https://perma.cc/R936-BZM7 (discussing the maintenance of "education records" by cloud computing providers). FERPA regulates the privacy of student information—not data storage.

Plaintiffs also imply that "education records" categorically excludes electronic communications and social media posts. *See* Opp. at 19. None of the authorities they cite for this overreaching position lends any support. The court in *S.A. v. Tulare County Office of Education* concluded that "emails, whether in hard

copy or in electronic format, *may be education records so long as the educational institution maintains them*." 2009 WL 3296653, at *4 (E.D. Cal. Oct. 6, 2009) (emphasis added). And *Arista Recs. LLC v. Does 1–4* considered only whether a university could disclose a "MAC address" associated with a university student's personal device in response to a third-party subpoena. 589 F. Supp. 2d 151, 153 (D. Conn. 2008). Courts in *this circuit* addressing similar discovery requests have concluded MAC addresses are "personally identifiable information contained in education records[.]" *UMG Recordings, Inc. v. Doe.*, 2008 WL 2949427 at *6 (N.D. Cal. June 29, 2008). Neither *Tulare* nor *Arista* calls into question whether student usage data from school-owned devices are "education records" when systematically maintained by Securly and its school customers.

**C. COPPA regulations authorize schools to consent on parents' behalf to Securly's collection and use of student data on school devices for the purpose operating its software.**

COPPA's paradigm is irrelevant to Plaintiffs' claims because FERPA authorizes access to "education records" without parental consent. Nonetheless, the result under COPPA is the same. The statute allows schools to obtain parental consent to Securly's collection of student data in one of two ways. First, they may act as intermediaries between operators and parents to obtain consent directly from parents. *See* 64 Fed. Reg. 59,888, 59,903 (Nov. 3, 1999) ("[T]he Rule does not preclude schools from acting as intermediaries between operators and parents in the notice and consent process . . . ."); Opp. at 25 (citing Hr'g Tr. 27:24-28:5) ("Even if the schools consented, Securly does not go beyond that to show how the schools obtained the parents' or the students' consent."). Second—as here—schools may serve as parents' agents by consenting *on their behalf*. *See* 64 Fed. Reg. at 59,903 ("[T]he Rule does not preclude schools from . . . serving as the parents' agent in the [notice and consent] process."). Under this approach, operators may "presume that the school's authorization for the collection of students' personal information is

based upon the school having obtained the parents' consent," and need not independently confirm that each individual parent consented.[9] FTC, *Complying with COPPA: Frequently Asked Questions*, § N.2 (2020), https://perma.cc/3CPB-M59H.

Either approach is sufficient for consent. *See New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1261–62 (D.N.M. 2020) (recognizing schools may function either as an agent or an intermediary in COPPA's notice-and-consent process). Securly properly relies on schools to consent "on behalf of" parents and students, as FTC regulatory guidance expressly authorizes. *Compare* Pls.' RJN, Ex. 1 at § 2, ECF No. 62-1 ("When schools use our Services . . . we require schools to consent to our collection and use of Student Information, on behalf of parents[.]"), *with* FTC, *Complying with COPPA: Frequently Asked Questions*, § N.1 (2020) ("FTC FAQ § N.1"), https://perma.cc/3CPB-M59H ("[S]chools may act as the parent's agent and can consent under COPPA to the collection of kids' information on the parent's behalf."). No more is needed for verifiable consent. *See M.K. v. Google LLC*, 2023 WL 4937287, at *3 (N.D. Cal. Aug. 1, 2023) (quoting FTC FAQ § N.1).

Plaintiffs separately argue that Securly violates COPPA's restriction on operators conditioning participation in "a *game*, the *offering of a prize*, or another activity on the child disclosing more personal information than is reasonably necessary to participate in such activity." 16 C.F.R. § 312.3(d)) (emphases added). But games and prizes have nothing to do with Securly's safety and educational services. The purpose of 16 C.F.R. § 312.3 is to protect children form undue persuasion by "prohibit[ing] operators from tying the provision of personal information to such popular and persuasive incentives"—not to present a roadblock to educational or safety services. 64 Fed. Reg. at 59,906. In any event, Plaintiffs'

[9] If Plaintiffs believed their schools acted improperly on their behalf, they surely would have added them as defendants by their third complaint.

proposed restriction on the collection of *any* data that is not "necessary for [students] to do their schoolwork," Opp. at 18, would hobble schools' efforts to detect indicators of harm, which often surface apart from any lesson plan or assignment.

