**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHERI BATE, and her child N.M., and AZUCENA MEJIA, and her child A.S., individually and on behalf of others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>SECURLY, INC.,<br><br>　　　　　Defendant. | Case No. 23-cv-1304-AGS-DEB<br><br>**ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>**[DKT. NO. 109]** |

### 1. PURPOSE

This Stipulated Order Regarding Discovery of Electronically Stored Information ("ESI Protocol") governs the discovery of Electronically Stored Information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules.

### 2. COOPERATION

The Parties are aware of the importance this Court places on cooperation and commit to cooperate in good faith throughout the matter.

1

## 3. DEFINITIONS

a. "Electronically Stored Information" or "ESI," has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

b. "Media" means an object or device, including but not limited to a disc, tape, computer or other device on which data is or was stored.

c. "Non-Party" means any natural person, partnership, corporation, association, or other legal entity who is not a Party (as defined below) in this action.

d. "Party" means any Party to this action.

e. "Producing Party" means a Party or Non-Party that produces ESI in this action.

f. "Receiving Party" means a Party that receives ESI from a Producing Party in this action.

g. "Identifying Information" means information that identifies an individual by their name or that permits an individual to be identified by their name, with the assistance of device-identifying information such as an IP address and/or geolocation data.

## 4. PROPORTIONALITY

The Parties will use reasonable, good faith, and proportional efforts to preserve, collect, search, review, and produce relevant information consistent with Fed. R. Civ. P. 26(b)(1). This includes cooperation in identifying an appropriate scope of discovery, including the number of custodians, identification of relevant subject matter, time periods for discovery, and other parameters to guide discovery, preservation, and production.

## 5. PRESERVATION

The Parties have discussed their preservation obligations and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To

2

reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

a. Only ESI created or received between June 1, 2020 and the present will be preserved. ESI exchanged between Plaintiffs and their respective schools, after January 1, 2017, however, will be preserved. The Parties reserve the right to meet and confer in good faith if a Party believes that certain other relevant documents may exist outside of the date range.

b. The following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and ESI from these sources will be preserved to the extent it exists pursuant to normal business retention, but not searched, reviewed, or produced unless otherwise ordered by the Court:

- Backup systems and/or tapes used for disaster recovery;

- Systems no longer in use after June 1, 2020, that cannot be accessed with programs currently in use by Defendant;

- Voice messages;

- Instant messages and chats sent, received, and/or created prior to June 1, 2020 that are not chronicled to an archive system;

- Information contained solely on handsets, mobile devices, personal digital assistants, and tablets—other than information contained solely on the Plaintiffs' school-issued devices—unless a Party learns that responsive, non-duplicative information resides only in such sources; and

- Version histories for Google Docs or other similar cloud-based work platforms.

c. The following data sources may contain relevant ESI but need not be preserved, searched, or collected due to proportionality factors:

3

- System-created temporary or draft versions of documents and emails that are automatically stored and purged;
- Deleted, slack, fragmented, or other data accessible only by forensics;
- Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling operating systems, excluding school-issued tablets and mobile computers;
- Online access data such as temporary internet files, history, cache, cookies, and the like, excluding school-issued tablets and mobile computers;
- Dynamic fields of databases or log files not retained;
- Mobile device activity logs, excluding school-issued tablets and mobile computers;
- Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment;
- Data in metadata fields that are frequently updated automatically, such as last opened dates; and
- Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

The Parties agree that ESI, including data stored, intercepted, collected, and/or created by Securly Inc. prior to June 1, 2020, from the following sources are generally not reasonably accessible: (1) server, system, or network logs; or (2) dynamic fields in databases or log files not stored or retained in the usual course of business. This is based on the mutual representation of the Parties' counsel, and the Parties agree not to preserve, collect, process, review, and/or produce ESI from those sources.However, to the extent that a Party identifies discoverable ESI contained in the aforementioned sources in custodial or non-custodial files, the Parties will preserve, collect, process, review, and/or produce non-privileged, responsive ESI from such sources to the extent proportional and not unduly burdensome.

    a. The Parties acknowledge that Defendant Securly, Inc. is subject to various privacy regulations. To the extent that Identifying Information

subject to routine disposition as required by privacy regulations and court orders is identified as relevant to the claims or defenses in this case, the Parties will meet and confer on preservation of such Identifying Information as it exists at that time, including the feasibility of such preservation and the type of the user data implicated.

b. Securly, Inc. agrees that any applicable privacy regulation will be applied only to the extent necessary to comply with its obligations to keep Identifying Information confidential.

c. The Parties otherwise will continue to meet and confer regarding any additional sources or types of ESI that need not be preserved, searched, or collected.