Last, Plaintiffs insist that COPPA prohibits Securly's use of student data for limited product improvement. Opp. at 7. But use of student data to improve, develop, and analyze educational software fits squarely within the parameters of "providing an educational purpose rather than engaging in an unrelated commercial practice." 89 Fed. Reg. 2,034, 2,056 (Jan. 11, 2024). To suggest otherwise, Plaintiffs cite a withdrawn COPPA rule to claim that the agency disapproves of such use by negative implication. *See* Opp. at 7 (citing Children's Online Privacy Protection Rule, 90 Fed. Reg. 16,918, 16,918 (Apr. 22, 2025). Yet, the FTC withdrew its proposed rulemaking "[t]o avoid making amendments to the COPPA Rule that may conflict with potential amendments to DOE's FERPA regulations"—not because of any overarching concern about the improvement of educational services. 90 Fed. Reg. at 16,918. The Commission's withdrawal did nothing to unsettle the agency's longstanding view "that allowing providers to make ongoing improvements to the educational services the school has authorized benefits students and educators." 89 Fed. Reg. at 2,056. Plaintiffs ignore the well-recognized principle that courts should not ascribe legal significance to regulatory inaction. *See, e.g., Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins.* Co., 463 U.S. 29, 41 (1983) (declining to equate an agency's refusal to promulgate a rule with an agency's recission of a rule).

**D. California law, best read as consistent with federal law, contemplates schools' use of software to protect students using school property to access the internet.**

California law "authorizes online education services to collect and use student data without permission." Mot. at 10. This authorization is a practical necessity and is neither "inexplicable" nor "untethered to legal reality." Opp. at 19.

**(1) The California Education Code authorizes Securly's collection and use of student data.**

Through California's Education Code, the state legislature allows schools to contract with third parties to "provide digital educational software" that "access[es], store[s], and use[s] pupil records" subject to certain requirements. Cal. Educ. Code § 49073.1(a)(2). The Education Code's requirements do not differ meaningfully from those set forth under federal law. *See BRV, Inc. v. Sup. Ct. of Siskiyou Cnty.*, 49 Cal. Rptr. 3d 519, 524 (Ct. App. 3d Dist. 2006) ("The California Legislature adopted a statutory scheme to eliminate potential conflicts between FERPA and state law."). Plaintiffs seek to impose on Securly heightened obligations under California law by relying on Cal. Educ. Code § 49073.6(c), which, along with § 49073.6(e), limits the circumstances under which educational technology providers can collect records from social media. But the student data Securly collects from social media unquestionably relates to "school safety or to pupil safety." *Compare id.* § 49073.6, *with* Pls.' RJN, Ex. 1 at § 7 (noting that where a school permits students to use social networking sites in connection with Securly's services, Securly collects social media information "for detection of cyber-bullying or risk of self-harm"). Plaintiffs' insinuation that Securly's collection of data violates this law because their schools had a separate obligation to provide some form of "notice and an opportunity for public comment," Opp. at 20, appears for the first time in their brief and lacks any factual support.

Plaintiffs also illogically assert that because provisions of the Education Code regulating the privacy and disclosure of pupil records do not specifically address the creation of those records, any creation therefore must be prohibited. Opp. at 20. They ignore that the Code specifically contemplates schools and their providers establishing pupil records, in addition to storing, managing, and retrieving them. Cal. Educ. Code §§ 49060–49085. Regardless, the absurd consequence of Plaintiffs' statutory interpretation would be to prohibit educational technology

vendors from creating any new "pupil records," even when consistent with federal law.

Plaintiffs' remaining Education Code arguments fare no better. They once again ignore Securly's direct contracts with schools, *see* Ex. A to Madhusudan Decl., so they can claim that "Securly's Student Privacy [Policy] [is] the only thing approximating a contract here." Opp. at 21. They then attack a straw man by asserting that the privacy policy "falls far short of [the Education Code's] requirements." Opp. at 21. Plaintiffs' attempt to ignore Securly's school contracts does not negate their existence or legal significance.

Plaintiffs also repeat their mistaken assumption that the absence of a statutory mandate creates an implied prohibition, this time regarding use of pupil records for product improvement. *See, e.g.*, Opp. at 21 ("At most, Securly can argue that [the Education Code] does not require a contract to prohibit using de-identified pupil records to market or improve its products, but this is not equal to a third party to use [sic] identifiable pupil records for marketing and product improvement."). The Education Code does not prohibit Securly's processing of student data simply because it also "protect[s] student privacy," excludes "de-identified information" from the definition of "pupil records," and does not "identify product improvement or marketing as necessary to ensure data security and confidentiality." Opp. at 21.