## 6. SEARCH

The Parties agree that each Producing Party is best situated to determine the most appropriate method or methods to search, collect, cull, and produce documents responsive to discovery. In responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, the Parties will meet and confer regarding the sources of types of ESI they believe will be sources of potentially relevant non-privileged information.

As applicable, the Producing Party will propose custodians whose ESI will be subject to search to identify potentially responsive, non-privileged information. The Parties will then meet and confer regarding the custodians whose ESI will be subject to search.

The Parties recognize and agree that each Party may use one or more methodologies to identify, search, collect, cull, review, and produce responsive and non-privileged ESI, including, but not limited to, the use of search terms and/or the use of technology assisted review. The Parties therefore agree to meet and confer in good faith to attempt to resolve disputes over their respective search methodologies. This ESI Protocol does not require a Producing Party to use a

particular search methodology, nor does it require the Parties to approve, or agree on, another Party's methodologies.

Each Party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process (e.g., using the National Software Reference Library ("NSRL") NIST hash set list).

## 7. DE-DUPLICATION AND EMAIL THREADING

Each Producing Party is required to produce only a single copy of a responsive document and may de-duplicate responsive ESI (e.g., based on MD5 hash values at the document level) across custodians.  To the extent that de-duplication through MD5 hash values is not possible, the Parties shall meet and confer to discuss any other proposed method of de-duplication.

Where multiple email messages are part of a single chain or "thread," a Producing Party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and identical senders and recipients, within the Last In Time Email.

## 8. PRODUCTION FORMATS

Appendix A sets forth the technical specifications that govern the form of production of documents in this matter.  If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents.

The Parties agree not to degrade the searchability of documents as part of the document production process.  The Parties agree to meet and confer in good faith to address any issues that may arise in this regard, and to seek judicial intervention only if their efforts to resolve the issues on an informal basis are unsuccessful.

## 9.  PRIVILEGED DOCUMENTS & LOGGING

The Parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for documents withheld on the basis of privilege, attorney work product, or similar doctrines. A Party may furnish a privilege log (including a categorical, metadata, or email threads log) or index in any appropriate format that allows another Party to evaluate the claim.

The Parties do not need to log privileged or otherwise protected communications involving outside counsel for a Party.

Communications involving counsel that post-date the filing of the original complaint need not be placed in a privilege log.

The Parties will not be required to manually populate any metadata fields for the sole purposes of preparing a privilege log.

The Parties agree to meet and confer on additional methods to reduce the burden and cost of privilege logs, including, but not limited to, date limitations and carve-outs on categories of items that need not be logged.

## 10. PHASING

The Parties agree to meet and confer regarding appropriate phasing for the production of ESI.

## 11. MODIFICATION

This Stipulated ESI Protocol may be modified by agreement of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

**IT IS SO ORDERED.**

Dated:  March 16, 2026

_____
Daniel E. Butcher
United States Magistrate Judge

## Appendix 1: Production Format

**Production Components.**  Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

- An ASCII (or UTF8) delimited data file (.DAT) using standard delimiters;

- An image load file (.OPT) that can be loaded into commercially acceptable production software (e.g., Relativity) containing the following comma-delimited fields:  BEGBATES, PRODVOL, FILEPATH, DOCUMENT BREAK;

- TIFF images;

- Native files for spreadsheets (e.g., Microsoft Excel), presentations (e.g., PowerPoint), audio and video files, and other native file formats, with a TIFF placeholder;

- Document-level .TXT files for all documents containing extracted full text or OCR text;

- Searchable text will be produced as document-level UTF-8 text files with the text file named to match the beginning production number of the file.

- Parent-child relationships will be maintained in production.

- If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

- All documents produced must be accompanied by their native format in 1200 DPI.

**Production Media and Access Controls.** All productions must be made by secure file transfer to agreed-upon email addresses. If a production exceeds 20GB, it may be sent by overnight mail on encrypted external hard drives or other secure electronic Media. Each production shall be accompanied by a cover letter than identifies (1) a production number corresponding to the production volume (e.g., "VOL001"), (2) the Producing Party's name, (3) the production date; and (4) the

8

Bates Number range of the materials contained. Any data produced by the Producing Party must be protected in transit, in use, and at rest by all in receipt of such data. Any copies made of produced data must be kept on Media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with best practices for data protection.