**(2) Securly complies with SOPIPA and KOPIPA.**

SOPIPA and California's K-12 Pupil Online Personal Information Protection Act ("KOPIPA") likewise allow Securly to provide its services and process student data except as specifically prohibited. Cal. Bus. & Prof. Code § 22584(b). Neither statute "displace[s] federal law," and both authorize Securly to collect student information in "furtherance of K-12 school purposes." Opp. at 22 (citing Cal. Bus. & Prof. Code §§ 22584(b)(2), (4)(A)). That is what Securly is doing; the statutory definition of "K-12 school purposes" includes functions that "customarily take place at the direction of the K-12 school, teacher, or local educational agency or aid

in the administration of school activities," including "instruction in the classroom or at home" and other tasks undertaken "for the use and benefit of the school." Cal. Bus. & Prof. Code § 22584(a)(3). It thus makes no difference that Securly's software also falls within various statutory exemptions to SOPIPA and KOPIPA. *Compare* Mot. At 11, *with* Opp. at 22–23 (citing Cal. Bus. & Prof. Code §§ 22584(f), (g), (l)).

**E. A direct application of FCIPA is consistent with federal law.**

Plaintiffs' argument that "Securly's FCIPA interpretation would nullify other statutes" is fiction. Opp. at 17. This approach is taken by thousands of schools and does not effectively "repeal" other federal statutes by implication, nor does it raise the types of procedural due process concerns underpinning the decision in *Miller v. Nw. Region Libr. Bd.*, 348 F. Supp. 2d 563, 570 (M.D.N.C. 2004). *See* Opp. at 17–18. To the extent the applicable statutes even bear on the implementation of FCIPA's internet safety measures, they should be read harmoniously.

Plaintiffs primarily focus on Protection of Pupil Rights Amendment ("PPRA") provisions relating to and restricting mandatory psychiatric and psychological examinations. *See* Opp. at 17 (citing 34 C.F.R. § 98.4). Yet, Securly does not offer "psychiatric examination, testing, or treatment" services, and its educational software does not serve the "primary purpose" of eliciting information about topics such as "sex behavior" or "political affiliations." 34 C.F.R. § 98.4(a). The PPRA regulations that Plaintiffs cite also apply only to programs administered by the Secretary of Education—which do not implicate school compliance with FCIPA, a program overseen by the Federal Communications Commission. *See id.* The PPRA further provides an express rule of construction that it shall not conflict with or supersede FERPA. 20 U.S.C. § 1232h(c)(5) (citing 20 U.S.C. § 1232g).[10]

---

[10] Plaintiffs also argue that Securly violates FERPA and COPPA restrictions on the conditions under which a school may disclose student data to third parties, *see* Opp.

## II. PLAINTIFFS CONSENTED TO SECURLY'S DATA COLLECTION AS A MATTER OF LAW.

Under the relevant statutes, Plaintiffs' consent precludes them from establishing an essential element of each of their remaining causes of action. *See* Mot. at 11–12 (collecting cases). As noted, under COPPA, Securly does not rely on its school customers to act as "intermediaries" to effectuate individualized notice-and-consent with Plaintiffs. *See supra* Section I.C (quoting 64 Fed. Reg. at 59,903). Rather, it obtains Plaintiffs' delegated consent from their schools, which "serv[e] as the parents' agent" pursuant to the FTC's COPPA Rule. 64 Fed. Reg. at 59,903. Plaintiffs concede their schools consented to the use of Securly's software on their devices. Opp. at 25. They only note that they—the parents and students—never provided consent to their schools. *Id.* (citing Hr'g Tr. 27:24-28:5) ("Even if the schools consented, Securly does not go beyond that to show how the schools obtained the parents' or the students' consent."). Because either form of consent is valid under the FTC's COPPA rule, *see Balderas*, 489 F. Supp. at 1261–62, Securly may "presume parental consent under COPPA," Opp. at 25.