**Metadata Fields and Metadata File**.  Each of the following metadata and coding fields set forth below shall be produced for each document, to the extent they exist and can be extracted. There is no obligation to manually populate any metadata fields, with the exception of (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALLCUSTODIAN(s), (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, (j) TEXTFILEPATH, and (k) HASHVALUE. The metadata shall be delimited according to the following characters:

      i.     Delimiter = ¶ (ASCII:020)

     ii.     Text-Qualifier = þ (ASCII:254)

    iii.     New Line = ® (ASCII:174)

    iv.     Multi-value delimiter = ; (ASCII Code 059)

| Field Name | Description |
| --- | --- |
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| PARENTBATES | Beginning Bates number for the parent e-mail of a family (will not be populated for documents that are not part of a family) |
| ALLCUSTODIANS | All custodians from whom the document was obtained and de-duplicated out during global de-duplication |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| NATIVEFILEPATH | Native file link (for native files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| HASHVALUE | MD5 hash value of document |
| ATTACHNAME | File name(s) of the attachment(s) to a parent document(s), separated by a semicolon |

9

| | |
|---|---|
| AUTHOR | Value populated in the Author field of the document properties |
| DOCDATE | Date the document was created (format: MM/DD/YYYY) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| FILENAME | Original file name |
| FILEPATH | Original path to the individual source file or email folder structure |
| TITLE | Value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| EMAIL SUBJECT | Subject line of email pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM:SS) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM:SS) |
| REDACTIONS | Indicate Yes/No if document is redacted |
| MESSAGE ID | Unique identifier assigned by a program to a message/communication |
| PAGE COUNT | Number of pages of the document, excluding the pages of documents in the same family |
| PRODVOL | Production Volume |

**Processing.** With the exception of time zone modification (discussed below), ESI items shall be processed in a manner that preserves the source native file and all of the above-referenced metadata without modification. ESI items shall be produced with all of the metadata and coding fields set forth above.

**Time Zone.** ESI items shall be processed so as to preserve and display the date/time shown in the document. ESI items shall be processed to reflect the date and time standardized to a single time zone for all productions by a Producing Party, that time zone shall be Pacific Standard Time (PST), and shall be consistent across each Producing Party's productions. Such standardization affects only metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an e-mail thread, dates and times of earlier messages that were converted to body

10

text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced in accordance with the formats set forth in this Protocol.

**Hidden Content.**  ESI items shall be processed in a manner that is designed to preserve hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes, comments, and other rich data (including, but not limited to strikethrough text, etc.) as displayed in the document to the extent it is reasonably and technically feasible.

**TIFFs.**  Unless excepted below, single page Group IV TIFFs should be provided, with at least 300 dots per inch (dpi) for all documents.  Each TIFF image shall be named according to a unique corresponding Bates number associated with the respective page of a document.  Each image shall be branded with the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).  All images will display all data visible in its native application, to the extent it is reasonably and technically feasible.  Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher-quality TIFF image or the native or original file.  TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

**Hard Copy Documents.**  Documents that exist only in hard copy format shall be scanned and produced as TIFFs.  Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs.

**Color.**  Native documents in color will be produced in color.  For non-native documents, the Parties may only request color copies of a reasonable number of documents where color will aid in the interpretation of the document, provided that such request is made in good faith and does not impose an undue burden on the Producing Party.

11

**TIFFs.** All spreadsheet (e.g., Microsoft Excel) and presentation (e.g. Microsoft PowerPoint) files shall be produced as native files with TIFF placeholder images. Spreadsheet files requiring redaction, including Microsoft Excel files, will be redacted within the native file, and the redacted native file will be produced as provided herein. Presentation files requiring redaction, including Microsoft PowerPoint files, will be produced as TIFF images with redactions.

**Metadata.** Native files will be produced with a link in the NATIVEFILEPATH field and applicable metadata fields. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

**Confidentiality Designations.** Documents produced in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

**Hyperlinks.** No Party is required to collect, pair, or produce documents referenced in a separate document ("Source Document") via the use of a hyperlink. A Receiving Party may request the production of a specific hyperlinked document, or a specific version of a hyperlinked document, if it articulates in writing to the Producing Party a reasonable basis to conclude that the hyperlinked document, or specific version thereof, is responsive and has not yet been produced. The Receiving Party must also provide the Bates number of the document containing the hyperlink when making such a request. The Producing Party shall consider any such request in good faith, but retains the right to object to such requests for reasons including, but not limited to, proportionality, delay, cost, relevance, and privilege. If the Producing Party objects to such a request, the Parties will meet and confer in good faith. The Parties agree that no more than fifty (50) such requests may be

proffered by a Receiving Party for the duration of this matter absent the Parties' agreement to exceed this limit.

**Databases and Other Structured Data.** The Parties agree to meet and confer regarding the production format for data contained in databases or other structured data types, to ensure that any information produced is reasonably usable by the Receiving Party and that its production does not impose an undue burden on the Producing Party. To the extent a Producing Party is constrained from producing responsive ESI because of a third-Party license or because software necessary to view the ESI is hardware-dependent, the Parties shall meet and confer to reach an agreement on alternative methods to enable the Receiving Party to view the ESI.