Plaintiffs likewise "impliedly consented" to the collection of their data. Opp. at 24–25. Despite their schools' annual notice of Securly's role as a "school official," 34 C.F.R. § 99.31(a)(1), and Plaintiffs' corresponding right to "inspect and review" the data that Securly collects from them, *id.* § 99.10(a), they continued to send private communications and engage in sensitive activities on school-owned

---

at 17–18, but this is misdirection. Securly is a "school official" under FERPA, 34 C.F.R. § 99.31(a)(1)(i)(B), and can share relevant information with schools and rights-holders (*i.e.*, parents and students) without invoking FERPA's student safety exception, *see* 20 U.S.C. § 1232g(b)(1); 34 C.F.R. § 99.31(a)(8). Likewise, under COPPA, Securly collects student data based on the delegated consent it receives from Plaintiffs' schools. It does not rely on a statutory exception to consent, such as 16 C.F.R. § 312.5(c)(5). *See* Opp. at 18.

devices. *See* SAC ¶¶ 29, 35. That they were not contemporaneously notified of Securly's software makes no difference. *See* Opp. at 24. The "Code of Federal Regulations"—Title 34—"provide[d] public notice of the possibility of monitoring." *United States v. Amen*, 831 F.2d 373, 379 (2d Cir. 1987). As with *Rojas v. HSBC Card Servs. Inc.*, a conspicuous legal disclosure "placed [Plaintiffs] on notice of recording and [they] therefore impliedly consented" to the collection of their data.[11] 311 Cal. Rptr. 3d 393, 415–18 (Cal. Ct. App. 2023), *review denied* (Nov. 21, 2023). Plaintiffs have no viable way to contest either that (1) no law prohibits the monitoring of school-owned devices or the associated collection of student data or (2) schools may monitor their own computers and consent to having others monitor on their behalf via purchasing and operating software on the school's computers. Accordingly, they stake their SAC on claims of misused data.

## III. PLAINTIFFS OFFER NO PLAUSIBLE ALLEGATIONS THAT WOULD PLACE SECURLY'S CONDUCT OUTSIDE THE AMBIT OF WHAT FEDERAL AND CALIFORNIA LAW PERMIT.

Unable to say that FCIPA *prohibits* a solution like Securly's, Plaintiffs return to their baseless allegations of data monetization. In reality, Plaintiffs cannot deny that Securly has been certified as compliant under an FTC-approved safe harbor program. *See* iKeepSafe, *Securly*, https://perma.cc/X724-N3FK (last visited Oct. 3, 2025) (listing the products certified, including Home, Filter, and Classroom). In the face of this certification, Plaintiffs must establish the plausibility of their claim that Securly rediscloses student information to "untold numbers of third-party

---

[11] Plaintiffs suggest that *Rojas* engaged in a totality of the circumstances analysis when finding implied consent. *See* Opp. at 24 ("In *Rojas*, the court held the plaintiff impliedly consented to the bank recording her calls because she was notified [ ] during the call . . . and received disclosures in her card member agreement."). Yet, the *Rojas* trial court ruled that "*both forms of disclosure* would have placed [Rojas] on notice of recording" sufficient for implied consent. 311 Cal. Rptr. 3d at 411.

companies" in violation of FERPA. SAC ¶ 78. They cannot do so.

*Hernandez-Silva v. Instructure* is instructive. 2025 WL 2233210, at *1–3. Like the students in *Instructure*, Plaintiffs do not "identify a single customer, transaction, or participant in Securly's alleged monetization scheme." Opp. at 9 (citing Mot. at 1); *see Instructure*, 2025 WL 2233210, at *2 (holding that plaintiffs had failed to state plausible claims because they did not identify "third parties . . . to whom [identifying information] was allegedly disclosed"). Plaintiffs' insistence that "such a level of detail is not required at the pleading stage," misapprehends the applicable standard, which requires not only notice, but plausibility. *Compare* Opp. at 9 ("That is enough for Securly to be put *on notice of what the claims against it are*, and *Plaintiffs need not do more*.") (emphases added), *with Instructure*, 2025 WL 2233210, at *2 ("[A] plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

Plaintiffs argue that the SAC contains "the very allegations that were missing" in *Instructure*. Opp. at 4; *see also id.* ("Securly tracked Plaintiffs' geolocation, their keystroked communications, their web search terms, the websites they visited, and the videos they watched."). But in this case, allegations of monitoring are consistent with the lawful operation of software that collects and analyzes sensitive data *by design* to protect students and restrict their access to harmful and obscene materials. 47 U.S.C. § 254(h)(5)(B)(i). *Instructure*, by contrast, concerned "course management" software used for "assignment delivery and grading"—software that has no operational need for sensitive student data. 2025 WL 2233210, at *1.

Lacking other factual support, Plaintiffs rely on a selective reading of Securly's privacy policies and a cynical view of the emails parents at unrelated schools allegedly received through the Home app. Opp. at 8–9. But these purported "facts" are contrived and do not entitle Plaintiffs to "use litigation as a fishing

expedition to seek discovery and find out whether [Securly] misused the data." *Instructure*, 2025 WL 2233210, at *3.

The plain language of Securly's privacy policies prohibits the sale, advertising, or profile building of student data and likewise restricts data use to school-authorized purposes under direct school control. *See e.g.*, Mot. at 18–20; Pls.' RJN , Ex. 1 at § 8. This policy informs parents and schools of their rights to review, request deletion of, and control Securly's use of student personal information. Opp. Ex. 1 at § 12. *Contra* Compl., *U.S. v. Edmodo, LLC*, No. 3:23-cv-02495 (N.D. Cal. May 22, 2023), at ¶¶ 38–41 (alleging that an ed tech provider collected student information to serve contextual advertising to students under 13 on its platform).[12] It does not contain provisions remotely suggesting that Securly builds consumer profiles of children and sells them to "untold numbers of third-party companies." SAC ¶¶ 41, 78.

As for Securly's Home app, Plaintiffs fabricate a controversy out of whole cloth. *Id.* at 8–9. The Home app is an extension of Securly's Filter software, which is designed to help keep children safe as they use school-issued devices. *See* Mot. at 17. Plaintiffs suggest that "Securly monetizes the 'Home' app through targeted advertising" and that the app "is not provided to schools, and . . . is not a school-authorized use of students' data." *Id*. at 8. If such advertising did exist, however, surely the SAC would have included an example. Indeed, Plaintiffs do not offer a *single* personalized allegation regarding Home and instead improperly rely on

[12] Neither the *Edmodo* complaint nor the *Cherkin* decision cited in the Opposition provides any support for Plaintiffs' claim that collecting student data for legitimate educational or safety purposes at the direction of schools is unlawful. In fact, both indicate that school-directed data collection for legitimate educational or safety purposes is permissible under FERPA and COPPA, so long as the data is not used for unrelated commercial activities. *See, e.g.*, *Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 844378, at *3 (N.D. Cal. Mar. 17, 2025).

information their lawyers collected from unidentified third parties. Like the students in *Instructure*, "Plaintiffs' failure to allege specific facts about [Securly's] taking of ***their*** data defeats all their claims."[13] 2025 WL 2233210, at *3 (bold emphasis added); *see also id.* ("The 82-page pleading largely consists of broad, generalized allegations about Defendant's full product line, while offering scant detail about Plaintiffs' own experiences with any of them.").

At bottom, Plaintiffs' conclusory accusations of data misuse cannot survive under Rule 12(c), particularly where the alleged parent emails are school-purpose communications to the rightsholder parent and not disclosures to any third party. When considered in the context of Securly's Answer and other materials properly before this Court, the allegation that a critical service to hundreds of schools is, in fact, a funnel for the secret sale of student data is factually implausible.

## CONCLUSION

For the foregoing reasons, Securly respectfully requests that the Court grant its Motion for Judgment on the Pleadings, dismiss Plaintiffs' Second Amended Complaint with prejudice, and enter judgment in Securly's favor.

---

[13] In apparent recognition of the insufficiency of their allegations concerning Securly's use of student data to *market* Home, Plaintiffs now allege for the first time that Securly used student data to *create* Home. Opp. at 8. Even if that were true (it is not), Plaintiffs cannot cure a pleading deficiency through an opposition brief. *See, e.g.*, *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1157 (S.D. Cal. 2021).

Dated: October 3, 2025

Respectfully submitted,

By: *\/s/ Amy Jane Longo*

Amy Jane Longo
(CA Bar No. 198304)
ROPES & GRAY LLP
10250 Constellation Blvd
Los Angeles, CA 90067
Tel: (310) 975-3300
Fax: (310) 975-3400
amy.longo@ropesgray.com

Edward R. McNicholas (*pro hac vice*)
Frances Faircloth (*pro hac vice*)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
Tel: (202) 508-4600
Fax: (202) 508-4650
edward.mcnicholas@ropesgray.com
fran.faircloth@ropesgray.com

*Attorneys for Defendant Securly, Inc.*

**CERTIFICATE OF SERVICE**

**BY CM/ECF TRANSMISSION:** In accordance with the Electronic Case Filing Administrative Policies and Procedures Manual for the United States District Court, Southern District of California, the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 3, 2025, at Los Angeles, California.

*/s/ Amy Jane Longo*
Amy Jane Longo